UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:13-CV-641-PLR-CCS |
| WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02. Now before the Court are Plaintiffs' Motion to Compel Defendants to Produce Audio Tape Recordings [Doc. 27] and Defendants' Motion for Protective Order [Doc. 34]. These motions are ripe for adjudication, [see Docs. 29, 37], and the parties appeared before the undersigned on April 15, 2014, to present oral arguments. The Court has considered the parties' positions, and for the reasons more fully stated herein, the Court finds it appropriate to complete an *in camera* review before ruling upon either of the pending motions.

**I.    BACKGROUND**

Plaintiffs filed this action on October 23, 2013, alleging violations of the Fair Labor Standards Act ("FLSA"). [Doc. 1]. Defendants Wyndham Vacation Resorts, Inc., and Wyndham Vacation Ownership, Inc., have filed an Answer [Doc. 18], in which they deny any violation of the FLSA.

Plaintiffs Jesse Pierce and Michael Pierce are Sales Representatives for Defendants in Sevierville, Tennessee. In October 2013, they retained the law firm of Dickinson Wright PLLC to represent them to assert FLSA wage and hour claims against Defendants. Plaintiffs' counsel was allegedly advised that other current and former Sales Representatives, who worked at Defendants' Tennessee properties, were also interested in seeking legal advice about their potential legal rights for unpaid overtime under the FLSA

Plaintiffs' counsel reserved a large meeting room at the Governor's Inn in Sevierville, Tennessee, and scheduled a meeting with other interested Sales Persons on October 17, 2013. It is not clear how this event was advertised to the current and former Sales Representatives, but counsel for the Defendants represented to the Court that forty-four persons attended. Plaintiffs' counsel placed a sign-in sheet for individuals attending the meeting. The sign-in sheet was typed, but at the top of the sheet, someone wrote: "By signing in, you acknowledge that you are here to seek legal advice concerning your right to overtime pay from Wyndham." There has been no evidence presented to dispute Plaintiffs' assertion that this acknowledgment was added prior to the attendees signing in. Individuals in attendance signed-in with their names, e-mail addresses, and telephone numbers.

In his affidavit [Doc. 30-1], Attorney Martin Holmes, who serves as counsel for the Plaintiffs, represents that: at the beginning of the program, counsel announced their understanding that everyone in attendance at the meeting was there seeking legal advice; counsel further stated that, if anyone in attendance was not seeking legal advice, they should leave; and finally, counsel stated that, because the attendees were seeking legal advice, they were legally considered "clients." Further, Mr. Holmes attests that counsel advised that discussions in the meeting were protected by the attorney-client privilege and that if anyone was present on behalf

2

of the Defendants, or there to record the meeting, they should leave. Mr. Holmes represents that after those announcements no one left the meeting.

Plaintiffs assert that, after these introductory remarks, Plaintiffs' counsel discussed issues related to the attendees' potential overtime claims, including the nature of the law as applied to the duties they performed, the framework in which legal action would be taken, and the collective action provisions of the FLSA. Plaintiffs assert that the attendees and counsel engaged in an interactive dialogue. Plaintiffs represent that, at the meeting or shortly thereafter, forty-two attendees signed consents to opt-in to the forthcoming lawsuit. Six days after the meeting, Plaintiffs filed this case.

Unbeknownst to Plaintiffs or their counsel, at least one individual who attended the October 17, 2013 meeting also recorded portions of the meeting. The individual sent the audio recordings to Defendants' then Director of Sales, John Geissberger, via text message. Defendants maintain that neither Geissberger nor any other managers asked the individual to make the recordings or to provide them to Geissberger.

On December 3, 2013, Attorney James Mulroy, Defendants' counsel, advised Plaintiffs' counsel via email of his receipt of the recordings. Mr. Mulroy represented that the person who recorded the meeting had filed a consent and was an opt-in plaintiff in this action. The individual who recorded the meeting has not been further identified to either the Court or the Plaintiffs. Defendants' counsel has represented to the Court that he has not listened to the recording.

3

## II. POSITIONS OF THE PARTIES

Plaintiffs maintain that the audio recording of the October 17, 2013 meeting is protected from disclosure from the attorney-client privilege and should be given to Plaintiffs' counsel. In their briefing, the Plaintiffs maintain that the meeting attendees were clients. However, at the hearing counsel for the Plaintiffs conceded that not everyone at the meeting was a client because they did not all sign a retainer. Plaintiffs argue that one or two clients cannot waive the attorney-client privilege on behalf of all of the attendees unless authorized to do so. Plaintiffs maintain that no such authorization has been given, and therefore, the privilege has not been waived.

The Defendants move the Court to conduct an *in camera* review of the audio recordings to determine if the content is protected by the attorney-client privilege. Defendants suggest that if the Court believes that the recording contains potentially privileged information, it should permit discovery on this issue. Defendants maintain that, regardless of whether the recording is privileged, the Court should issue an Order protecting disclosure of the identity of the individual who recorded the meeting. At the hearing, counsel for the Defendants argued that disclosure would lead to that individual being bullied. Defendants also maintained that the recording was not protected by the attorney-client privilege because the privilege extends to communications by a client, not the attorney.

## III. ANALYSIS

"Questions of privilege are to be determined by federal common law in federal question cases." Reed v. Baxter, 134 F.3d 351, 356 (6th Cir. 1998) (citing Fed. R. Civ. P. 501).

Pursuant to the federal common law of the Sixth Circuit, "[t]he elements of the attorney-client privilege are as follows: (1) Where legal advice of any kind is sought (2) from a

4

professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." Id. (citing Fausek v. White, 965 F.2d 126, 129 (6th Cir. 1992)).

The parties concede this Court has jurisdiction over this case based upon a federal question pursuant to 28 U.S.C. § 1331. [Doc. 1 at ¶ 6; Doc. 18 at ¶ 6]. Therefore, the Court applies the form of the attorney-client privilege articulated by the Court of Appeals for the Sixth Circuit, as stated above. The Court has given great thought to the application of this standard, but the Court has significant reservations about the application of at least three of the elements to the instant case. Specifically, the briefing before the Court yields little to help in the determination of whether the communications at issue were made in confidence, by the client, and whether the protection was waived. This deficiency is due mainly to the position in which counsel for both sides find themselves – *i.e.* defense counsel has not heard the recordings and Plaintiffs' counsel cannot divulge too much about the meeting without risking a waiver of any privilege that may exist.

The Court has concluded, after trying to fashion an opinion and as a necessity to a proper ruling, that it would be well-served to listen to the recordings *in camera*. This *in camera* review will almost certainly aid the Court in determining whether the communications that were recorded were made by the client and whether they were made in confidence. The review may or may not aid in a determination of whether the privilege was waived, but because the privilege cannot exist where even one of the essential elements is missing, the Court's *in camera* review may alleviate the need for the Court to determine whether there was a waiver. Conversely, the *in*

5

*camera* review may prevent the Court from unnecessarily deciding an issue of waiver that may have long-lasting effects within this District and, potentially, this Circuit.

## IV. CONCLUSION

For the reasons more fully stated herein, counsel for the Defendants is **ORDERED** to contact Ms. Kathy Keeton, Chief Deputy Clerk to the Clerk of Court for the Eastern District of Tennessee, to make arrangements to either physically or electronically deliver the sound recordings to the Clerk of Court's office under seal. The recordings **SHALL** be delivered to the Clerk of Court on or before **August 1, 2014**.

**IT IS SO ORDERED**.

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge