# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

| | | |
|---|---|---|
| JESSE PIERCE and MICHAEL PIERCE, | ) | |
| on behalf of themselves and all others | ) | |
| similarly situated, | ) | CASE NO. 3:13-cv-641 |
| | ) | |
| Plaintiffs, | ) | District Judge: Pamela L. Reeves |
| | ) | Magistrate Judge: C. Clifford Shirley, Jr. |
| vs. | ) | |
| | ) | |
| WYNDHAM VACATION RESORTS, | ) | COLLECTIVE ACTION COMPLAINT |
| INC., and WYNDHAM VACATION | ) | FOR VIOLATIONS OF THE FAIR |
| OWNERSHIP, INC., | ) | LABOR STANDARDS ACT OF 1938 |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO ADOPT DEFENDANTS' VERSION OF THE NOTICE TO THE CLASS AND TO INCLUDE OPT-IN SURVEY WITH THE COURT-SUPERVISED NOTICE TO OPT-IN PLAINTIFFS

Come Plaintiffs and file this Response in Opposition to Defendants' Motion to Adopt Defendants' Version of the Notice to the Class and to Include Opt-In Survey with the Court-Supervised Notice to Opt-In Plaintiffs.

### Procedural History Leading to the Conditional Certification Order

On October 23, 2013, Plaintiffs filed this collective action under the Fair Labor Standards Act ("FLSA") on behalf of themselves and all current and former Sales Representatives who worked at Defendants' four (4) Tennessee resorts since October 23, 2010.[1]  *DE 1, Complaint.* Contemporaneously with the Complaint, the named Plaintiffs filed their own "Plaintiff Consent Forms" along with those executed by *forty-six (46)* additional current and former Sales Representatives, who exercised their rights to "opt-in" to this action pursuant to 29 U.S.C. §216(b). *DE 1-1 (Jesse Pierce Consent); DE 1-2 (Michael Pierce Consent), and 1-3 (Opt-in Plaintiff Consent*

---

[1] As the Court is aware, the FLSA has a three-year recovery period for willful violations.

*Forms).*

Since the initial filing on October 23, 2013, *eighty-three (83)* additional current and former Sales Representatives have periodically "opted-in" to this action by executing "Plaintiff Consent Forms" – even as late as a few days ago on September 5, 2014. *See, e.g., DE 94, Pls.' Twenty-Second Notice of Filing; and DE 94-1, Tyrone Hickman Consent.*

At the present time, there are *one-hundred nineteen (119)* "opt-in Plaintiffs," each signing identical "Plaintiff Consent Forms" which were filed with the Court.

On December 26, 2013, Defendants served their First Request for Production of Documents to Named *and Opt-In Plaintiffs. Ex. 1 ("Defendants' First Request")(emphasis added).* Defendants' First Request was propounded to not only the named Plaintiffs, but all current and future opt-in Plaintiffs. Defendants' First Request contained thirty-five (35) voluminous and overreaching document requests, many containing subparts.

With respect to current and future opt-in Plaintiffs, Plaintiffs objected to responding to Defendants' First Request, arguing that the controlling law prohibited discovery propounded to the entire class of opt-in Plaintiffs, including but not limited to overly broad and unduly burdensome interrogatories and requests for production of documents.

During a conference call with the Magistrate Judge to address outstanding issues related to the entry of an agreed protective order governing disclosure of confidential documents on April 28, 2014, Defendants broached the issue of Defendants' First Request directed to all current and future opt-in Plaintiffs. After some discussion, the Magistrate Judge suggested that Defendants "rethink" their approach to discovery, and perhaps conduct a sampling or utilize a limited questionnaire format.

On June 24, 2014, Defendants sent a proposed "Survey" to Plaintiffs' counsel, to be answered by *all* current (and presumably, all future) opt-in Plaintiffs. *Ex. 2, Defs.' Proposed Survey.* At present, the parties are still in the "meet and confer" process regarding the scope of any survey or questionnaire to current and future opt-in plaintiffs, including, but not limited to: 1) whether all opt-in Plaintiffs must respond (as opposed to a percentage or sampling); 2) whether any "survey" or questionnaire from Defendants should be sent to Plaintiffs' counsel, who, in turn, would forward them to the opt-in Plaintiffs for completion and execution (as opposed to being sent directly by defense counsel to opt-in Plaintiffs; 3) what permissible communications Plaintiffs' counsel may have with the opt-in Plaintiffs (their own clients), during the process of responding to Defendants' "survey" or questionnaire (Defendants argue that communications between the opt-in Plaintiffs and their counsel should be limited); 4) the nature and scope of the particular "survey" or "questionnaire" questions and document requests; and 5) any consequences to a particular opt-in Plaintiff for his or her failure to respond.

At this point, the issues listed above remain unresolved between the parties, and if the parties are unable to amicably resolve these issues amongst themselves, they will seek guidance from the Court.

## The Court's Order Granting Conditional Certification

After the Court agreed with the Magistrate Judge's Report and Recommendation to grant Plaintiffs' Motion for Conditional Certification and directed the parties to file their proposed Court-supervised notice and opt-in form (*see DE 84, Memorandum and Order*), Plaintiffs filed their proposed notice and opt-in form (*see DE 85-1, Pls.' Proposed Notice; and DE 85-2, Pls.' Proposed Consent Form*).

3

Plaintiffs' proposed notice is substantially similar to court-supervised notices approved and sent to prospective opt-in plaintiffs in numerous other FLSA actions filed in Tennessee federal courts over the past several years. *See Ex. 3, Court-Supervised Notices in other Tennessee FLSA actions*. In addition, Plaintiffs' proposed opt-in form is *identical* to the ones signed by the named Plaintiffs, and the other *119* individuals who have already opted-in to this action.

Upon representations made by Defendants' counsel, there are ***over 700*** current and former sales representatives who will receive the court-supervised notice and opt-in form once approved by the Court. Based on the foregoing, Plaintiffs anticipate that after sending court-supervised notice and the period to opt-in has expired, the total number of opt-in Plaintiffs will substantially increase beyond the current 119 individuals, and could end up being several hundred individuals.

The purpose of court-supervised notice is to provide an *impartial*: 1) description of the lawsuit and the claims and defenses asserted therein; 2) description of how the potentially similarly situated individuals may be affected by the lawsuit; 3) summary of the putative opt-ins' potential rights under the FLSA, including the right to join the lawsuit by "opting-in;" and 4) description of the procedure to opt-in.

Plaintiffs' proposed notice accomplishes these purposes.

By contrast, Defendants not only provide a proposed notice and consent form with objectionable terms, as discussed in detail below, but also seek an order allowing Defendants to send written discovery (*ie.* interrogatories and requests for production of documents), under the guise of a "Survey," to the more than 700 *putative* opt-in plaintiffs, who *are not* parties to this lawsuit yet. As discussed below, not only is it improper to send written discovery to *putative* opt-in plaintiffs, Defendants clearly attempt to use the "Survey" as a vehicle to intimidate prospective opt-in plaintiffs

4

and discourage their participation in this lawsuit by making the completion of the "Survey" a *prerequisite* to joining this action, which is contrary to the statutory provisions of 29 U.S.C. §216(b); and further, by asking questions and requests for documents that are overly broad and unduly burdensome.

Based on the foregoing, Plaintiffs request that the Court deny Defendants' Motion to Adopt Defendants' Version of the Notice to the Class and to Include Opt-in Survey with the Court-Supervised Notice to Opt-in Plaintiff. Plaintiffs further request that the Court approve Plaintiffs' proposed Notice and Consent Form.

## Law and Argument

### I.  Defendants' Request to Include Written Discovery with the Court-Supervised Notice and Consent Forms is Improper

Section 216(b) of the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). As discussed above, Defendants' counsel have represented that there will be *over 700* current and former sales representatives ("putative opt-in plaintiffs") who will receive the court-supervised notice and consent ultimately approved by the Court.

Despite the undisputed fact that the putative opt-in plaintiffs are not parties to the lawsuit at this time, Defendants seek to obtain written discovery from them, and further seek to make the completion of written discovery a *prerequisite* to joining the lawsuit. In Paragraph 5 of Defendants' Proposed Notice (*DE 89-1*), Defendants state that the prospective opt-in plaintiff "must e-mail, fax or mail the accompanying 'Plaintiff Consent Form' together with your response to the survey

5

attached hereto as Exhibit A to Plaintiffs' counsel in sufficient time to have Plaintiffs' counsel file it with the federal court on or before **(30 days from the Order entered approving this Notice).**" *DE 89-1, p. 4*. Further, Defendants' proposed "Survey" provides that:

> "[y]ou are receiving this questionnaire because you have submitted a Notice of Consent Filing expressing your intention to participate as a consent Plaintiff in this lawsuit.[2] Please complete the attached questionnaire, sign it, and return it in the enclosed stamped return envelope. The deadline for a completed questionnaire to be submitted is _____, 2014. ***Please take notice that failure to timely submit your sworn responses to the questionnaire, or failure to fully and completely answer each question below, may result in your claims in this lawsuit being dismissed, and you being barred from pursuing them in the future.***"

DE 91-1, Defendants' Survey, p. 1 (emphasis in original).

In a court-supervised notice under the FLSA, the "[i]nclusion of any specific notice [language] should be balanced against the possibility that it may operate as a disincentive to join the class. This is especially true where the issue is unsettled." *McCarthy v Paine Webber Group, Inc.*, 164 F.R.D. 309, 313 (D. Conn. 1995). For Defendants to include the language quoted above, and more importantly, to require completion of questionnaire as a *prerequisite* to joining the lawsuit is inappropriate for at least three (3) reasons. First, the FLSA is abundantly clear – an individual has a statutory right to join the lawsuit simply by filing a written consent with the Court. By requiring the completion of Defendants' "Survey," which includes both questions and document production requests of putative opt-in plaintiffs, Defendants attempt to impose an unlawful burden on putative opt-in plaintiffs and create an obstacle to joining this action by the simple act of filing a consent as permitted by the FLSA.

Second, written discovery directed to absent, putative opt-in plaintiffs is improper, especially

---

2 This sentence is false. If Defendants' proposed "Survey" accompanies their proposed Notice, the recipients will not "have submitted" an opt-in form.

when a party seeks to tether the discovery to the notice and opt-in process. As the court noted in *Chastain v. Antonia Cam, Georgi Cam, and Butler Investments, Inc.*, 2014 U.S. Dist. LEXIS 102465, at *19 (D. Or. 2014), a case cited by Defendants, "[t]he purpose of the notice and opt-in process is separate from the discovery that may occur[.]" Indeed, "courts analogizing §216(b) collective actions to Rule 23 class actions note that because individualized discovery is generally not appropriate in a Rule 23 class action, such discovery should also be impermissible in a Section 216(b) action." *Id.* at *32. Notably, the one case cited in *Chastain* in which limited individualized discovery was permitted by the court involved the submission of discovery to individuals who *were already parties* to the action – not potential plaintiffs who had yet to make the decision to opt-in to the collective action. *See Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171 (N.D. Ill. 1992).

The facts in this case are similar to those in *McCarthy v. Paine Webber Group*, *supra*. Like Defendants in this case, the defendants in *McCarthy* moved to include with the court-supervised notice a questionnaire, consisting of eleven (11) questions, to be answered under oath, and also had similar language as Defendants' "Survey" in this case that failure to return the completed questionnaire may be grounds to dismiss his or her claim. The *McCarthy* Court denied defendants' request, holding that "[d]iscovery of absent class members, while not forbidden, is rarely permitted due to the facts that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions which is to prevent massive joinder of small claims." *McCarthy*, 164 F.R.D. at 312 (citing *Manual for Complex Litigation* § 30.232 (3rd ed. 1995); and *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972)).

Further, the *McCarthy* court ruled that defendants' proposed questionnaire was primarily a "proof of claim" form, which the court held to be inappropriate. Likewise, in this case, even a

7

cursory review of Defendants' proposed "Survey" reveals that it is, largely, a "proof of claim" form, asking *prospective* opt-in plaintiffs for a wide array of information and documents, including but not limited to: 1) dates of employment (Question 1); 2) dates and times worked off the clock, and circumstances surrounding same (Question 4); 3) *each* instance that Defendants failed to pay for time reported (Question 5); 4) *each* instance that the prospective opt-in plaintiff's work time was altered (Question 6); 5) *each* instance in which one of Defendants' employees told the prospective opt-in plaintiff that he or she should not record all hours worked (Question 7); 6) documents related to hours worked (Question 12); and 7) calculation of the amounts that the prospective opt-in plaintiff believe that he or she was underpaid (Question 19).[3] Moreover, Defendants seek to require present and former employees to respond to its proposed "survey" without access to or benefit of counsel, and prior to Defendants' production of the documents and information in their possession (which were requested by Plaintiffs over *eight (8) months* ago) which would be necessary to provide answers to Defendants' "Survey," assuming answers were even required.

Based on the forgoing, the questions and requests for documents in Defendants' "Survey" are

---

3. These questions are improper for the additional reason that Defendants seek to shift their recordkeeping obligations to the opt-in Plaintiffs, and impose a non-existent standard of proof on them in violation of controlling precedent. Where the employer fails to maintain accurate employee time records in accordance with 29 U.S.C. § 211(c), and the employees prove actual work without proper compensation, an approximation of damages is appropriate once the fact of injury is proved. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). In such instances, the *employer* has the burden of disputing Plaintiffs' approximation and proving the precise amount of work performed:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the *employer* to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate *...It is enough under these circumstances if there is a basis for a reasonable inference as to the extent of the damages.*

328 U.S. at 687-88 (emphasis added).

clearly a "proof of claim," going to issues related to the prospective opt-in plaintiff's employment history during the recovery period, Defendants' liability, and calculation of damages.

Instead of allowing Defendants to send a "Survey" along with the court-supervised notice and consent forms, the Court should allow the issuance of court-supervised notice, permit individuals who wish to join the lawsuit to "opt-in," and thereafter, the parties can discuss how potential discovery may proceed as to the "new" opt-in plaintiffs. As discussed above, the parties are continuing to meet and confer on Defendants' request to send a "survey" to current and future opt-in Plaintiffs, so the Court should allow this dialogue to continue. If parties cannot reach an accord on these issues, then the parties can seek the intervention of the Court. The Court should reject Defendants' attempt to take advantage of the Court's request for the parties' respective forms of notice by interjecting arguments regarding the questionnaire/survey issue, which has been and should remain a wholly separate issue.

## II. Even Assuming *Arguendo* that the Court Would Permit Defendants to Send Some Sort of "Survey," Sending a Survey to Every Putative Opt-in Plaintiff is Improper

In requesting that Defendants be permitted to send a "survey" to *all 700+* putative opt-in, Defendants seek discovery that is broader than even what is permitted with respect to individuals who have already opted-in. By virtue of the fact that an employee can bring an FLSA action on behalf of himself and others "similarly situated," by its nature, an FLSA action is representative in character. Because of this, courts do not permit employers to obtain discovery from all opt-in plaintiffs in large cases, which would totally defeat the purpose of a collective action. Instead, courts have limited the nature and scope of discovery directed to opt-in plaintiffs and in particular,

9

frequently allow employers to merely conduct a "sampling" of opt-in plaintiffs.

As discussed above, the parties are in the "meet and confer" process with respect to Defendants' request to send a "survey" to the current, 119 opt-in Plaintiffs, and Plaintiffs have suggested that a "survey" be sent to only a sampling of them. For example, in *Adkins v. Mid-American Growers, Inc*., 143 F.R.D. 171, 173 (N.D. Ill. 1992), the court held that individualized discovery was inappropriate and that discovery should be served generally on a representative basis.

While Defendants argue that "Courts have used such survey, at times served along with notice to the putative class," (*DE 91, Defs.' Memorandum, p. 2*), none of the cases cited by Defendants involved questionnaires to *putative* opt-in plaintiffs in an FLSA action; instead, those cases dealt with the use of questionnaires to actual opt-in plaintiffs. For example, although Defendants cite *White, et al v. 14501 Manchester d/b/a Hot Shot Sports*, 2013 U.S. Dist. LEXIS 62833 (E.D. Mo. 2013), for the proposition that "individual discovery using questionnaires served on all putative class members was approved in FLSA collective action," (*DE 92, Defs. Memorandum, p. 2*), based on a plain reading of the *White* case, the court only held that questionnaires should be sent to the current opt-in plaintiffs, and specifically withheld ruling on the issue of whether questionnaires could be sent to putative class members. *Id.* at *2-*6.[4]

Further, based on a plain reading of *Rikard v. U.S. Auto Protection, LLC*, 2013 U.S. Dist. LEXIS 146583 (E.D. Mo. 2013), cited by Defendants, it is abundantly clear that in lieu of full-blown discovery to *actual* opt-in plaintiffs, the court allowed the use of a questionnaire. Thus, *Rikard* in no way supports Defendants' argument to send questionnaires to *putative* opt-in plaintiffs.

Defendants also cite *Norceide v. Cambridge Health Alliance*, 2014 U.S. Dist. LEXIS 22806

10

(D.C. Mass. 2014), for the proposition that the court "approved questionnaire use in FLSA lawsuit." *DE 91, Defs' Memorandum*, p. 3. It is unclear from the unpublished *Norceide* decision itself when or how the court approved the use of a questionnaire. Upon review of the district court filings, however, it is clear that questionnaires were sent to *actual* opt-in plaintiffs, and even then, only a *sampling* of the opt-in plaintiffs. *See Ex. 4, District Court Pleadings, Norceide, et al. v. Cambridge Health Alliance*, Dkt. No. 1:10-cv-11729-NMG (D. Mass.). In *Norceide*, court-supervised notice was sent and after motion practice, approximately 220 opt-ins remained. Defendants served interrogatories and requests for production of documents on all 220 opt-in plaintiffs, and the named plaintiffs moved for a protective order, arguing that discovery should be limited to the named plaintiffs. The court reached a compromise, however, and ordered that a limited questionnaire would be served on *only* eighty-five (85) of the 220 opt-in plaintiffs. *Id.*

Thus, not only does *Norceide* support Plaintiffs' argument that it is improper to send questionnaires to *putative* opt-in plaintiffs, *Norceide* also supports Plaintiffs' position that Defendants are only entitled to send a questionnaire to a reasonable *sampling* of opt-in plaintiffs.

Finally, Defendants cite the case of *Chastain, et al. v. Antonia Cam, Georgi Cam, and Butler Investments, Inc.*, 2014 U.S. Dist. LEXIS 102465 (D. Ore. 2014), which does not even involve the issue of whether putative or opt-in plaintiffs should be required to respond to a questionnaire.

In addition to the forgoing, the cases cited by Defendants are distinguishable because the opt-in classes in those cases were relatively small. For example, in *White,* the questionnaire was intended for a small "opt-in class," consisting of approximately fifty (50) individuals. 2013 U.S. Dist. LEXIS 62833 at *2-3. The *White* Court noted that "in an FLSA collective action where the

---

4  The case of *Rosenberg v. University of Cincinnati*, 118 F.R.D. 591 (S.D. Ohio 1987) is distinguishable because it was

11

plaintiff class is *small* and the discovery is related to the question of whether the individual plaintiffs are similarly situated within the meaning of the FLSA, individualized discovery is often permitted." *Id.* at *4 (emphasis added).

By contrast, Defendants in this case seek to send a "survey" to not only the current, 119 opt-in Plaintiffs (as well as future opt-in plaintiffs), but over 700 *putative* opt-in plaintiffs. Thus, this is clearly not a matter that involves a "small class" of plaintiffs – opt-ins or otherwise. As a result, individualized discovery is inappropriate.

Based on the foregoing, the cases cited by Defendants are not controlling on the issue of questionnaires to putative opt-in plaintiffs.

### III. Defendants' Proposed Survey is Overly Broad, Unduly Burdensome, Designed to Confuse and Intimidate Prospective Opt-in Plaintiffs, and Unfairly Drafted with "Trick" and "Loaded" Questions

Even assuming *arguendo* that the Court permits Defendants to send some sort of "survey" to putative opt-in plaintiffs, Defendants' current "Survey" is overly broad, unduly burdensome, is designed to confuse and intimidate prospective opt-ins, and is full of "trick" and/or "loaded" questions.

First, Defendants' Survey begins with the introduction to "PLEASE TAKE NOTICE that the United States District Court for the Eastern District of Tennessee has *required* that all Plaintiffs in the above-titled action complete and execute the attached questionnaire" (emphasis added). The introduction goes on to state (in bold and italics): "***Please take notice that failure to timely submit your sworn responses to the questionnaire, or failure to fully and completely answer each question below, may result in your claims in this lawsuit being dismissed, and you being barred***

---

a class action under Fed. R. Civ. P. 23 for sex discrimination, as opposed to a collective action under the FLSA.

12

*from pursuing them in the future.*"  Finally, the Survey ends with "Pursuant to 28 U.S.C. § 1746, I hereby declare *under penalty of perjury* that the foregoing is true and correct." (Emphasis added).

The foregoing language is intimidating and improper because Defendants convert the "survey" into some sort of court-ordered inquiry, improperly threaten the putative opt-ins for not answering the "survey" timely, fully and completely with the potential dismissal of their claims, and warn that their answers (which would probably be based largely on memory since they do not have access to Defendants' employment, time and pay records – the production of which Defendants are deliberately slow-walking) are true and correct "under penalty of perjury."  Defendants clearly intend to improperly discourage participation in the lawsuit with the inclusion of this language.

Second, Defendants' "Survey" is overly broad and unduly burdensome.  Defendants' Survey consists of twenty (20) questions, some including subparts, and 4 requests for documents, and covers virtually every conceivable area regarding the putative opt-in plaintiff's employment, such as dates of employment with supporting documents (Question 1); each instance that he or she reported less time than actually worked (Question 4.e.); each instance that Defendants failed to pay him or her for all reported hours worked and supporting documents (Question 5); each instance, including details, that his or her time records were altered without permission (Question 6.e.); copies of any records reflecting hours worked (Question 8); dates that he or she was sick, disabled, incapacitated, took voluntary time off or vacation (Questions 9 & 10); dates that overtime pay was received (Question 15); what he or she was doing "at the site while on the clock" (Question 17); and amount of time each putative opt-in believes he or she was underpaid and how that amount was calculated (Question 19).   In short, although disguised as a "Survey," this is nothing more than overly broad interrogatories and requests for production of documents propounded to over 700 putative opt-in

13

plaintiffs, who are being asked to respond subject to penalties of perjury without the benefit of Defendants' records, including those regarding dates of employment, time and pay.

Third, Defendants' "Survey" contains several "trick" questions and/or "loaded" questions. For example, Question 4.a. asks if the prospective opt-in plaintiff "routinely use[d] a time clock, key fob, Kronos log-in or other method to clock-in and out from work?" Question 4.a. is followed by place to check "Yes" or "No." This question is tricky because of the word "routinely," and deceptively invites a "No" response, which Defendants would invariably use to argue that the sales representative never worked off the clock.

In addition, Question 4.c. states "Were you aware of Wyndham's stated employment policy that you should accurately report all time you worked each day?" Question 4.c. is followed by requirement to put a check by either "Yes" or "No." This is obviously an extremely self-serving and carefully crafted question by Defendants which *presupposes* that a "stated employment policy that you should accurately report all time you worked each day" existed, and as worded, would require a prospective opt-in plaintiff to either admit the existence of such a policy, or admit that they were unaware of an existing policy.

Similarly, Questions 4.d. and 4.e. state "Did *you* routinely report accurately all time you worked each day," and "Have *you* ever reported less time than you worked?" Both require the putative opt-in plaintiff to check "Yes" or "No" and unfairly imply that it was the employee's decision to work off the clock, as opposed to being instructed by Defendants' management to not record actual time worked, clock out early, clock in late or not clock in at all.

A further example of Defendants' attempted use of "loaded questions" to "shift blame" is contained in Question 4.f.ii., which provides:

14



(ii)     Which of the responses below best explains why *you* reported less time than you worked?  (Check all that apply; do not check any, if none apply).

_____I forgot to clock in or out

_____I purposely understated my work time to make sales goal

_____I intentionally reported less time so that I would not be sent home upon reaching 40 hours for the week.

_____I purposely understated by work time, to avoid criticism for working overtime without proper authorization.

_____Other.  Describe:

_____

_____

*DE 91-1, pp. 3-4 (emphasis added).*  Conveniently missing from the "checklist" is "I was instructed or directed by Wyndham management to not record time worked, clock out early, clock in late, or not clock in at all."  Instead, the options for the putative opt-in plaintiff to "check" are all self-serving and designed to unfairly benefit Defendant.

In addition, Question 5 asks if Wyndham ever failed to pay the prospective opt-in plaintiff "for all of the time (including overtime) that *you reported* as having worked?"  This begs the question and is a transparent effort to trick the prospective opt-in plaintiff because at the crux of the lawsuit is Defendants' *inaccurate records* in which hours actually worked are *underreported* by requiring sales representatives to not record time, clock out early, clock in late, or not clock in at all; as well as the altering of time records by Wyndham management to inaccurately reflect the actual hours worked and to only reflect hours worked under 40 in a work week.  In other words, while the putative opt-in plaintiff may have been paid for all *reported* hours, a key issue in this lawsuit is the Plaintiffs claim that sales representatives were not being paid for hours *not reported* due to Defendants' actual policy, practice and/or procedure of:  "shaving" hours by requiring sales representatives to not record all time worked, clock out early, clock in late, not clock in at all; or the

15

"shaving" of hours by Defendants' management altering the sales representatives' time-keeping records; or forcing sales representatives to go into their time-keeping system to improperly reduce the number of hours that they actually worked.

Finally, Questions 16-18 are confusing and based on a false premise. In this lawsuit, the proof will show that sales representatives were forced to clock out when not on an actual tour, yet were required to remain on site in the event that a tour came up for them to handle, for example. Question 16 requires an absolute "Yes" or "No" to the question: "When not on tour, were you allowed to leave the work site for meals, errands and the like?" Similarly, Question 17 requires an absolute "Yes" or "No" to the question: "If you were not allowed to leave the site were you 'on the clock'?" There is no allowance for the proposition that sometimes the sales representatives were required to clock out and sometimes they were not. The "Yes" or "No" to Question 17 is followed by: "If yes, please explain what you did or were doing at the site while on the clock." Finally, Question 18 is likewise confusing by asking "How frequently were you not allowed to leave the site while off the clock in a week's time?" This is confusing because it does not contemplate the fact that at the end of the sales representative's shift, he or she would be "off the clock" and allowed to leave the site.

While not inclusive, these are examples of how and why Defendants' "Survey" is completely improper and that *no* one, either current opt-ins, future opt-ins and/or putative opt-ins, should be required to answer it. These examples further highlight why permitting Defendants' counsel to, in essence, communicate directly with and gather information from putative class members without aid of counsel (or relevant documents) would be highly inappropriate – one could only imagine the howling which would emanate from defense counsel if class counsel were permitted to communicate

16

directly with and gather information from Wyndham's management employees about Wyndham's culture and history of FLSA violations.

### IV. Objections to Defendants' Proposed Notice

#### A. Improperly shortened recovery period

In its August 21, 2014 Memorandum and Order, the Court conditionally certified the case as a collective action on behalf of all sales representatives "who were employed in Wyndham's Tennessee Resorts between *October 21, 2010 and October 31, 2013*." *DE 84, Memorandum and Order, p. 3 (emphasis added)*. In blatant defiance of the Court's Order, Defendants' proposed notice limits the period from *August 24, 2011* to *October 23, 2013*.

The purpose of court-supervised notice is to advise current and former employees of a *potential* claim against their employer; thus, the Court should be very liberal in determining who *receives* notice. By doing so, the Court ensures that everyone who has a *potential* claim is notified and given the opportunity to either join the lawsuit or pursue their own individual claims. Thereafter, discovery occurs which may refine and modify the recovery period for either the class or a particular opt-in plaintiff, and in some instances, it may be determined that the claims of an individual or group of individuals are time-barred. Thus, the determination of whether an opt-in plaintiff has an *actual* claim or is otherwise time-barred occurs *after* the opt-in process, and *after* further discovery.

Defendants argue that the employment period in the notice should begin on August 24, 2011 (a period slightly less than three (3) years before the Court's August 21, 2014, Order), and end on October 23, 2013, the day the lawsuit was filed (as if Defendants magically discontinued their illegal policies, practices and procedures on the very day that the lawsuit was filed on October 23, 2013).

17

First, as to the beginning date for court-supervised notice, the Court adopted the date of October 21, 2010, which is just slightly more than three (3) years prior to the filing of the Complaint on October 23, 2013. This is a rational date because the issue is *who* receives notice – not who may or may not have a claim. Thus, to send notice to those employed on or after October 21, 2010, as ordered by the Court, makes perfect sense.

Defendants argue that notice should only go to those current and former employees who worked on or after August 23, 2011, asserting that any claim accruing prior to that date with respect to putative opt-in plaintiffs who have not yet filed consents is time-barred. Defendants, however, completely ignore the tolling agreement that Defendants *agreed to* as reflected in the Order previously entered by the Court. Further, Defendants ignore any other equitable tolling arguments that could be raised in the future by putative opt-in plaintiffs.

After Plaintiffs filed their Motion for Conditional Certification on January 14, 2014 (*DE 33*), Defendants filed an Unopposed Motion to Hold Case in Abeyance Pending Recovery of their Lead Counsel from a Surgical Procedure. *DE 36, Defs.' Motion*. In their Motion requesting an extension to respond to Plaintiffs' Motion for Conditional Certification, Defendants *affirmatively* stated: "Defendants agree that, in the event the Court grants Plaintiffs' Motion for Conditional Certification, the statute of limitations for FLSA claims asserted by any putative plaintiff who has not filed a Plaintiff Consent Form with the Court as of the date they receive any court-approved Notice of Collective Action, *shall be tolled for the period of time from January 31, 2014 until the new date set by the Court for Defendants to file their response to Plaintiffs' Motion for Conditional Certification*." *DE 36, Defs.' Motion, p. 2 (emphasis added)*.

Based on Defendants' own agreement, the Court entered an Order on February 28, 2014,

18

tolling the statute of limitations for FLSA claims asserted by any putative class member for a period of forty-six (46) days, from January 31, 2014, to March 17, 2014. *See DE 46, 2/28/14 Order*.

Now, in arguing that there is no recovery for unpaid overtime by putative opt-in plaintiffs prior to August 23, 2011, Defendants are effectively reneging on their prior agreement and completely ignoring the Court's February 28, 2014 Order.

Second, Defendants completely ignore the possibility that in the future, putative opt-in plaintiffs may successfully argue that equitable tolling should apply to extend the recovery period even further based on Defendants' conduct. In that regard, it is anticipated that Plaintiffs will later file a motion requesting additional equitable tolling for the claims of opt-in plaintiffs based on Defendants' conduct in this case intended to delay the Court's ruling on conditional certification and the approval of the proposed court-supervised notice and consent, as-well-as the Defendants' latest delay tactic of requesting that a "survey" accompany court-supervised notice which is inconsistent with the express provisions of the FLSA and completely lacking legal support. Plaintiffs believe that the facts will ultimately show that Defendants have engaged in tactics which have delayed the issuance of court-supervised notice by several months – all in a concerted and intentional effort to reduce or eliminate claims of putative and actual opt-in plaintiffs.

The attempt to artificially reduce the notice period was previously addressed and rejected by the court in *Chastain*, a case cited by Defendants. In *Chastain*, defendants sought to limit the notice period to three (3) years from the date that the notice was sent, as opposed to three (3) years before the filing of the complaint. Defendants argued that because an opt-in plaintiff's claim continues to run until a consent form is filed, it would be improper to send notice to prospective opt-in plaintiffs whose employment ended more than three (3) years from the date that the notice was sent out. The

19

*Chastain* court, however, rejected this argument, noting that "an opt-in plaintiff may be eligible for an equitable extension of the statute of limitations." 2014 U.S. Dist. LEXIS 102465 at *22. Thus, the court concluded that a more *inclusive* statute of limitations should be used for the issuance of notice.

Based on the foregoing, Plaintiffs respectfully request that the Court stand by its earlier ruling establishing the notice period for those who worked for Defendants at any time from October 21, 2010, to October 31, 2013.

### B. Unreasonably Short Opt-In Period

Plaintiffs propose an opt-in period of ninety (90) days from the order entered approving the final version of the court-supervised notice. Defendants propose thirty (30) days.

The purpose of court-supervised notice is to give putative opt-in plaintiffs a full opportunity to consider whether to opt-in to this action, including seeking legal advice if they so desire. Based on representations made by Defendants, there will be over 700 recipients of the notice. After approval of the final notice, it will take at least two (2) days for the mailings to be created and processed by Plaintiff's counsel. In addition, one can anticipate that a few more days will pass from the mailing until receipt by the putative opt-in plaintiffs throughout Tennessee, and even more if some of the addresses provided by Defendants are bad, and Plaintiff's counsel are required to search for better addresses and re-mail notices/consents to the better addresses, if located.

Based on the foregoing, and consistent with other FLSA cases, a ninety-day period is more reasonable.

### C. Communication with Defense Counsel

Obviously, Defendants' interests in this lawsuit are completely adverse to the interests of the

20

opt-in plaintiffs, and defense counsel have an ethical duty to zealously represent their clients, to the detriment of putative opt-in plaintiffs. Despite this clear conflict, Defendants' proposed notice is designed to encourage opt-in plaintiffs to contact defense counsel, who will obviously not only be unable to provide opt-in plaintiffs with legal advice, but also have a vested interest to discourage putative opt-in plaintiffs from participating or filing a separate action against Defendants. First, Defendants' proposal provides the names and contact information of defense counsel first in the notice, as opposed to Plaintiffs' proposal, which lists Plaintiffs' counsel first. Second, Defendants' proposal states:

> If you have any questions about this lawsuit, you may contact either the Defendants' counsel or the Plaintiffs' counsel who are listed below. You may discuss the merits of the case with either Defendants' or Plaintiffs' counsel **before electing to join the lawsuit.** If you elect to join the lawsuit, **you may no longer discuss the case with Wyndham's counsel.** If you decide not to participate as a party to this case, **you may** discuss the evidence you may have with either counsel at any time.

*DE 89-1, Defs.' Proposed Notice, Para. 9, pp. 5-6 (emphasis in original).*

Further, in Paragraph 10 of Defendants' proposed Notice, after listing the names and contact information for Plaintiffs' counsel, Defendants' propose the following: "Wyndham, and its owners, officers, directors and management staff are not permitted to discuss the case with you **after** you have elected to opt into this lawsuit as discussed in Paragraph 9 above and if you elect to opt-in you are not permitted to seek to engage them in discussions about it. *Id., Para. 10, p. 6.*

It is noteworthy that in the *Chastain* case cited by Defendants, the court even rejected the request of defendants to include defense counsel's name in the notice *at all*, let alone include language inviting putative opt-in plaintiffs to contact them. *Chastain*, at *26.

In order to protect the interests of putative opt-in plaintiffs and to preserve the integrity of the

21

court-supervised notice and opt-in process, the Court should not allow this or similar language in the notice. Plaintiffs' proposed Notice makes it clear that if there are any questions about the case, the putative opt-in plaintiffs are free to contact Plaintiffs' counsel or seek legal advice from counsel of their own choosing.

### D. Anti-Retaliation

Consistent with federal law and language customarily included in informational notices, Plaintiffs' proposed Notice provides: "Federal law prohibits an employer from firing you or taking any other adverse employment action against you because you have exercised your legal right to participate in this lawsuit or because you have otherwise exercised your rights under the federal overtime law. This means the Defendants, their owners, officers, directors and/or any managers are forbidden from treating you differently because you participate in this lawsuit." *DE 85-1, Pls.' Proposed Notice, p. 3.*

Not only does Defendants' proposal substantially "water down" Plaintiffs' proposed language regarding anti-retaliation, Defendants add that "[r]etaliation by either the named or opt-in plaintiffs, against those who choose to opt-out, is also prohibited." *DE 89-1, Para. 8, p. 5.* First, Defendants language has no basis in either fact or federal law, and is completely meritless. Second, Defendants' statement about "those who choose to opt-out," is legally inaccurate given that the FLSA proceeding is an "opt-in" collective action, as opposed to a Rule 23 class action, which is "opt-out."

### E. Defendants' Costs

In a blatant attempt to frighten and intimidate putative opt-in plaintiffs, Defendants' proposed Notice states: "It is the intention of Wyndham to seek the costs of defending this lawsuit from Plaintiffs." Although it is unclear whether this statement is intended to cover the named Plaintiffs

only, or also include opt-in plaintiffs, it is still objectionable because of its potential effect to improperly discourage participation. In fact, in the *Chastain* case cited by Defendants, the court rejected the inclusion of language regarding the potential of defendants to recover costs in the event that defendants were the prevailing party due to its potential chilling effect. *Chastain*, at \*29-30.

### F. Opt-In Right "To Decline Participation"

The purpose of court-supervised notice is to advise putative opt-in plaintiffs of their right to participate in the lawsuit. Plaintiffs' proposal includes this information, and also advises putative opt-in plaintiffs that they are not required to participate if they choose not to do so.

Defendants' proposed Notice, however, starts with the negative – "Your Right to Decline Participation in this Lawsuit," followed by "Your Right to Participate in this Suit." *DE 89-1, Paras. 4 & 5, pp. 3-4.* Defendants' obvious design is to discourage participation and Paragraph 4 is completely unnecessary as a "stand-alone" paragraph. Similar language is already contained in Plaintiffs' proposed Notice.

### G. Removal of Contingency Fee Language

Plaintiffs' proposed Notice includes the following language: "The attorneys for Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class." *DE 85-1, Para. 4, p. 3.* Defendants have deleted this language in an obvious effort to discourage participation because a putative opt-in plaintiff may mistakenly believe that he or she must pay money to Plaintiffs' counsel to prosecute this case.

As part of the notice process intended to accurately advise putative opt-in plaintiffs of their

23

rights and the process for this collective action, it is important to advise them about the fee arrangement that Plaintiffs have with Plaintiffs' counsel, and that the putative opt-in plaintiffs are under no obligation to pay any money, to Plaintiffs' counsel or otherwise, to participate in this lawsuit.

### V.    Objections to Defendants' Proposed Consent Form

As discussed above, Plaintiffs propose the identical "Plaintiff Consent Form" signed by the current 119 opt-in Plaintiffs.  Defendants, however, have proposed a Consent form to help bolster their position that each opt-in plaintiff is subject to extensive discovery.  First, Defendants have titled their Consent as a "Consent to Joint *and Participate as Party Plaintiff*."  *DE 89-2, p. 1(emphasis added)*.  By using the words "and Participate as a Party Plaintiff," Defendants hope to confuse and discourage putative opt-in plaintiffs from joining the lawsuit, thinking that their obligations to participate, including responding to discovery, are the same as the named Plaintiffs.

This transparent effort on the part of Defendants is magnified by the language that "I understand that I am *obligated to participate in discovery* in this matter."  *Id.*  As discussed above, by becoming an opt-in plaintiff, a person is not necessarily "obligated to participate in discovery;" but only may be required to do so.

Second, Defendants' proposed Consent requires that the putative opt-in plaintiffs consent "to Jesse Pierce and Mike Pierce" to serve as class representatives (*see id.*), as opposed to Plaintiffs' proposal which designates the "named Plaintiffs" as the authorized agents to make decisions on their behalf.  *DE 85-2, Pls.' Proposed Notice*.  Although there are no current plans to either add additional named Plaintiffs or remove Jesse Pierce and/or Michael Pierce as named Plaintiffs, in the event that this occurs, Defendants' proposed Consent could become problematic because it specifically names

24

Jesse Pierce and Michael Pierce, which may later require "doubling back" to have new consent forms signed by the opt-in plaintiffs.

Third, Plaintiffs' proposed Consent not only provides that the opt-in plaintiffs designate the named Plaintiffs "as my agent to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation," but also includes the "entering of an agreement with Plaintiffs' Counsel concerning attorneys' fees and costs." Defendants have omitted this language in hopes that a dispute later arises which Defendants can use as leverage.

Finally, having encountered an issue with an employer in an FLSA case seeking protection under federal bankruptcy laws in past litigation, Plaintiffs' counsel have included the language that allows Plaintiffs' counsel "to file a proof of claim on my behalf in the event Defendant(s) file for bankruptcy protection under Chapters 7 or 11 of the Bankruptcy Act, to negotiate and to take any other action necessary to present or preserve my wage and hour claim against Defendants, Wyndham Vacation Resorts, Inc. and/or other Wyndham affiliated Companies." *Id.* Defendants have omitted this language so that in the event they later seek bankruptcy protection, the failure to include such language can be used to their advantage.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Defendants' proposed Notice and Consent, deny Defendants' request to include a "Survey" to putative opt-in plaintiffs as a prerequisite to joining this action, and approve Plaintiffs' proposed Notice and Plaintiff Consent Form.

25

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes
        Martin D. Holmes, # 012122
        Darrell L. West, # 005962
        424 Church Street, Suite 1401
        Nashville, TN 37219
        Phone: (615) 244-6538
        Facsimile: (615) 256-8386
        mdholmes@dickinsonwright.com
        dwest@dickinsonwright.com

        Sherry D. O. Taylor # P62288
        500 Woodward Avenue, Suite 4000
        Detroit, MI 48226
        Phone: (313) 223-3500
        Facsimile: (313) 223-3598
        soneal@dickinsonwright.com

*Attorneys for Plaintiffs, Opt-In Plaintiffs and the Putative Collective Class*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on September 9, 2014, a true and correct copy of the foregoing has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

James R. Mulroy, II
JACKSON LEWIS LLP
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
mulroyj@jacksonlewis.com

Paul DeCamp
JACKSON LEWIS LLP
10701 Parkridge Blvd., Suite 300
Reston, VA  20191
decampp@jacksonlewis.com

William J. Anthony
JACKSON LEWIS LLP
18 Corporate Woods Boulevard
Albany, NY  12211
anthonyw@jacksonlewis.com

O. John Norris, III
JACKSON LEWIS LLP
999 Shady Grove Rd., Suite 110
Memphis, TN  38120
norrisj@jacksonlewis.com

/s/ Martin D. Holmes
Martin D. Holmes

NASHVILLE 57404-1 504491v1

27