UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JESSEE PIERCE and MICHAEL PIERCE, on )
Behalf of themselves and all others similarly )
situated, )
)
       Plaintiffs, )
)
v. ) No. 3:13-CV-641-CCS
)
WYNDHAM VACATION RESORTS, INC., *et al.,* )
)
       Defendants. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 193].

Now before the Court is the Defendants' Motion for Summary Judgment on the Claims of Adam Bate, Melissa Evans, Joseph Hope, Mitzi Lindsey, and Juanita Moore [Doc. 170]. The Plaintiffs have filed a Response [Doc. 183] to the Motion, and the Defendants have filed a Reply [Doc. 189]. The Motion is now ripe for adjudication.

As an initial matter, the Court notes that in the Plaintiffs' Response, they only oppose Defendants' Motion with respect to Plaintiff Melissa Evans. They do not oppose Defendants' request for summary judgment as to the claims of Adam Bate, Joseph Hope, Mitzi Lindsey, and Juanita Moore. Accordingly, the claims of these Plaintiffs are hereby **DISMISSED.**[1] For the

---

[1] To be clear, the Plaintiffs assert that they do not oppose Defendants' Motion with respect to these Plaintiffs "for largely practical considerations." Regardless, the Court considers any argument with respect to these Plaintiffs waived.

reasons further explained below, the Court **GRANTS** the Defendants' Motion for Summary Judgment [**Doc. 170**].

I.  BACKGROUND

The following facts are taken from the parties' undisputed facts, unless otherwise noted. Plaintiff Evans was a Sales Representatives at one of the Defendants' Tennessee job sites. The parties dispute the dates that she was employed. The Defendants assert that she worked between October 23, 2010, and November 14, 2011, and then again between December 6, 2011, and September 16, 2013. Plaintiff Evans denies that she left Defendants' employ between November 14, 2011, and December 6, 2011. In any event, on July 12, 2013, Plaintiff Evans filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Tennessee. When asked to disclose any other contingent or unliquidated claims of any nature, the Plaintiff marked, "None." [Doc. 172-9 at 18].

The Meeting of Creditors was held on August 13, 2013, and on September 6, 2013,[2] the Trustee filed a Report of No Distribution, indicating that $219,274.17[3] in claims would be discharged without payment. [Doc. 172-10 at 3]. On October 18, 2013, an Order Discharging her debt was entered. [*Id.*]. Subsequently, on October 23, 2013, Plaintiff Evans opted in the instant matter. The bankruptcy case was closed and a final decree issued on November 20, 2013. [*Id.*] Plaintiff Evans did not amend her bankruptcy petition or file anything else to let the bankruptcy court know of her interest in this lawsuit.

---

[2] Defendants submit that the Trustee filed the Report of No Distribution on September 26, 2013, and the Plaintiffs admitted such fact. However, Exhibit 10 [Doc. 172-10] shows that the report was filed on September 6, 2013.

[3] Defendants stated that this number was "$21,9274.17" and the Plaintiffs admitted such fact.

## II. POSITIONS OF THE PARTIES

The Defendants state that Plaintiff Evans's claims are barred by the doctrine of judicial estoppel, based upon her nondisclosure of the lawsuit and/or her claims for back and overtime pay in the bankruptcy proceeding. The Defendants argue that she knew of the facts underlying her claims before she filed for bankruptcy because her claim is based on not being paid overtime for hours worked in excess of 40 hours per week. The Defendants assert that there was motive of concealment because if the claim became part of the bankruptcy estate, then the proceeds from it could go toward paying creditors instead of her own pocket. Further, the Defendants assert that Plaintiff Evans cannot establish that there was an absence of bad faith.

Plaintiff Evans responds [Doc. 183] that the application of judicial estoppel is inappropriate for her claims. She asserts that her omission was the result of inadvertence. She argues that at the time of the filing of bankruptcy, the lawsuit did not exist and that she was totally unaware of her potential claims until October 17, 2013, when she attended the meeting at the Governor's Inn and decided to join the forthcoming lawsuit as an opt-in plaintiff. Plaintiff Evans asserts that she did not have knowledge that the lawsuit would be a potential asset until recently, after her bankruptcy proceedings were already closed. She contends that she is willing and able to do whatever is necessary to ensure that proper steps are taken with respect to bankruptcy to ensure that her former creditors receive anything to which they are entitled. In addition, Plaintiff Evans asserts that any potential recovery from the instant lawsuit may be retained by the bankruptcy estate and that such a fact demonstrates that there was a lack of motive to conceal. She argues that a factual issue exists as to whether the omission of her pending claim against the Defendants was inadvertent and that judicial estoppel should not apply to her claims. Finally, she contends that the net result sought by Defendants is to be unjustly enriched from illegal conduct by refusing to pay her with respect

to her overtime claim. In the alternative, Plaintiff Evans requests that her Trustee be permitted to intervene in this action.

The Defendants filed a Reply [Doc. 189] arguing that Plaintiff Evans's omission was not inadvertent. The Defendants contend that her lack of knowledge regarding the pending suit is irrelevant and that she had knowledge of the factual basis underlying the undisclosed claim. In addition, the Defendants assert that Plaintiff Evans had a motive to conceal that has been long recognized by the courts—that is, keeping the money awarded instead of paying creditors. Further, the Defendants assert that Plaintiff Evans has not offered any proof that she did not act in bad faith. Finally, the Defendants assert that there is no legal or factual basis for imposing the doctrine of unclean hands against Defendants and that the Trustee should not be allowed to intervene.

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer,* 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must

point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### IV. ANALYSIS

In the present matter, the Defendants argue that Plaintiff Evans is judicially estopped from raising her claims because she failed to disclose the instant lawsuit in her bankruptcy proceeding. Plaintiff Evans argues that judicial estoppel should not apply in her case. Further, she submits that the proper course of action is to allow her to proceed with her claim and upon receipt of any monies through settlement, judgment or otherwise, allow her, her attorney, and her bankruptcy trustee to handle its proper disbursement. In the alternative, Plaintiff Evans requests that the Court should allow the bankruptcy trustee to intervene in this action if he so chooses. Finally, Plaintiff Evans submits that this Court should not permit Defendants to keep monies obtained through their illegal and willful conduct.

The Court will first address judicial estoppel and then turn to Plaintiff Evans's remaining arguments.

**A. Judicial Estoppel**

The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir. 1990)). "The purpose of the doctrine is to protect the integrity of the judicial process by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest.'" *Crouch v. Guardian Angel Nursing, Inc.,* No. 3:07-0541, 2009 WL 2960757, at *1 (M.D. Tenn. Sept. 8, 2009) (quoting *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999)). Courts have explained that the doctrine of judicial estoppel "should be applied with caution to 'avoid impinging on truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the trust of either statement.'" *White v. Wyndham Vacation Ownership, Inc.*, No. 3:08-CV-405, 2009 WL 1074800, at *4 (E.D. Tenn. Apr. 21, 2009), *aff'd,* 617 F.3d 472 (6th Cir. 2010) (quoting *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)) (other citations omitted).

Moreover, the "Bankruptcy Code imposes upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Crouch,* 2009 WL 2960757, at *1 (other citations omitted). The rationale for invoking judicial estoppel in the context of failing to disclose claims in bankruptcy proceedings has been described as follows:

> [T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his

> own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* (quoting *Rosenshein v. Kleban,* 918 F. Supp. 98, 104 (S.D.N.Y. 1996)).

In determining whether a plaintiff should be judicially estopped, the Court must find: (1) Plaintiff Evans assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as a part of the final disposition; and (3) Plaintiff Evans's omission did not result from mistake or inadvertence. *White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 478 (6th Cir. 2010).

Here, it appears that Plaintiff does not dispute that she assumed a contrary position and that the bankruptcy court adopted the contrary position. *See* [Doc. 183 at 7] ("While it may appear that the first two prongs of the Sixth Circuit test are satisfied . . ."). To be sure, on the Schedule B list of assets, Plaintiff Evans was asked to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each." [Doc. 172-9 at 18]. In response, Plaintiff Evans does not list any claims and checks, "None." [*Id.*]. Further, she swears under penalty of perjury that the foregoing schedules were true and correct. [*Id.* at 33]. While the Court notes that the petition is dated July 11, 2013, [*Id.*], it is well-established that the "duty of disclosure in a bankruptcy proceeding is a continuing one, a debtor is required to disclose all potential causes of action." *Bone v. Taco Bell of Am., LLC*, 956 F. Supp. 2d 872, 884 (W.D. Tenn. 2013) (quoting *Lewis v. Weyerhaeuser Co.,* 141 Fed. App'x 420, 424 (6th Cir. 2005)) (other quotations omitted); *see also Parsons v. Southern Tenn. Med. Center, LLC,* No. 11-CV-298, 2014 WL 2159749, at *2 (E.D. Tenn. May 23, 2014)

7

(dismissing plaintiff's argument that her position was not clearly inconsistent because her initial filing preceded the date her cause of action accrued). Further, as Plaintiff Evans seems to acknowledge [Doc. 183 at 7], the bankruptcy court adopted the contrary position. *See* [Doc. 172-10].

The only question is whether Plaintiff Evans's omission resulted from mistake or inadvertence. In determining whether conduct resulted from mistake or inadvertence, courts consider whether: (1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, courts tend to look at a plaintiff's "attempts" to advise the bankruptcy court of her omitted claim. *White,* 617 F.3d at 478.

*(1) Whether Plaintiff Evans lacked knowledge of the factual basis of the undisclosed claims.*

In her Response, Plaintiff Evans argues that she was unaware of her claims until October 17, 2013, and that at the time she signed the consent form, she believed that her bankruptcy was over and had been discharged. [Docs. 183 at 8, 182-1 at 3]. With respect to Plaintiff Evans's statement that she was unaware of her potential claims until October 2013, this is somewhat inconsistent with a statement in her Declaration, in which she acknowledged, "About a month after I quit working at Wyndham in September 2013, I learned that a meeting was scheduled on October 17, 2013, which was being attended by current and former Wyndham Sales Representatives regarding their employment at Wyndham and *possible legal rights for unpaid overtime*." [Doc. 183-1 at 2]. (Emphasis added). Further, even if Plaintiff Evans did not become aware of her possible legal rights in September 2013 as claimed in her Declaration, the Court notes that she signed her consent form, titled, "FLSA Action Against Wyndham Vacation Resorts, Inc. and/or other Wyndham Affiliated Companies" on October 17, 2013. [Doc. 1-3 at 15]. The order

8

discharging debtor was filed the following day on October 18, 2013, and the bankruptcy case was not closed until November 20, 2013. [Doc. 172-10]. *See Bone*, 956 F. Supp. 2d at 884 (the duty to disclose is a continuing one). Finally, in her Declaration, Plaintiff Evans states that while she was employed at Wyndham, she was required to work off the clock, clock out early, clock in late, or not clock in at all. [Doc. 183-1]. In addition, she asserts that she and other Sales Representatives worked a substantial amount of overtime on a regular basis. *Id.* The Court notes that the "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information prior to confirmation to suggest that it may have possible cause of action, then that is a known cause of action such that it must be disclosed." *Parsons*, 2014 WL 2159749, at *4 (quoting *In re Coastal Plains, Inc.,* 179 F.3d at 208) (internal alterations and quotation marks omitted).

Plaintiff Evans also asserts that at the time she attended the October 17, 2013 meeting, she thought that her bankruptcy was over and that she had been discharged. [Doc. 183-1 at 3]. She states, "I had attended a meeting in bankruptcy Court two to three months earlier and was told that the bankruptcy was approved and that I would receive the paperwork in the mail." [Doc. 183-1 at 3]. However, the Court notes that she does not explain who told her that the bankruptcy was approved and thus the Court is left to speculate.[4] Furthermore, her bankruptcy was not closed until months later and, as noted above, she was by law under a continuing duty to disclose.

Finally, Plaintiff Evans states that had she known about the lawsuit she would have listed it. In support of this argument, she states that she disclosed another lawsuit listed in the Statement of Financial Affairs. However, the lawsuit that Plaintiff Evans's listed was a suit filed against her

---

[4] Although the Court is left to speculate, even if it was Plaintiff Evans's attorney who told her such information, courts have noted that an attorney's mistake does not excuse the disclosure. *See White*, 617 F.3d at 483 and *Lewis*, 141 F. App'x at 427 (noting that litigants are bound by the actions of their attorneys) (other citations omitted).

9

to collect a debt. *See* [Doc. 172-9] (Lakewood Capital vs. Melissa Evans). The lawsuit she listed in the petition is a debt; the lawsuit she did not list is a potential asset. Further, Plaintiff Evans claims that her innocence is confirmed by her bankruptcy attorney, Gail Wortley, who states in a Declaration that it was certainly understandable why Plaintiff Evans did not put "two and two" together and that it is certainly understandable why Plaintiff Evans did not know that her bankruptcy filings may need to be amended. Again, the Court notes that the bankruptcy case was not closed until November 2013 and the law requires a continuing duty to disclose. Attorney Wortley's statement does not excuse the omission.

Accordingly, the Court finds that Plaintiff Evans had knowledge of the factual basis of the undisclosed claims prior to the closure of her bankruptcy case.

*(2) Whether Plaintiff Evans had a motive for concealment.*

The Defendants assert that there was motive to conceal because if the claim became part of the bankruptcy estate, then the proceeds from it could go toward paying creditors instead of Plaintiff Evans. In Plaintiff Evans's brief, she asserts that she did not have a motive to intentionally conceal her claim, but even if the Court finds motive, she did not actively conceal her claim. [Doc. 183 at 9].

The Court finds that Plaintiff Evans cannot demonstrate a lack of motive to conceal. By filing her bankruptcy petition, Plaintiff Evans sought protection from her creditors, and it would be to her advantage not to include this lawsuit. *Walker v. Moldex Metric, Inc.*, No. 2:10-CV-164, 2011 WL 3044529, at *4 (E.D. Tenn. July 25, 2011) (noting that "it is always in a [bankruptcy] petitioner's interest to minimize income and assets") (quoting *Lewis*, 141 F. App'x at 426) (brackets in *Walker*); *see also Pate v. United Parcel Serv., Inc.*, No. 3:05–cv–531, 2006 WL 2076795, at *2 (E.D. Tenn. July 24, 2006) ("A motive to conceal may be found where the debtor

10

would reap a windfall by not disclosing an asset."). The Court finds Plaintiff Evans's conclusionary statement not sufficient. *See Cruse v. Sun Products Corp.*, -F. Supp. 3d –, 2016 WL 6892795, *6 (W.D. Tenn. Nov. 22, 2016) (stating that plaintiff's written declaration under oath asserting that the omission of his claims was unintentional and not designed to provide him a windfall does not spare him from the application of judicial estoppel). Accordingly, the Court finds Plaintiff Evans had motive to conceal.

    *(3) Whether the evidence indicates an absence of bad faith.*

"The burden of establishing bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive to conceal them from the bankruptcy court." *See Cruse*, 2016 WL 6892795, at *4 (noting that the "burden of establishing the absence of bad faith is on the plaintiff when the defendant has shown that the plaintiff possessed knowledge of the factual basis of the claims and had motive to conceal them from the bankruptcy") (quoting *Walker*, 2011 WL 3044529, at *4). When determining whether there was bad faith, the Court focuses "on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim." *Id.* Further, courts have explained that "timing is also a crucial factor." *Id.* at *6. "[E]fforts to correct an omission that came before the [d]efendants filed their motion to dismiss are more important than efforts that came after the [d]efendants filed their motion to dismiss." *Id.* (citing *White*, 617 F.3d at 480); *see also Piper v. Dollar General Corp.,* No. 3:11-cv-554, 2011 WL 4565432, at *6 (M.D. Tenn. Sept. 29, 2011) (noting that the plaintiff could not establish absence of bad faith because she made no effort to correct her bankruptcy schedules until after the omission was brought to the attention of the court through defendant's dispositive motion and that under *White*, "the court is to afford little, if any, credit these post factor corrections"); *United States v. Marr*, No. 1:14-cv-2880-JDB-EGB, 2016

11

Case 3:13-cv-00641-DCP   Document 223   Filed 03/31/17   Page 11 of 16   PageID #: 3504

WL 4126583, *4 (W.D. Tenn. Aug. 2, 2016) (noting that a "debtor may not cure an omission only after it is challenged and still claim good faith") (citing *Tyler v. Fed. Express Corp.*, 420 F. Supp. 2d 849, 858-59 (W.D. Tenn. 2005)).

In the present matter, Plaintiff Evans asserts that her affirmative steps to apprise the court demonstrate an absence of bad faith. [Doc. 183 at 8]. The Court notes, however, that no steps were taken before the Defendants moved for summary judgment. In addition, Plaintiff Evans states that her "sworn declaration is evidence of the type of 'affirmative step' that aided the *Eubanks* court in finding application of judicial estoppel inappropriate." [Doc. 183 at 8]. The Court finds, however, *Eubanks*, inapposite to the present matter.

In *Eubanks*, the plaintiffs filed a Chapter 7 bankruptcy and during the meeting of the creditors, they orally informed the trustee of the lawsuit that they were in the process of filing. *Eubanks,* 385 F.3d at 895. The trustee instructed plaintiffs' counsel to forward all the documents regarding the claim, and counsel complied with the trustee's instructions. *Id.* at 895-96. The plaintiffs later amended their schedule in the bankruptcy matter to include the defendant as a creditor but failed to include the lawsuit as a potential asset on their schedule B. *Id.* Later, the plaintiffs moved the court to set a status conference date regarding the suit against the defendant and a conference was set. *Id.* Subsequently, however the trustee filed the Report of No Distribution that stated there was no property available for credit distribution and the debtor's estate was fully administered. *Id.* The conference was then cancelled. *Id.*

The court in *Eubanks* declined to apply judicial estoppel reasoning as follows:

> There is record evidence in the instant case that Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form. Plaintiffs' counsel and the Trustee were in contact, with respect to the documentation regarding the claim against Defendant, prior to the

> filing of the Trustee's Final Report. When Plaintiffs' counsel could not confirm whether or not the Trustee intended to reconcile the civil claim through the bankruptcy proceeding, Plaintiffs attempted to resolve the issue through a court conference, which was eventually cancelled due to the filing of the Trustee's Final Report.

*Id.* at 898. The court ultimately held, "The facts before this Court are more closely analogous to cases which have held the application of judicial estoppel to be an inappropriate resolution, rather than a necessary judicial measure to protect the court's interest." *Id.*

In the present matter, Plaintiff Evans did not inform her trustee at any time during the bankruptcy proceeding or make any attempt to do so. Moreover, it appears to the Court, that more than three years has passed since Plaintiff Evans has filed for bankruptcy and her trustee is still not aware of the instant matter. Accordingly, the Court finds Plaintiff Evans's position not well-taken.

Further, Plaintiff Evans submits, "*If* any recovery in this lawsuit is subject to her prior bankruptcy, she stands ready, willing and able (along with her bankruptcy counsel) to take whatever steps is necessary to ensure that her former creditors receive anything to which they are entitled." [Doc. 183 at 3] (Emphasis in original). A similar argument was raised in *Thompson v. Bruister and Associates*, No. 3:07-cv-00412, 2013 WL 4507734, at *3 (M.D. Tenn. Aug. 23, 2013). In *Thompson*, several opt-in plaintiffs filed bankruptcy without disclosing their FLSA action. *Id.* at *1. The plaintiffs argued that in the event there is a recovery, the court could put measures into place to notify the bankruptcy court and the trustee and that the proceedings could be reopened before they received any recovery. The court declined stating that while such action was conceivable, it ran against *White*, as follows:

> The dissent argues that we should effectively put White in the position she would have been in had she properly disclosed her harassment claim in her initial bankruptcy filings. Thus, the harassment claim should proceed and any proceeds from the harassment claim would go into the bankruptcy estate: they would

13

> go first to White's creditors and then, if any amount was left over, to White. This would, effectively, allow White to avoid the consequences of failing to disclose her harassment claim. We do not believe that this is the proper course of action in this case and that this "so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets." ... Furthermore, we note that this court has previously applied judicial estoppel in similar circumstances, even though the result prevented recovery by bankruptcy creditors.

*Id.* at *3 (quoting *White*, 617 F.3d at 481 n.10 (internal citation omitted).

In the alternative, Plaintiff Evans requests that the Court allow her Trustee to intervene. In support of her argument she cites *Stephenson v. Malloy*, 700 F.3d 265, 271-72 (6th Cir. 2012) and asserts that the Sixth Circuit has "definitely held that judicial estoppel does not bar a bankruptcy trustee from pursuing claims that the debtor failed to disclose." [Doc. 183 at 10]. The Court agrees that *Stephenson* held that judicial estoppel does not bar a bankruptcy trustee from pursing claims that the debtor failed to disclose. 700 F.3d at 272. However, the issue was also addressed in *Thompson*. In *Thompson*, several plaintiffs claimed that their trustees had not yet addressed whether they (trustees) desired to purse these claims, while another plaintiff stated that his trustee notified counsel and wished to pursue the claim. *Id.* at *3. The court distinguished *Stephenson* from the facts before it, noting as follows:

> Tellingly, the trustee in *Stephenson* "had been substituted as the real party in interest," and submitted an affidavit about his early knowledge of the claim to the district court. The district court also had before it documents and an affidavit from plaintiff's counsel about prior discussions regarding the claims between counsel and the trustee.
>
> Here, there is no evidence that the trustee was informed about the pendency of this case before the Motions for Summary Judgment were filed. Nor is there any evidence about what the trustees' actual intentions are regarding this case and these Plaintiffs' claims. Although Plaintiffs claim that "[t]o the extent necessary, [they] will substitute the trustees as the parties in interest," . . . they have made

14

>             no effort to do so, even though the Motions for Summary Judgment
>             were filed some ten months ago.

*Id.*

In the present matter, the Trustee has not been notified. *See* [Doc. 183-3 at 3] (Plaintiff's bankruptcy attorney explaining that the Court should allow the trustee to be notified to see if he wishes to intervene); and [Doc. 183 at 11] (Plaintiff's Response requesting that the Court allow the Trustee to intervene, "if he so chooses"). The Court finds this case similar to *Thompson* in that there is no evidence of the Trustee's actual intentions, and it appears that the Trustee has not even been notified. *Compare Piper,* 2011 WL 4565432, at *6-7 (finding judicial estoppel applied but gave the trustee an opportunity to file a notice of substitution because the trustee stated his intention to prosecute the matter). Further, Plaintiff's Response was filed almost a year ago and no action has been taken since her filing. Accordingly, the Court finds Plaintiff Evans's position not well-taken.

### B. Unclean Hands

Plaintiff Evans argues that the Defendants come to the Court with "unclean hands." [Doc. 183 at 4]. She asserts that the Defendants are effectively asking the Court to permit them to keep money rightfully owed to her and other Sales Representatives, while depriving her (or her former creditors) from receiving monies that may be rightfully owed to them. [Id.].

The Court finds Plaintiff Evans's argument a non-starter. In *Thompson*, the plaintiffs raised a similar argument that "applying the judicial estoppel doctrine would be particularly inequitable because it would give defendants the benefit of their wrong-doing." 2013 WL 4507734, at *2. The court dismissed this argument reasoning, "Even assuming [p]laintiffs' omissions ultimately works to the benefit of [d]efendants, '[t]he success of our bankruptcy laws requires a debtor's full and

honest disclosure.'" *Id.* (quoting *Burnes v. Pemco Aeroplex, Inc.*, 292 F.3d 1282, 1288 (11th Cir. 2001)).  Accordingly, Plaintiff Evans's position is not well-taken.

## V.  CONCLUSION

Accordingly, for the reasons set forth above, the Court **GRANTS** the Defendants' Motion for Summary Judgment [**Doc. 170**]. The claims of Plaintiffs Adam Bate, Joseph Hope, Mitzi Lindsey, Juanita Moore, and Melissa Evans are hereby **DISMISSED.**

**IT IS SO ORDERED**.

ENTER:

  s/ C. Clifford Shirley, Jr.  
United States Magistrate Judge