# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

JESSE PIERCE and MICHAEL PIERCE,    )
on behalf of themselves and all others    )
similarly situated,    )    CASE NO. 3:13-cv-641
    )
    Plaintiffs,    )    District Judge: Pamela L. Reeves
    )    Magistrate Judge: C. Clifford Shirley, Jr.
vs.    )
    )
WYNDHAM VACATION RESORTS,    )    COLLECTIVE ACTION COMPLAINT
INC., and WYNDHAM VACATION    )    FOR VIOLATIONS OF THE FAIR
OWNERSHIP, INC.,    )    LABOR STANDARDS ACT OF 1938
    )
    Defendants.    )
_____)

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Come Plaintiffs and Opt-in Plaintiffs (hereinafter referred to collectively as "Plaintiffs"), pursuant to Fed. R. Civ. P. 56, and file this Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment.

In Affirmative Defense 15, Defendants assert that "Plaintiffs and the alleged similarly situated individuals (if any) in the purported Class, are not entitled to minimum wage and/or overtime compensation because they were exempt from minimum wage and/or overtime (or not otherwise entitled to minimum wage and/or overtime) in accordance with the FLSA and its accompanying regulations, including but not limited to, the retail or service establishment provisions of 29 U.S.C. §207(i) and the relevant federal regulations, and/or the combination exemptions as set forth in 29 C.F.R. §541.708." *Doc. 18, Answer, Aff. Def. 15.*

For the reasons discussed below, Defendants' asserted affirmative defense based on the retail

or service establishment exemption is barred under the doctrine of collateral estoppel because this issue was previously decided against Defendants in another federal action in which the court denied Defendants' motion for summary judgment and held, as a matter of law, that the retail or service establishment exemption did not apply to Defendants' sales representatives. *See Reynolds v. Wyndham Vacation Resorts, Inc.,* No. 4:14-CV-2261-PMD, 2016 WL 362620 (D.S.C. Jan. 29, 2016), *motion to certify for interlocutory appeal denied*, No. 4:14-CV-2261-PMD, 2016 WL 2347428 (D.S.C. May 4, 2016), *appeal to Fourth Circuit Court of Appeals dismissed voluntarily* (July 29, 2016).[1]

Further, even assuming *arguendo* that Defendants are not collaterally estopped, there is no genuine dispute as to any material fact and Plaintiffs are entitled to a judgment as a matter of law that neither the retail or service establishment exemption contained in 29 U.S.C. §207(i) (hereinafter "207(i)") nor the "combination" exemption contained in 29 C.F.R. §541.708 apply to Plaintiffs, who worked as Sales Representatives at Defendants' four (4) Tennessee properties during the Recovery Period between October 23, 2010 and October 30, 2013 (the "Recovery Period").

## FACTS

Wyndham Vacation Resorts, Inc. (then known as Fairfield Resorts)(hereinafter "Fairfield") began operations in approximately 1966, initially as a residential development company. Throughout the years, Fairfield developed several resort properties, from which it sold lots, free-standing homes and condominiums.[2] *Declaration of David Nelon ("Nelon Decl."), ¶ 4.* Included in the properties developed by Fairfield are the four (4) Tennessee properties at issue in this lawsuit.

---

1  All unreported decisions cited in this Memorandum are attached.

2  Some Fairfield properties were and are condominiums only.

In approximately 1979, Fairfield started selling fixed-week timeshares for condominiums and free-standing homes (if available at a particular property), in addition to the sale of lots, free-standing homes and condominiums.[3]  *Nelon Decl., ¶ 5.*

Historically, Defendants' Sales Representatives have sold a combination of lots, free-standing homes, condominiums and fixed-week timeshares at Defendants' properties, including the four (4) Tennessee resorts at issue in this lawsuit.  Each of these involved deeded interests in real property, including fixed-week timeshares.  Previously, with fixed-week timeshares, individuals purchased an undivided interest in a piece of real property (either a condominium or free-standing home), consisting of a fixed week during the year in which the individuals could use it.  The price for the fixed week varied depending on the piece of property and the week which was purchased.  *Id., ¶ 8.*

Each sale of a lot, free-standing home and fixed week timeshare involved a real estate closing and the individuals were given a warranty deed as part of the sale, which was recorded in the county where the property was located.  *Id., ¶ 9.*

In approximately 1991, Defendants implemented a "points" system, in which Defendants assigned a symbolic "point value" to fixed weeks.  Although referred to as "points," individuals were and are still purchasing an undivided interest in real property, and the sales were and are consummated by a real estate closing.  Thereafter, and throughout the Recovery Period, all "points" were tied to a specific piece of real estate.  *Id., ¶ 10.*

Although it is commonly stated that individuals are purchasing "points" that they then own, this is technically incorrect.  Instead, each year there is a symbolic allocation of points to all owners which is representative of each owner's share of the undivided interest in the real property that they

3

own. By way of example, each condominium unit at all of Defendants' resorts is a piece of real property, which is backed by a deed. For each unit, Defendants assign a point value for that unit for each week of the year. The value is determined by factors such as the week of the year (as some parts of the year are considered more preferable to others) and the resort where the unit is located. So each unit is assigned a point value for each of the 52 weeks in a year. *Id., ¶¶ 11-12.*

All points have to be tied to a particular unit for a particular week of the year so that each week at each unit is, in turn, tied to an undivided interest in real property. This is why individuals are not truly purchasing "points," but instead are purchasing an undivided interest in deeded real property. *Id., ¶ 13.*

In the early to mid-2000s, Defendants created a program, now called ClubWyndham Access, which would enable an owner to stay at any Wyndham resort. To accomplish this, deeds are placed in a trust which essentially creates a "pool" of real properties where the owners can stay during their timeshare week. Thus, under the points system, owners were and are not limited to a fixed week at a particular piece of property (such as a condominium in the Smoky Mountains), but can use points to gain access to various Wyndham resorts. *Id., ¶ 14.*

In approximately 1994, Fairfield developed the Discovery Program. The Discovery Program can be best described as a lease to purchase real estate agreement. In the Discovery Program, points tied to a specific piece of real property are "borrowed" and sold to the customer, who is essentially leasing the points for a year with the option to apply monies paid for the leased points to the purchase of a Wyndham ownership interest. *Id., ¶ 15.*

The job duties and responsibilities of all Sales Representatives at Defendants' four (4)

---

3  Some properties, for example Fairfield Williamsburg, sold fixed-week timeshares only.

4

Tennessee resorts during the Recovery Period were and are the same – to sell real estate to prospective owners and existing owners. First, Front Line Sales Representatives attempt to make sales to prospective owners who have received a free or discounted stay at a Wyndham resort property, or who are staying at a resort as part of some other promotion through Wyndham's marketing department. In exchange for receiving a free or discounted stay at a Wyndham property, or some other promotion, the prospective owner agrees to attend a meeting at Wyndham's office, where the Front Line Sales Representatives pitch Wyndham's timeshare program and attempt to make a sale. If successful, a real estate purchase agreement is drafted and the closing occurs, almost always on the same day of the sale. At the closing conducted by a Quality Assurance Representative, the buyers are routinely asked the question – "You know that you are buying a piece of real estate?" The Quality Assurance Representative goes through the closing paperwork as well, including discussions about the purchase price, down payment and monthly payment. *Id., ¶ 16.*

Second, In-House Sales Representatives attempt to sell additional real estate to existing owners, thereby increasing the individual or couple's ownership interest in Wyndham properties. Typically, these individuals are solicited by Sales Representatives to attend a meeting at Wyndham's office, where the In-House Sales Representative attempts to convince the existing owners to increase their ownership interest. If a sale is made, a real estate purchase agreement is drafted and the closing occurs, almost always on the same day of the sale. The same procedure occurs with the Quality Assurance Representative discussed in the preceding paragraph. *Id., ¶ 17.*

Templates of contracts used by Defendants at the four (4) Tennessee properties are attached as an exhibit to the Declaration of David Nelon. *Nelon Decl., Ex. 1.* Based on a plain reading of the contracts, they involve the sale of real estate. For example, as stated in the "Interval Ownership

5

Contract Agreement and Installment Note," the buyer is purchasing a "Unit Week" in one of Fairfield Glade's subdivisions, which is specifically referenced by a plat "filed of record in Cumberland County, Tennessee." Further, the contract specifically provides that, in the event the purchase is made by an installment note, that upon full payment, a deed will be delivered. The agreement also includes other provisions standard in real estate contracts, such as provisions for title insurance and maintenance fees pursuant to the subdivision's covenants and restrictions. *Id.*

Finally, if a Front Line or In-House Sales Representative is unsuccessful in making a sale to a prospective owner, the prospective owner is referred to a Discovery Sales Representative, who attempts to sell the prospective owner a Discovery Program package, which as discussed above, is essentially a lease to purchase real estate agreement. If successful, a purchase agreement is drafted and executed on the same day of the sale. *Id., ¶ 18.*

## LAW AND ARGUMENT

### I. Defendants' Retail or Service Establishment Affirmative Defense is Barred by the Doctrine of Collateral Estoppel.

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation." *Elliott v. Cty. of Ionia*, 198 F.3d 245 (6th Cir. 1999). A decision of a federal court is entitled to collateral estoppel effect if the following four elements are satisfied:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is

6

sought must have had a full and fair opportunity to litigate the issue in
the prior proceeding.

*Smith v. SEC,* 129 F.3d 356, 362 (6th Cir. 1997)(*quoting Detroit Police Officers Ass'n v. Young,* 824

F.2d 512, 515 (6th Cir. 1987)).  Since Defendants were also defendants in *See Reynolds v. Wyndham*

*Vacation Resorts, Inc.,* No. 4:14-CV-2261-PMD, 2016 WL 362620 (D.S.C. Jan. 29, 2016), *motion to*

*certify for interlocutory appeal denied,* No. 4:14-CV-2261-PMD, 2016 WL 2347428 (D.S.C. May 4,

2016), *appeal to Fourth Circuit Court of Appeals dismissed voluntarily* (July 29, 2016), and because

each of the four elements for application of the doctrine of collateral estoppel is satisfied, this Court

should give preclusive effect to the court's decision in *Reynolds*.

### A.    Identical Issues Exist in Both Actions

The first element of collateral estoppel requires the party invoking the doctrine to prove that

the issue to be precluded is identical to an issue decided in an earlier proceeding.  In the present case,

as in *Reynolds*, Defendants seek to invoke the FLSA's § 207(i) retail or service establishment

exemption as an Affirmative Defense.  *See Reynolds,* 2016 WL 362620, at *4.

As in the *Reynolds* court, this Court is confronted with the applicability of the retail or service

establishment exemption to Defendants.  Therefore, the issues Plaintiffs request be given preclusive

effect in the pending litigation are identical to the issues that were decided in *Reynolds*.  Thus, the

first element of collateral estoppel is satisfied.

### B.    Determination of the Issue Necessary to the Outcome

The second element of collateral estoppel requires the party invoking the doctrine to prove

that determination of the issue was necessary to the outcome of the prior proceeding.  In ruling on the

motion for summary judgment in *Reynolds*, it was necessary for the court to resolve whether

7

Defendants' sale of timeshares entitled it to invoke the § 207(i) exemption with respect to the sales representatives who worked at Defendants' South Carolina resorts and opted into the action. Thus, the second element of collateral estoppel is satisfied.

C.     Final Judgment on the Merits

The third element of collateral estoppel requires the party invoking the doctrine to prove that the prior proceeding resulted in a final judgment on the merits. On January 29, 2016, the Federal District Court of South Carolina ruled on Defendants' Motion for Summary Judgment, holding that the § 207(i) exemption did not apply to Defendants. *Reynolds*, 2016 WL 362620, at *5. On May 4, 2016, the court denied Defendants' Petition for Certification of an Interlocutory Appeal on the issue of the § 207(i) exemption and Wyndham's Motion to Stay. *See Reynolds v. Wyndham Vacation Resorts, Inc.*, No. 4:14-CV-2261-PMD, 2016 WL 2347428 (D.S.C. May 4, 2016). Further, on July 29, 2016, Defendants voluntarily dismissed their appeal to the Fourth Circuit Court of Appeals. Finally, on April 11, 2017, the *Reynolds* case was settled and a final judgment was entered dismissing the case with prejudice. Thus, on April 11, 2017, at that very latest, the third element of collateral estoppel was satisfied.

D.     Full and Fair Opportunity to Litigate

The fourth and final element of collateral estoppel requires the party invoking the doctrine to prove that the party against whom collateral estoppel is being asserted had a "full and fair opportunity" in the earlier proceeding to contest the issue now sought to be precluded. While the courts have not developed a standard definition of what constitutes a "full and fair opportunity" to litigate, "courts have required that when the party against whom collateral estoppel is asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an

8

opportunity to be heard." *In re Couch*, No. 16-8009, 2017 WL 444644, at *6 (B.A.P. 6th Cir. Feb. 2, 2017).

It is clear that Defendants had notice and an opportunity to be heard on the applicability of the § 207(i) exemption in *Reynolds*. The simple fact that Defendants were unsuccessful does not mean that they were not heard. Instead, Defendants fully briefed the issue regarding the § 207(i) exemption and the *Reynolds* court strongly considered Defendants' arguments, even citing in the final opinion to portions of Defendants' filed briefs. *Reynolds*, 2016 WL 362620, at *5. Because Defendants have already had their day in court regarding the § 207(i) exemption, no reasonable argument can be made that Defendants were not given a "full and fair opportunity" in the prior proceeding to contest the very issue Plaintiffs now seek to preclude in this litigation. Thus, the fourth and final element of collateral estoppel is satisfied.

Because all four elements of the doctrine of collateral estoppel are satisfied, the Court should find that the § 207(i) exemption does not apply to the Sales Representatives in this case because Defendants are not retail or service establishments.

## II. Plaintiffs are not Exempt under the Retail or Service Establishment Exemption of the FLSA

The retail or service establishment exemption is contained in Section § 207(i) of the FLSA, which provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on *goods or services*. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide

commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i)(emphasis added).

Defendants have the burden of proving that they are a "retail or service" establishment entitled to the FLSA exemption under § 207(i). *See Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir.1983). This burden is strict, as the employer must satisfy the court that it "plainly and unmistakably" fits within the exemption. *Homemakers Home and Health Care Services, Inc. v. Carden,* 538 F.2d 98, 101 (6th Cir.1976)(citing *Arnold v. Ben Kanowsky, Inc.,*361 U.S. 388, 392 (1960)).

As a threshold matter, in order for the § 207(i) exemption to apply, the employee must be employed by a "retail or service establishment." Although the FLSA does not define what constitutes a "retail or service establishment," courts have uniformly held that an employer in the business of selling real estate is not a "retail or service establishment." More specifically as it relates to the sale of timeshares, at least three district courts have held that persons selling timeshares are not employed by a "retail or service establishment," and thus do not fall under the § 207(i) exemption.

First, as discussed above, in the *Reynolds* case, the court held that the § 207(i) exemption did not apply. *Reynolds,* 2016 WL 362620 (D.S.C. Jan. 29, 2016).

In *Reynolds*, defendants filed a motion for summary judgment, arguing that sales representatives were exempt under § 207(i). The court denied defendants' motion, and in so doing, held that as a matter of law defendants' sales representative were not covered by the § 207(i) exemption. First, the court noted that although no current statutory definition of "retail or service establishment" exists, courts ordinarily apply the since-repealed definition of "retail and service

establishment" formerly contained in § 213(a)(2) of the FLSA. *Id.* at \*4 (citing *Williams v. Trendwest Resorts, Inc.*, No. 2:05–CV–0605–RCJ–LRL, 2007 WL 2429149, at \*6 (D. Nev. August 20, 2007); *Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993); and *Reich v. Cruises Only, Inc.*, No. 95–660–CIV–ORL–19, 1997 WL 1507504, at \*2 (M.D. Fla. June 5, 1997)). Under the repealed § 213(a)(2), a "retail or service establishment" was defined as: (1) an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and (2) is recognized as retail sales or services in the particular industry. *Id.* (*citing* 29 U.S.C. § 213(a)(2)(repealed 1990)).

Second, the *Reynolds* Court noted that "[t]ypically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." *Reynolds*, at \*5 (*citing* 29 C.F.R. § 779.318).

Third, the *Reynolds* Court noted that the "determination of whether Defendant[s'] business is a retail or service establishment is a matter of statutory construction and is thus a question of law to be determined by the Court." *Id.* (*quoting Selz v. Investools, Inc.*, No. 2:09–CV–1042 TS, 2011 WL 285801, at \*3 (D. Utah Jan. 27, 2011)(*citing Schoenhals v. Cockrum*, 647 F.2d 1080, 1081 (10th Cir. 1981)). Further, the court recognized that federal regulations interpreting § 213(a)(2) of the FLSA also contain "a partial list of 'establishments to which the retail concept does not apply,' and this list includes 'real estate companies' and 'apartment houses.'" *Id.* (*citing Davidson v. Orange Lake*

11

*Country Club, Inc.*, 6:06–cv–1674–Orl–19KRS, 2008 WL 254136, at *5 (M.D. Fla. Jan. 29, 2008)(*quoting* 29 C.F.R. § 779.317)).

Fourth, in reaching its decision, the *Reynolds* Court stated that it was aware of only two cases that had addressed the applicability of the § 207(i) exemption in the timeshare context – *Williams v. Trendwest Resorts, supra*, and *Davidson v. Orange Lake Country Club*, *supra*, both holding that an establishment selling timeshares was not a retail or service establishment for purposes of the § 207(i) exemption.

Fifth, the *Reynolds* Court specifically rejected defendants' attempt to "frame their timeshare products as vacation packages rather than real estate interests in an effort to distinguish their business from a real estate company." *Reynolds*, at *5. While defendants argued that "'[p]urchasers of [their] products do not purchase a partial interest in a specific condominium unit'" and that instead, "'purchasers acquire a level of points, which they can then use to make travel arrangements among many of the resort accommodations offered by [Defendants],'" (*Id.*, at *5 (*quoting* Defs.' Mot. Summ. J., Ex. 3, ECF No. 96-6, at ¶5)), the *Reynolds* Court recognized that "these points 'are renewed annually for life' and, like real property, 'are transferable by sale, gift, inheritance or through a marital dissolution.'" *Id.* (*quoting* Defs.' Mot. Summ. J., Ex. 3, ECF No. 96-6, at ¶¶5, 6.)

Sixth, the *Reynolds* Court rejected defendants' arguments that they were retail or service establishments because purchasers could use their points for hotels, airfares, or cruises if purchasers opt into defendants' optional "Plus Partners" program. The Court was "not persuaded that this optional program changes the interest held by the purchasers into something less like real property." *Id.*

12

Based on the foregoing, the *Reynolds* Court ruled that defendants are not retail or service establishments entitled to the § 207(i) exemption, finding that "Defendants are selling far more than a hotel room. While purchasers of Defendants' timeshare units may not own a partial interest in a specific condominium unit, they have a far greater ownership interest than does a person who rents a hotel room for a night. Defendants' attempts to differentiate themselves from a real estate company are unavailing." *Id.*

Similarly, in *Williams v. Trendwest Resorts, Inc.*, the United States District Court of Nevada denied defendant's motion for partial summary judgment seeking an adjudication that as a matter of law defendant's sales employees were exempt under the retail or service establishment exemption. In denying defendant's motion, the court held that "sales must be recognized as retail sales or service in the particular industry" and that the retail sales exemption is only available to "traditional" local or retail service establishments. 2007 WL 2429149, at *6-7 (citing 29 C.F.R. § 779.313 and 29 C.F.R. § 779.315. The court concluded that defendant did not meet this test.

Further, the *Williams* Court ruled that the employer must engage in the sale of goods or services. *Id.*, at *7. Defendant argued that its owners buy products and rights comparable to those offered by health and athletic clubs, whose memberships grant customers the right to use the facilities, and that health and athletic clubs have been acknowledged by the Department of Labor as qualifying for the retail exemption. Defendant also argued that its business was analogous to services provided by travel agencies, which can be considered retail in nature. *Id.*, at *8. The Court rejected these arguments, holding that:

> While timeshare interests do share some characteristics with health clubs, they are not goods within the meaning of the FLSA. Buyers purchase the right to yearly vacation credits, but also receive, as discussed previously, ownership in the larger

13

corporate interests of Worldmark. These rights are of perpetual duration and include broader real estate interests. Furthermore, while Trendwest does offer vacation services, these are not "services for the comfort and convenience of [the] public in the course of its daily living." 29 U.S.C. § 779.318(a). Those services which Trendwest owners receive are part of the purchasers' larger ownership interests. Therefore, Defendant is not selling goods or services under the FLSA.

*Id.*

Finally, in determining that timeshare companies are not recognized as retail in the industry, the *Williams* Court noted that the DOL regulations specifically listing examples of industries that have a retail concept did not include timeshare companies and, conversely, the DOL had listed real estate companies as one example of an industry lacking a retail concept. Based on this, the Court ruled that "because Trendwest owners receive real estate interests, in addition to vacation services, Trendwest cannot be considered part of an industry possessing a retail concept." *Id.*, at *9 (*citing* 29 C.F.R. § 779).

Consistent with *Reynolds* and *Williams*, in *Davidson v. Orange Lake County Club, Inc.*, the United States District Court of the Middle District of Florida held that timeshare salespersons did not qualify for the § 207(i) exemption. Citing *Williams*, the court stated that it "agree[d] that timeshare sales companies [were] akin to the 'real estate companies' listed in Section 779.317 of the Code of Federal Regulations as lacking a retail concept and [found] that the timeshare sales companies in this case are not retail or service establishments under the FLSA." 2008 WL 254136, at *6.

As referenced in the cases above, Plaintiffs' position is further supported by federal regulations interpreting what constitutes a "retail or service establishment." The Department of Labor has uniformly excluded a business selling real estate from those involving "retail." First, 29 C.F.R. § 779.414 provides that "retail or service establishments" have been typically considered in

14

"furniture, bedding and home furnishings, floor covering, draperies, major appliances, musical instruments, radios and television, men's clothing, women's ready to wear, shoes, corsets, home insulation, and various home custom orders." 29 C.F.R. § 779.414. Second, the Department of Labor has noted that "not every establishment which engages in retail selling of goods or services will constitute a 'retail or service establishment' within the meaning of the Act." 29 C.F.R. § 779.24. Third, under 29 C.F.R. § 779.317, in providing a partial lists of establishments *lacking* a "retail concept," the Department of Labor specifically lists "Real estate companies." 29 C.F.R. § 779.317.

As applied to facts in this case, while Defendants attempt to overly complicate their business operations to "make the shoe fit" into the retail or service establishment exemption, Defendants are clearly involved in the sale of real estate by selling timeshare interests in their properties located across the country via their Front Line and In-House Sales Representatives, and a lease to purchase real estate option via their Discovery Sales Representatives.

The fact that Defendants "pool" deeds into a trust, and assign a symbolic point value to each week for each unit in a given year, does not alter the fact that individuals are purchasing an ownership interest in real estate. Each and every point is assigned to a deeded interest in real property, and just because Defendants moved away from a business model in which individual purchased a fixed week in a particular condominium unit to a business model in which individuals utilize "points" to stay at one or more of Wyndham's properties (obviously in a marketing effort to increase sales revenue by increasing each owner's options as to where he or she could stay), this does not change the fact that the owners are purchasing an interest in real property. Thus, Wyndham remains a real estate company in the business of selling real estate (ownership interests in

15

timeshares). Accordingly, Defendants' Sales Representatives are clearly not covered by the § 207(i) exemption.

### III. Plaintiffs are not Exempt under the Combination Exemption of the FLSA

The so-called "combination" exemption is contained in 29 C.F.R. § 541.708, which provides:

> Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

29 C.F.R. § 541.708.

In their Answer, other than a vague affirmative defense stating that "[s]ome or all Plaintiffs were at various times exempt from the overtime requirements of the FLSA," (*see Doc. 18, Answer, Aff. Def. 6*), the only specific exemption asserted by Defendants is under 207(i). *Id., Aff. Def. 15*. Thus, even in Defendants' Answer, Defendants do not assert a specific "combination" of exemptions. Further, none of the exemptions in 29 C.F.R. § 541.708, (namely, the executive, administrative, professional, outside sales and/or computer employee exemptions apply to Sales Representatives, and the §207(i) "retail or service" exemption is not listed as an exemption eligible for combination. Based on the foregoing, Defendants' "combination" exemption is factually and legally meritless.

### CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court grant their Motion for Partial Summary Judgment and strike Defendants' Affirmative Defense 15.

16

Respectfully submitted,

DICKINSON WRIGHT PLLC
By: /s/ Martin D. Holmes
       Martin D. Holmes, # 012122
       Darrell L. West, # 005962
       Fifth Third Center, Suite 1401
       424 Church Street
       Nashville, TN 37219
       Phone: (615) 244-6538
       Facsimile: (844) 670-6009
       mdholmes@dickinsonwright.com
       dwest@dickinsonwright.com

       Sherry D. O'Neal, # P62288
       500 Woodward Avenue, Suite 4000
       Detroit, MI 48226
       Phone: (313) 223-3500
       Facsimile: (844) 670-6009
       soneal@dickinsonwright.com

*Attorneys for Plaintiffs and Opt-in Plaintiffs*

## CERTIFICATE OF SERVICE

       I hereby certify that on May 5, 2017, a true and correct copy of the foregoing has been served on the following individuals consenting to electronic service by operation of the Court's electronic filing system:

O. John Norris, III
Craig Cowart
Colby S. Morgan, Jr.
JACKSON LEWIS LLP
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
norrisj@jacksonlewis.com
craig.cowart@jacksonlewis.com
morganc@jacksonlewis.com

William J. Anthony
JACKSON LEWIS LLP
18 Corporate Woods Boulevard
Albany, NY 12211
anthonyw@jacksonlewis.com

Paul DeCamp
JACKSON LEWIS LLP
10701 Parkridge Blvd., Suite 300
Reston, VA 20191
decampp@jacksonlewis.com

/s/ Martin D. Holmes
Martin D. Holmes

17