IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.: 3:13-cv-00641-CCS<br>)<br>)<br>)<br>)<br>)<br>) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS SUPPORTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AS TO FLSA 7(i) EXEMPTION**

1. Wyndham is a leading provider of family vacations to resort destinations. [First] Declaration of Kyle Smith, ¶ 3, March 14, 2014 (Doc. 60-1). Customers purchase vacation "points" that may be used at Wyndham resorts and other locations. *Id*. In Tennessee Wyndham employs individuals in sales positions including In-House Sales Representative ("IH Rep"), Frontline Sales Representative ("FL Rep") and Discovery Sales Representative ("Discovery Representative"). (*Id*. ¶¶ 4-5).

2. Wyndham's Tennessee operations span four Wyndham properties. The "Smoky Mountains Region" which includes two properties in Sevierville – Wyndham Smoky Mountains (aka "The Crossing") and Wyndham Vacation Resort Great Smoky Mountain Lodge. The Wyndham Nashville and the Wyndham Resort at Fairfield Glade comprise the other Tennessee regions. IH, FL and Discovery Representatives are located at each Tennessee resort. (*Id*. ¶ 12).

1

3. The Front-Line Representatives work in a sales center where prospective owners are scheduled by administrative marketing employees in "tour waves" at specific times depending on the property and the season. Front-Line Representatives then take guests on tours of the resort and exercise discretion regarding which amenities to highlight and the most effective selling techniques for the specific guest. (*Id.* ¶ 7).

4. In-House Representatives sell upgraded vacation packages to Wyndham owners or their guests. The In-House Representatives then drop off welcome gifts and surveys at the owner's suite and encourage the owner to visit the sales office. This initial in-room visit can last from 15 minutes to one hour. Alternatively, in fewer situations, the In-House Representatives meet the owners in the lobby for a pre-scheduled tour. Following the tour, the Representative offers to take them to the sales center for a presentation. If the owner meets with the In-House Representatives in the sales office, that is called a "continuance." The continuance can last up to 4 hours depending on whether there is a sale and a closing. (*Id.* ¶ 8).

5. In-House Representatives typically do not tour the property with the owner. Rather, In-House Representatives focus on teaching owners how to maximize/upgrade their current ownership. (*Id.* ¶ 11).

6. In addition, informal terms have been adopted internally to distinguish between those "In-House Representatives" that give the initial sales presentation ("front-enders" or "hookers") and "back-enders," meaning those who close the deal. Skills to close a deal are sought after by the front-ender. This internal sorting results in some "back-enders being largely occupied with simply closing deals. Jesse Pierce is considered a back-ender or closer. (*Id.* ¶ 10).

7. Discovery Representatives sell trial, non-ownership vacation packages to non-owner customers who have declined to purchase a deeded timeshare from a Front-Line or In-

2
Case 3:13-cv-00641-DCP   Document 245   Filed 05/05/17   Page 2 of 9   PageID #: 4104

House Representative. When the guest declines, the Discovery Representative presents the guest with a guest experience survey. While conducting the survey, the Discovery Representative offers a "discovery package," which is a trial ownership package. Discovery Representatives do not work in "tour waves" or otherwise conduct property tours. A Discovery sales pitch can be as short as 5-10 minutes or 45-60 minutes with a sale. (*Id.* ¶ 11).

8. Wyndham sells vacation packages to its customers. These packages are sold in the form of vacation points by In-House and Frontline Reps, while others are sold in the form of trial vacation packages by Discovery (Disco) Reps. Points are used to obtain stays at numerous Wyndham properties and give the customer much more than just a place to stay but also access to other travel related services. [Second] Declaration of Kyle Smith, ¶ 4 (Exhibit A).

9. Wyndham's vacation products are available to the general public. At Wyndham's sales centers, any customer that meets our qualifications may walk in, sign up for a tour, learn about Wyndham's products, and then purchase a vacation package. *Id.* ¶ 5.

10. Purchasers of Wyndham's products do not purchase a partial interest in a specific condominium unit. Rather, purchasers acquire a level of points, which they can then use to make travel arrangements among many of the resort accommodations offered by Wyndham, The points purchased by any individual consumer represents a small quantity of the total number of points available. The points purchased are renewed annually for life and may be spent for periods of stay at numerous Wyndham properties. In no way are purchasers limited to a particular unit or resort. In fact, the points may be used to stay at numerous resorts operated by Wyndham. If points are not used during a particular year, they can be banked for use in future years subject to some limitations. Purchasers also have the ability to place points they do not intend to use in a particular year in a points credit pool for use in future years. Wyndham's points program offers a

large selection of options for destinations and provides flexibility in terms of time and location of travel. Additionally, customers may use points to obtain stays at multiple non-Wyndham properties through the Wyndham Club Pass program. *Id.* ¶ 6.

11. Although the points purchased by customers are transferrable by sale, gift, inheritance, or through a marital dissolution, other features of the Wyndham program are not transferrable. For example, purchasers may obtain "Perks by Club Wyndham" which provides travel-related benefits and privileges to its members. This program allows customers to obtain discounts from more than 240,000 merchants including retail stores and golf courses. Such membership in "perks by Club Wyndham" is nontransferable and cannot be resold. *Id.* ¶ 7.

12. Wyndham customers may also participate in the "Plus Partners" program. With this program points purchased by customers may be used for stays in hotels worldwide. Points may also be used to purchase airline tickets with major airlines such as Delta, American Airlines, US Airways, and British Airways. Points may be used to rent automobiles from car rental companies such as Avis and Budget. Points can also be applied to purchase cruise tickets with cruise lines such as Carnival, Royal Caribbean, Norwegian Cruise Line, Holland America, Viking River Cruises, or Princess Cruises. Points may also be used to purchase tickets to amusement parks such as Walt Disney World, Universal Orlando, or Sea World. *Id.* ¶ 8.

13. Wyndham hopes to make its customers lifetime owners of its vacation products and markets its products accordingly. Wyndham does not sell points packages to the buyer with the expectation that they will be resold and, in my experience, any such resale is rare. Purchasers of our products are the end users of those products. They purchase points for recreational use, not for financial profit. Moreover, the vacation packages sold by Discovery Representatives cannot be resold. *Id.* ¶ 9. The purchase of a timeshare interest , therefore, differs significantly from the

traditional purchase.

14. In-House, FR and Discovery Representatives receive a "recoverable draw," which is an amount equal to at least the minimum wage for every hour worked by the Sales Representatives in a given week. The draw is paid weekly and is an advance against future commissions. The draw is recoverable by Wyndham when the Sales Representative earns enough in commissions to cover the amount advanced. If the Representative does not earn enough in commissions to pay back the advanced draw, the remaining amount of the advance is considered a "draw balance" that will be carried forward from pay period to pay period for an indefinite amount of time until the draw balance is fully recovered on the employee's termination. The company does not seek to recover the draw after separation of the sales employee. The draw system ensures Sales Representatives are compensated at least the minimum wage for all hours reported under 40 in a work week and 1.5 times the minimum wage for hours over 40 in a work week. This amount is increased to the regular rate for all hours worked plus the .5 overtime differential for hours over 40. (Doc. 60-1, ¶ 20).

15. Sales Representatives also receive commission and bonus pay plans based upon the location, product sold, position, experience and other individual factors. The criteria for commissions and bonuses and the percentage amount which vary by Representative based in part on sales productivity. (*Id.* ¶ 21).

16. In their Collective Action Complaint for Violations of the Fair Labor Standards Act of 1938 Plaintiffs' admit that "Defendants operate numerous vacation resorts throughout the United States. Consumers acquire ownership interests through a point-based system, by purchasing 'points.' After the initial purchase and the establishment of an account, owners can acquire additional "points" to increase their ownership interest." (Doc. 1, ¶ 21).

5

17. Plaintiffs further admit the following: "In an effort to obtain new owners, Defendants market their resorts utilizing various marketing tools, including promotions which allow potential owners to stay on the resort property by agreeing to attend a 'tour' during their stay which, simply put, is a sales pitch meeting conducted by one or more of Defendants' sales representatives at Defendants' offices located on site. The sales representatives conducting these 'tours' for potential new owners are referred to as 'Front Line Sales Representatives' by Defendants." *Id.* ¶ 22.

18. Plaintiffs further admit the following: "For individuals who have already acquired 'points' and an ownership interest, Defendants utilize various marketing tools to obtain additional purchases of 'points.' For example, when an existing owner with a 'points' based account is staying at one of the Defendants' vacation resorts, he or she is solicited by Defendants' sales representatives to visit one of Defendants' offices on site, where Defendants' sales representatives attempt to sell additional 'points' to him or her. The sales representatives conducting their sales pitches are referred to as 'In-House Sales Representatives' by Defendants." *Id.* ¶ 23.

19. Plaintiffs further admit the following: "Throughout their employment, including during the Recovery Period, Representative Plaintiffs and Class Members worked as Front Line Sales Representatives, In-House Sales Representatives, and/or Discovery Sales Representatives (hereinafter referred to collectively as 'Sales Representatives') for Defendants. As Sales Representatives, Plaintiffs and Class Members' primary job duty was to sell 'points' for a consumer's use at Defendants' timeshare properties and/or promotional packages entitling purchasers to access timeshare properties." *Id.* ¶ 30.

20. Plaintiffs' complaint contains no allegation that any of named Plaintiffs, or opt-in

6
Case 3:13-cv-00641-DCP   Document 245   Filed 05/05/17   Page 6 of 9   PageID #: 4108

Plaintiffs or other Sales Representatives sold or had a duty to sell deeded real estate interests to customers.

21. Plaintiffs further admit the following: "During the Recovery Period, Defendants have paid Plaintiffs and Class Members on a commission basis, with an hourly draw paid at minimum wage rates. Defendants have paid Representative Plaintiffs and Class Members approximately $7.25 per hour (or minimum wage), and a commission based on a percentage of sales. *Id.* ¶ 32.

22. Plaintiffs further admit the following: "In an effort to obtain new owners, Defendants offer what is called a 'Discovery by Wyndham' membership which, according to Defendants, offers a glimpse of the many benefits vacation ownership has to offer. Individuals staying on Defendants' resort properties who decide not to purchase 'points' and become an owner are offered a 'Discovery by Wyndham' membership, which is a trial package allowing them to stay on Defendants' properties for a short period of time. If an individual decides not to become an owner, before leaving Defendants' resort during a promotional visit, they are solicited by Defendants' sales representatives to meet in Defendants' offices located on site. The sales representatives conducting these sales pitches are referred to a 'Discovery Sales Representatives' by Defendants." *Id.* ¶ 24.

23. Plaintiffs further admit that "Throughout their employment, including during the Recovery Period, Representative Plaintiffs and Class Members worked as Front Line Sales Representatives, In-House Sales Representatives, and/or Discovery Sales Representatives (hereinafter referred to collectively as 'Sales Representatives') for Defendants. As Sales Representatives, Plaintiffs and Class Members' primary job duty was to sell 'points' for a consumer's use at Defendants' timeshare properties and/or promotional packages entitling

purchasers to access timeshare properties." *Id.* ¶ 30.

        Respectfully submitted,

        s/ Colby S. Morgan
        Colby S. Morgan, Jr. (TN Bar No. 005556)
        O. John Norris, III (TN Bar No. 017504)
        Craig A. Cowart (TN Bar No. 017316)
        JACKSON LEWIS P.C.
        999 Shady Grove Rd., Suite 110
        Memphis, TN 38120
        Telephone: (901) 462-2600
        Facsimile: (901) 462-2626
        Email: norrisj@jacksonlewis.com
              colby.morgan@jacksonlewis.com
              craig.cowart@jacksonlewis.com

        William J. Anthony *(Admitted Pro Hac Vice)*
        JACKSON LEWIS P.C.
        18 Corporate Woods Blvd, 3rd Floor
        Albany, NY 12211
        Telephone: (518) 649-9643
        Facsimile: (518) 427-5956
        Email: AnthonyW@jacksonlewis.com

        Paul DeCamp *(Admitted Pro Hac Vice)*
        JACKSON LEWIS P.C.
        10701 Parkridge Blvd., Suite 300
        Reston, VA 20191
        Telephone: (703) 483-8305
        Email: DeCampP@jacksonlewis.com

        *ATTORNEYS FOR DEFENDANTS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have this 5th day of May, 2017, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification of such filing to the following:

      Martin D. Holmes (TN Bar No. 012122)
      Darrell L. West (TN Bar No. 005962)
      DICKINSON WRIGHT PLLC
      424 Church Street, Suite 1401
      Nashville, TN 37219
      Telephone: (615) 244-6538
      Facsimile: (615) 256-8386
      Email: mdholmes@dickinsonwright.com
            dwest@dickinsonwright.com

      Sherry D.O. Taylor # P62288
      500 Woodward Avenue, Suite 4000
      Detroit, MI 4822
      Telephone: (313) 223-3500
      Email: soneal@dickinsonwright.com

      *ATTORNEYS FOR PLAINTIFFS*
      *Opt-in Plaintiffs and Collective Class*

      s/ Colby S. Morgan
      Colby S. Morgan (TN Bar No. 005556)
      *Counsel for Defendants*

4820-5810-2599, v. 2