IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No.: 3:13-cv-00641-CCS ) |
| WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO 7(i) EXEMPTION**

Defendants, pursuant to Federal Rule of Civil Procedure 56, submit this Memorandum of Law in Support of their Motion for Summary Judgment as to the Fair Labor Standards Act ("FLSA") 7(i) Exemption.

**I.   SUMMARY JUDGMENT STANDARD.**

Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment must be granted "if the pleadings, the discovery, and the disclosure of materials on file, and any affidavit show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

1

R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Smith v. USF Holland, Inc.*, 2008 U.S. Dist. LEXIS 80046 (E.D. Tenn. Oct. 7, 2008).

The mere existence of some alleged factual dispute will not defeat summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 274. Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law. *Id.*

The non-moving party may not rest upon its mere allegations but must set forth specific facts showing that there is no genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1986). The party opposing the motion must demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir. 1993). The responding party must adduce more than a scintilla of evidence to overcome the motion and must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).The Court may grant summary judgment when the record taken as a whole could not lead the trier of fact to find for the non-moving party. *Agrister Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## II.   ARGUMENT

### A.   Wyndham Is Entitled to Summary Judgment Because Plaintiffs Are Exempt from The Requirements of The FLSA Under Section 7(i).

Wyndham is entitled to summary judgment as to those weeks in which Plaintiffs meet the requirements for the Section 7(i) exemption. As discussed below, Wyndham meets the two of the three requirements for 7(i) as to all Plaintiffs for all weeks of their employment: (1) Wyndham is engaged in retail sales and (2) at least half of the Plaintiffs' income comes from commissions. In addition, the third and final requirement—that Plaintiffs earn at least one and one-half times minimum wage each week—is also met for many weeks of employment for all Plaintiffs.[1]

To qualify for the exemption for commissioned employees of retail or service establishments under 29 U.S.C § 207(i) of the FLSA (Section 7(i), Wyndham must prove the following:

1. The employee must be employed by a retail or service establishment;

2. The employee's regular rate of pay must exceed one and one-half times the applicable minimum wage for every hour worked in a workweek in which the overtime hours are worked; and

3. More than half the employee's total compensation in a representative period (not less than one month) must consist of commissions on goods and services.

---

[1] The applicability of the 7(i) exemption to timeshare sales representatives is an unresolved issue. No circuit court has addressed the issue. The statutory language of the 7(i) exemption and the regulations both predate the concept of timeshare sales in the United States which did not exist until the 1970s. *See* Mary Lou Savage, *Time Share Regulation: The Wisconsin Model*, 77 Marq. L. Rev. 719 (1994) (discussing historical development of timeshare industry). The applicability of 7(i) to timeshare salespersons is an issue of first impression for this Court.

To be a retail or service establishment, Wyndham must show that it sells goods or services to the general public, at least 75% of its annual dollar volume of goods and services must not be for resale, and the sales must be recognized as retail sales or service in the particular industry. 29 C.F.R. § 779.313. In addition, the retail sales exemption is available only to "traditional local retail or service establishments. 29 C.F.R. § 779.315. To be traditional the business must: (1) sell goods or services to the general public, and be open to the general consuming public; (2) serve the everyday needs of the community in which it is located, and (3) be at the end of the stream of the distribution of the retail process. C.F.R. 779.318 and 779.319.

### 1. The FLSA Was Never Intended To Cover Plaintiffs.

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981)). The Legislative History of the FLSA, as summarized by the Seventh Circuit, suggests a threefold purpose for the FLSA's overtime requirement:

> The first purpose was to prevent workers willing (maybe out of desperation, though this is no longer very likely) to work abnormally long hours from taking jobs away from workers who prefer to work shorter hours. In particular, unions' efforts to negotiate for overtime provisions in collective bargaining agreements would be undermined if competing, non-union firms were free to hire workers willing to work long hours without overtime. The second purpose was to spread work and thereby reduce unemployment, by requiring an employer to pay a penalty for using fewer workers to do the same amount of work as would be necessary if each worker worked a shorter week. The third purpose was to protect the overtime workers from themselves: long hours of work might impair their health or lead to more accidents (which might endanger other workers as well).

*Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1176 (7th Cir. 1987). The FLSA was not

created (or amended) to provide highly compensated commissioned salespersons with additional compensation. As two of the committee members recognized when the FLSA was amended to eliminate the complete exemption for retail and service establishments and to add the 7(i) exemption:

> [M]any high commission employees work long hours during peak periods. To require the payment of overtime on such high commissions would result in fantastic payments during periods of heavy selling. The committee bill takes partial cognizance of this problem [by retaining the exemption for certain commissioned salespersons] but it does not fully meet it."

*See* S. Rep. No. 145, at 266 (1961), *reprinted in* Legislative History of the Fair Labor Standards Amendments of 1961 (1963). As developed below, the policy interests underlying the FLSA support a finding that Plaintiffs are exempt from the Act's coverage pursuant to Section 7(i).

    2. Section 7(i) Exempts Certain Commissioned Salespersons in Retail or Service Establishments from The Overtime And Minimum Wage Requirements of The FLSA.

Section 7(i) of the FLSA exempts from the FLSA's overtime requirements "any employee of a retail or service establishment . . . if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 6 [the minimum wage section] of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i). Thus, to qualify for Section 7(i)'s exemption from the overtime provisions of the FLSA, three conditions must be met:

(1) The employee must be employed by a "retail or service establishment" within the meaning of section 7(i);

(2) The employee's regular rate of pay must exceed one and one-half times the applicable minimum wage; and

5

> (3) More than half the employee's total earnings in a representative period must consist of commissions on goods or services.

*Alvarado v. Corporate Cleaning Servs.*, 782 F.3d 365, 366 (7th Cir. 2015). *See also Martin v. Refrigeration School, Inc.*, 968 F.2d 3, 5 (9th Cir. 1992) ("Retail establishments, however, are exempt from [the overtime] requirement as to employees whose regular rate of pay is 150 percent of the minimum hourly rate and who receive more than half his compensation by way of commissions"); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1174 (7th Cir. 1987) (explaining that the FLSA's overtime and minimum wage requirements "do not apply to employees of 'a retail or service establishment' if the employee's regular rate of pay is more than 1.5 times the minimum wage and if 'more than half his compensation for a representative period (not less than one month) represents commissions on goods or services'"). As discussed below, there is no dispute that for at least a significant number of weeks of their employment, Plaintiffs satisfy each of these requirements, and, as a result, they are exempt from the overtime and minimum wage requirements of the FLSA during such weeks.

### a. **Wyndham Vacation Resorts is A Retail Or Service Establishment.**

Wyndham satisfies the first requirement for the 7(i) exemption because it is a retail or service establishment. As a preliminary matter, the "determination of whether Defendant's business is a retail or service establishment is a matter of statutory construction and is thus a question of law to be determined by the Court." *Selz v. Investools, Inc.*, 2011 U.S. Dist. LEXIS 9364 (D. Utah Jan. 27, 2011) (citing *Schoenhals v. Cockrum*, 647 F.2d 1080, 1081 (10th Cir. 1981)). Section 7(i) does not define retail or service establishment, and so courts have relied on the definition of "retail or service establishment," which was contained in the now repealed Section 13(a)(2) of the FLSA. *See, e.g., Gieg v. DRR, Inc.*, 407 F.3d 1038, 1047 (9th Cir. 2005);

6

Case 3:13-cv-00641-DCP   Document 246   Filed 05/05/17   Page 6 of 20   PageID #: 4121

*Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993).

The regulations enacted pursuant to Section 13(a)(2) both define and provide examples of retail or service establishments.[2] Broadly speaking, to qualify as a retail or service establishment: (1) Wyndham must engage in the sale of goods or services; (2) at least 75% of the annual dollar volume of sales of goods or services must not be for resale; and (3) the sales must be recognized as retail sales or service in the particular industry. 29 C.F.R. § 779.313 (2015). The regulations further provide that a retail or service establishment performs a function that is at the "very end stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." 29 C.F.R. § 779.318. It must also be open to the general public. 29 C.F.R. § 779.319. The regulations include a partial list of establishments that have a "retail concept" as well as a list of those that do not. *See* 29 C.F.R. §§ 779.317, 779.320. The sale of timeshare interests is not included on either list, but, hotels are included in the list of establishments that have a retail concept. *See* 29 C.F.R. §§ 779.318, 779.320. There can be no serious dispute that Wyndham satisfies requirements 1 and 2 of 29 C.F.R. § 779.313. Any argument that Wyndham cannot satisfy the third condition is based on dated regulations that pre-date the existence of timeshare sales in the United States.

In *Hodgson v. Centralized Services, Inc.*, 457 F.2d 824, 827 (4th Cir. 1972) (*citing* 29 C.F.R. § 779.318) (omissions in original) the court has examined the meaning of retail or service

---

[2] These regulations should not be blindly applied, however, in the context of Section 7(i). As Judge Posner recently explained, "The Department of Labor and some courts . . . have woodenly ported the definition from section 213(a)(2) to the commission exception with no sensitivity to the very purpose of that exemption," which he defines as the inability to work steady, regular hours during the year. *Alvarado*, 782 F.3d 365 at *9, 16. This is particularly true here because timeshares did not exist in the United States at the time these regulations were enacted in 1971. *See* David A. Bowen, *Timeshare Ownership: Regulation and Common Sense*, 18 Loy. Consumer L. Rev. 459, 461 (2006) (noting that timeshare concept spread to the U.S. in the 1970's). Moreover, as discussed further below, the vacation points sold by Wyndham are much different than the traditional concept of a timeshare interest.

establishment under former § 13(a)(2). The court adopted the guidance from the regulations as to claims under former § 13(a)(2):

> Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. * * * Such an establishment sells to the general public its food and drink. * * * It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living.

According to this guidance, a wide range of businesses from trash collectors to tax return preparers fall within the scope of the exemption. *See Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451 (4th Cir. 1963) (holding that employees of trash removal company are exempt as employees of a retail or service establishment); *Hodgson*, 457 F.2d at 827 (concluding that business that prepares tax returns is a retail or service establishment). In contrast, the exemption has not been applied to a private university, *Hodgson v. Duke University*, 460 F.2d 172, 176 (4th Cir. 1972), and a private medical clinic, *Shultz v. Nalle Clinic*, 444 F.2d 17, 20 (4th Cir. 1971). *See also Hodgson*, 460 F.2d 172, 174 (collecting cases and citing as examples businesses that lack a retail concept including a loan company, producer of potato processing equipment and medical clinic). The Federal regulations state that apartment houses and real estate companies lack a retail concept, but hotels typically have a retail concept. C.F.R. § 779.317 (2013); 29 C.F.R.779.320 (2013).

Applying the principles from the regulations and the relatively sparse case law, Wyndham is a retail or service establishment. Wyndham sells vacation packages to the general public. These packages are purchased through a "points" based program in which the packages

are bought by the end consumer to use for his or her own personal enjoyment. Accordingly, and, as discussed further below, Wyndham is engaged in the retail sale of goods and services.

### i. Wyndham is engaged in the sale of goods or services.

Wyndham Vacation Resorts is in the business of selling vacation packages to consumers. (Statement of Facts ("SOF") ¶ 8). Some of those packages are sold in the form of vacation points by IH and FL Reps, while others are sold in the form of trial vacation packages by Disco Reps. (*Id.*) Wyndham's vacation products are available to the general public. *Id.* ¶ 5. At Wyndham's sales center, customers may walk in, sign up for a tour, learn about Wyndham's products, and then purchase a vacation package. (SOF ¶ 9) The process itself is not unlike the process of purchasing a car, and car salespeople have long been recognized as exempt pursuant to Section 7(i). *See, e.g., Gieg v. DRR, Inc.*, 407 F.3d 1038 (9th Cir. 2005) (concluding that not only salespersons but also commissioned finance officers of car dealerships are exempt under 7(i)); 29 C.F.R. § 779.320.

### ii. Wyndham's Business Has A Retail Concept.

As the above description makes clear, Wyndham's business has a retail concept. Customers may walk into Wyndham's sales center, meet with a Sales Rep and browse the various vacation packages Wyndham is offering for sale before deciding whether and what to purchase. Wyndham also serves the everyday needs of the community by providing vacation packages for sale to the general public. Wyndham does not have to sell a product that gets used daily by consumers to be covered by the exemption. As one court explained in a very similar case,

> The regulation stating that a retail or service establishment must serve the everyday needs of the community should not be interpreted to mean that such establishment must be used by everyone in the community on a daily basis. The list provided in

> the regulations of businesses which are recognized as retail reflects that such narrow interpretation would be incorrect. This list includes billiard parlors, bowling alleys, cemeteries, coal yards, crematories, dance halls, embalming establishments, funeral homes, for repair and storage shops, hotels, masseur establishments, recreational camps, taxidermists, theatres, and undertakers, none of which would be used daily by everyone in the community.

*Reich v. Cruises Only, Inc.*, 1997 U.S. Dist. LEXIS 23727 at *11 (M.D. Fl. June 4, 1997*); see also Wells v. Taxmasters, Inc.*, 19 Wage & Hour Cas. 2d (BNA) 1266, 2012 U.S. Dist. LEXIS 133825 at *18 (S.D. Tex. Sept. 18, 2012) ("It is not the case that an establishment must provide a product or service used by each member of the community on daily basis for it to serve the everyday needs of the community").

In *Reich*, Cruises Only was a business that assisted consumers in selecting and purchasing cruise vacations. Much like Wyndham's Sales Reps, the salespeople for Cruises Only "inquire from the customer the type of cruise the customer desires, inform the customer of the available cruise options, and assist the customer in booking the cruise." *Reich,* 1997 U.S. Dist. LEXIS 23727 at *2. The court found that Cruises Only sold its services to the general public and it served the everyday needs of the community because "[t]ravel agencies have become a common and convenient method of organizing an entire vacation package at one location." *Id*. at *11-12. The court also held that Cruises Only was at the end of the stream of distribution and disposed in small quantities of its products and skills, did not take part in the manufacturing process, and provided a service to the general public because travel agencies provide the service of convenience to customers in arranging a travel package. *Id*. at *12-16. Applying the guidance from the regulations, the court concluded that Cruises Only "fits within all of the regulations for a service establishment under the Act and possesses a retail concept." *Id.* at *16. Accordingly, the court granted Cruises Only's motion for summary judgment on the

7(i) exemption. Similarly, Wyndham is engaged in selling vacation packages to the general public and serves the everyday vacation needs of the community. The vacation packages that it sells are disposed of in small quantities at the end of the stream of distribution. Thus, for the same reasons discussed in *Reich*, Defendant's Motion should be granted.

Defendants are aware cases in other circuits that have distinguished the district court's analysis in *Reich* and have declined to apply the 7(i) exemption to timeshare salespeople. *See Davidson v. Orange Lake Country Club, Inc.*, 2008 U.S. Dist. LEXIS 6420 (M.D. Fl. Jan. 29, 2008);[3] *Williams v. Trendwest Resorts, Inc.*, 2007 U.S. Dist. LEXIS 62396 (D. Nev. Aug. 20, 2007). *Reynolds v. Wyndham Vacation Resorts, Inc.*, 2016 U.S. Dist. LEXIS 10568 (D.S.C. Jan. 29, 2016) also denied the exemption relying on *Davidson* and *Williams*.

These cases ignored the overarching purpose of the retail or service exemption as embodied in the regulations, and, as such, were wrongly decided and should not be followed by this Court. In both *Davidson* and *Williams*, the district courts concluded that the two timeshare companies at issue lacked a retail concept because they sold real estate interests. The courts based their conclusions on the fact that the regulations listed "real estate companies" as among those businesses that typically lack a retail concept. *See Davidson*, 2008 U.S. Dist. LEXIS 6420 at *16; *Williams*, 2007 U. S. Dist. LEXIS at *24-25.

We can distinguish *Davidson v. Orange Lake Country Club. Inc.,* 2008 U.S. Dist. LEXIS 6420 (M.D. Fla. January 29, 2008) by showing that Wyndham indeed sells vacation packages and has a retail concept. In *Davidson* the record showed that defendants sold ownership

---

[3] The *Davidson* court did not decide as a matter of law that timeshare salespersons do not qualify for the 7(i) exemption, but rather found that the defendants failed to establish entitlement to the exemption as a matter of law. Its order did not foreclose the defendants from presenting evidence at trial that the defendant's business had a retail concept. *Davidson v. Orange Lake Country Club, Inc.*, 2008 U.S. Dist. LEXIS 15704 at *n.7 (M.D. Fl. Feb. 29, 2008).

interests in real property rather than vacation packages. Our proof shows that Wyndham sells not only timeshare estates in property, but also that the sale of its vacation club is a significant part of its business. *Williams v. Trendwest Resorts, Inc.*, 2007 U.S. Dist. LEXIS 62396 (D. Nev. Aug. 20, 2007) court incorrectly found that the owners received non-retail interests that operated much like real estate, despite the fact that vacation packages were central to the venture. The court concluded that Trendwest was not a "traditional" retail business and it should not be afforded the retail business exemption

Some Courts, however, have rejected such a rigid reading of the regulations and have instead advised courts to apply a realistic reading of the basic criteria set forth in the regulations to the activities of the business. *See Hodgson v. Centralized Services, Inc.*, 457 F.2d 824, 827 (4th Cir. 1972) (rejecting argument that tax preparation firm was equivalent to an "accounting firm" for purposes of the regulations and warning against broad reading of those categories of businesses lacking a retail concept); *Wirtz v. Modern Trashmoval, Inc.*, 323 F.2d 451 (4th Cir. 1963) ("Although it is not specified in the legislative history as a typical retail business, we feel that trash removal qualifies for that classification. Taking a very practical view, which is said to be the proper criterion in these cases [leads to the conclusion that trash collection business is retail]"). *Wells v. TaxMasters, Inc.* provides a more recent example of the principles that were announced in *Hodgson*. *Wells*, 2012 U.S. Dist. LEXIS 133825; 19 Wage & Hour Cas. 2d (BNA) 1266, (S.D. Tex. Sept. 18, 2012). Taxmasters was in the business of providing tax return preparation and related services to the general public, and it employed tax consultants who acted as salespersons and sold the businesses services. *Id.* at *5. The plaintiffs in *Wells*, like the plaintiffs in *Davidson, Williams*, and *Reynolds* argued that the 7(i) exemption did not apply to them because Taxmasters was engaged in "tax services," which is included in the list of

businesses that typically lack a retail concept. *Id.* at *15. The *Wells* court rejected this argument and granted Taxmasters' motion for summary judgment on the 7(i) exemption:

> The summary judgment evidence before the Court indicates that Defendants provided not only tax preparation services that each member of the community may well utilize, but also tax dispute services to address issues that may, in some instances, arise in the course of filing taxes. Doc. 64-1 at 7-8. . . . Such certain, but periodic, services are no less retail in nature than the sale of "automobiles, . . . radios and refrigerators," or the "incidental services on such goods when necessary." 29 C.F.R. § 779.318. Defendants' tax resolution services clearly were "services for the comfort and convenience of such public in the course of its daily living." *Id.*

*Id.* at *20. In other words, the *Wells* Court looked at the regulations in their entirety rather than trying to fit the employer's business into one of the categories of businesses listed in the regulations as either having or not having a retail concept.

The Seventh Circuit further discredited the decades-old regulatory list of businesses lacking a retail concept. Judge Posner criticized the Department of Labor for its blind reliance on the regulations:

> The Department seems obsessed with its incomplete, arbitrary, and essentially mindless catalog of sellers lacking "a retail concept" . . . . The [plaintiffs'] brief cites departmental regulations that attempt to define a "retail or service establishment" by listing factors of dubious relevance, such as that "75 per centum of [its] annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry," 29 C.F.R. § 779.312, or that the establishment "serves the everyday needs of the community in which it is located." 29 C.F.R. § 779.318. We don't see the connection between these criteria and the reasons for excusing certain employers from the overtime provision of the Fair Labor Standards Act.

*Alvarado*, 782 F.3d at 371. As in this case, the employer in *Alvarado*, a commercial window washer, did not fit neatly into one of the listed categories of businesses either having or lacking a retail concept. Rather than try to force the employer into one of those categories, the Seventh

13

Circuit looked at the underlying purpose of the § 7(i) exemption and found that it applied to commercial window washers because their work was seasonal, requiring irregular hours and because they were paid on commission. *Id.* at 368, 371.

All of the reasons the *Alvarado* Court cited for applying the 7(i) exemption to the window washers apply with equal or greater force to Wyndham's Sales Reps. Like the window washers, Sales Reps work is seasonal (much like the flow of tourists to the Tennessee resorts). *See also Yi v. Sterling Collision Ctrs, Inc.*, 480 F.3d 505, 510 (7th Cir. 2007) (citing irregular work hours as basis for finding exemption). Sales Reps are also highly compensated commissioned salespeople. "It is hard to see how any of the intended beneficiaries of the Fair Labor Standards Act—a statute primarily designed as we have said to limit competition from marginal workers, that is workers willing to accept substandard wages or to work overtime without demanding a premium—would be helped by the imposition of the overtime provisions of the Act in this setting." *Mechmet*, 825 F.2d at 1176-77. As did the *Wells* Court and as required by the Fourth Circuit in *Hodgson* and *Wirtz*, this Court should not zero in on one business—real estate companies—listed among a list of dozens of businesses in a single regulation which itself is part of a large regulatory framework addressing the retail or service exemption, but should instead view the regulations in their entirety. This is especially true since the regulatory list predates the existence of the U.S. timeshare industry. The DOL could not have intended to include timeshare companies among those real estate companies lacking a retail concept because timeshare companies did not exist in this country (and certainly not in the form they exist today) when the regulations were enacted in 1971.

Timeshare companies do not appear either on the list of businesses that are typically recognized as retail or the list of those that are not. The *Davidson*, *Williams, and Reynolds*

courts wrongly assumed that because timeshare companies sell real estate interests that they are "real estate companies" within the meaning of the regulations and, thus, not retail. However, the regulations do not exclude companies that sell "real estate interests" from the retail or service exemption. Rather, the regulations specifically recognize that a business that sells real estate interests can be retail. For example, among the list of businesses which possesses a retail concept are cemeteries, which sell real estate interests. *See* 29 C.F.R. §§ 779.320; *Reich*, 1997 U.S. Dist. LEXIS 23727 at *11 (listing cemeteries as one of those businesses recognized as retail). There is a specific regulation related to cemeteries, which states, among other things, that "sales of lots or plots" and an "annual tax or assessment levied on lot owners" is included in the gross volume of sales for purposes of applying the retail sales exemption. 29 C.F.R. § 779.370. In other words, far from taking a business out of the retail exemption, the sale of real estate interests is included when determining if a cemetery business qualifies for the exemption.

Wyndham's business has more of a retail concept and less of a real estate concept than cemetery businesses because its customers are not limited to the use of a single plot of real estate, but rather purchase vacation points that can be used at any number of Wyndham's resorts throughout the country. (SOF ¶ 10) These points are used to obtain stays at numerous Wyndham properties and can be used to obtain hotel rooms, rental cars, amusement park tickets, airline tickets, and can be used to pay for cruises on major cruise lines. (SOF 10-12) Wyndham's resorts much more closely resemble hotels, restaurants, and recreational camps, which are included in the regulations as possessing a retail concept, than a traditional "real estate company." *See* 29 C.F.R. §§ 779.318, 779.320. Because Wyndham sells its vacation packages to the general public—the end user—to enjoy for personal vacation use, it possesses the necessary retail concept under the regulations. *See* 29 C.F.R. §§ 779.318, 779.319, In short, by

focusing too narrowly on the analogy between real estate companies and the sale of timeshare interests, the courts in *Davidson*, *Williams,* and *Reynolds* misapplied the 7(i) exemption, and those decisions should not be followed by this Court.

### iii. At least 75% of Wyndham's sales are not for resale.

The sale of vacation packages are not sales for resale within the meaning of the FLSA regulations. "A sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold. . . ." 29 C.F.R. § 779.331. The regulations further provide that "if at the time the sale is made, the seller has no knowledge or reasonable cause to believe that the goods are purchased for the purpose of resale, the fact that the goods later are actually resold is not controlling." *Id.* Courts have interpreted this regulation as requiring that the seller have knowledge that the goods are being purchased for "immediate" resale. *See Gieg v. DRR, Inc.*, 407 F.3d 1038, 1048 (9th Cir. 2005).[4] Although some aspects of the vacation packages sold by FL and IH Reps may be resold, most timeshare buyers purchase vacation packages for his own vacation use. *See Williams v. Trendwest Resorts, Inc.*, 2007 U.S. Dist. LEXIS 62396 (D. Nev. 2007) ("[I]t appears the primary purpose of the vacation credit purchase is to enjoy timeshare vacationing, not to resell the interest.") Wyndham hopes to make its customers lifetime owners of its vacation products and markets its products accordingly. (SOF ¶ 13) Purchasers of the products are the end users of the products *Id.* Moreover, the vacation packages sold by Disco Reps cannot be resold. *Id.* In any event, Wyndham has no expectation that its vacation packages will be *immediately* resold. *Id.*

---

[4] The section of the regulations under the subheading "Sales not made for resale" addresses issues related to goods sold as raw materials and goods sold as parts or ingredients in other goods. *See* 29 C.F.R. §§ 779.332, 779.333. The idea behind this requirement is clearly to ensure that the exemption applies only to those businesses which sell to the end user. As noted, Wyndham sells vacation packages to consumers—the end users of its vacation products.

The case of *La Parne v. Monex Deposit Co.*, 714 F. Supp. 2d 1035 (C.D. Cal. 2010), illustrates this point clearly. In that case, the plaintiffs argued their employer, Monex, which sells precious metals for investment purposes, was not a retail or service establishment because the goods that it sold were designed to be resold. *Id.* at 1040. The court rejected this argument and applied the 7(i) exemption, noting that Monex has no knowledge of if or when its products would be resold, and, thus, "Monex's sales are sales of goods not for resale." *Id.* at 1040-41. Accordingly, this factor also supports a finding that Plaintiffs are exempt.[5]

### b. More Than Half of Each Sales Rep's Compensation Represents Commissions.

The second requirement for the 7(i) exemption to apply—that at least half of the plaintiff's income derive from commissions—is satisfied here. As discussed above, Sales Reps are paid a draw that is recoverable against commissions earned. Commissions for Sales Reps are based on a percentage of sales. (Doc. 60-1, Pages 5-7, ¶ 19-22) Thus, the commissions paid to Sales Reps qualify as commissions within the meaning of 7(i). *See Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 508 (7th Cir. 2007) (explaining that the "essence of a commission is that it bases compensation on sales"). The draw is paid weekly and is an advance against Sales Rep's future commissions which is recoverable by Wyndham when the Sales Rep earns enough in commissions to cover the amount advanced. (*Id.* ¶ 20) Thus, the Sales Reps' earnings will consist virtually entirely of commissions. This method paying commissions is specifically sanctioned by the regulations as one of the ways that retail or service establishment employees are generally compensated. *See* 29 C.F.R. § 779.413(a)(5).

---

[5] Alternatively, even if the Court concludes that Sales Reps do not qualify for the 7(i) exemption because they sell real estate interests, Disco Reps still qualify for the 7(i) exemption because the product sold by Disco Reps is a trial vacation package and not a real estate interest.

### c. The Sales Reps Who Earned More Than One and A Half Times The Federal Minimum Wage During Some Weeks of Their Employment.

The final requirement for the 7(i) exemption is that the regular rate of each Sales Rep must be 1.5 times the minimum wage for the exemption to apply in any particular workweek. 29 U.S.C. § 207(i). For purposes of 7(i), the regular rate is defined as "'the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed' and 'by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'" 29 C.F.R. § 779.419 (*quoting Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)). An employee may qualify for the exemption in some weeks and not others. *See id.* ("If it is not more than one and one-half times such minimum rate, there is no overtime pay exemption for the employee *in that particular workweek*.") (emphasis added); *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 445-46 (N.D.N.Y. 2014) (recognizing that exemption can be applied to those weeks in which the one and one-half times minimum wage requirement is satisfied and not applied to those weeks in which it is not); *Owopetu v. Nationwide CATV Auditing Servs., Inc*., 2011 U.S. Dist. LEXIS 24948, at *32-33 (D. Vt. Mar. 11, 2011) (same); *Viciedo v. New Horizons Computer Learning Center of Columbus*, 246 F. Supp. 2d 886, 895 (S.D. Ohio Feb. 25, 2003) (same). The regular rate is calculated by dividing straight-time earnings by hours worked. *Id.* Here, at all relevant times, the federal minimum was $7.25 an hour and the exemption will be satisfied for all weeks in which a Plaintiff's regular pay exceeds $10.88 per hour. Even assuming Plaintiffs worked 70 hours in each relevant workweek, it is highly probable that they earned an average rate of at least $10.88 per hour in a substantial number of those workweeks.

### III. CONCLUSION

For all of the above reasons, Wyndham requests the Court to grant its Motion for Summary Judgment as to FLSA (7i) exemption, dismiss the complaint in its entirety, and award its reasonable costs, expenses and such further relief as may appropriate.

Respectfully submitted,

S/ Colby S. Morgan
Colby S. Morgan, Jr. (TN bar No. 005556)
O. John Norris, III (TN bar No. 017504)
Craig A. Cowart (TN bar No. 017316)
JACKSON LEWIS P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
Telephone: (901) 462-2600
Facsimile: (901) 462-2626
Email: norrisj@jacksonlewis.com
         colby.morgan@jacksonlewis.com
         craig.cowart@jacksonlewis.com

William J. Anthony *(Admitted Pro Hack Vice)*
JACKSON LEWIS P.C.
18 Corporate Woods Blvd, 3rd Floor
Albany, NY 12211
Telephone: (518) 649-9643
Facsimile: (518) 427-5956
Email: AnthonyW@jacksonlewis.com

Paul DeCamp *(Admitted Pro Hac Vice)*
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, VA 20191
Telephone: (703) 483-8305
Email: DeCampP@jacksonlewis.com

*ATTORNEYS FOR DEFENDANTS*

**CERTIFICATE OF SERVICE**

   I hereby certify that I have this 5th day of May, 2017, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification of such filing to the following:

> Martin D. Holmes (TN Bar No. 012122)
> Darrell L. West (TN Bar No. 005962)
> DICKINSON WRIGHT PLLC
> 424 Church Street, Suite 1401
> Nashville, TN 37219
> Telephone: (615) 244-6538
> Facsimile: (615) 256-8386
> Email: mdholmes@dickinsonwright.com
>    dwest@dickinsonwright.com
>
> Sherry D.O. Taylor # P62288
> 500 Woodward Avenue, Suite 4000
> Detroit, MI 4822
> Telephone: (313) 223-3500
> Email: soneal@dickinsonwright.com
>
> *ATTORNEYS FOR PLAINTIFFS*
> *Opt-in Plaintiffs and Collective Class*

         s/ Colby S. Morgan
         Colby S. Morgan (TN Bar No. 005556)
         *Counsel for Defendants*

4839-8689-2615, v. 2