# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

JESSE PIERCE and MICHAEL PIERCE,    )
on behalf of themselves and all others    )
similarly situated,    )      CASE NO. 3:13-cv-641
    )
    Plaintiffs,    )      District Judge: Pamela L. Reeves
    )      Magistrate Judge: C. Clifford Shirley, Jr.
v.    )
    )
WYNDHAM VACATION RESORTS,    )      COLLECTIVE ACTION COMPLAINT
INC., and WYNDHAM VACATION    )      FOR VIOLATIONS OF THE FAIR
OWNERSHIP, INC.,    )      LABOR STANDARDS ACT OF 1938
    )
    Defendants.    )
    )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO CERTAIN HIGHLY COMPENSATED EMPLOYEES

Plaintiffs file this Response in Opposition to Defendants' "Motion for Summary Judgment as to Certain Highly Compensated Employees." *Doc. 236.* ("Defendants' Motion"). Defendants also filed a Memorandum of Law in Support of Defendants' Motion (*Doc. 237*) ("Defendants' Memorandum"), and a Statement of Undisputed Material Facts (*Doc. 238*) ("Defendants' Fact Statement"). For the reasons stated herein, Defendants' Motion is wholly without merit and should be denied as to all four of the former Wyndham employees targeted in Defendants' Motion.

While Defendants' Motion is currently limited to the two named Plaintiffs, Jesse Pierce and Michael Pierce, and two Opt-in Plaintiffs, Craig Thrift and Thomas Garrett (hereinafter the "Targeted Plaintiffs"), in a footnote at the end of Defendants' Motion, and in a more lengthy discussion in Defendants' Memorandum, Defendants state that they should be allowed to take

the depositions of "many other opt-in plaintiffs" who "had the threshold income to qualify for the highly compensated employee exemption," but whose depositions "Defendants have not been allowed to take," and that they "reserve the right to move for summary judgment as to those opt-in Plaintiffs" following their depositions. *Defendants' Motion, at 2*. To the extent this Motion footnote and Memorandum argument were intended as a request for leave to depose the "many other opt-in plaintiffs," the Court also should deny that request.

## INTRODUCTION

Defendants' Motion was filed on May 5, 2017. The motion seeks the entry of summary judgment against the Targeted Plaintiffs on the ground that those four former Sales Representatives – whom Wyndham had admittedly classified as non-exempt, commissioned employees throughout the recovery period applicable to this action – were in fact exempt from the overtime compensation provisions of the Fair Labor Standards Act ("FLSA") pursuant to what Wyndham now refers to as the "highly compensated employee exemption." Prior to the filing of that Motion, Defendants had not revealed to the Court or to Plaintiffs that Defendants were asserting that affirmative defense, except to the extent the fifteenth affirmative defense of Defendants' answer can be considered such a revelation: "Plaintiffs and the alleged similarly situated individuals . . . were exempt from minimum wage and/or overtime (or not otherwise entitled to minimum wage and/or overtime) in accordance with the FLSA and its accompanying regulations, *including but not limited to* the exemption for commissioned employees of retail or

2

service establishments (29 U.S.C. § 207(i))[1] and/or the provisions of 29 C.F.R. § 541.708." *Doc. 18, Answer, Aff. Def. Fifteen.*

However, to Plaintiffs' knowledge the words "highly compensated employee exemption" had not been uttered or written in this matter prior to the filing of the Defendants' Motion. Whether the filing of the Defendants' Motion was contemplated all along or was an afterthought, the Motion has no basis in law or fact. Defendants' argument may be summarized as follows:

- The four Targeted Plaintiffs each earned commission income in excess of $100,000 per year, on an annualized basis, throughout the recovery period, thereby purportedly satisfying the total annual compensation requirements of the Highly Compensated Employee regulation, as set forth in 29 C.F.R. § 541.601(a).

- The four Targeted Plaintiffs received the applicable minimum weekly compensation requirements of the Highly Compensated Employee regulation, set forth in 29 C.F.R. § 541.601(b), because their commission-only compensation qualifies as "fee basis" compensation.

- The four Targeted Plaintiffs all customarily and regularly performed at least one of the duties, and/or possessed one or more of the responsibilities, of an exempt "executive" employee,[2] as set forth in the defining and delimiting the statutory exemption for executive employees, specifically, 29 C.F.R. § 541.101 *et seq.*

Plaintiffs concede that each of the Targeted Plaintiffs earned in excess of $100,000 of combined commission and incentive compensation per year during the applicable recovery

---

[1] On May 5, 2017, Defendants filed a motion for partial summary judgment against all Plaintiffs and opt-in plaintiffs contending they were exempt from overtime compensation under 29 U.S.C. § 207(i). In a series of filings on May 26, 2017, Defendants amended their complaint to withdraw their affirmative defense based on § 207(i), and withdrew its May 5, 2017 motion for partial summary judgment based on § 207(i).

[2] In the Summary of Argument section of Defendants Memorandum (*Doc. 237, at 1-2*), Defendants state that the Targeted Plaintiffs also satisfied the duties requirements for exemption as "administrative" employees. However, the Memorandum contains no further mention of administrative duties, and alleges only that the Targeted Plaintiffs performed the duties required of an exempt executive. (*See Doc. 237, at 11-17.*) Apparently, then, Defendants have abandoned any claim that the Targeted Plaintiffs are exempt administrative employees, which would be unavailing in any event.

3

period. Every other aspect of Defendants' argument that the Targeted Plaintiffs are exempt highly compensated executive employees, however, is unfounded.

## SUMMARY OF ARGUMENT

Defendants cannot satisfy their heavy burden of proving that the Targeted Plaintiffs are exempt from the FLSA's overtime compensation requirements. Defendants are not entitled to claim an exemption pursuant to the 29 C.F.R. § 541.601, because no portion of the compensation the Targeted Plaintiffs received from Wyndham was paid on a salary basis, as is *required* in order for an employer to establish that an employee is an exempt "executive." Nothing in that regulation abrogates the salary basis requirement when, as here, the employer relies solely on purported compliance with the exempt executive employee duties test. Nor does the regulation permit an employer to qualify for the exemption by satisfying compensation requirements applicable only to exempt administrative or professional employees, and at the same time claim compliance with a duties test applicable to exempt executives.

Compliance with 29 C.F.R. § 541.601 includes the requirement that the total annual compensation of "highly compensated employees" must include certain weekly compensation paid "on a salary or fee basis." Even if payment of those sums on a "fee basis" was available to Defendants as an alternative to payment on a salary basis, Defendants cannot establish that they paid the Targeted Employees the required minimum weekly payments on a fee basis, because the payment of sales commissions *does not* constitute payment on a fee basis. The unambiguous language of the Highly Compensated Employee regulation itself establishes that payment on a

4

commission basis is *different* from payment on a fee basis.  Pronouncements of the Department of Labor made in connection with the adoption of 29 C.F.R. § 541.601 reinforce the distinction between fee payments and the payment of sales commissions, and that the adoption of that regulation did not alter the rule that commissions cannot be considered in determining whether the required minimum weekly amount has been paid to highly compensated employees sought to be exempted as executive, administrative or professional employees under the regulation.

Finally, even if Defendants were able to satisfy the compensation requirements of the regulation by showing payment on a fee basis (which they cannot), and even if payment of sales commissions did constitute payment on a fee basis (which it does not), Defendants still cannot carry their burden of establishing the exempt status of the Targeted Plaintiffs, because Defendants cannot satisfy even the streamlined duties test by which highly compensated employees' exempt status may be determined.  Executive duties are the only duties upon which Defendants base their claim of exemption.  The facts urged by Defendants as proof that the Targeted Plaintiffs performed the duties of exempt executive employees fall far short of the mark.

## ARGUMENT

The FLSA generally requires employers to pay their employees one and one-half times their regular rate of pay for overtime work, i.e., work performed in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  However, the FLSA includes various exemptions from the obligation to pay the additional compensation for overtime work.  One such exemption, and the exemption at issue in this action, relieves employers from the obligation to pay overtime compensation to "any employee employed in a bona fide executive, administrative, or

professional capacity . . . or in the capacity of an outside salesman (as such terms are defined and delimited from time to time by regulations of the [Secretary of Labor] . . .)." 29 U.S.C. § 213(a)(1).

Since the enactment of, and pursuant to the authority conferred by, the statute just quoted, the Department of Labor has promulgated a substantial set of regulations which, as amended from time to time, bear the imposing title of "Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Computer and Outside Sales Employees." These regulations are codified within Title 29, Part 541 of the Code of Federal Regulations, beginning at 29 C.F.R. § 541.1, and will be referred to herein as the "White Collar Exemption Regulations." These regulations comprise forty-nine separate sections of Title 29 of the Code of Federal Regulations; those sections are arranged among eight subparts.

One of those forty-nine sections is 29 C.F.R. § 541.601, entitled "Highly Compensated Employees." That section is the sole basis for Defendants' claim that the Targeted Plaintiffs are overtime-exempt.

The FLSA's statutory exemption applicable to persons "employed in a bona fide executive, administrative, or professional capacity," like all other exemptions from the FLSA's requirements, is to be narrowly construed against the employers seeking to assert it. *Schaefer v. Indiana Michigan Power Co.*, 358 F.3d 394, 399-400 (6th Cir. 2004); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 70 (6th Cir. 1997). The employer bears not only the burden of proof, but also the burden on each element of the claimed exemption. *Schaefer*, 358 F.3d at 400 (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The employer must establish that the employees whose overtime work is sought to be exempted "plainly and unmistakably" fit within

6

the exemption. *Homemakers Home and Health Care Services, Inc. v. Carden,* 538 F.2d 98, 101 (6th Cir.1976) (citing Arnold, 361 U.S. at 392 (1960). To carry its burden, the employer must show by "clear and affirmative evidence" that an employee falls within an exemption. *Thomas v. Speedway SuperAmerica, LLC,* 506 F.3d 496, 502 (6th Cir. 2007); *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007).

For the reasons discussed in section 2 below, Defendants may not claim to compensate the Targeted Plaintiffs on a fee basis, which is an alternative payment method permitted with respect to employees – whether "highly compensated" or not – whom the employer seeks to qualify as exempt *administrative* or *professional* employees. Required weekly compensation of at least $455.00 *must* be paid on a salary basis to any employees with respect to whom an employer claims the *executive* exemption, even when those employees receive in excess of $100,000 of annual compensation, because nothing in 29 C.F.R. § 541.601, the regulatory section that addresses highly compensated employees, removes the employer's obligation to satisfy *all* requirements necessary to claim the executive exemption, except as specifically altered by 29 C.F.R. § 541.601.

Defendants, however, did not pay any portion of the compensation earned by the Targeted Plaintiffs on a salary basis. Indeed, the Defendants' Motion and Memorandum do not even argue compliance with the salary basis compensation element of the executive exemption. Instead, Defendants are attempting to use a compensation method available only with respect to *administrative and professional* employees, while simultaneously claiming to satisfy *only* the streamlined duties test for exempt *executives*. Defendants cannot have it both ways.

7

For the reasons discussed in section 3 below, the Defendants have failed to establish the absence of a material disputed fact as to whether the Targeted Plaintiffs customarily and regularly performed any duties necessary for the executive exemption to apply. Therefore, even if Defendants could use fee basis compensation as the basis for exempting the Targeted Plaintiffs, and even if straight commission compensation constituted payment on a fee basis, the exemption claim still would fail based on Defendants' inability to satisfy even the streamlined executive duties test.

Because the essential component of the Defendants' late-breaking exemption claim is Defendants' argument that the payment of sales commissions constitutes payment on a fee basis, and that argument is both dispositive of Defendants' Motion and devoid of merit, Plaintiffs will first address that argument.

1.      **It is undisputed that the Targeted Plaintiffs, like all other Wyndham Sales Representatives, were paid on a commission basis; payment on a commission basis does not constitute payment on a fee basis.**

"Wyndham sales representatives are compensated on a commission basis." *Defendants' Memorandum, at 10.* Wyndham devotes the middle third of its Memorandum arguing reasons why payment on a commission basis is also payment on a fee basis. That argument cannot stand, because it contravenes the specific language of the very regulation that Defendants say makes the Targeted Plaintiffs exempt from overtime compensation – the section of the White Collar Exemption Regulations that addresses "Highly Compensated Employees." The key provisions of the regulation bearing on this issue are the following:

(a)  An employee with ***total annual compensation*** of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an

8

executive, administrative or professional employee identified in subparts B, C or D of this part.

(b) (1) "Total annual compensation" **must** include at least $455 per week paid **on a salary or fee basis**. Total annual compensation **may also include commissions**, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52–week period. Total annual compensation does not include board, lodging and other facilities as defined in § 541.606, and does not include payments for medical insurance, payments for life insurance, contributions to retirement plans and the cost of other fringe benefits.

29 C.F.R. § 541.601(a)–(b)(emphasis added).

Subsection (a) of this section specifies the total compensation that must be received to qualify an employee as a "highly compensated employee," and then goes on to explain the significance of such qualification:  the employee need only customarily and regularly perform <u>at least one</u> of the exempt duties applicable to the executive, administrative and professional exemptions, which duties are identified in subparts B (executive), C (administrative) and D (professional).  This lesser showing of exempt duties for "highly compensated employees" is sometimes referred to as the "streamlined" duties test, because employees who do not qualify as "highly compensated" must perform *all* of the duties and possess all of the responsibilities the Department has identified as essential to the particular exemption being sought, *e.g.*, the duties identified in subpart B as necessary for application of the executive exemption.

Subsection (b) of 29 C.F.R. § 541.601 imposes an additional compensation test with which an employer must comply to take advantage of the streamlined duties test applicable to "highly compensated employees."  The first sentence of subsection (b) states that the required total annual compensation required by subsection (a) *must include* "at least $455 per week paid on a salary or fee basis."  The second sentence of subsection (b) says that the required Total Compensation *may also include* **commissions**, nondiscretionary bonuses and other non-

9

discretionary compensation earned during a 52–week period.  The required weekly compensation must be paid on a salary or fee basis; the total annual compensation may include commissions. If commissions were compensation paid on a "fee basis," as Defendants suggest, they could be counted against the required weekly compensation, not relegated to other compensation categories that can only be considered for purposes of satisfying the total annual compensation.

Thus, the very regulatory provision upon which Defendants base their claim that the Targeted Plaintiffs are exempt clearly shows that compensation in the form of sales commissions is *not* compensation on a fee basis.  The Sixth Circuit has repeatedly held that the first step when interpreting a regulation is to determine the regulation's plain meaning, and, if the plain meaning is determinable, then plain meaning is also the final step of interpretation. *In re Artic Exp., Inc.*, 636 F.3d 781, 791 (6th Cir. 2011); *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000); *Bartlik v. U.S. Dep't of Labor*, 62 F.3d 163, 165–66 (6th Cir. 1995). Since the plain meaning of 29 C.F.R. § 541.601 can be determined from the language of that section, no further regulatory interpretation is required to determine that commissions cannot be fees for purposes of satisfying the minimum weekly compensation Wyndham was required to pay the Targeted Plaintiffs in order for them to be exempt "highly compensated employees."

Although the regulatory language itself is sufficient to establish that commission payments are not fee payments, a recent pronouncement from the Department of Labor drives the point ever further home.  In the Department of Labor's commentary concerning its 2016 regulatory amendments, the Department includes the following remarks concerning the proper interpretation of 29 C.F.R. § 541.601 before adoption of the 2016 amendments, as well as the Departments conviction that nothing contained in the 2016 amendments would alter that

10

meaning. These comments, which are set forth below, make very clear that commission payments do not constitute fee payments for purposes of satisfying the compensation requirements of § 541.601:

> ***The Department reemphasizes that this rulemaking does not change the requirement in § 541.601(b)(1) that highly compensated employees must receive at least the standard salary amount each pay period on a salary or fee basis without regard to the payment of nondiscretionary bonuses and incentive payments.*** While few commenters addressed this precise issue, the Clearing House Association urged the Department to permit all types of bonuses and incentive payments to satisfy the entire HCE [i.e., Highly Compensated Employees] total compensation requirement, including the standard salary amount due each pay period. ***While nondiscretionary bonuses and incentive payments (including commissions) may be counted toward the HCE total annual compensation requirement, the HCE test does not allow employers to credit these payment forms toward the standard salary requirement.*** We conclude that permitting employers to use nondiscretionary bonuses and incentive payments to satisfy the standard salary amount is not appropriate because employers are already permitted to fulfill almost two-thirds of the HCE total annual compensation requirement with ***commissions***, nondiscretionary bonuses, and other forms of non- discretionary deferred compensation (paid at least annually). Thus, when conducting the HCE analysis employers must remain mindful that employees must receive the full standard salary amount each pay period on a salary or fee basis.

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees,* Federal Register, 81 FR 32391-1, at 32427 (May 23, 2016) (emphasis added).

The Fee Basis regulation contained in the White Collar Exemption Regulations does not advance Defendants' argument that sales commissions constitute fee payments. That regulation provides as follows:

> (a) Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. <u>An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time required for its completion.</u> These payments resemble piecework payments with the important distinction that generally a "fee"

11

is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

(b) To determine whether the fee payment meets the minimum amount of salary required for exemption under these regulations, the amount paid to the employee will be tested by determining the time worked on the job and whether the fee payment is at a rate that would amount to at least $455 per week if the employee worked 40 hours. Thus, an artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement for exemption since earnings at this rate would yield the artist $500 if 40 hours were worked.

29 C.F.R. § 541.605. (Emphasis added.) The essence of fee basis compensation is set forth in the underlined portion of the regulation just quoted.

Defendants claim that Wyndham's commission-based compensation falls within the meaning of fee basis compensation set forth in the foregoing regulation. Defendants state that the "single job" in the Wyndham system is a "completed sale," and that the "agreed sum" is Wyndham's formulaic commission calculation methodology. *Defendants' Memorandum, at 6-7.* The flaw in Defendants' analysis is that the "single jobs" performed by Wyndham Sales Representatives on a daily and weekly basis are not just "completed sales." Not every prospective purchaser of Wyndham timeshare interests agrees to make a purchase, but the Sales Representatives have to work those prospects just as hard (perhaps harder) on unsuccessful sale efforts as in those which are successful in procuring a sale for Wyndham. The Targeted Plaintiffs and other Wyndham Sales Representatives were not "paid an agreed sum" for the substantial number of single jobs that did result in a sale; they were paid nothing at all. Indeed, even successful sales activity sometimes resulted in the Sales Representatives receiving no payment at all, because Wyndham reserved and regularly enforced a right to "charge back" to the

12

Sales Representatives, for a period of one year following a completed sale of Wyndham timeshare interests, the full amount of commissions previously earned by and paid to the sales representatives if the purchaser rescinded the transaction. *See March 20, 2014 Declaration of Kyle Smith, Doc. 60-1 ("Kyle Smith Declaration"), ¶¶ 24, 25.* So even with respect to "single jobs" in which the Targeted Plaintiffs procured a sale for Wyndham, there was no "agreed payment" until expiration of Wyndham's time to recover a paid commission already paid expired, unless an "agreement" to receive no compensation at all on a completed sale can be said to be an "agreed payment."

Defendants even claim that the example cited in the regulations of an artist commissioned to paint a picture and being paid on a fee basis is "an apt analogy" to Wyndham's commission-based compensation. *Defendants' Memorandum, at 8.* That is simply not true. In the artist and painting example included in the regulation, the artist gets the agreed upon fee payment *without regard to result of the job*; she receives the same payment whether the job results in a masterpiece or an atrocity. Wyndham Sales Representatives get paid on individual jobs (sales pitches) only if their work produces a sale for Wyndham, and Wyndham does not later reclaim the commission paid on that sale.

Defendants' Memorandum discusses at length whether the applicable regulations (and Sections 541.601 and 541.605 are <u>not</u> the only applicable regulations) require that any of the compensation necessary for an employee to qualify as "highly compensated" must be "guaranteed." *See Defendants' Memorandum, at 8-11.* That argument is beside the point, because Defendants did not pay any portion of the compensation of the Targeted Plaintiffs or any Opt-in Plaintiffs on a salary basis.

Defendants' Memorandum cites and discusses, as purported support for Defendants' argument that commissions are fee payments, an unreported District Court case from Kansas, *Herr v. McCormick Grain-The Heiman Company, Inc.,* 1994 WL 544513 (D. Kan. Sept. 13, 1994), which Defendants describe as the "only one [that] could be found that deals with the question of whether a commission is also a fee." The case provides no support for Wyndham's argument. For one thing, the opinion predates promulgation of the regulations discussed above at the outset of this section of Argument. Further, the court's reasoning is suspect, but somewhat understandable, since the court did not have the benefit of the Department of Labor's 2004 regulations and commentary on the commission issue. In any event, the District Court's decision in *Herr* was appealed to the Tenth Circuit, which *vacated* the District Court's decision that the plaintiff in Herr was an exempt administrative employee. *Herr v. Heiman,* 75 F.3d 1509, 1514 (10th Cir. 1996). Thus, the district court opinion in *Herr* upon which Defendants rely has *no* precedential, persuasive or other effect on the issue of whether commission-based compensation constitutes payment on a fee basis.

For all of these reasons, the Defendants cannot establish that the Targeted Plaintiffs' mandatory weekly compensation was paid on a salary basis or fee basis. It follows that Defendants cannot establish their entitlement, as a matter of law, to render the Targeted Plaintiffs overtime-exempt pursuant to the provisions of the "Highly Compensated Employees" regulation. Accordingly, and on this basis alone, Defendants' Motion should be denied.

**2. Defendants cannot rely upon the streamlined duties test available to legitimate highly compensated executive employees, because Defendants did not compensate the Targeted Plaintiffs on a salary basis.**

14

Defendants are attempting to render the Targeted Plaintiffs exempt from overtime compensation entitlement by combining a compensation system (fee basis), available only to exempt administrative and professional employees, with a duties test applicable only to exempt executives. Plaintiffs' research has disclosed no authority, regulatory or case law, bearing on this unusual approach. The absence of any such authority is not surprising, and likely stems from the fact that this startling proposition likely has never been advanced, or if advanced, never actually adjudicated. The approach would only be possible if 29 C.F.R. § 541.601 were a totally free-standing exemption, untethered to the forty-eight other sections of the White Collar Exemption Regulations.

However, 29 C.F.R. § 541.601 creates no such free-standing exemption. Nor could it legally do so, because Congress has not enacted an exemption for "highly compensated employees," and has neither authorized nor directed the Department of Labor to "define and delimit" an exemption for highly compensated employees. Instead, 29 C.F.R. § 541.601 simply modifies two key existing regulatory requirements with respect to "highly compensated" employees whom an employer is attempting to exempt under either the executive, administrative, or professional exemptions defined and delimited elsewhere in the White Collar Exemption Regulations.

First, the compensation requirements applicable to the three exemptions are modified with respect to highly compensated employee. All of the compensation paid to employees who are not highly compensated must be paid on either a salary basis or a fee basis. As discussed above in Section 1 of this argument, *supra* at 10-11, only the required minimum weekly

15

compensation *must* be paid on a salary basis or fee basis; the remaining compensation can include commission income, nondiscretionary bonuses, etc.

Second, 29 C.F.R. § 541.601 provides that, with respect to employees who satisfy both the total annual compensation requirements and the mandatory weekly compensation requirements, the employer seeking the exemption may take advantage of streamlined duties tests. These two changes are the only changes made by 29 C.F.R. § 541.601 to the regulations applicable to executive, administrative, or professional exemption claims asserted with respect to employees who are not highly compensated.

The regulatory section that appears just before 29 C.F.R. § 541.601 in Subpart G (Salary Requirements) of the White Collar Exemption Regulations provides in pertinent part as follows:

29 C.F.R. § 541.600  Amount of salary required.

(a)  To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the [FLSA], an employee must be compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities. Administrative and professional employees may also be paid on a fee basis, as defined in § 541.605.

29 C.F.R. § 541.601. Hence, employees sought to be exempted as executives must be paid on a salary basis, but employees sought to be exempted as administrative or professional employees may be paid on either a salary basis or a fee basis. Nothing in 29 C.F.R. § 541.601 changes the requirement that executives must be paid on a *salary* basis as a condition to their exempt status.

When the highly compensated employee regulation is properly viewed as part of a comprehensive collection of regulations defining and delimiting all three of the executive, administrative and professional exemptions, it is clear that the exemption requirements delineated elsewhere in the White Collar Exemption Regulations under any of the three

16

exemptions were undisturbed by the promulgation of 29 C.F.R. § 541.601.  In other words, and in the context of the issues presented by Defendants' Motion, highly compensated employees sought to be exempted as executives must pass both the compensation requirements and the duties requirements applicable to the exemption of executives who are not highly compensated, except to the extent specifically changed by 29 C.F.R. § 541.601.  Likewise, highly compensated employees sought to be exempted under the administrative exemption must pass both the compensation requirements and the duties requirements applicable to the administrative exemption requirements applicable to employees who are not highly compensated, except to the extent specifically changed by 29 C.F.R. § 541.601.  What is not permitted, however, is the sort of mix-and-match approach attempted by Defendants in which the fee basis compensation alternative available only to the administrative and professional exemption can be coupled with an executive exemption duties test.

Therefore, the required weekly compensation owed to highly compensated employees must be paid on a salary basis, just as employees who are not highly compensated must be paid on a salary basis. Defendants simply *are not allowed* to utilize fee basis compensation as a means of satisfying the minimum weekly compensation requirement of 29 C.F.R. § 541.601.

    **3.**    **Defendants have not established the absence of a genuine issue of material fact with respect to whether the duties and responsibilities performed by the Targeted Employees satisfy the streamlined executive exemption duties test.**

Defendants assert that the Targeted Plaintiffs "customarily and regularly performed one or more of the executive exemption duties by managing a team of sales representatives, conducting sales training, and directing the actions of two or more representatives." *Defendants'*

17

*Memorandum, at 11-17.*[citation to Motion or Memorandum]  This is a mischaracterization of what the evidentiary materials relied upon actually show.

The generally applicable rules for qualification as an exempt executive are as follows:

**§ 541.100 General rule for executive employees.**

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;

 (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

As discussed in Sections 1 and 2 of this Argument, the compensation test for "highly compensated employees" includes both a minimum annual compensation requirement, and a mandatory weekly compensation requirement that is substantively identical to item (1) above, which Defendants cannot satisfy as a matter of law.  Had that requirement been satisfied, the streamlined duties test for highly compensated employees would require the Targeted Plaintiffs to satisfy at least one of the descriptions set forth as items (2), (3) and (4) above.  Therefore, Defendants must "prove by clear and affirmative evidence"[3] that the Targeted Plaintiffs:

---

[3] *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007); *Renfro v. Indiana Michigan Power Co.*, 497 F.3d 573, 576 (6th Cir. 2007).

18

- Have, as their *primary duty*, management of the enterprise in which the employee is employed, or of a customarily recognized department or subdivision thereof;

- Customarily and regularly direct the work of two or more other employees; or

- Have the authority to hire or fire other employees, or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

For the reasons stated below, Defendants cannot prove that the actual duties performed by the Targeted Plaintiffs satisfy any of the foregoing requirements, and have not established their entitlement to summary judgment on that issue against the Targeted Plaintiffs.

    A.   <u>None of the Targeted Plaintiffs' primary duty was management of the enterprise in which the employee is employed, or of a customarily recognized department or subdivision thereof.</u>

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. There can be no doubt about the primary duty of the Targeted Plaintiffs; it was selling timeshare interests. Defendants plainly did not hire the Targeted Plaintiffs to perform management functions, and paid the Targeted Plaintiffs *nothing* for the activities that Defendants characterize as "management" activities. The Targeted Plaintiffs earned money for one thing only – selling lots and lots of time share interests. To both the Defendants and the Targeted Plaintiffs, the Sales Representatives' sales activities and results were the only activities that provided them an economic benefit, and the only activities Defendants deemed worthy of compensation. Defendants are careful not to claim that any of the Targeted Plaintiffs had, *as their primary duty*, management of the Defendants' enterprise any segment thereof. In their Statement of Undisputed Facts, (*see Doc. 238*), Defendants state respectively for each of Jesse Pierce, Craig Thrift, Thomas Garrett, and Michael Pierce, Sr., that they "customarily and regularly managed a team of sales representatives . . .".

19

*Doc. 238, ¶¶ 9, 20, 31, and 35.* Plaintiffs dispute that contention, which is not a fact but a legal conclusion. More fundamentally, however, the contention is wholly irrelevant and immaterial, because the "management of the enterprise" duty requirement is only satisfied if that duty is primary.

At page 12 of Defendants' Memorandum, Defendants quote verbatim a section of the regulations (29 C.F.R. § 541.102) which provides the lengthy listing of specific activities or tasks that can be considered management activities, and therefore should be taken into account in determining whether an employee's *primary duty* is management of the enterprise, or a recognized department or subdivision thereof, as required by 29 C.F.R. § 541.100(a)(2). Defendants then spend several pages of discussion citing deposition testimony and a few documents they contend to be evidence of "management by training," as if a single cited activity could constitute compliance with the streamlined duties test available for legitimate "highly compensated employees" under 29 C.F.R. § 601(a)(2).

For example, Defendants contend – with respect to each of the Targeted Plaintiffs – that they "customarily and regularly . . . conducted sales training." That is of no moment. Customarily and regularly conducting sales training, even if accompanied by the customary and regular performance of other activities listed in 29 C.F.R. § 541.102, does not establish that any of the Targeted Plaintiffs' *primary duty* was management of the enterprise or a segment thereof.

Although Defendants advance the standard and conclusory mantra that Michael Pierce "customarily and regularly managed a team of sales representatives, conducted sales training, and directed the actions of two or more employees," the only actual facts asserted against him in Defendants' Statement of Undisputed Facts relate solely to alleged training activities. *See Doc.*

*238, ¶¶ 36-39.*   Accordingly, summary judgment cannot be entered against Michael Pierce because Defendants have cited no evidence that he satisfied any of the three duties requirements set forth in 29 C.F.R. § 541.100(a).   With respect to the other three Targeted Plaintiffs, the training-related allegations of fact are irrelevant and immaterial, and should not be considered by the Court, because Defendants have not alleged that management of the enterprise or a segment thereof was the primary duty of any Targeted Plaintiff.

      B.      <u>Defendants have not put forth sufficient undisputed material factual evidence to establish, as a matter of law, that the Targeted Plaintiffs had authority to hire or fire other employees, or that the Targeted Plaintiffs' suggestions and recommendations as to hiring, firing, advancement, promotion or any other change in status of other employees was given particular weight.</u>

Defendants allege that Jesse Pierce, Craig Thrift and Thomas Garrett all satisfy this prong of the duties test for exempt executives.   With respect to Jesse Pierce, Defendants' entire evidence consists of two e-mails sent by Mr. Pierce during his employment as a sales representative during the three year recovery period, from which the Court is asked to determine that he had the requisite personnel.   In one e-mail, Mr. Pierce closes with the statement ". . . .it's time for us to get rid of the trash bud."   It is odd to characterize this as a suggestion or recommendation as to hiring, firing, advancement, etc. when Mr. Pierce mentioned no names of the persons Wyndham assumes he's asking John Geissberger to "get rid of."   In the other e-mail he includes the names of eleven people and inserts in the chart of names "This is what I need my team to look like."   Defendants characterize that as a "recommendation concerning the hiring and firing of other employees." The e-mail says nothing whatsoever about hiring, firing, or promotion of anyone, and Defendants are inferring a great deal from a few innocuous words.

21

More likely, it is simply a request for reconfiguration of manager Andy Payne's team, to which Mr. Pierce was assigned, because he thought it would help the team.

Even if Defendants' characterization of these two e-mails is accurate, Defendants have made, at most, only half of their required showing. Defendants have directed the Court's attention to *no evidence* that Mr. Pierce's e-mails were well received by Wyndham management, let alone given particular weight.

The deposition testimony of Craig Thrift cited by Defendants in their Memorandum and Statement of Facts does suggest that Mr. Thrift sometimes made suggestions regarding who he would like to have on the sales team on which Mr. Thrift worked, and those requests were granted "at least for a person or two." However these requests did not involve hiring, firing, advancement, or promotion; they merely involved moving personnel around among various teams, all of which had the same status within the corporate hierarchy. Regarding his testimony about paying another Wyndham sales representative out of his own pocket to assist him in doing portions of his work so that he could devote more time to his principal duty of selling time share interests, Defendants have proffered no evidence that he suggested or recommended such an arrangement to Wyndham; given the nature of the arrangement, common sense dictates that he would not have done so.

Defendants cite no evidence that Mr. Garrett was involved in suggesting or recommending to Wyndham management that the company take any action involving the hiring, firing, advancement, or promotion of other employees, or any other personnel issues. Wyndham has not alleged or provided any evidence suggesting that any of the Targeted Plaintiffs had authority to hire and fire employees on behalf of Wyndham.

22

In sum, Defendants have not presented clear and affirmative evidence that the Targeted Plaintiffs had authority to hire or fire other employees, or that their suggestions and recommendations as to hiring, firing, advancement, promotion or any other change in the status of other employees was given particular weight.

C. <u>Defendants have not put forth sufficient undisputed material factual evidence to establish, as a matter of law, that the Targeted Plaintiffs customarily and regularly directed the work of two or more other employees.</u>

The Targeted Plaintiffs all worked as Sales Representatives during the portions of the recovery period that they worked for Wyndham. They were assigned to "teams" of approximately ten sales representatives, and all members of each team were either In-House Sales Representatives or Front Line Sales Representatives. There were at least three levels of on-site Wyndham management above the Sales Representatives. Each team was headed by a manager, whose title was either In-House Manager or Front Line Manager, who reported to either a Front Line Director of Sales or an In-House Director of Sales; however, at certain locations and times the In-House and Front Line Sales Managers reported to a Senior Manager, who in turn reported to the appropriate Director of Sales. The two Directors of Sales reported to an on-site Vice President. *Kyle Smith Declaration, ¶¶ 12, 13*.

Thus, the "two or more" employees whose work Defendants claim was "directed" by the Targeted Plaintiffs were peers of the Targeted Plaintiffs, from a hierarchical standpoint, not subordinates. The people whose work each Targeted Plaintiff is accused of "directing" had the same immediate and upstream supervisors, and were ultimately accountable to the same three or four tiers of management personnel, as the Targeted Plaintiffs. For purposes of this prong of the "executive" duties test for exemption, this commonality is particularly important, because

23

although the White Collar Exemption Regulations do not define the words "direct the work," the specific regulatory section applicable to this prong of the duties test (29 C.F.R. § 541.104) uses the terms "direct the work" (subsection (a)), "supervision" (subsections (b) and (d)), and "supervises" (subsection (c) interchangeably, clearly connoting that the ostensible executive must be directing the work of a subordinate, not someone on the same rung of the corporate ladder. Indeed, courts called upon to determine whether someone is an exempt executive are evaluating the relationship between persons on two different rungs of the corporate ladder, not the same rung.

The contextual disconnect created by Defendants' effort to convert Sales Representatives paid on a pure commission basis, whose undisputed principal duty is the actual selling of time share interests, into some species of supervisor or manager results in a mischaracterization of the activities Defendants claim to be "directing the work of two or more other employees." For example, what Defendants refer to as a Sales Representative "directing" (*i.e.*, ordering or commanding) so-called runners or hookers to go to resort guests rooms or suites to try to persuade the guests to come to the office for a sales presentation is actually a more collaborative process. The only significant, and recurring, activity that Defendants claim to be "directing two or more other" employees is the Targeted Plaintiffs' utilization of so-called "hookers," or "front-enders" to make contact with resort guests or other prospect and get them to commit to come to the sales office for a sales presentation, or tour.

Most, if not all, "back-enders" (Sales Representatives skilled as closing sales) prefer to work the table in the Sales Office and prefer not to do their own "hooking." As Jesse Pierce testified at his deposition, many Sales Representatives are quite skilled at what they do, and

24

success at getting prospects "away from vacation into our office so we can sell them something" is a valuable skill, success at which is dependent on the "hooker" properly dealing with "thousands of variables." *Transcript of January 11, 2016 Deposition of Jesse Pierce, 140:17 – 142:11.*

Not surprisingly, then, good hookers like to have relationships with good back-enders, and good back-enders need relationships with good hookers, so much so that when their combined efforts are successful, the parties share the earned commissions. Back-enders are seeking the assistance of hookers, not ordering them to do something; they avail themselves of the hookers' skills in getting prospects to the sales office, so the back-ender can then sell a time share interest to the mutual advantage of both Sales Representatives. If the hooker fails to get the guests into the office, "we would have someone else call up, either the manager or a seasoned veteran to call up to try a different angle to get the people to come down." If those further efforts fail, no sale is made and no one makes any money. *Id.* In essence, the hooker and the closer team up to work a tour; their interests are common, not antagonistic. Would a legitimate supervisor ever share a portion of his income with a subordinate for performing his/her end of the bargain? The fact that it took Jesse Pierce about a year and a half to be able to identify the "better seasoned people to do a better job" (*Defendants' Statement of Fact, ¶ 11*) did not change the nature of what he was doing; he simply became more selective and better at selecting the colleagues with whom he wished to work.

Craig Thrift used different terminology than Jesse Pierce to describe the initial transaction between him and a hooker; Mr. Thrift testified that he would "give" his tour to a "front-ender" who would then try to hook the sale by making arrangements to get the prospects

25

to come to the sales office later so that Mr. Thrift could try to close a sale with them, and if a sale was made, the commission would be split between Mr. Thrift and the front-ender/hooker. This is not a situation of a boss giving orders; it is two sales professionals teaming up to pursue a common objective for their mutual professional and economic benefit.

Thomas Garrett's deposition testimony concerning his dealings with front-enders is entirely consistent with the cited and reproduced testimony of Jesse Pierce and Craig Thrift. *See Defendants' Statement of Fact, ¶ 32.*

As shown in this Argument Section 3, Defendants have failed to show, as a matter of law and undisputed material fact, that the Targeted Plaintiffs satisfy any of the three alternative requirements of the exempt "executive" duties tests. For that reason as well as the reasons set forth in Argument Sections 1 and 2, none of the Targeted Plaintiffs can be adjudged to be exempt "executives" as that status is determined under 29 C.F.R. § 541.601.

## CONCLUSION

Based upon the facts, law and argument set forth above, the Court should deny Defendants' Motion.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes
Martin D. Holmes, # 012122
Darrell L. West, # 005962
Fifth Third Center, Suite 1401
424 Church Street
Nashville, TN 37219
Phone: (615) 244-6538
Facsimile: (844) 670-6009
mdholmes@dickinsonwright.com
dwest@dickinsonwright.com

26

Sherry D. O. Taylor # P62288
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
Phone: (313) 223-3500
Facsimile: (844) 670-6009
soneal@dickinsonwright.com

*Attorneys for Plaintiffs and Opt-in Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2017, a true and correct copy of the foregoing has been sent via electronic mail to the following:

O. John Norris, III
Craig Cowart
Colby S. Morgan, Jr.
JACKSON LEWIS LLP
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
norrisj@jacksonlewis.com
craig.cowart@jacksonlewis.com
morganc@jacksonlewis.com

William J. Anthony
JACKSON LEWIS LLP
18 Corporate Woods Boulevard
Albany, NY 12211
anthonyw@jacksonlewis.com

Paul DeCamp
JACKSON LEWIS LLP
10701 Parkridge Blvd., Suite 300
Reston, VA 20191
decampp@jacksonlewis.com

/s/ Martin D. Holmes
Martin D. Holmes

27