UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JESSE PIERCE and MICHAEL PIERCE, )
on behalf of themselves and all others )
similarly situated, )
)
       Plaintiff, )
)
v. ) No. 3:13-CV-641-CCS
)
WYNDHAM VACATION RESORTS, INC., and )
WYNDHAM VACATION OWNERSHIP, INC., )
)
       Defendants. )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 193].

Now before the Court is the Defendants' Motion to Prohibit Plaintiffs from Introducing Expert Testimony and Expert Report in Evidence [Doc. 218] and the Defendants' *Daubert* Motion to Exclude Expert Testimony of Dr. Dwight D. Steward [Doc. 283]. Both Motions have been fully briefed. During a telephonic status conference with the parties on August 7, 2017, the Plaintiffs stated that oral argument on these Motions was not necessary. The Defendants stated that oral argument "may" be necessary on the *Daubert* Motion, unless the Court finds otherwise. The Court has reviewed the filings and finds that oral argument is not necessary. The Motions are now ripe for adjudication. Accordingly, for the reasons more fully set forth below, the Court finds the Defendants' Motions [**Docs. 218 and 283**] well-taken, and they are **GRANTED**.

**I. BACKGROUND**

The Complaint in this matter was filed on October 23, 2013. [Doc. 1]. The Complaint alleges that certain Sales Representatives who worked at the Defendants' offices worked off-the-clock and were not paid for working in excess of 40 hours in a work week. [*Id.* at ¶ 2]. The Complaint alleges that the Defendants willfully violated the Fair Labor Standards Act ("FLSA"). [*Id.* at ¶ 3]. The action was conditionally certified on August 21, 2014. [Doc. 84]. Later, on December 16, 2016, the Court limited discovery to the Plaintiffs' representative sample and permitted the Defendants to move for additional discovery beyond the representative sample and/or try to establish class decertification. [Doc. 215].

The Plaintiffs have retained Dwight D. Steward, Ph.D., an economist and statistician in this case. Dr. Steward states in his expert report that he was retained to "provide an analysis of the manner in which statistical analysis and sampling could be used to determine the existence and frequency of the alleged FLSA Collective wage and hour violations at issue in this case." [Doc. 218-2 at ¶ 7]. Dr. Steward opines that "generally accepted statistical sampling methodologies can be used in this case to reliably analyze the Plaintiffs' allegations." [*Id.* at ¶ 6]. In forming his opinion, Dr. Steward reviewed the pleadings in this case, declarations from Defendants' employees and company representatives, and Plaintiffs' deposition testimonies. [*Id.* at ¶¶ 13-14]. He understands that the Defendants have provided some information, including payroll, time and personnel information for most, if not all of the Sales Representatives (i.e., select time cards, personnel files, pay stubs, commission statements, WynTime data, Time Details records, time card audit trail documents, policy documents, job postings and select W-2s forms). [*Id.* at ¶ 14].

He continues that the existence and frequency of the alleged FLSA violations at issue and alleged damages can be determined by using a multi-stage process. [*Id.* at ¶ 16]. First, general

accepted statistical sampling methodologies, such as simple random sampling, will be used to select a representative statistical sample of Sales Representatives. [*Id.*]. He states that a simple statistical random sampling methodology can be utilized to produce a statistically significant representative sample in this case under certain conditions. [*Id.* at ¶ 17]. He further opines that the "statistical representative sample can then be used to determine the existence of uncompensated off-the-clock work time, the frequency of such violations, and the average number of hours worked." [*Id.*].

Dr. Steward states that he was requested to construct two statistical samples: (1) Sales Representatives who worked for the Defendants more than six months and (2) those who worked for the Defendants less than six months. [*Id.* at ¶ 19]. He explains how these samples were chosen by using a simple statistical random sampling methodology and the statistical program STATA. [*Id.* at ¶¶ 20]. He states that each sample has a margin of error about 10% or less but that the actual margin of error will depend on a number of other factors. [*Id.* at ¶¶ 21, 23]. He further explains that the statistical methodology can be used reliably in the current case to analyze the wage and hour violations alleged by the Sales Representatives. [*Id.* at ¶ 24]. He concludes that "generally accepted statistical sampling methodologies in conjunction with certain employment records and information from the Defendants can be used in this case to reliably analyze the existence and frequency of Sales Representatives' allegations of unpaid work and wage and hour violations. [*Id.* at ¶ 25].

## II.     POSITIONS OF THE PARTIES

As noted above, the Defendants have filed two Motions requesting that the Court exclude the Plaintiffs' expert witness, Dr. Steward. The Court will summarize the parties' positions on each Motion.

### A. Defendants' Motion to Prohibit Plaintiffs from Introducing Expert Testimony and Expert Report in Evidence

The Defendants assert [Doc. 218] that the Plaintiffs failed to make a complete expert disclosure. The Defendants argue that Dr. Steward's opinion is not based on sufficient data and that he has not applied reliable principles and methods in this case. The Defendants assert that Dr. Steward has not performed any analysis. Further, the Defendants contend that the Plaintiffs are out of time to file an expert report. The Defendants argue that Federal Rule of Civil Procedure 37(c) states that if a party fails to provide information as required by Rule 26(a), the party is not allowed to use such information, unless the failure is substantially justified or is harmless. The Defendants state that the Plaintiffs cannot show substantial justification or harmlessness. Furthermore, the Defendants assert that Dr. Steward's opinion fails to meet *Daubert* standards.

The Plaintiffs respond [Doc. 222] that Dr. Steward is a highly-qualified economist and statistician and that he was retained to perform statistical and economic analysis regarding the alleged wage and hour violations in this case. The Plaintiffs contend that Dr. Steward opines that generally accepted statistical sampling methodologies can be used in this case to reliably analyze Plaintiffs' allegations of FLSA violations by the Defendants. The Plaintiffs state that Dr. Steward describes how the two statistical representative sample groups were constructrf and can be used to determine the existence of uncompensated off-the-clock work time, the frequency of such violations, and the average number of hours worked. The Plaintiffs submit that the Defendants' arguments against the Plaintiffs' expert are directed at the weight of the expert's testimony and not to its admissibility. Further, the Plaintiffs state that Dr. Steward's report comports with *Daubert* standards and satisfies the requirements of Rules 702 and 703 of the Federal Rules of Evidence. The Plaintiffs continue that they have not failed in their duty to make a complete expert disclosure and that Dr. Steward's report meets the requirements of Rule 26(a)(2)(B).

The Defendants reply [Doc. 224] that Dr. Steward has not completed his report and that no weight can be assigned to Dr. Steward's report. Finally, the Defendants assert that the Plaintiffs have not distinguished Sixth Circuit precedents.

### B. Defendants' *Daubert* Motion

The Defendants argue that Dr. Steward's testimony cannot meet the *Daubert* standards for admissibility of expert testimony. The Defendants state that Dr. Steward's testimony will be of no help to the Court as the trier of fact.

The Plaintiffs respond [Doc. 293] that the expert report comports with *Daubert* standards and satisfies the requirement under Rule 702. The Plaintiffs assert that the Defendants' arguments go to the weight of Dr. Steward's opinions, and not to their admissibility. The Plaintiffs state that the appropriate action is for the Court to hear Dr. Steward's testimony and cross examination thereof, the Defendants' expert and cross examination thereof, and the testimony of other witnesses. The Plaintiffs explain that the Court can then determine how much weight to afford Dr. Steward's opinions.

The Defendants' Reply [Doc. 297] states that Dr. Steward does not properly validate Plaintiffs' representative sample and that he has not provided any scientific methodology for the Court to apply.

### III. ANALYSIS

As mentioned above, the Defendants have filed two Motions to prohibit Dr. Steward from testifying. Because the Defendants' Motions are similar, the Court will address them contemporaneously. The Defendants primarily argue that Dr. Steward submitted an incomplete expert report pursuant to Rule 26(a)(2) and that his expert report does not meet the principles outlined in *Daubert*.

5

Case 3:13-cv-00641-CCS    Document 368    Filed 10/06/17    Page 5 of 12    PageID #: 8848

Specifically, Federal Rule of Civil Procedure 26(a)(2)(B) provides as follows:

> **(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>> **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;
>>
>> **(ii)** the facts or data considered by the witness in forming them;
>>
>> **(iii)** any exhibits that will be used to summarize or support them;
>>
>> **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;
>>
>> **(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>>
>> **(vi)** a statement of the compensation to be paid for the study and testimony in the case.

Rule 37(c)(1) provides, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allows to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Court may order other sanctions in addition to or instead of the above. Fed. R. Civ. P. 37(c)(1).

In addition, Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

6

> training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. The *Daubert* standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing *Daubert*, 509 U.S. at 593–94). "Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty., Tenn.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 138-39 (1999)). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey*, 187 F. Supp. 2d at 70-71 (quoting *Daubert*, 509 U.S. at 593-94).

7

The Rule 702 inquiry as "a flexible one," and the *Daubert* factors do not constitute a definitive checklist or test. *Kumho Tire Co.*, 526 U.S. at 138-39 (citing *Daubert*, 509 U.S. at 593). Although the Rule 702 requirements are treated liberally, "'that does not mean that a witness is an expert simply because he claims to be.'" *Coffey*, 187 F. Supp. 2d at 971 (citing *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)).

With the above analysis in mind, the Court turns to the present matter. As mentioned above, Dr. Steward was retained to "provide an analysis of the manner in which statistical analysis and sampling could be used to determine the existence and frequency of the alleged FLSA collective wage and hour violations at issue." [Doc. 218-2 at ¶ 7]. The Plaintiffs insist that Dr. Steward's expert report contains a complete statement of all his opinions that he will express and the basis and reasons for them. The Court, however, finds Dr. Steward's expert report deficient in a number of ways.

Specifically, Dr. Steward states that the existence and frequency of FLSA violations can be determined by using a multi-stage process: (1) generally accepted statistical sampling methodologies will be used; (2) this will produce a statistically significant representative sample "under certain conditions;" and then (3) this sample can be used to determine the existence of uncompensated off-the-work time, the frequency of violations, and the average number of hours worked. While he lists his methodology, he does not explain why such methodology is appropriate in this case or how this methodology will demonstrate the existence and frequency of the alleged FLSA violations. He simply does not apply the methodology.

Moreover, Dr. Steward explains that the number of members selected for the representative statistical sample will be determined by a number of factors, which he provides, but states that such factors will be addressed using other information produced in discovery. [Doc. 218-2 at ¶

8

16]. He then discusses that a simple statistical random sampling methodology can be utilized to produce a statistically significant representative sample "under certain conditions," but he does not explain what "conditions" he refers to, how they apply, if at all, to this case, or how they would apply or could be applied.

Dr. Steward states that he was requested to create two representative groups in this case: (1) employees who worked more than six months, and (2) employees who worked less than six months. Each group has a margin of error of 10% or less, but he could not provide an actual margin of error because it was dependent on a number of other factors, which apparently have not been applied to this case, such as the statistical variation of the actual representative proof obtained. Further, he opines that if there are other employment factors that need to be accounted for in the construction of the representative sample, the statistical sampling methodology can be adjusted to account for the factors. It is not clear what employment factors need to be accounted for, what adjustments would be made, how they would be made, or what effect they would have on the "representativeness of the sample." The Court agrees with the Defendants in that Dr. Steward has not performed a complete analysis and that he has not extracted the data and facts that are necessary for a final analysis.

To be sure, the Plaintiffs state that they retained Dr. Steward to "perform statistical and economic analysis regarding alleged wage hour violations in this case." [Doc. 222 at 4]. Dr. Steward states that he was retained to provide an analysis of the manner in which statistical analysis and sampling could be used to determine the existence and frequency of the alleged wage and hour violations. [Doc. 218-2 at ¶ 7]. While he offered a methodology to arrive at a statistical representative sample, he offered no opinions on how, or if, he is going to use this sample or what this sample demonstrates. Further, he has not performed any "statistical and economic analysis

9

regarding the alleged wage hour violations," nor does he offer opinions regarding the "existence of uncompensated off-the-work time, the frequency of such violations, and the average number of hours worked." [*Id.* at ¶ 17]. If he plans to use his methodology to offer actual opinions, such information should have been included in his disclosure, but it was not. Although the Plaintiffs assert that Dr. Steward's report meets the requirements of Rule 702, the Court finds that his opinions as offered are not beneficial to the Court.

By way of illustration, paragraph 16 in his expert report addresses the number of members selected for the representative statistical sample and how such number will be selected by looking to a variety of factors. The expert report does not state, however, what "number of members" should be used, or who decides the number, or what is reasonable in the "number of factors" listed. For example, there is no expertise or opinion stated as to the type of sampling methodology utilized, what the appropriate ("desired") margin of error should be, what the statistical confidence level of that type of methodology would be, or what "specifics of the Sales Representatives' employment" should be considered and utilized.

Further, with respect to paragraph 17 of the expert report, Dr. Steward states that "under certain conditions" one can utilize a "simple statistical random sampling methodology." The Court is left to guess what these "certain conditions" are, whether they apply here, how they apply here, or why they would apply here. He further opines that the "statistical representative sample can then be used to determine the existence of uncompensated off-the-clock work time, the frequency of such violations, and the average number of hours worked." However, there is no discussion as to how one can "determine" (i.e., extrapolate) "the existence of uncompensated off-the-clock work time, the frequency of such violations, and the average number of hours worked." There is no

10

indication that he has performed such analysis or that he has applied his own methodology to make such a determination.

Paragraphs 19-23 suffer from similar deficiencies. These paragraphs merely state that Dr. Steward randomly selected 25.2% of the list of 139 Sales Representatives who worked greater than six months and 52.0% of those Sales Representatives who worked less than six months. There is nothing to support those percentages being reasonable or why they are different. He also qualifies the margin of error by stating that it depends on a "number of established factors," *see* paragraphs 21 and 23, "such as the statistical variation of the actual representative proof obtained," but he does not explain what "actual representative proof" means or includes or what the nature or extent of the "statistical variation" would be. In a similar vein, in paragraph 21, Dr. Steward states that "statistical sampling methodology can be adjusted to account" for the employment factors, but he does not explain how the sampling methodology can be adjusted to account for these unknown factors or what that does to the margin of error. Further, in paragraph 24, Dr. Steward explains that the statistical methodology "can be used reliably in the current case to analyze the wage and hour violations alleged by the Sales Representatives." This blanket, conclusionary statement seems belied by the expert's own modifiers, including "under certain conditions," "dependent on a number of established factors," and "the sampling method can be adjusted."

Finally, the Plaintiffs state in a footnote that discovery is ongoing. [Doc. 222 at 11]. The Plaintiffs assert that Defendants' expert recognizes the potential need to supplement or amend an expert disclosure. At this time, however, Plaintiffs have not moved to supplement or indicated that they have supplemented Dr. Steward's expert report.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court finds the Defendants' Motion to Prohibit Plaintiffs from Introducing Expert Testimony and Expert Report in Evidence [**Doc. 218**] and the Defendants' *Daubert* Motion to Exclude Expert Testimony of Dr. Dwight D. Steward [**Doc. 283**] well-taken, and they are **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge