**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) ) | CASE NO. 3:13-cv-641 |
| Plaintiffs, | ) ) | District Judge: Pamela L. Reeves |
| | ) | Magistrate Judge: Debra C. Poplin |
| vs. | ) ) | |
| WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) | COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938 |
| | ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' BRIEF IN SUPPORT OF REASSESSING DAMAGES**
**FOLLOWING APPEAL**

Pursuant to the Court's July 12, 2019 Order (Doc. 465), Plaintiffs[1] file the following Brief in Support of Reassessing Damages Following Appeal.

## I.    INTRODUCTION

During the 14-day bench trial, Plaintiffs established through "overwhelming evidence" that Defendants Wyndham Vacation Resorts, Inc., and Wyndham Vacation Ownership, Inc. ("Wyndham") violated the Fair Labor Standards Act (the "FLSA") by executing a willful and "consistent practice of prohibiting [Plaintiffs] from recording overtime and managers doctoring timecards to prevent overtime compensation." (Memo. Opinion, Doc. 427, PageID #16300.) On appeal, the Sixth Circuit affirmed the District Court's finding of liability, holding that the evidence revealed that Wyndham "executed an across-the-board time-shaving policy that failed to compensate [Plaintiffs] for the hours they worked." *See Pierce v. Wyndham Vacation Resorts,*

---

[1] For purposes of this Brief, "Plaintiffs" refer to the named Plaintiffs and Opt-in Plaintiffs.

*Inc.*, 922 F.3d 741, 748 (6th Cir. 2019).  As a result, the only issue before the District Court is to reassess damages owed to Plaintiffs.

## II.     BACKGROUND

Wyndham is a time share company that owns and operates resorts around the world, including the four Tennessee resorts at issue in this case - Wyndham Vacations Resort Great Smokies Lodge, Wyndham Smoky Mountains, Wyndham Resort at Fairfield Glade, and Wyndham Nashville.  *See Pierce*, 922 F.3d at 744.  As part of its business model, Wyndham employs Sales Representatives to sell ownership interests and non-ownership trial packages in Wyndham's resort properties.  *Id.*  At the four Tennessee locations, Wyndham divided its sales force into three groups: 1) Front Line Sales Representatives who sell ownership interests to prospective owners who do not already own Wyndham timeshares; 2) In House Sales Representatives who sell upgraded ownership interests to current Wyndham owners; and 3) Discovery Sales Representatives who sell non-ownership trial packages to prospects.  *Id.*

Plaintiffs filed this FLSA collective action on behalf of themselves and other current and former Sales Representatives who worked at one of the four Tennessee resorts from October 23, 2010 to October 31, 2013 (the "Recovery Period").  Plaintiffs alleged that Wyndham willfully violated the FLSA by implementing an illegal policy and practice of forcing its Sales Representatives to underreport their hours, to work off the clock, and/or by altering the employees' timesheets in order to avoid paying overtime.

2

## III.    PROCEDURAL HISTORY

### A.    The District Court

The District Court certified 156 Sales Representatives "from all three [sales] positions and all four locations—as a collective action and allowed them to proceed to trial based on representative evidence." *Pierce*, 922 F.3d at 745.  At trial, Plaintiffs presented live testimony of twenty-six witnesses,[2] and five Plaintiffs who testified by deposition.  In rebuttal, the Court allowed Plaintiffs to designate testimony from two additional Plaintiffs.  As a result, Plaintiffs called 30 of the 156 Plaintiffs at trial in their case in chief (19.23% of the opt-in class), who were either part of a random sample or a Plaintiff that Wyndham specifically *chose* to depose.  *Id.* at 748.

Wyndham presented the live testimony of only nine witnesses, all of whom were still employed by Wyndham.  (Memo. Opinion, R. 427, PageID #16186-16187, 16314.)  Wyndham also designated the deposition testimony from twelve additional Plaintiffs who did not testify at trial to which Plaintiffs filed counter-designations for each.  Including deposition designations and counter-designations, the District Court "received testimony from 44 of the 156 employees," or 28.2% of the opt-in class, all of whom were deposed by Wyndham.  *Pierce*, 922 F.3d at 748.

Plaintiffs presented overwhelming testimony and evidence of Wyndham's illegal practice of requiring Plaintiffs to work off the clock.  First, Plaintiffs were regularly:  a) told by managers that they could not record more than 40 hours on the clock each week (Exhibit 3, Column B; Exhibit 2, Column B[3]); b) instructed by managers to clock out and continue working in order to

---

[2] The twenty-six witnesses consisted of twenty-five Plaintiffs and one third-party witness, Kristen Creson, a former Administrative Manager for Wyndham.

[3] Exhibits 1-5 filed contemporaneously herewith (and which were exhibited to Plaintiffs' Proposed Findings of Fact and Conclusions of Law following trial) are spreadsheet indexes with columns referencing Plaintiffs' trial and

stay under 40 hours on the clock each week (Exhibit 3, Column C); and c) forced to sign inaccurate (and often forged) "Missed Punch" forms and time cards after managers altered their time records. (Exhibit 2, Column D; Exhibit 4, Column C.) This was confirmed by Kristen Creson, a third-party witness and former Administrative Manager for Wyndham. (Transcript, Vol. IV, 799:16-800:4; 806:19-807:9; 812:9-816:21; 817:3-830:4; 830:19-836:16.) In addition, Managers were required to enforce Wyndham's illegal practice of not allowing Plaintiffs to be on the clock for more than 40 hours in a workweek, by altering Plaintiffs' time records (i.e. "shaving" time) and/or taking over clocking in/out for some Plaintiffs. (Exhibit 2, Columns D & E; Exhibit 4, Columns C & E.)

Second, to keep from recording over 40 hours on the clock in a work week, Plaintiffs were required to do any number of the following: a) clock out before accruing 40 hours on the clock, but continue working (Exhibit 2, Column B; Exhibit 3, Columns B & C); b) clock out when not on a tour, but continue working (Exhibit 3, Column D); c) clock out/in for lunch breaks not taken (Exhibit 3, Column C); d) clock out at a certain time of day, but continue working (Exhibit 3, Column E); e) clock out before working Nightline (Exhibit 3, Column F); and/or f) work off the clock at party weekends ("PAWs") and/or dinner parties. (Exhibit 3, Column G.)

Based on the overwhelming proof, Plaintiffs demonstrated that Wyndham's time records were grossly inaccurate and did not reflect the actual number of hours that Plaintiffs worked. Specifically, Wyndham's time records reflected a gross disparity in the number of hours per

---

deposition testimony on various facts. Since first filed, Plaintiffs have revised Exhibit 5 to correct the average number of hours worked by 1) Mark Kost from 56 hours to an average of 53.3 hours per week; 2) Tony Siler from 60 hours to an average of 50 hours per week; and 3) Bobby Stallings from 55 hours to an average of 61 hours per week. This correction slightly changed the average number of hours worked by all Plaintiffs from 63.66 to 63.48. Plaintiffs acknowledged, on appeal, that Kost and Siler's average number of hours were lower than first reported.

4

week that Plaintiffs' purportedly worked while clocked in (largely in the range of 20-30 hours per week, many times even fewer) compared to the testimony of Plaintiffs that they worked on average 63.48 hours per week or more.  (Exhibit 4, Columns B, C & E; and Exhibit 5, Avg. No. of Actual Hrs. Worked.[4])   In addition, Plaintiffs introduced voluminous records showing thousands of time entries recorded on Missed Punch Forms that were altered by Wyndham's managers on a regular and routine basis, including forged and unsigned Missed Punch Forms, that were done to shave Plaintiffs' time on the clock to under 40 hours per work week.  (Exhibit 2, Column D; Exhibit 4, Column C.)

After a 14-day bench trial, the District Court found that:

- Plaintiffs and Plaintiffs' witness were "highly credible" (Memo. Opinion, R. 427, PageID #16186-16187, 16314);

- Wyndham's witnesses were either not credible and/or not relevant (*id.* at 16310-16314)[5];

- Wyndham's time records are grossly inaccurate and support Plaintiffs' claim that they were performing work while not clocked in (*id.* at 16306);

- Plaintiffs' Punch Forms and timecards were forged and/or unsigned (*id.*);

- Wyndham violated the FLSA by prohibiting Plaintiffs from "accurately recording their time and by instructing sales managers to edit time records to ensure they did not reflect over forty hours per week" (Final Judgment, R. 429, PageID #16346-16347);

- Plaintiffs "performed work for which they were not properly compensated and that the amount and extent of the work performed could be determined as a matter of just and reasonable inference" (*id.*);

---

[4] Exhibit 5 is an index of Plaintiffs' trial and deposition testimony regarding the average number of hours actually worked each week.  Based on all Plaintiffs' testimony, the average number of hours worked each work is 63.48 hours.

[5] Plaintiffs will discuss the District Court's specific credibility determinations in more detail below.

- Wyndham "failed to come forward with credible and precise amount of the work performed and failed to negate the reasonableness of the inference drawn by the District Court from all the evidence" (*id.*);

- the testifying Plaintiffs fairly represented the non-testifying Plaintiffs (*id.*);

- Plaintiffs were entitled to liquidated damages (*id.*); and,

- Plaintiffs were entitled to a three-year recovery period based on Wyndham's willful conduct (*id.*).

While the District Court recognized the estimated-average approach for calculating damages pursuant to *Anderson v Mt. Clemens Pottery Co.*, 328 U.S. 680, 686 (1946) and *Monroe v. FTS USA, LLC,* 860 F.3d 389, 411-412 (6th Circ. 2017), the District Court erred by engaging in what both parties agree was arbitrary number picking and by failing to follow the burden-shifting framework of *Mt. Clemens* in arriving at the average number of hours that Plaintiffs worked each week. Despite finding that Plaintiffs were highly credible; Wyndham's witnesses were either not credible and/or not relevant; and that Wyndham "failed to keep records of the precise time Plaintiffs worked," (Memo. Opinion, R. 427, PageID #16314), the District Court erroneously concluded that Plaintiffs only averaged 52 hours per week, rather than adopting the unrebutted proof presented by Plaintiffs establishing an average of 63.66 hours. (Final Judgment, R. 429, PageID #16347). Accordingly, the District Court entered a judgment in the Plaintiffs' favor in the amount of $2,512,962.91 in overtime pay, and $2,512,962.91 in liquidated damages, for a total judgment of $5,025,925.82, plus Plaintiffs' reasonable attorney's fees and costs. *Id.*

Albeit for different reasons, both parties appealed the District Court's award for basing it on an arbitrarily selected 52-hour work week average which was wholly unsupported by the record evidence. In addition, Plaintiffs appealed on the grounds that the District Court erroneously applied the *Mt. Clemens* burden-shifting framework when arriving at the arbitrarily

6

selected 52-hour work week average.  Wyndham also appealed arguing that the District Court

erred by certifying the collective action and finding that the representative evidence established

that Wyndham violated the FLSA.

### B.    The Sixth Circuit

On appeal, the Sixth Circuit affirmed that Plaintiffs provided sufficient representative

evidence to prove that Wyndham violated the FLSA.  In-so-doing, the Sixth Circuit affirmed

liability across the board:

> As in *Monroe*, ***the testifying employees, in addition to other evidence, showed that Wyndham systematically executed a policy to avoid paying overtime.*** All of the testifying plaintiffs consistently said that Wyndham required them to underreport their time or altered their recorded time. ***They all provided an average of the number of hours they worked each week, ranging from 50 to 80 hours per week***, and their basis for that number: the mandatory morning meeting, tours throughout the day, frequent late-night work and special events, and six- or seven-day work weeks. But, through it all, they didn't worry about keeping an accurate account of their hours because the company told them it would recoup any overtime pay from their commissions.

> The administrative manager at the Nashville location testified that upper management instructed that sales employees could not be paid overtime and that managers should alter employees' timecards to show no more than 40 hours per week. The vice president of sales and marketing at the two Smoky Mountain locations acknowledged that Wyndham performed an audit that showed that salespeople worked off the clock. Several emails from managers also mentioned Wyndham's no-overtime-pay policy. ***The evidence thus showed that Wyndham executed an across-the-board time-shaving policy that failed to compensate the employees for the hours they worked.***

*Pierce*, 922 F.3d 741 at 748 (emphasis added).

In addition, the Sixth Circuit did not disturb the District Court's credibility findings.

Rather, the Sixth Circuit held that Wyndham had deposed every member of the sample and could

have called anyone it wanted to rebut the testimony of those who testified at trial.  *Id.*  Because

Wyndham failed to rebut Plaintiffs' testimony, it left the Sixth Circuit "with no warrant to doubt

the reliability of the [Plaintiffs'] witnesses." *Id.* (*citing Monroe*, 860 F.3d at 410-11).

While the Sixth Circuit affirmed the District Court's finding of liability, and did not overturn the District Court's credibility determinations, the District court vacated the District Court's award based upon a 52-hour work week average, holding that the District Court erred by including the average number of hours for Discovery Sales Representatives in the overall average number of hours worked. Instead of including Discovery Representatives in the calculation of the average number of hours worked by Front Line and In House Sales Representatives, the Sixth Circuit held that the District Court should have been placed Discovery Representatives in a separate subclass. *Pierce*, 922 F.3d at 747. The Sixth Circuit thus vacated the District Court's award based on a 52-hour work week average and remanded this case to the District Court to reassess damages.

## IV.   APPLICABLE STANDARDS

### A.   Standard on Remand

The effect of an order vacating the trial court's decision "is to place the parties in the same position as if no decision had been rendered at all." *Shelton v. Rutherford Cty., Tenn.*, No. 3:09-CV-0413, 2010 WL 1010039, at *7 (M.D. Tenn. Mar. 18, 2010) (*citing State v. Cribbs*, 967 S.W.2d 773, 788 (Tenn. 1998). This is because a vacated judgment is "rendered void." *Cribbs*, 967 S.W.2d at 788 (*quoting* Black's Law Dictionary 1548 (6th ed. 1990) (defining "'vacate' as '[t]o annul; to set aside; to cancel or rescind. To render an act void; as to vacate an entry of record, or a judgment.'"); *see also* 1 B J.M. Moore et al., Moore's Federal Practice ¶ 0.416[2], at 517 (2d ed. 1992) (judgment that has been vacated, reversed or set aside on appeal is deprived of all conclusive effect) (remaining citations omitted).

Because the Sixth Circuit vacated the District Court's damages award which was based

upon a 52-hour work week average, the District Court's award is now void and irrelevant. As a result, it is the District Court's duty is to review the record afresh and make an independent damages determination based on the evidentiary record, unmoored from the previous damage award.

**B.     Standard for Reviewing Trial Court Credibility Determinations**

"Findings of fact shall not be set aside unless clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Moreover, when a District Court's findings of fact rest on *credibility determinations*, "Rule 52(a) demands *even greater deference* to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575 (emphasis added) (*citing Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)); *see also Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir. 1994).

**C.     *Mt. Clemens'* Burden-Shifting Framework Is The Proper Standard For Determining Damages**

The District Court correctly found that "Wyndham's time records [were] grossly inaccurate," as "the overwhelming evidence establish[ed] a consistent practice of prohibiting [Plaintiffs] from recording overtime and managers doctoring timecards to prevent overtime compensation." (Memo. Opinion, R. 427, PageID #16300, #16306.) The District Court also found "Plaintiffs and Plaintiffs' witness (Kristen Creson), who testified that managers edited timecards, *highly credible* on this issue, especially in light of the documentary evidence and managers' own admission that they did in fact doctor timecards." (*Id.* at 16300-16301.) (Emphasis added). Further, "there were voluminous records showing the Punch Forms and timecards were forged and/or unsigned." *Id.*

9

When the employer's records are inaccurate, the Supreme Court and the Sixth Circuit

mandate that the District Court follow the burden-shifting framework set forth in *Mt. Clemens*:

> [W]here the employer's records are inaccurate or inadequate and the employee
> cannot offer convincing substitutes…an employee has carried out his burden if he
> proves that he has in fact performed work for which he was improperly
> compensated and if he produces sufficient evidence to show the amount and
> extent of that work as a matter of just and reasonable inference. The employee's
> burden of proof on damages can be relaxed…because employees rarely keep
> work records, which is the employer's duty under the Act. Once the employees
> satisfy their relaxed burden for establishing the extent of uncompensated work,
> "[t]he burden then shifts to the employer to come forward with evidence of the
> precise amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's evidence."

*Monroe*, 860 F.3d at 398-99 (*quoting Mt. Clemens*, 66 S.Ct. at 1192) (internal citations omitted).

"If the employer fails to produce such evidence, the court may then award damages to the

employee, even though the result be only approximate." *Mt. Clemens*, 66 S.Ct. at 1192.

### D. The Estimated-Average Approach is the Proper Standard for Determining Damages on Behalf of Both Testifying and Non-Testifying Plaintiffs

Although Plaintiffs disagree with the District Court conclusion that Plaintiffs only

worked on average of 52 hours each week, the District Court properly used the estimated-

average approach to calculate damages on behalf of all testifying and nontestifying Plaintiffs

because it explicitly found that Wyndham's timekeeping records were "grossly inaccurate." The

Sixth Circuit did not reverse or criticize the District Court's use of the estimated-average

approach. Rather, the Sixth Circuit remanded the District Court's damages award because it

found Discovery Sales Representatives were not similarly situated to Front Line and In House

Sales Representatives.

*Mt. Clemens* "acknowledges the use of 'an estimated average of overtime worked' to

calculate damages for nontestifying employees." *Mt. Clemens*, 328 U.S. at 686. The Sixth

10

Circuit follows *Mt. Clemens,* and thus applies an estimated-average approach to calculate damages for nontestifying plaintiffs in wage and hour cases. *See Monroe*, 860 F.3d at 411-12 (affirming average hours per week worked by testifying technicians and application to nontestifying technicians). As a result, the "testimony of fairly representative employees may be the basis for an award of back wages to nontestifying employees." *Id.* at 411. Other circuits and District Courts, including the Middle District of Tennessee, "have *explicitly* approved of an estimated average." *Id.* (emphasis added).

## V. *MT. CLEMENS* MANDATES THAT THE DISTRICT COURT ENTER AN AWARD FOR PLAINTIFFS BASED UPON THEIR ESTIMATED AVERAGE NUMBER OF HOURS WORKED PER WEEK

### A. The Sixth Circuit Did Not Disturb the District Court's Credibility Findings

The Sixth Circuit did not disturb the District Court's credibility findings, including its finding that Plaintiffs' witnesses were credible and Wyndham's witnesses were either not credible and/or offered irrelevant testimony. While Wyndham tried to counter the District Court's conclusion that Wyndham had "executed an across-the-board time-shaving policy that failed to compensate the employees for the hours they worked," Wyndham "failed to rebut Plaintiffs' testimony." *Pierce,* 922 F.3d at 748. As a result, the Sixth Circuit held that Wyndham left it no reason "to doubt the reliability of [Plaintiffs'] witnesses." *Id.* (*citing Monroe*, 860 F.3d at 410-11).

After nearly every witness for Plaintiffs, the District Court noted Wyndham did not call the direct supervisors implicated by Plaintiffs' testifying witnesses to impeach or contradict their testimony, even though Wyndham could have done so. For example, in its Memorandum Opinion, the District Court discussed a number of Plaintiffs who worked at both the Crossing and the Lodge during the Recovery Period (Memo. Opinion, Doc. 427, PageID #16206, #16233),

11

and summarized their testimony regarding the average number of hours each Plaintiff worked as follows:

> With respect to the average number of hours worked during a workweek, the Plaintiffs testified as follows:• Craig Thrift: 65 hours; • Rebecca Slone: 60 hours; • James Dodson: 60 to 65 hours; • Claudia Bogardus: 60 to 65 hours; • Belinda Drew: 65 hours (as an In-House and Front-Line Sales Representative); • Perry MaGee: 72-74 hours; • Kisa Abbott: 65 hours; • Brett Williamson: 60 plus hours; • Bryan Tesh: 65 hours to upper 80s; • Thomas Garrett: 60 to 70 hours; • Russell Cooper: 76 to 87 hours; • James Campbell: 70 hours; • Jesse Pierce: 80 hours.

*Id.* at PageID #16239.

Despite the fact that the above-named Plaintiffs implicated supervisors or members of management, the District Court observed that Defendants did not bother to call any of those individuals to attempt to rebut Plaintiffs' testimony. As a result, the "testimony regarding these individuals was *not* impeached." (*Id.* at PageID #16246) (emphasis added). In fact, the District Court found all testifying Plaintiffs to be credible, including their non-party witness, Ms. Creson, a former Administration Manager for Wyndham, whom the Court found to be "highly credible." (*Id.* at PageID #16246.) Ms. Creson described how she made illegitimate edits to the Sales Representatives' timecards using WynTime:

> She was instructed to make such edits by Dave LaBelle, the site Vice President and later promoted to the area Vice President, and the Directors of Sales, Jerry Prosise and Mike Carneal. Importantly, her testimony was consistent with the ways Plaintiffs described the edits on their timecards and how they were required to sign Punch Forms that did not accurately reflect the time that they worked. Further, she testified that 90% of her edits were not legitimate and were made to keep Sales Representatives' hours under forty.

*Id.* at PageID #16301.

The District Court emphatically stated that "Defendants did not even cross examine Creson, let alone impeach her testimony, *nor did they call as witnesses those against whom she made such damning claims*." *Id.*

12

In stark contrast to the credibility of Plaintiffs' witnesses, the District Court found that Defendants' witnesses were either not credible and/or not relevant. For example, as to current Wyndham employee Elizabeth Matthews, the District Court stated the following:

> Elizabeth Matthews described herself as a "workhorse," yet in October 2010, she recorded on average of 4.4 hours per day. [Ex. 3262]. This means, at best, the undersigned and Matthews do not share the same understanding of a "workhorse," or at worse, ***Matthews was simply not telling the truth***.

*Id.* at PageID #16311 (emphasis added).

In addition, the District Court found that:

> (H)er testimony that her recorded time was accurate is ***unrealistic and incredible*** in light of the fact that Matthews legitimately missed a punch almost every day for a period of six months, had 1,109 missed punches, and her admission that she was a habitual offender at not clocking in. She also testified that everyone was on vacation in January and February, which is ***obviously not credible***.

*Id.* (emphasis added).

The District Court also found current Wyndham employee Connie McGlothin's testimony not credible. After the District Court recounted her testimony regarding her schedule, the Court found as follows:

> [I]t ***does not seem credible*** that she left by 5:00 p.m., to 6:00 p.m., on a daily basis. In this regard, ***the Court also finds the testimony of Nelon, Pierce, Sr., Siler, Tesh, Slone and Stallings—all sales representatives who worked for her—more credible in their testimony than her***. Further, she had inaccurate Punch Forms that she could not adequately explain. [Ex. 3278, 3280]. The Court also finds it unusual that she could recall forty-four sales representatives' average number of hours worked in a workweek up to seven years ago but could not recall if she had ever disciplined Jason Yocum, who she allegedly had to chase down to sign Punch Forms.

*Id.* at PageID #16311 (emphasis added).

Likewise, the District Court found statements by current Wyndham employee, Kyle Smith, the Director of Sales of In House Sales Representatives to not be credible:

13

For instance, while Smith claims he did not know that sales representatives were working while not clocked in until the audit, the Court finds this testimony ***not credible*** because he was sent various emails from Amanda Hill regarding sales representatives' time. [Ex. 1233, 798A]. The Court finds Smith's claims that he did not know what was occurring ***implausible***, given the documentary evidence in this case.

*Id.* at PageID #16313 (emphasis added).

Lastly, while Wyndham claims that its expert's testimony was unrebutted, the District Court ***"did not find Dr. Mitchem's testimony persuasive at all.***" (*Id.* at PageID #16329) (emphasis added).

Ultimately, the District Court rejected the testimony of Wyndham's witnesses and found Wyndham liable for its flagrant violations of the FLSA. In fact, the District Court's summary of all the different means and methods by which Plaintiffs were required to work off the clock is consistent with a finding that all Plaintiffs worked on average 63.48 hours per week (which is separated into subclasses below) and inconsistent with the District Court's arbitrary "compromise" 52 hours per week number:

> [A]ll Plaintiffs testified that they worked while they were not clocked in. They clocked out in between tours despite working, they clocked out for lunch despite not taking a lunch break, they did not clock in for party weekends, dinner parties, or nightline if they were approaching forty hours, and they closed contracts while not clocked in. With respect to closing contracts, Plaintiffs submitted documentary evidence showing that many Plaintiffs, and defense witnesses, were working on the clock while closing a contract. [Ex. 3236]. With respect to closing a contract while not clocked in, Defendants were able to rebut only a few of these entries by explaining that the transactional date and sale date "could" be different, but for a large majority of these entries, the transaction and sale dates are the same. [Ex. 3236]… Accordingly, based on the above findings of fact and the analysis of the FLSA, ***the Court concludes that Wyndham violated the FLSA by prohibiting Sales Representatives from recording or recovering overtime, despite working overtime, and by instructing sales managers to edit timecards to misrepresent the time that Sales Representatives worked to achieve that result***.

*Id.* at PageID #16308-09 (emphasis added).

14

Further, the District Court found that:

> [i]n fact, the overwhelming evidence establishes a consistent practice of prohibiting Sales Representatives from recording overtime and managers doctoring timecards to prevent overtime compensation.

> These two practices were implemented by requiring Sales Representatives to work off the clock and requiring Sales Representatives to sign inaccurate Punch Forms after managers altered their timecards (or risk being placed on overage). Many times managers simply forged Punch Forms. In furtherance of Wyndham's unwritten policy to not record overtime, Sales Representatives (1) clocked out when not on tour but were still working, (2) clocked out for lunch breaks, despite not taking a lunch break, (3) clocked out before working nightline, if approaching overtime; and (4) did not accurately record time spent working party weekends and/or dinner parties. ***The Court also finds that Plaintiffs worked from home and did not record such hours***, despite their managers having knowledge of such work. *See also* [Ex. 1024] (email from Matt Chodak stating to complete home work every night).

*Id.* at PageID #16300 (emphasis added).

The District Court's above findings, as well as its indisputable findings that Wyndham's time records were "grossly inadequate," triggered application of the *Mt. Clemens* burden-shifting framework, which required Wyndham to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Monroe*, 860 F.3d at 398-99 (*quoting Mt. Clemens*, 66 S.Ct. at 1192). The Court explicitly found that Wyndham failed to do so. As a result, the District Court found that Wyndham "*failed to come forward with a credible and precise amount of the work performed and failed to negate the reasonableness of the inference drawn by the Court from all the evidence in this case*" necessary to rebut Plaintiffs' proof. *Id.* at PageID #16338 (emphasis added). Accordingly, the District Court should have entered an award based upon the average number of hours that numerous Plaintiffs testified they worked. Nevertheless, (as stated

15

previously) that finding is now a nullity, and this Court's charge is to make an independent review of the evidentiary record and render a damages award in accordance with *Mt. Clemens*.

**B.** *Mt. Clemens* **Requires That the District Court Enter an Award for Front Line and In House Sales Representatives Based on an Average of 63.54[6] Hours Worked Per Week**

The evidentiary record overwhelmingly supports an inference that Front Line and In House Sales Representatives worked an average of 63.54 hours per week. As a result, the District Court should now enter an award in favor of Front Line and In House Sales Representatives based on that average.

The District Court's unsupported statement that Wyndham had "*somewhat* rebutted Plaintiffs' average," and therefore, a reduction was warranted, (Memo. Opinion, R. 427, PageID #16314-16315,) (emphasis added) was clearly erroneous and not supported by the record or by the District Court's findings in its Memorandum Opinion. First, as mentioned above, the District Court found Plaintiffs' witness highly credible and Defendants' witnesses either not credible and/or not relevant. (*Id.* at 16310-16314.) The District Court further admonished Wyndham for only calling "current employees who testified <u>they</u> did not" know or participate in the FLSA violations, but not calling "those supervisors accused of such." (Memo. Opinion, R. 427, PageID #16309.) (Emphasis in original.)

---

[6] As stated above, <u>Exhibit 5</u> reflects that the average number of hours worked by all testifying Plaintiffs is 63.48 hours per week. Because the Sixth Circuit held that Discovery Sales Representatives should have been a separate subclass, Plaintiffs deducted the average number of hours worked by Bobby Stallings, the Discovery Sales Representative who testified live at trial, from the average number of hours worked by all testifying Plaintiffs. This resulted in an average number of hours worked by all testifying Front Line and In House Sales Representatives of 63.54 hours per week.

Second, the District Court reduced Plaintiffs' average number of hours because it found that the "January and February time period was slower and Sales Representatives generally worked less hours and took off more then." (*Id.* at 16317.) However, the District Court failed to recognize that considering the three holidays that fall within those two months, not all weeks during those two months were slow. Rather, the week before and after New Year's Eve, and the days around Martin Luther King Jr. Day and Valentines' Day were "slammed." (Transcript, R. 393, PageID #11869.) Therefore, out of those 60 days, there are "20 to 25 days that's just going to be slammed." (*Id.*) In addition, the District Court failed to take into account that when the majority of Plaintiffs testified to their average number of hours worked each week, *they had already taken into account* working fewer hours in January and February, but also working more hours during the summer and fall months, thereby deriving an *average* number of hours worked per week. (Chart of Bases for Average Number of Hours Worked, R. 417-1, PageID #14647-14655, Columns B-L.). The District Court also appears to have failed to consider the effect of its own finding that "Plaintiffs worked from home and did not record such hours" and that they were "directed by [a higher-up] to complete homework every night." (Memo. Opinion, Doc 427, Page ID #16300).

Third and lastly, the District Court failed to support or explain how it arrived at an average work week which was almost *12 hours* less than that supported by the record evidence, instead engaging in what Wyndham concedes was an arbitrary "average" that "was not used as a result of a calculation, [but] was used as a way to impose a compromise between the parties." Exhibit 6, Wyndham's Appellate Brief, p. 41.[7]

---

[7] Wyndham reaffirms this observation throughout its Appellate Brief, noting that "[t]he Court's determination of such an 'average' [is] based on unidentified data and derived through unexplained methodology," and that "[t]he court arrived at this [52 hours] 'average' week without any explanation of the math used," concluding that "[t]he

17

Given that Front Line and In House Sales Representatives offered completely credible and sufficient proof that they averaged 63.54 hours per week, the burden shifted to Wyndham to come forward with evidence of the *precise* amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employees' evidence. Because Wyndham's time records were proven and found by the Court to be grossly inaccurate, Wyndham could not possibly show the precise amount of work performed. Further, given the District Court's findings that Wyndham's witnesses lacked credibility, particularly when testifying that Plaintiffs worked only 20-30 hours per week which testimony was completely discredited and rejected by the Court, Wyndham failed to come forward with evidence to negative the reasonableness of the inferences to be drawn from the employees' evidence.

Based on the foregoing, Wyndham clearly failed to meet its *Mt. Clemens* burden. As a result, application of *Mt. Clemens* requires that the District Court enter a finding in favor of the Front Line and In House Sales Representatives   that they worked an average of 63.54 hours per week.

**C.**       ***Mt. Clemens* Requires That the District Court Enter an Award for Discovery Sales Representatives Based on an Average of 61 Hours Worked Per Week**

The Sixth Circuit held that the District Court "should have created a separate subclass for the discovery employees." *Pierce*, 922 F.3d at 747. When doing so, the record evidence supports an award for Discovery Sales Representatives based upon an average of 61 hours worked per week for the same reasons discussed above.

At trial, Plaintiffs called Opt-in Plaintiff Bobby Stallings, who worked exclusively as a

---

Magistrate Judge erroneously applied the burden shifting framework of *Mt. Clemens*." *Id.*, pp. 13, 14, & 16. On this point, Plaintiffs and Wyndham are in agreement.

Discovery Sales Representative.[8]  When considering those employees who worked solely as a Discovery Sales Representative and not as a Front Line or In House Sales Representative, the District Court heard testimony from 1 of the 4 Discovery Plaintiffs, or 25% of those who solely worked in Discovery.  When also considering the 7 employees who worked in Discovery, as well as Front Line and In House positions, the District Court heard testimony from 1 of the 11 Discovery Plaintiffs, or approximately 9%.  Even if the smaller of the percentages is used, this percentage is *higher* than the 5.8% percent of technicians who testified in *Monroe.*

As set forth above, the District Court found that Mr. Stallings was credible.  Although the Sixth Circuit held that Discovery Sales Representatives started later than those working Front Line or In House because the Discovery Sales Representatives did not attend the mandatory morning meeting, *Pierce*, 922 F.3d at 747, the Sixth Circuit's conclusion is not supported by the record.  Rather, the District Court explicitly found that Stallings testified "that he always clocked in about 8:00 a.m." when the mandatory sales meeting began.  (Memo. Opinion, R. 427, PageID #16232, #16230.)  In addition, Stallings testified that his manager "instructed the sales representatives to clock out for lunch and stay clocked out during the next tour," (*Id.* at PageID #16222), and that "sales representatives were required to stay throughout the closing of a contract." (*Id.* at PageID #16231).

This was confirmed by several other Sales Representatives.  Plaintiff Jesse Pierce testified that Discovery Sales Representatives (who, as stated above, attempted to sell trial packages to prospective owners if a Front Line Representative was not successful in making a

---

[8] Of the 156 Sales Representatives, seven worked as Discovery Sales Representatives *in addition to* working Front Line or In House Sales, and only four worked solely as Discovery Sales Representatives during the Recovery Period.

sale of a deeded property) were required to stay through the closing process for any Front Line Sales Representative because "you never knew when a deal was going to blow out." (Transcript, R. 393, PageID# 11831:8-11832:12.) In addition, Opt-in Plaintiff Brett Williamson testified that Discovery Sales Representatives actually stayed later than other Sales Representatives, (Transcript, R. 386, PageID# 11212:23-11213:5), and Plaintiff Mike Pierce testified that Discovery Sales Representatives were always the last to leave the building. (Transcript, R. 393, PageID# 11748:17-11749:15).

The District Court also made findings regarding the average number of hours Mr. Stalling worked. Based upon his credible testimony that he worked at least an average of 55 hours per week at work, plus an additional average of 6 hours per week at home, the District Court found that Mr. Stallings worked *at least* 61 hours per week on average. (Memo. Opinion, R. 427, PageID #16230.) As a result, and for the same reasons set forth above, *Mt. Clemens* requires that the District Court enter an award for Discovery Sales Representatives based on an average of 61 hours worked per week.

## VI.    JUDICIAL ESTOPPEL

Pursuant to the July 12, 2019 Order (Doc. 465), this Court ordered the parties to include in their briefs the issue of whether Defendants should be permitted to raise judicial estoppel at this stage of the litigation related to the purported bankruptcies of Opt-in Plaintiffs who were not included in Defendants' prior Motion for Summary Judgment. Because Plaintiffs cannot respond to an argument Defendants have yet to raise and brief, Plaintiffs will address Wyndham's requested relief in their Response.

20

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order in accordance with *Mt. Clemens* finding that: 1) Front Line and In House Sales Representatives are entitled to damages based upon an average of 63.54 hours of work each week; and 2) Discovery Sales Representatives are entitled to damages based upon an average of 61 hours of work each week.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes
   Martin D. Holmes, # 012122
   Peter F. Klett, #012688
   M. Reid Estes, Jr., #009043
   Autumn L. Gentry #20766
   Fifth Third Center, Suite 800
   424 Church Street
   Nashville, TN 37219
   Phone: (615) 244-6538
   mdholmes@dickinsonwright.com
   pklett@dickinsonwright.com
   restes@dickinsonwright.com
   agentry@dickinsonwright.com

*Attorneys for Plaintiffs and Opt-In Plaintiffs*

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2019, a true and correct copy of the foregoing has been served on the following individuals via the court's electronic service:

Craig A. Cowart
Colby S. Morgan, Jr.
Jackson Lewis P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
craig.cowart@jacksonlewis.com
colby.morgan@jacksonlewis.com

D. Christopher Lauderdale
Jackson Lewis P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
christopher.lauderdale@jacksonlewis.com

William J. Anthony
Jackson Lewis P.C.
18 Corporate Woods Boulevard
Albany, NY 12211
william.anthony@jacksonlewis.com

/s/ Martin D. Holmes
Martin D. Holmes

NASHVILLE 57404-1 703167v1

22