**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

|                                        |   |                                   |
|----------------------------------------|---|-----------------------------------|
| JESSE PIERCE and MICHAEL PIERCE,       | ) |                                   |
| on behalf of themselves and all others | ) |                                   |
| similarly situated,                    | ) | CASE NO. 3:13-cv-641              |
|                                        | ) |                                   |
| Plaintiffs,                            | ) | District Judge: Pamela L. Reeves  |
|                                        | ) | Magistrate Judge: Debra C. Poplin |
| vs.                                    | ) |                                   |
|                                        | ) |                                   |
| WYNDHAM VACATION RESORTS,              | ) | COLLECTIVE ACTION COMPLAINT       |
| INC., and WYNDHAM VACATION             | ) | FOR VIOLATIONS OF THE FAIR        |
| OWNERSHIP, INC.,                       | ) | LABOR STANDARDS ACT OF 1938       |
|                                        | ) |                                   |
| Defendants.                            | ) |                                   |
|                                        | ) |                                   |

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANTS' OPENING BRIEF ON REMAND

Pursuant to the Court's July 12, 2019 Order (Doc. 465), Plaintiffs[1] file the following

Response to Defendants' Opening Brief on Remand.

**I.     WYNDHAM'S NEWLY CONTRIVED MODEL FOR CALCULATING DAMAGES FOR FRONT LINE AND IN HOUSE SALES REPRESENTATIVES IS FATALLY FLAWED, AND CONTRARY TO *MT. CLEMENS*, THE TRIAL RECORD, AND WYNDHAM'S PREVIOUS POSITIONS.**

Although Wyndham correctly cites the burden-shifting framework mandated by the

Supreme Court in *Anderson v Mt. Clemens Pottery Co.*, 66 S.Ct. 1187 (1946), Wyndham

completely ignores *Mt. Clemens* and now claims, for the very first time in the six year history of

this case, that damages should be determined using a newly contrived and fatally flawed

"objectively reliable evidence" model, and also falsely asserts that the District Court found

Plaintiffs' witnesses to be not credible and their testimony unreliable. (Wyndham's Brief, Doc.

467, PageID #17977.)   Wyndham's claims are complete and utter fiction, and diametrically

---

[1] For purposes of this Brief, "Plaintiffs" refer to the named Plaintiffs and Opt-in Plaintiffs.

opposite to the positions it took at trial.

To the contrary, the District Court found that Plaintiffs and Plaintiffs' witness were "highly credible" (Memo. Opinion, Doc. 427, PageID ##16186-16187 and 16314), and conversely, that Wyndham's witnesses were either not credible and/or their testimony was not relevant. (*Id.* at PageID ##16310-16314.) Notwithstanding the District Court's credibility findings, Wyndham now claims, for the first time in *six* years and after a three-week trial and appeal to the Sixth Circuit, that not only can *representative* testimony be used to extrapolate damages from the testifying Plaintiffs to the non-testifying Plaintiffs *without* the need for expert proof, but also that expert proof is no longer needed to calculate damages.[2] Further, Wyndham now claims that damages can be calculated by *its counsel* and extrapolated to the non-testifying Plaintiffs based upon Wyndham's newly contrived "objectively reliable evidence" model. However, Wyndham's purported model for calculating damages for Front Line and In House Sales Representatives is contrary to *Mt. Clemens*, the trial record, and Wyndham's prior positions.

Moreover, Wyndham's recently concocted damages model is fatally flawed because it is directly based on Plaintiffs' Off-The-Clock Study which Wyndham now claims "is the most credible evidence in the record of any late hours worked by Plaintiffs . . . because it reflects the frequency of sales and the actual time that sales contracts were created." (Wyndham's Brief, Doc. 467, PageID #17979.) This is despite the fact that Wyndham argued – on the very first day

---

[2] Throughout the litigation, the three-week trial and appeal, Wyndham argued that representative proof must be based on *statistical* or *scientific* evidence. *See* Ex. 1, Excerpts from Wyndham Appellate Reply, p. 41 ("The lower court went even further and took this arbitrarily selected number of 52 hours and applied it to all the members of the class without any *statistical* or *scientific* basis for doing so.") (Emphasis added.)

2

of trial almost two years ago – that the Study should be excluded because it did not include all sales contracts that Plaintiffs closed. (Tr., Vol. II, Doc. 377, PageID ##9550-9551.) Despite previously conceding in open court that the Study was incomplete and, therefore, inaccurate, Wyndham is now attempting to change course by representing to this Court that the Study constitutes the "best evidence" of how late Plaintiffs worked. This newly hatched contention that the Off-The-Clock Study constitutes "objectively reliable evidence" upon which the Court should base its finding of hours worked is nothing less than an overt misrepresentation,[3] and further proof that Wyndham will argue whatever is most expedient in the moment.

As demonstrated more fully below, the Court should reject Wyndham's newly invented damages model and enter an award for Front Line and In House Sales Representatives consistent with the evidentiary record which overwhelmingly supports a finding that Front Line and In House Sales Representatives worked an average of 63.54 hours per week, as set forth in Plaintiffs' Brief in Support of Reassessing Damages Following Appeal. (Doc. 468.)

A.    **Wyndham's So-Called "Objectively Reliable Evidence" Model Is Contrary To The *Mt. Clemens* Burden-Shifting Framework.**

Pursuant to *Mt. Clemens,* when an employer's records are inaccurate, an employee carries his burden if he "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." This burden of proof on damages is "relaxed . . . because employees rarely keep work records, which is the *employer's duty* under the Act."

---

[3] In advancing this argument, which is polar-opposite to its previous position regarding the Study, Wyndham failed to disclose the fact that it objected to the Study at trial as an unreliable indicator of hours worked precisely because it did not capture *all* contract closings. Indeed, the sole purpose of Plaintiffs' introduction of the Study at trial was to illustrate the inaccuracy of Wyndham's records of hours worked because the Study showed that the Plaintiffs were closing a large number of sales while they were "off-the-clock." Hence, its purpose and use was as a "liability exhibit" to show uncompensated hours worked, and not as a "damages exhibit."

*Monroe v. FTS USA, LLC,* 860 F.3d 389, 398-99 (6th Circ. 2017) (emphasis added) (*quoting Anderson v Mt. Clemens Pottery Co.*, 66 S.Ct. 1187, 1192 (1946)). Once employees satisfy their "relaxed burden for establishing the extent of uncompensated work," *Mt. Clemens* mandates that the burden shifts to the *employer* to "come forward with evidence of the ***precise*** amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id.* (emphasis added). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens*, 66 S.Ct. at 1192.

Notwithstanding Wyndham's wishful thinking to the contrary, the District Court specifically found that Plaintiffs and Plaintiffs' witness were "highly credible" (Memo. Opinion, Doc. 427, PageID ##16186-16187, and 16314), and that Wyndham's witnesses were either not credible and/or their testimony not relevant (*id.* at PageID ##16310-16314). Although Wyndham continues to rely on the testimony of its witnesses throughout its brief because it has no other choice but to do so (Doc. 467), the District Court declared that Wyndham's witnesses lacked *credibility* at least 15 times over a span of 6 pages in its Memorandum Opinion. (*Id.* at PageID ##16310-16314, and 16329.)

After also finding that Wyndham's time records were grossly inaccurate and supported Plaintiffs' claim that they were performing work while not clocked in (*id.* at PageID #16306), the District Court properly found that Plaintiffs "performed work for which they were not properly compensated and that the amount and extent of the work performed could be determined as a matter of just and reasonable inference." (Final Judgment, Doc. 429, PageID ##16346-16347.) Accordingly, the Court correctly found that Plaintiffs satisfied their burden under *Mt. Clemens*.

4

Pursuant to *Mt. Clemens'* framework, the burden then shifted to *Wyndham* to "come forward with evidence of the ***precise*** amount of work performed *or* with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Mt. Clemens*, 66 S.Ct. at 1192[1] (emphasis added). Because Wyndham's time records were indisputably proven, and found by the Court, to be grossly inaccurate, Wyndham could not possibly show the precise amount of work performed by Plaintiffs necessary to rebut Plaintiffs' testimony. Thus, Wyndham's only remaining avenue to attempt to rebut Plaintiffs' proof was to provide "evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Despite being given every opportunity to rebut Plaintiffs' "highly credible" testimony of the hours they worked, Wyndham completely squandered the opportunity to do so at trial. Not only could Wyndham have called any number of co-employees in an effort to rebut Plaintiffs' testimony, it could have also called any number of supervisors (many of whom still worked for Wyndham) who Plaintiffs specifically implicated as having made them work off the clock, or as having doctored their time records. However, as the District Court pointed out repeatedly, Wyndham failed to do so.

Although the District Court erroneously stated in conclusory fashion that Wyndham had *"somewhat* rebutted Plaintiffs' average" (Memo. Opinion, Doc. 427, PageID ##16314-16315) (emphasis added), which Plaintiffs' submit was wholly unsupported by the record,[4] the District Court ultimately found that Wyndham "failed to come forward with credible and precise amount of the work performed and failed to negate the reasonableness of the inference drawn by the

---

[4] Even if the evidentiary record supported a finding that Wyndham *somewhat* rebutted the "just and reasonable inference of hours worked" established by Plaintiffs' evidence, by arbitrarily lopping-off over 10 hours of overtime work from the 60-plus hours the evidence showed the Plaintiffs worked on average per week, the District Court's finding regarding the average number of hours worked constituted a dramatic departure from the testimony and evidence he relied on as credible, and from his finding that that testimony was only *somewhat* rebutted.

5

District Court from all the evidence."  (Memo. Opinion, Doc. 427, PageID #16338; Final Judgment, Doc. 429, PageID #16346.)  Accordingly, the District Court should have entered an award based upon the average number of hours that the credible, overwhelming weight of the evidence demonstrated that Plaintiffs worked.

At trial, Wyndham was neither able to present the precise number of hours Plaintiffs worked, nor cobble together even modest evidence to negative the reasonableness of the inference to be drawn from Plaintiffs' evidence.  Therefore, the District Court found liability across-the-board which the Sixth Circuit affirmed.  As a result, the Court should enter an award for Front Line and In House Sales Representatives based upon an average of 63.54 hours worked per week.

      **B.**      **Wyndham's Claim That The District Court's Damages Determination Was Based On A Finding That Plaintiffs Were Not Credible Is Completely Disingenuous And Inconsistent With Wyndham's Previous Contention That The District Court's Damages Determination Was Based Purely On Arbitrary Number Picking.**

Wyndham claims that the District Court arrived at a damages award based upon 52 hours of work each week because it found Plaintiffs to not be credible.[5] At the same time, Wyndham has repeatedly argued that the District Court arbitrarily pulled the 52 hour number out of "thin air."  Not only are Wyndham's assertions a complete misrepresentation of the record evidence and the District Court's findings and conclusions, they are inherently inconsistent with one another: either the District Court arrived at that number based upon a reasoned analysis

---

[5] Wyndham claims that the District Court found Plaintiffs' testimony was "greatly exaggerated and unreliable." (Wyndham's Brief, Doc. 467, PageID #17976.)  Noticeably absent from Wyndham's erroneous statement, however, is *any* citation to the record.  This is because, unlike the damning credibility determinations it made with regard to Wyndham's witnesses, nowhere in the District Court's 157-page Memorandum Opinion did the District Court make any finding that Plaintiffs' testimony was "greatly exaggerated" or  "unreliable."  To the contrary, and as indicated above, the District Court found that Plaintiffs and Plaintiffs' witness were "highly credible."  Ironically (and perhaps charitably), it is only Wyndham's claims which are "greatly exaggerated and unreliable."

consistent with *Mt. Clemens*, or it engaged in "arbitrary number picking." Wyndham cannot have it both ways.

First, as stated above, the District Court found Plaintiffs and Plaintiffs' witnesses to be "highly credible." (Memo. Opinion, Doc. 427, PageID ##16186-16187, 16314.) On the other hand, the District Court found that all of Wyndham's witnesses were either not credible and/or their testimony irrelevant. (*Id.* at PageID ##16310-16314.) Wyndham is reduced to relying on the testimony of its discredited witnesses throughout its brief (Doc. 467), despite the fact that the District Court declared that Wyndham's witnesses were *not credible* at least 15 times. (*Id.* at PageID ##16310-16314, and 16329.) Wyndham simply ignores these damning findings.

Second, in its appellate briefs, Wyndham repeatedly agreed with Plaintiffs' position that the District Court "engaged in 'arbitrary number picking' in finding that every Plaintiff worked 52 hours per week during the three-year recovery period." (Ex. 1, Excerpts from Wyndham Appellate Reply, pp. 1, 3, and 10; *see also id.* at p. 46 (The Magistrate Judge came up "with an arbitrary estimate as to how many hours this group worked on average."); *id.* at pp. 43-44 ("[T]he court . . . applied his arbitrarily selected number to every member of the collective."); *id.* at p. 50 (The Magistrate Judge came up "with an arbitrary guess as to how many hours all of these individuals worked each week.")). Wyndham further argued that "the Magistrate Judge blindly applied an 'average' of 52 hours for each class member" (Ex. 2, Excerpts from Wyndham Appellate Brief, p. 50), which Wyndham described as "shoddy, slapdash justice." (Ex. 1, Excerpts from Wyndham Appellate Reply, p. 12.)

Similarly, Wyndham repeatedly argued that the Magistrate Judge arrived at the 52-hour average "without any explanation of the math used." (Ex. 2, Excerpts from Wyndham Appellate Brief, p. 16; *see also id.* at p. 13 (The District Court determined an "'average based on

7

unidentified data and derived through unexplained methodology."); *id.* at p. 16 (The District Court reached a "non-mathematical conclusion of an average of 52 hours a week."); *id.* at p. 25 ("The court . . . came up with its own 'average' without any explanation of how it arrived at that finding."); *id.* at p. 45 ("The Magistrate Judge completely failed to explain the methodology he employed in calculating such an average."); *id.* at p. 46 ("It is impossible to conclude that the 52-hour finding is 'statistically valid' . . . because the methodology used or data relied upon is not described."); Ex. 1, Excerpts from Wyndham Appellate Reply, p. 10 ("The Magistrate Judge did not explain how the 52-hour average was calculated."); *id.* at pp. 11-12 ("The Magistrate Judge did not share any of the underlying factual assumptions as to how the 52-hour average was calculated. The Magistrate failed to explain the most critical factual determination at issue.")).

Lastly, Wyndham argued that the District Court simply engaged in "arbitrary number picking" to "formulate a compromise judgment, perhaps deciding to make both sides unhappy." (*Id.* at p. 5; *see also* Ex. 2, Excerpts from Wyndham Appellate Brief, p. 41 ("[T]he term 'average' was not used as a result of a calculation, it was used as a way to impose a compromise between the parties.")).

Based on the District Court's explicit credibility determinations and Wyndham's numerous contradictory arguments on appeal that the Magistrate Judge's hours-worked determination was completely arbitrary, Wyndham cannot now credibly claim that Plaintiffs' evidence is unreliable and supports the use of Wyndham's newly contrived damages model which conflicts with the Supreme Court's burden shifting framework in *Mt. Clemens*.

## C. Wyndham's "Objectively Reliable Evidence" Model Is Based Upon Evidence Wyndham Tried To Exclude At Trial As Being Inaccurate, And Is Completely Bogus.

Having conclusively lost on liability, for the first time ever Wyndham proposes what it

8

calls an "objectively reliable evidence" model in a self-serving attempt to limit Plaintiffs' damages caused by Wyndham's deliberate scheme to cheat them out of their rightful pay after requiring them to work long, demanding hours off the clock solely to increase its own profits at the expense of its employees. Without any citation to the record whatsoever, Wyndham claims that "it is undisputed that making sales drove a representative to work longer hours" (Wyndham's Brief, Doc. 467, PageID #17978.), erroneously suggesting that if Sales Representatives weren't making sales, then they must not be working. As a result, Wyndham would have this Court believe that only those Sales Representatives who actually completed a sale and generated a contract worked late or worked extended hours. As discussed more fully below, Wyndham's erroneous contention cannot withstand comparison with the evidentiary record. Wyndham's bogus argument asks this court to assume that 100% of its Sales Representations' sales pitches were successful, and that there were no unsuccessful late-night sales activities, or related work. Again, not true, and not supported by the record. In fact, the record demonstrates that, even for a top seller, a sales tour resulted in an actual sale only 35-40% of the time. (Tr., Vol. II, Doc. 377, PageID ##10219-10220.)

Without citing to any support whatsoever, Wyndham disingenuously "proposes a damages model built around an 'average' or 'model' workday and workweek with adjustments made for time that Plaintiffs worked later because they had [actual] *sales* as reflected in Plaintiffs' off-the-clock study." (Wyndham's Brief, Doc. 467, PageID #17979.) (Emphasis added.) Wyndham's sham model erroneously assumes that Plaintiffs only worked late when they recorded an actual successful sale.

Compounding its error, Wyndham falsely claims that Plaintiffs' Off-The-Clock Study, which documents "the date and time that sales were made during the class period," is the "best

9

evidence on the issue of how late Plaintiffs worked." (*Id.* at PageID #17977.) This, of course, flies in the face of *Mt. Clemens* and its progeny*, which holds that the "best evidence" in cases such as this where the employer violates its legal duty to keep accurate hours of work is the employees' own testimony."[6] Wyndham similarly claims Plaintiffs' Off-The-Clock Study is the "most credible evidence in the record of any late hours worked by Plaintiffs outside of the normal workday because it reflects the frequency of sales and the actual time that sales contracts were created" (*Id.* at PageID #17979).[7] However, these representations are directly contrary to Wyndham's admission at trial that the Study failed to include all sales, and was therefore incomplete and inaccurate. For the foregoing reasons and those set forth below, the Court should reject Wyndham's newly contrived damages model.

### 1. Plaintiffs' Off-The-Clock Study was not created or intended to account for *all* hours Plaintiffs worked.

Wyndham gives the illusion that Plaintiffs' Off-The-Clock Study represents the precise number of hours Plaintiffs worked. However, as the District Court held and the Sixth Circuit

---

[6] *Mt. Clemens*, 328 U.S. at 687 ("But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes.... [the solution] is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."); *see also Bautista Hernandez,* 34 F. Supp. 3d at 1241–42 ("Such [employee] evidence will frequently be anecdotal and imprecise, as employees seldom keep records regarding their own work…Employees, therefore, may recover even though the amount may be uncertain and the damages difficult to calculate"); *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983) (finding farmwork employees met prima facie burden despite fact that their "[t]estimony as to the hours worked varied widely and was often confused and contradictory"); *Reeves v. Int'l Tel. & Tel. Corp*., 616 F.2d 1342, 1352 (5th Cir. 1980) (permitting estimation of hours based upon "rough computations of [plaintiff's] subconscious mind").

[7] The most credible evidence of *all* hours should have been from Wyndham's own time-keeping records, as the FLSA requires Wyndham to record all hours its employees work. However, because of its sheer greed, Wyndham required Plaintiffs to work off the clock and, therefore, failed to record all hours worked by Plaintiffs. Therefore, Wyndham's own greed robbed it of the precise number of hours Plaintiffs worked in this case. As a result, the best and most credible evidence in the record of the number of hours Plaintiffs worked is from the "highly credible" testimony of Plaintiffs themselves.

10

affirmed, there are no records showing the precise number of hours Plaintiffs worked because Wyndham violated its statutory recordkeeping duties. To the contrary, the proof established that Wyndham required its Sales Representatives, across the board, to work off the clock and, as a result, its time records are inherently inaccurate. Moreover, Plaintiffs have never represented to the Court that that their Off-The-Clock Study captured *all* of the hours that Plaintiffs worked each week. Rather, Plaintiffs' Off-The-Clock Study, which was created from Wyndham's own electronic sales data, was produced as conclusive documentary evidence of Wyndham's illegal policy and practice of requiring Sales Representatives to work off the clock to avoid paying overtime. Therefore, Plaintiffs' Off-The-Clock Study is evidence of Wyndham's *liability*, *not Plaintiffs' damages*. Thus, the only "objectively reliable evidence" that Plaintiffs' Off-The-Clock Study demonstrates is that Wyndham worked its Sales Representatives off the clock to avoid paying them overtime.

Plaintiffs' Off-The-Clock Study, created from Wyndham's electronic sales data, captured the dates and times Wyndham's records showed Plaintiffs completed a sale and thereafter, generated a contract, while either working on or off the clock. Plaintiffs' Off-The-Clock Study does not take into account the long hours Sales Representatives spent each week on tours trying to make a sale, but failed to close the deal; or the long hours Sales Representatives spent each week attending morning meetings, engaging in lengthy sales processes and training, working Nightline, and attending party weekends, dinner parties and other work related activities. (Compilation Spreadsheets of Plaintiffs' Trial and Deposition Testimony, Doc. 468-1, Columns B-L.) In addition, Plaintiffs' Off-The-Clock Study does not reflect that Wyndham frequently required Sales Representatives to work 6 days per week ("6/1s") and often 7 days per week (*id.* at Column G), or that Wyndham required Plaintiffs to provide owners with their cell phone

11

numbers and be on-call 24/7, which resulted in Plaintiffs spending many hours each week answering or making phone calls when they were away from Wyndham's properties. (*Id.* at Column H.) Lastly, Plaintiffs' Off-The-Clock Study does not reflect that Wyndham encouraged Plaintiffs to work on their days off for "Hero Tours," continuances or "be-backs" to accommodate the schedules of Wyndham's customers. (*Id.* at Column I.)

Based on this evidence, the District Court expressly found that "not every tour ended in a closing and . . . closings were not the only duties Sales Representatives performed." (Memo. Opinion, Doc. 427, PageID #16316.) Clearly, and contrary to Wyndham's suggestions, Plaintiffs' Off-The-Clock Study does not come anywhere close to capturing *all* hours Plaintiffs worked for Wyndham.

> **2.** **Wyndham has intentionally misrepresented the nature of Plaintiffs' Off-The-Clock Study despite its knowledge that it does not capture *all* contracts Plaintiffs generated.**

Prior to the October 2017 trial, Plaintiffs prepared their Off-The-Clock Study to demonstrate Wyndham required Plaintiffs to complete sales and generate closing contracts while off the clock. To prepare this compilation, Plaintiffs used spreadsheet data produced by Wyndham which purportedly contained the date and time *all* contracts were generated by Plaintiffs. From the sales data produced by Wyndham, Plaintiffs prepared an Off-The Clock Study for each of the initial 50 Plaintiffs/Opt-in Plaintiffs Wyndham deposed, in addition to James "Shannon" Abbott, who Wyndham also deposed.

At trial, Opt-in Plaintiff Craig Thrift testified that the Off-The-Clock Study did not reflect all the contracts he had closed. When he compared the Study with his Wyndham sales commission statements, Mr. Thrift discovered that his sales commission statements showed "far more" contracts than those listed on the "Off-The-Clock Study." (Tr., Vol. II, Doc. 377, PageID

12

#10277.)  In fact, for June of 2012, alone, the Off-The-Clock Study (summarizing Wyndham's spreadsheet data) only showed Mr. Thrift closing 20 contracts, whereas Mr. Thrift's sales commission statements showed he had closed 74.  (*Id.* at PageID #10281.)  It thus became apparent that the electronic data produced by Wyndham was incomplete and only contained *some* of the contracts each Plaintiff closed.  Since it was a compilation of the electronic data produced by Wyndham, Plaintiffs' Off-The-Clock Study" likewise only shows *some* of the contracts closed by each Plaintiff.  Accordingly, it was conclusively established at trial that Plaintiffs' Off-The-Clock Study was incomplete and captured only a portion of the contract closings Plaintiffs performed.

Wyndham was already well aware of this fact even before Mr. Thrift testified.  On the very first day of trial, Wyndham's counsel objected to Plaintiffs' Off-The-Clock Study on the grounds that it was inaccurate and incomplete, and for that reason moved to exclude it from evidence:

> MR. NORRIS: The other is: I believe that, Your Honor, Mr. Holmes made the representation to the Court that this [Plaintiffs' Off The Clock Study] was being proffered for liability purposes.
>
> And, also, I believe he made representations to the Court about the percentage of time that this study shows -- and they call it a study, not a summary -- that shows the percentage of time that someone is off the clock when they're closing a contract.
>
> *Since we've had the study, Your Honor, we've gone through and looked through commission statements that pertain to certain plaintiffs and identified contracts that they got paid commission on that don't appear on the study.*
>
> **So it's our position that it's not a completes**

> *study and it's inaccurate and, therefore, it's not…proper –*

(Tr., Vol. II, Doc. 377, PageID ##9550-9551.) (Emphasis added.)

Wyndham has therefore known from the very day it received Plaintiffs' Off-The-Clock Study almost two years ago that it contained only a portion of the contracts Plaintiffs closed. Despite this knowledge, Wyndham now overtly misrepresents the nature and import of this Study to the Court, claiming that "Plaintiffs' 'off-the-clock study' *documents the date and time that sales were made during the class period.*"  (Wyndham's Brief, Doc. 467, PageID #17978.) (Emphasis added.)  Wyndham doubles-down on its deception by representing to the Court that the Study "*is the most credible evidence in the record of any late hours worked by Plaintiffs outside of the normal workday because it reflects the frequency of sales and the actual time that sales contracts were created.*"  (*Id.* at PageID #17979.) (Emphasis added.)  Although Wyndham's reliance on a Study it attempted to exclude from evidence because of it incompleteness is both ironic and indicative of its desperation, it is also far more troublesome than that.  Wyndham's representations, and its intentional failure to disclose its knowledge of the incompleteness of Plaintiffs' Off The Clock Study is, at best, purposefully misleading and, at worst, an outright sanctionable misrepresentation.

Because Wyndham failed to produce all sales data requested by Plaintiffs, Plaintiffs' Off-The-Clock Study captures only a portion of the sales contracts Plaintiffs closed, which Wyndham's counsel openly acknowledged on the record at trial.  The only damage model upon which Wyndham relies is based entirely on the spurious proposition that the Off-The-Clock Study contains a complete history of all sales closed by Plaintiffs throughout the recovery period. Accordingly, the Court should reject Wyndham's purported damages model entirely and enter an

award for Front Line and In House Sales Representatives based upon an average of 63.54 hours worked per week.

## II. THE RECORD EVIDENCE ESTABLISHES THAT DISCOVERY SALES REPRESENTATIVES ARE SIMILARLY-SITUATED TO EACH OTHER AND ARE ENTITLED TO AN AWARD BASED ON AN AVERAGE OF 61 HOURS WORKED PER WEEK.

Wyndham claims that there is no evidence in the trial record to find a subclass of similarly-situated Discovery Sales Representatives. This is yet another instance of Wyndham ignoring the record evidence because "facts are stubborn things"[8] and the facts do not support Wyndham's arguments.

While the Sixth Circuit held that Discovery Sales Representatives were not similarly-situated to Front Line and In House Sales Representatives, the Sixth Circuit in *no way* held that Discovery Sales Representatives were not similarly-situated *to each other*. In fact, in addition to affirming that "Wyndham executed an *across-the-board time-shaving policy* that failed to compensate the employees for the hours they worked" (*Pierce*, 922 F.3d at 748)(emphasis added), the Sixth Circuit noted that "the court should have created a separate subclass for the discovery employees." *Id.* at 747. This is amply supported by the record evidence ignored by Wyndham.

As set out in Plaintiffs' opening brief, Bobby Stallings testified on behalf of 11 Discovery Sales Representatives,[9] four of whom worked solely as Discovery Sales Representatives.[10] The

---

[8] This is a partial quote which is widely attributed to President John Adams during his successful defense of the British soldiers who fired upon the crowd during the Boston Massacre. His full quote was: "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence."

[9] In their brief, Wyndham inaccurately claims that Plaintiffs only identified the following 10 Discovery Sales Representatives: Shirley Benedict, Jasyntha Cornwell, Janice Deibel, William Dzaman, Karl Lewanksi, Paul Naumoff, James W. Reid, George Smith, Karen Smith, and Bobby Stallings. This is incorrect as Plaintiffs

District Court found that Mr. Stallings was credible, and further found that Stallings "always clocked in about 8:00 a.m." when the mandatory sales meeting began (Memo. Opinion, Doc. 427, PageID #16232, #16230); that his manager "instructed the sales representatives to clock out for lunch and stay clocked out during the next tour" (*Id.* at PageID #16222); and that "sales representatives were required to stay throughout the closing of a contract." (*Id.* at PageID #16231).

While Wyndham claims that only Mr. Stallings testified on behalf of the Discovery Sales Representatives, Wyndham ignores the fact that other Sales Representatives confirmed Mr. Stallings testimony. As discussed in Plaintiffs' opening brief, Plaintiff Jesse Pierce testified that Discovery Sales Representatives (who attempted to sell trial packages to prospective owners if a Front Line Representative was not successful in making a sale of a deeded property) were required to stay through the closing process for any Front Line Sales Representative because "you never knew when a deal was going to blow out." (Tr, Doc. 393, PageID# 11831:8-11832:12.) In addition, Opt-in Plaintiff Brett Williamson testified that Discovery Sales Representatives actually stayed later than other Sales Representatives (Tr., Doc. 386, PageID# 11212:23-11213:5), and Plaintiff Mike Pierce testified that Discovery Sales Representatives

---

previously identified these 10 Discovery Sales Representatives, plus Joshua Selfridge. (Doc. 417-9.) Further, seven of these individuals also worked as Front Line or In House Sales Representatives, in addition to Discovery Representatives, during the Recovery Period. Thus, as to these individuals, Wyndham attempts to carve out a portion of their claims while working as Discovery Representatives, which would effectively place these individuals in the situation of asserting claims for unpaid overtime in two separate actions.

[10] As set forth in Plaintiffs' opening brief, when considering those employees who worked solely as a Discovery Sales Representative and not as a Front Line or In House Sales Representatives, the District Court heard testimony from 1 of the 4 Discovery Plaintiffs, or 25% of those who only worked in Discovery. When also considering the 7 employees who worked in Discovery, as well as Front Line and In House positions, the District Court heard testimony from 1 of the 11 Discovery Plaintiffs, or approximately 9%. Even if the lesser percentage is used, this percentage is *higher* than the 5.8% percent of technicians who testified in *Monroe*. Thus, Plaintiffs' provided sufficient representative proof as to Discovery Representatives.

were always the last to leave the building.  (Tr., Doc. 393, PageID# 11748:17-11749:15.)

Ultimately, the District Court found that Mr. Stallings worked at least an average of 55 hours per week at work, plus an additional average of 6 hours per week at home.  (Memo. Opinion, Doc. 427, PageID #16230.)  As a result, the District Court found that Mr. Stallings worked *at least* 61 hours per week on average.  (*Id.*)  Because Mr. Stallings' testimony – supported by the facts and testimony of others – is clearly representative of all Discovery Sales Representatives, application of the *Mt. Clemens* framework results in an award for Discovery Sales Representatives based on an average of 61 hours worked per week.

## III. WYNDHAM'S UNTIMELY REQUEST TO MOVE FOR SUMMARY JUDGMENT AFTER LIABILITY HAS BEEN DETERMINED AT TRIAL AND AFFIRMED ON APPEAL IS CONTRARY TO THE SCHEDULING ORDER, THE PARTIES' STIPULATION, AND THE MANDATE RULE.

Despite the fact that the deadline for filing dispositive motions passed over 2 years ago, and following a three-week trial almost two years ago which resulted in a judgment for Plaintiffs, and the Sixth Circuit appeal affirming liability, Wyndham now attempts to move for summary judgment against Opt-in Plaintiffs Jeremy Saine and Rachel Taylor, who filed bankruptcy petitions shortly after oral arguments in the Sixth Circuit, and Opt-in Plaintiff Sean Jeter, who filed a bankruptcy petition *over 5 years earlier* in May 2014. Wyndham's request is long past the deadline for filing dispositive motions, and is contrary to the parties' stipulation to determine damages on the current record as well as the mandate rule.  As a result, the Court should deny Wyndham's request.

On September 16, 2016, the District Court entered a Scheduling Order requiring that all motions for summary judgment be filed no later than April 28, 2017.  (Scheduling Order, Doc. 203, PageID #3007, ¶ 6(b).)  The District Court further ordered that "failure to timely file such

17

motions will be grounds to summarily deny them." (*Id.*) On April 21, 2017, the District Court extended the deadline to May 5, 2017. (Order, Doc. 226, PageID #3524.) As a result, Wyndham was required to file any dispositive motions no later than May 5, 2017.

Thereafter, following the three-week trial, the District Court found Wyndham liable for its illegal policy and practice of requiring Sales Representatives to work off the clock and by instructing managers to edit timecards to misrepresent the time that Sales Representatives worked, entitling Sales Representatives to unpaid overtime - a liability finding which the Sixth Circuit affirmed on appeal. As a result, the District Court has already found, and the Sixth Circuit has already affirmed, that Wyndham is liable to its Sales Representatives, including Jeremy Saine, Rachel Taylor, and Sean Jeter. The only question remaining is how much these employees are owed since the Sixth Circuit remanded the case to the District Court to reassess damages for the Front Line and In House Sales Representatives.

Obviously, the Court should preclude Wyndham from seeking summary judgment against Mr. Jeter as Wyndham had more than sufficient time to discover his May 2014 bankruptcy petition prior to the May 5, 2017 dispositive motion deadline. Yet, Wyndham failed to do so and it has proffered no explanation as to why it did not discover Mr. Jeter's bankruptcy petition, which is a public record, prior to the deadline. Accordingly, Wyndham has clearly waived any defense it could have asserted as to Mr. Jeter.

In addition, the Court should preclude Wyndham from seeking summary judgment against the three Opt-in Plaintiffs because the parties unequivocally stipulated "that the Court can reassess damages owed to the collective class of Front Line and In House Sales Representatives *based on the Sixth Circuit's April 29, 2019 Opinion* and the *current record*." (Joint Status Report, Doc. 464, PageID #17962; Order, Doc. 465, PageID #17965.) Allowing

18

Wyndham to reopen the record to litigate this issue is a violation of the parties' stipulation, and thus a clear attempt to present new and additional proof outside the current record.[11]

Finally, the Court should preclude Wyndham from seeking summary judgment against the three Opt-in Plaintiffs based upon the "mandate rule." The "mandate rule is a specific application of the law-of-the-case doctrine." "The basic tenet of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004) (*quoting United States v. Campbell*, 168 F.3d 263, 265 (6th Cir.1999)). Under 28 U.S.C. §2106, courts of appeals have broad discretion to issue general or limited remands. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *U.S. v. Campbell* 168 F.3d 263, 265 (6th Cir. 1999). The trial court must "implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994) (citations omitted). Therefore, a district court is "without jurisdiction" to take an action inconsistent with or beyond the mandate of a previous appeal. *Tapco Products Company v. Van Mark Products Corp.*, 466 F.2d 109, 110 (6th Cir.1972).

On appeal, the Sixth Circuit affirmed Wyndham's liability for unpaid overtime wages to its Sales Representatives, including Opt-in Plaintiffs Jeremy Saine, Rachel Taylor, and Sean

---

[11] It is simply too late to assert any new defenses to liability after the Sixth Circuit has already affirmed Wyndham's liability to the collective class including Mr. Saine, Ms. Taylor, and Mr. Jeter, and remanded the case only for the purpose of determining damages. If it were otherwise, Wyndham could perpetuate unending litigation so long as it could continue conjuring up new defenses before an order became final and unappealable. This conduct violates the "mandate rule," a primary purpose of which is to promote finality and judicial economy. *See, e.g., United States v. Moore,* 131 F.3d 595, 599-600 (6th Cir.1997)("Repetitive hearings, followed by additional appeals, waste judicial resources and place additional burdens on . . . hardworking district and appellate judges."); *Super X Drugs Corp. v. FDIC*, 862 F.2d 1252, 1256 (6th Cir.1988)(issuing limited remand "[t]o conserve judicial time and resources").

Jeter, and remanded the case to this Court *solely to assess damages*. This is clearly a "limited remand" which limits the scope of the Court's jurisdiction to the only issue remanded by the Court of Appeals for determination, namely, damages. *See, e.g., United States v. Moore,* 131 F.3d 595, 598 (6th Cir.1997)(holding that when the remand is not general, "the district court's. . .authority [is limited] to the issue or issues remanded."). Allowing Wyndham to now file a motion seeking a finding that Wyndham is no longer liable to these three Opt-in Plaintiffs would violate both the letter and the spirit of the Sixth Circuit's mandate in violation of well-established Sixth Circuit law. For these reasons, the Court should deny Wyndham's improper and untimely request to file motions for summary judgment against Opt-in Plaintiffs Jeremy Saine, Rachel Taylor, and Sean Jeter.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order in accordance with *Mt. Clemens* rejecting Wyndham's newly contrived damages model and finding: 1) that Front Line and In House Sales Representatives are entitled to damages based upon an average of 63.54 hours of work each week; 2) that Discovery Sales Representatives are entitled to damages based upon an average of 61 hours of work each week; and 3) that Defendants are not permitted to file an untimely summary judgment motion asserting judicial estoppel in violation of the Sixth Circuit's limited mandate.

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes
       Martin D. Holmes, # 012122
       Peter F. Klett, #012688
       M. Reid Estes, Jr., #009043
       Autumn L. Gentry #20766
       Fifth Third Center, Suite 800
       424 Church Street
       Nashville, TN 37219
       Phone: (615) 244-6538
       mdholmes@dickinsonwright.com
       pklett@dickinsonwright.com
       restes@dickinsonwright.com
       agentry@dickinsonwright.com

*Attorneys for Plaintiffs and Opt-In Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, a true and correct copy of the foregoing has been served on the following individuals via the court's electronic service:

Craig A. Cowart
Colby S. Morgan, Jr.
Jackson Lewis P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
craig.cowart@jacksonlewis.com
colby.morgan@jacksonlewis.com

D. Christopher Lauderdale
Jackson Lewis P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
christopher.lauderdale@jacksonlewis.com

William J. Anthony
Jackson Lewis P.C.
18 Corporate Woods Boulevard
Albany, NY 12211
william.anthony@jacksonlewis.com

                       /s/ Martin D. Holmes
                       Martin D. Holmes

NASHVILLE 57404-1 707080v1