**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 3:13-cv-00641-DCP |
| WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF ON REMAND

Defendants Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc. ("Defendants" or "Wyndham") respectfully submit this Reply Brief regarding damages on remand. In their Response brief, Plaintiffs spend much of their time criticizing Wyndham for simply accepting reality. Plaintiffs criticize Wyndham for asserting representative proof can be utilized by the Court in determining damages here when, before, Wyndham argued it could not. Likewise, Plaintiffs criticize Wyndham for utilizing Plaintiffs' Off-the-Clock Study ("Plaintiffs' Study") when previously Wyndham had argued for its exclusion from evidence. Wyndham is simply facing the reality that Judge Shirley admitted Plaintiffs' Study into evidence and allowed representative proof and the latter was affirmed on appeal. Those determinations are law of the case.

Wyndham further accepts the reality, though Plaintiffs do not, that Judge Shirley did not find believable Plaintiffs' claims as to how many hours they worked. Had he believed them, he

would have found they worked the 63.66 hours a week that they claimed, but he did not. Wyndham accepts the reality that Judge Shirley also found Wyndham's witnesses to be not credible; hence, Wyndham has not asserted that the Court should find Plaintiffs worked the hours to which Wyndham's witnesses testified. Wyndham accepts the reality, as well, that even imperfect, Plaintiffs' Study is the only objective evidence in the record of the time of day when sales were taking place. It is the only objective evidence of the arc of the sales day. The parties agreed this Court could decide the hours worked based on the record before it and, given Judge Shirley found no credible oral testimony by either party as to what those hours were, the Court needs to look to something objective. While Plaintiffs harshly criticize use of their own Study and the model Wyndham derives from it, they do not propose any alternative to the underlying assumptions in Wyndham's model: that a day stretching from 8:00 a.m. to 3:00 p.m. is a reasonable average day and that 5.5 days per week is an appropriate measure of the days worked. Moreover, Wyndham has built a cushion of additional hours into its model to address any non-sales activities and gaps in the model.

Plaintiffs also fail to accept that there is no evidence in the record to belatedly create a subclass of discovery employees. Consistent with the Sixth Circuit's remand instructions and established precedent, the Court should dismiss the discovery employees' claims without prejudice. Likewise, Plaintiffs fail to accept that there are consequences for failing to disclose their FLSA claims in bankruptcy or that judicial estoppel is a discretionary, equitable doctrine that is not subject to waiver. The Court should find good cause to take up these issues and protect the integrity of the judicial system.

### A. Plaintiffs Continue to Misconstrue and Misapply *Mt. Clemens*

As Wyndham thoroughly explained in its Response Brief (ECF No. 470 at 12-16), Plaintiffs misinterpret the burden-shifting framework of *Mt. Clemens*. Plaintiffs interpret *Mt. Clemens* as follows: Wyndham did not keep accurate time records, so they can guess as to how many hours they worked each week and if Wyndham cannot show the precise amount of hours they worked, then the factfinder has no option but to enter judgment in the amount of Plaintiffs' guesses, regardless of whether the factfinder found Plaintiffs' guesses credible. Plaintiffs ignore the part of *Mt. Clemens* that says that an employer can come forward "with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946). They also ignore the Supreme Court's and Sixth Circuit's more recent applications of *Mt. Clemens*. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016) ("Once a district court finds evidence to be admissible, its persuasiveness is, in general, a matter for the jury. Reasonable minds may differ as to whether the average time [plaintiffs' expert] calculated is probative as to the time actually worked by each employee. Resolving that question, however, is the near-exclusive province of the jury."); *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 602-603 (6th Cir. 2009) ("If the employer cannot negate the estimate, then the 'court may award damages to the employee, even though the result be only approximate.'") (quoting *Mt. Clemens*). These controlling authorities are inconsistent with Plaintiffs' "winner-takes-all" interpretation of *Mt. Clemens*.

It is not surprising that Plaintiffs continue to fail to cite any authority for their erroneous interpretation of *Mt. Clemens*. They do, however, include a footnote citing *Mt. Clemens* and three cases from other circuits for the proposition that an employee's own testimony is the "best evidence" regarding how many hours they worked. (ECF No. 471 at 10). None of the cited cases

actually say that.[1]  More importantly, none of these cases conclude that the factfinder must accept as true an employee's estimates of their work hours and one of the cited cases *expressly rejects that notion*.  In *Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342, 1352 (5th Cir. 1980), the plaintiff testified that he worked an average of 74.5 hours per week.  Instead of awarding him that amount (as Plaintiffs would have this Court do), the trial court, determined that the plaintiff worked only 60 hours per week.  *Id.* The plaintiff appealed, but the appellate court found that 60 hours represented a "fair and just approximation" of hours worked under the facts presented.  *Id.* at 1347, 1352.  In short, Plaintiffs fail to cite any authority that supports their argument that the factfinder has no choice under *Mt. Clemens* but to credit Plaintiffs' testimony.  As explained in Wyndham's Response, usurping the factfinder's ability to access credibility and weigh the evidence in this manner would be reversible error.

Plaintiffs also continue to ignore the reality that Judge Shirley applied *Mt. Clemens*, shifted the burden to Wyndham, and found that Wyndham had "negatived the inference" to be drawn from Plaintiffs' testimony.  "While the Court finds Plaintiffs have established that they worked overtime, *the Court finds Defendants have somewhat rebutted Plaintiffs' average*, and further finds Plaintiffs' own testimony, albeit only estimates, to be a bit on the high side, and thus, a reduction is warranted."  (ECF No. 427 at 132-33 (emphasis added)).  As discussed at length in Wyndham's

---

[1]  In the first case Plaintiffs cite, following a bench trial, the magistrate judge "credited" the plaintiff's testimony that he did piece rate work one day a week from 7:00 a.m. to 5:00 p.m. and found that such testimony was "a fair and reasonable approximation of his piece-rate labor." *Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1242 (S.D. Fl. 2014).  In other words, the judge weighed the testimonial evidence about work hours and, unlike Judge Shirley, found it to be credible.  In the second case cited by Plaintiffs it is unclear how many hours the plaintiffs at issue testified to working only that the trial court was able to "reconstruct" the hours worked each day based on a combination of witness testimony and the employer's pay records. *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983).  Neither of these cases supports Plaintiffs' position in this case.

Response Brief, Judge Shirley clearly found Plaintiffs' testimony was not credible on the key question at issue on remand, which is how many hours the in-house and front line sales representatives worked. (ECF No 470 at 6-13). He found that Plaintiffs exaggerated the frequency of after-hours work, how busy they were with tours and the time of day they left work, and their hours during the slow season. (ECF No. 427 at 134-135).

Significantly, the Sixth Circuit has already declined to do what Plaintiffs are asking this Court to do on remand. Plaintiffs filed a cross appeal in which they argued—as they do now— that under *Mt. Clemens* Judge Shirley erred by not entering judgment in the amount of 63.66 hours per week based on their testimony. (*See* 6th Cir. Case. No. 18-5258, Appeal Doc. 38-1 at 70-74; Appeal Doc. 41 at 18-20). In the fourth brief on appeal, Plaintiffs asked the Sixth Circuit to enter judgment in their favor based on an average of 63.66 hours per week:

> [T]he District Court should have awarded Plaintiffs damages based on an average of 63.66 hours per week. The District Court's failure to do so is a clearly erroneous misapplication of the *Mt. Clemens* standard, and this Court should order the District Court to enter a judgment for Plaintiffs based upon an average of 63.66 hours of work each week or, alternatively, based upon an average of 63.32 hours of work each week as set forth above.

(*Id.* at 14-15). The Sixth Circuit did not accept this argument and instead remanded the case for this Court to reassess damages. *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 749 (6th Cir. 2019) ("As to [Plaintiffs' first argument on cross appeal], we will let the district court reassess the damages award in the first instance."). If the Sixth Circuit agreed with Plaintiffs' interpretation of *Mt. Clemens*, then there would have been no need for it to remand the case to this Court to reassess damages. The Sixth Circuit could have simply given Plaintiffs the average hours that they were asking for or it could have directed this Court to take the discovery representatives out of the average and then enter judgment based solely on the testimony of the in-house and front-line sales

representatives. The fact that the Sixth Circuit declined to do so is another reason why this Court should reject Plaintiffs' erroneous interpretation of *Mt. Clemens*.

**B. Wyndham's Damages Model Remains the Most Objective Method of Calculating Reasonable Damages Offered to the Court.**

**1. Wyndham's Noting Judge Shirley Did Not Find Plaintiffs' Hours Claims to be Credible Is Not Inconsistent With Its Assertion that Judge Shirley's Hours Determination Was Without Foundation in the Record.**

Plaintiffs assert that it is "inherently inconsistent" for Wyndham to argue both that Judge Shirley found Plaintiffs' hours claims not credible and that Judge Shirley's determination that Plaintiffs worked 52 hours a week was unsupported. (ECF No. 471 at 6-7). Plaintiffs are simply wrong. These arguments are not inconsistent as this is a two-part inquiry and not, as Plaintiffs' would have it, an "either or" question.

Part one of the inquiry is to ask: did Judge Shirley find Plaintiffs' claims as to the hours they worked, as opposed to their claims related to liability, credible? The answer to that question is clearly "no" since he found that they worked less than 63.66 hours per week and explained why he thought their estimates were too high. (ECF No. 427 at 134-36). In fact, upon turning to the question of Plaintiffs' hours claims, his first finding was one that can only be read as finding that they were not credible: "While the Court finds Plaintiffs have established they worked overtime, the Court finds that Defendants have somewhat rebutted Plaintiffs' average, and further finds Plaintiffs' own testimony, albeit only estimates, to be a bit on the high side, and, thus, a reduction is warranted." (*Id.* at 132-33).

Part two of the inquiry is to ask whether, with the Court having found Plaintiffs' hours claims to be not credible, there is a foundation in the record for Judge Shirley's determination that Plaintiffs worked an average of 52 hours a week, every week. The parties actually agree that there is not a foundation in the record for it. Indeed, it was Plaintiffs that coined the phrase in their

Appellate Brief that Judge Shirley had engaged in "arbitrary number picking." (Appeal Doc. No. 38-1 at 73-74). Wyndham stands by its position that Judge Shirley's determination was arbitrary and has offered a model, based on objective data from the record, to allow this Court to make a new determination that is neither arbitrary nor based on testimony that Judge Shirley found to be not credible.

### 2. Wyndham Is Relying on the Objective Evidence in the Record for Its Model.

While Plaintiffs are correct that Wyndham objected to the introduction of Plaintiffs' Study into evidence, the reality is that Judge Shirley overruled Wyndham's objections and Plaintiffs' Study is in evidence. There is nothing improper in Wyndham then relying on it as evidence when it is indisputably part of the record.

Plaintiffs complain that Plaintiffs' Study is incomplete. To the extent that it is incomplete, it was incumbent on Plaintiffs to make it complete prior to the close of the case so as to ensure that Judge Shirley would not be relying on an incomplete exhibit. That did not happen. On the last day of trial, Plaintiffs asked that evidence remain open as they were part way through creation of a "more complete" version of Plaintiffs' Study but Judge Shirley denied that request, stating "Well, I still don't understand what's being added. So, no, I'm – we'll just do with what we have. It will open us up to another three weeks of trial. We'll have to call everybody back, ask them about the additions. It's a little late." (ECF No. 426 at 3350).[2] In the end, Plaintiffs' Study is their own trial exhibit and they cannot distance themselves from it.

_____

[2] Plaintiffs' assert that Plaintiffs' Study is incomplete because Wyndham "failed to produce all sales data requested by Plaintiffs." (ECF No. 471 at 14). That is not what counsel represented to the Court at trial in describing why their exhibit was incomplete. At trial, counsel stated: "And just to update you on, you know, what we have determined, you know, Mr. Thrift testified that the compilation that we prepared did not include all the contracts that he was involved in. You know, we've determined that our compilation is accurate in what it had at that point in time, but did not include all the contract information. Because what we did, we took the -- we took the tour spreadsheet, which had the tour, the name of the sales rep, and the contract number, and then we

The reality is that Plaintiffs' Study is objective evidence in the record of the time of day sales were being made; i.e. objective evidence of the arc of the business day.[3] The record evidence of other sales occurring that are not on Plaintiffs' Study comes from the commission statements introduced by Plaintiffs. The commission statements do not include a time stamp so they do not shed any light on the time of day that each sale was made. Plaintiffs have not shown – and there is no reason to believe – that the overall distribution of sales throughout the workday reflected in Plaintiffs' Study (*see* ECF No. 467-4) would be affected by the other sales that Plaintiffs failed to include in their Study.

What we can know, however, is that Plaintiffs' complaints about the completeness of their own study are a tempest in a teapot. The commission statements show roughly twice as many sales for the Plaintiffs as are on Plaintiffs' Study. (Compare Exhibit 1 to ECF No. 467-2). Assuming that the sales on the commission statements were distributed over the course of the day in rough accord with those on Plaintiffs' Study then there would be roughly twice as many late sales as shown on Plaintiffs' Study. Even so, late sales would be rare, and the general arc of tour flow would remain the same. In its Opening Brief, Wyndham pointed out that Plaintiffs' Study showed that Plaintiffs, on average, generated a sales contract after 3:00 p.m. about once every

---

went to the SalePoint to get the contract number which had then the date and time, and then we took that sales rep's time records to create the compilation. What we determined is that the tour spreadsheet only had the front end of tours. So, in other words, any -- any deal that Mr. Thrift worked on the back end was not in the tour spreadsheet. But we can then take his commission statements and locate those additional contracts that he was involved in. So the compilation that we have is accurate. We're actually doing an updated compilation, and that is ongoing right now." (ECF No. 384 at 1448-49).

[3] The Sixth Circuit even indicated that Plaintiffs' Study was relevant evidence of the hours of work of in-house and front-line employees, as it noted the absence of similar evidence for discovery employees. *See Pierce,* 922 F.3d at 747 ("The off-the-clock work study, which showed the dates and times of in-house and front-line employees' transactions, does not show similar data for the discovery employees. No evidence thus shows how often or at what time discovery salespeople initiated or closed contracts.").

three weeks. (ECF No. 467 at 14). Even incorporating the commission statements and assuming double the number of sales after 3:00 p.m., then this would indicate that the average Plaintiff only had such a sale about once every week and a half. Judge Shirley's determination that Plaintiffs "did not 'always' *or even 'regularly'* work[] as long as some claimed" was well-founded. (ECF No. 427 at p. 135) (emphasis added).

As to the hours themselves, in Wyndham's Opening Brief, the model determined that the average plaintiff worked an additional 1.31 hours per week for sales that finished after 3:00 p.m. – after already crediting Plaintiffs with always working 38.5 hours a week (seven hours a day from 8:00 a.m. to 3:00 p.m. for 5.5 days a week) for a workweek of 39.81 hours. (ECF No. 467 at 17). If we double the amount of "late" hours per week to 2.62 (1.31 x 2) to account for the additional sales showing only on the commission statements, such would take us to 41.12. However, Wyndham's model *already adds three hours* to the calculated amount; hence, Wyndham's model proposed an average workweek of 42.81 hours. (*Id.* at 20). That is, Wyndham's model proposes an average workweek which already encompasses these sales.

### 3. Plaintiffs Do Not Directly Challenge the Baseline of Wyndham's Damages Model.

The baseline of Wyndham's damages model is that the evidence supports a finding that Plaintiffs worked an average week of 38.5 hours prior to consideration of sales closed after 3:00 p.m. (*Id.*). The 38.5 hours is built off a day that averages starting at 8:00 a.m. and goes to 3:00 p.m., without any breaks, for 5.5 days a week every week, without accounting for vacations, slow season, illness, etc. Wyndham built that "model" day from Judge Shirley's findings and Plaintiffs' own testimony.[4] (ECF No. 467 at pp. 9-13). Plaintiffs do not directly challenge the reasonableness of Wyndham's proposed workday.

---

[4] Wyndham does, at times, cite to its own witnesses' testimony. However, in each instance, such citation included similar testimony from Plaintiffs or a finding by Judge Shirley. The times it did

Instead, Plaintiffs offer indirect challenges. First, Plaintiffs erroneously state that Wyndham claimed "without any citation to the record" that it was undisputed that making a sale drove a sales representative to work longer. (ECF No. 471 at 9). Right above what Plaintiffs quoted, Wyndham cited to testimony from one of Plaintiffs' witnesses and one of Wyndham's. (ECF No. 467 at 8). Later in its brief, Wyndham cited to the testimony of four more Plaintiffs (and one Wyndham witness) for the same proposition. (*Id.* at 11 & fn.11).[5] Further, Judge Shirley found that "[w]hen [Plaintiffs] left was a function of tours, sales success, and contracts to be closed." (ECF No. 427 at 136). As to the volume of sales tours, Plaintiffs' Study shows that there was a steady decline in sales over the course of the afternoon. (*See* ECF No. 467-4). The only reasonable explanation for why sales fell off so steadily over the course of the afternoon is that there were fewer tours.

Second, Plaintiffs assert that Wyndham's model "assumes that Plaintiffs only worked late when they recorded an actual successful sale." (ECF No. 471 at 9). In reality Wyndham's model uses several methods which build in a cushion that accounts for additional time after 3:00 p.m. that may have been worked, at times, that is not related to a successful sale. Wyndham's model directly

---

not, Wyndham did not ask the Court to follow Wyndham's witnesses' testimony. Wyndham merely noted there was testimony that the day might start later than 8:00 a.m. at times and that senior sales representatives were not required to attend the morning meeting, but did "not seek to adjust" for that and, instead, left the start of the day at 8:00 a.m. (*See* ECF No. 467 at 10). Likewise, after citing Plaintiffs' witnesses' testimony that closings could last 1-2 hours, Wyndham cited its witnesses' testimony that closings took much less than 1-2 hours, but nevertheless proposed that its model "will generously assume that sales representatives remained at work for 1-2 hours after the timestamp on the off-the-clock study." (*Id.* at 15.)

[5] As additional examples of Plaintiffs repeatedly testifying that they typically worked late into the evening *because of* sales tours and closings, *see* ECF No. 413-3 at 32-33 (Carson); ECF No. 392 at 164 (Campbell); ECF No. 389 at 63, 65-66 (Davis); ECF No. 416-2 at 29-30 (Dickerson); ECF No. 378 at 88-89, 91 (Dodson); ECF No. 413-13 at 2-3 (Grimal); ECF No. 413-26 at 9, 12-13 (Kost); ECF No. 413-28 at 4 (Navarro); ECF No. 375 at 239 (Nelon); ECF No. 414-5 at 15, 25, 38 (Neuenschwander); ECF No. 393 at 141 (Jesse Pierce); ECF No. 377 at 50, 94 (Siler); ECF No. 386 at 126 (Williamson).

includes a three-hour per week, per plaintiff, cushion of time. Wyndham's model further assumes that Plaintiffs worked without ever taking vacation. Since Wyndham is crediting each plaintiff with working 42.81 hours each week, a plaintiff that took two weeks of vacation is getting an "extra" 85.62 hours, which works out to roughly 1.65 hours a week over the course of the year. Wyndham further provides for 5.5 days of work per week for the entire year, even though Judge Shirley found that Plaintiffs worked "something less" than five to six days a week in January and February. (ECF No. 427 at 156). If the average plaintiff actually worked just four days a week during those months instead of 5.5 days, Wyndham's model is crediting each of them with an extra 84 hours (1.5 extra days per week x 7 hours x 8 weeks), or another extra 1.61 hours per week that they did not work.[6] Wyndham's model also assumes that over the course of three years, no plaintiff ever took a sick day or a personal day, no plaintiff ever left to run an errand, no plaintiff ever took lunch, and no plaintiff ever left early or came in late. Between the three-hour cushion, not accounting for vacations, and not accounting for the slow season, Wyndham's model adds roughly 6.25 hours per week, plus some amount of time due to the model's assumption that Plaintiffs were always at work for the full 7 hours a day, 5.5 days a week. Wyndham's model does account for time worked that is unrelated to a successful sale.[7]

---

[6] Judge Shirley highlighted testimony that would suggest giving credit for even four days a week in January and February is overly beneficial to Plaintiffs. (*See* ECF No. 427 at 134, referencing testimony that Tony Siler worked 20-30 hours a week in those months and Shannon Abbott left for Florida every year on December 31 and stayed there for two months).

[7] Plaintiffs' assertion that Wyndham's model does not account for nightlines, party weekends, and the like is incorrect. As fully discussed in its Opening Brief, Wyndham's model accounts for such activities. (ECF No. 467 at 17-20). Moreover, Plaintiffs' evidence as to how much time was spent in those activities is solely Plaintiffs' testimony, which Judge Shirley found to be not credible. (ECF No. 427 at 135). While Judge Shirley found Plaintiffs "often worked greater than forty hours whether on tours, at closings, doing follow-up contact works, nightlines, dinner parties, party weekends and so forth [] the Court does not find that they 'always' or even 'regularly' worked as long as some claimed." (*Id.*).

**C. The Claims of Discovery Employees Should Be Dismissed Without Prejudice.**

In its Opening Brief, Wyndham cited a myriad of cases holding that opt-in plaintiffs who are not certified as similarly situated to other members of the collective action should be dismissed without prejudice. (ECF No. 467 at 3). Plaintiffs failed to cite any contrary case law in their Response Brief. (ECF No. 471 at 15-17). Plaintiffs also failed to address Wyndham's point that awarding damages to discovery employees is outside the scope of the Sixth Circuit's remand instructions. *See Pierce,* 922 F.3d at 749 ("Because the court erred in finding that the discovery employees were similarly situated to the other salespeople and that error infected its hourly average determination, we vacate the damages award and *remand for the court to reassess damages for the in-house and front-line employees*." (emphasis added)). In fact, Plaintiffs later argued that the Sixth Circuit's remand instruction is a "limited remand" that "limits the scope of the Court's jurisdiction to the only issue remanded by the Court of Appeals." (ECF No. 471 at 19-20). Plaintiffs' position on the limited nature of the remand instruction – which they would selectively apply only to the issue of judicial estoppel – completely undercuts their argument that damages can be awarded to discovery employees because the remand instruction on damages is limited to in-house and front-line employees.

Although Plaintiffs concede that "the Sixth Circuit held that Discovery Sales Representatives were not similarly situated to Front Line and In House Sales Representatives," they argue that "the Sixth Circuit in no way held that Discovery Sales Representatives *were not* similarly situated to each other." (*Id.* at 15 (emphasis added)). That flimsy argument falls apart because the Sixth Circuit did not hold that discovery employees *were* similarly situated to each other, and to the contrary, the Sixth Circuit indicated that there was insufficient evidence in the record to gauge whether discovery employees were similarly situated to each other. *See Pierce,*

922 F.3d at 746-47 ("Only one of the discovery employee-plaintiffs testified at trial, and he did not indicate that . . . the discovery salespeople at the other Tennessee locations performed the same functions he did.").

In their Response Brief, Plaintiffs argue that the testimony of Bobby Stallings, the lone discovery employee who appeared at trial, is "clearly representative of all Discovery Sales Representatives." (ECF No. 471 at 17). However, Plaintiffs fail to identify any testimony from Stallings showing that his functions and hours of work were similar to other discovery employees who worked at other locations. (*Id.* at 15-16). Instead, Plaintiffs seek to rely on a few scraps of testimony from in-house and front-line employees, such as Jesse Pierce, Brett Williamson, and Mike Pierce. (*Id.* at 16). Given that the Sixth Circuit ruled that in-house and front-line employees are *not* similarly situated to discovery employees, *Pierce,* 922 F.3d at 746-47, the Court cannot rely on testimony from in-house and front-line employees (who never worked a single day as a discovery employee at any location) to establish that all discovery employees at all four locations are similarly situated to each other.

Further, the testimony cited by Plaintiffs only suggests that discovery employees "stayed later" than in-house and front-line employees. (ECF No. 471 at 16-17). Plaintiffs made this very same argument on appeal, and the Sixth Circuit rejected it:

> The plaintiffs try to discount this point on the ground that the district court noted that the discovery employees "often stayed later." R. 427 at 136. But the district court made no factual findings about how often the discovery team members stayed late or how much later they stayed. The off-the-clock work study, which showed the dates and times of in-house and front-line employees' transactions, does not show similar data for the discovery employees. *No evidence thus shows how often or at what time discovery salespeople initiated or closed contracts.*
>
> … That leaves us with consistent testimony that the discovery employees started later than the other salespeople and *scattered testimony that some of the discovery workers stayed as late or later on occasion.*

*Pierce,* 922 F.3d at 747 (emphasis added). As this passage illustrates, the Sixth Circuit not only rejected Plaintiffs' argument but indicated that there is insufficient evidence in the record to award damages to discovery employees. This interpretation of the Sixth Circuit's opinion, unlike Plaintiffs' strained interpretation, is consistent with the Sixth Circuit's instruction to remand "to reassess damages for the in-house and front-line employees."[8] *Pierce,* 922 F.3d at 749.

The Court should follow Sixth Circuit's clear remand instructions and reassess damages for the in-house and front-line employees. Likewise, the Court should follow well-established precedent and dismiss the claims of discovery employees without prejudice because they are not similarly situated to the remainder of collective action.[9]

_____

[8] As explained in Wyndham's Response Brief, Plaintiffs' argument about creating a subclass is inconsistent with the Sixth Circuit's opinion, unsupported by the trial record, and untimely. (*See* ECF No. 470 at 17-19 & fn.4).

[9] The effect of this ruling is to dismiss the claims Plaintiffs who were employed as discovery employees during the recovery period. For Plaintiffs who worked in discovery and other positions, their claims would be dismissed only for the workweeks in which they were employed in a discovery position, and their claims would not be dismissed for workweeks when they were in in-house or front-line sales positions. Specifically, the following Plaintiffs' claims would be dismissed for the following workweeks: Shirley Benedict was a discovery employee from October 21, 2010, to April 5, 2013; Jasyntha Cornwell was a discovery employee from January 11, 2013, to September 7, 2013; Janice Deibel was a discovery employee from January 15, 2011, to November 30, 2011; William H. Dzaman was a discovery employee from October 21, 2010, to March 17, 2011, and from November 18, 2011, to March 3, 2012; Karl Lewanksi was a discovery employee from October 21, 2010, to January 28, 2011; Paul Naumoff was a discovery employee from March 18, 2011, to July 4, 2012; James W. Reid was a discovery employee from July 8, 2011, to July 20, 2011; George D. Smith was a discovery employee from October 21, 2010, to October 31, 2013; Karen Smith was a discovery employee from September 21, 2012, to October 8, 2012; and Bobby H. Stallings was a discovery employee from October 21, 2010, to December 20, 2010, and from March 1, 2011, to August 3, 2013. (*See* Tr. Ex. 3269 [USB Drive], Wyndham 004498-004464 [Tr. Ex. 53], 011924-011985 [Tr. Ex. 96], 099596-099701 [Tr. Ex. 1693], 020177-020280 [Tr. Ex. 177], 074734-078495 [Tr. Ex. 587], 093072-093198 [Tr. Ex. 1582], 090151-090216 [Tr. Ex. 1521], 058838-059045 [Tr. Ex. 451], 106323-106355 [Tr. Ex. 1812], 071991-072188 [Tr. Ex. 564]. Although Joshua Selfridge worked as a discovery employee, he did not do so at a Tennessee location during the recovery period, (*see* Wyndham089949 [Tr. Ex. 1513]), so none of his claims are subject to dismissal. The Court need only rule that the claims of discovery employees are dismissed without prejudice and need not address the specific workweeks for each

**D.  Defendants Should Be Granted Leave to Raise the Issue of Judicial Estoppel.**

In the Joint Status Report, Wyndham indicated that it would seek leave to file a motion for summary judgment against three opt-in Plaintiffs who failed to disclose their FLSA claims in bankruptcy.  (ECF No. 464 at 2).  Plaintiffs asserted that leave should not be granted because Wyndham "waived this issue."  (*Id.* at 2).

In its Opening Brief, Wyndham showed that three opt-in Plaintiffs failed to disclose their FLSA claims as assets in their bankruptcy proceedings and that this Court previously applied the doctrine of judicial estoppel under directly analogous circumstances.  (ECF No. 467 at 20-22). Wyndham further showed that the Sixth Circuit and district courts have held that judicial estoppel is an equitable doctrine that may be raised at the Court's discretion and is <u>not</u> subject to waiver, even if the issue is not raised at the trial court or on appeal. (*Id.* at 23-24 (citing *DeMarco v. Ohio Decorative Prods.*, *Inc.,* No. 92-2294, 1994 U.S. App. LEXIS 3848, at *24 n.5 (6th Cir. Feb. 25, 1994); *Green v. Liberty Ins. Corp.,* 220 F. Supp. 3d 842, 849 (E.D. Mich. 2016); *Cook v. St. John Health*, No. 10-10016, 2013 U.S. Dist. LEXIS 75044, at *13-15 (E.D. Mich. May 29, 2013)).

In their Response Brief, Plaintiffs did not identify any cases holding that judicial estoppel is subject to waiver.  (ECF No. 471 at 17-20).  Further, they did not dispute that the three opt-in Plaintiffs failed to disclose their FLSA claims in bankruptcy.  (*Id.*).  Instead, Plaintiffs asserted that the Court should disregard their failure to disclose their claims and decline to address judicial estoppel because (1) Wyndham allegedly made stipulations that preclude it from raising the issue, (2) the dispositive motion deadline has passed, and (3) the Sixth Circuit's mandate allegedly

---

employee.  The Parties will likely be able to resolve any of the granular issues regarding specific Plaintiffs and specific workweeks subject to dismissal.

precludes the Court from invoking judicial estoppel. (*Id.* at 17). Wyndham addresses each argument in turn.

Plaintiffs contend that Wyndham cannot raise the issue of judicial estoppel because "it is contrary to the parties' stipulation to determine damages on the current record." (*Id.* at 17). To manufacture this argument, Plaintiffs selectively quote from the section of the Joint Status Report addressing damages. Plaintiffs, however, ignore that Defendants expressly raised the judicial estoppel issue in the Joint Status Report. Specifically, the Joint Status Report stated:

> The Court previously entered summary judgment against five opt-in plaintiffs for failure to disclose their FLSA claims in bankruptcy. ECF No. 223. Defendants contend that they have identified three additional opt-in plaintiffs who failed to disclose their FLSA claims in bankruptcy. Defendants will seek leave to file a motion for summary judgment against these opt-in plaintiffs.

(ECF No. 464 at 2). Obviously, Defendants did not intend to waive the judicial estoppel issue by submitting the Joint Status Report. The Court likewise understood that the Joint Status Report did not bar Defendants from briefing this issue, as the Court requested that the Parties submit briefing on "whether Defendants should be permitted to raise judicial estoppel." (ECF No. 465 at 2).

Plaintiffs also contend that Wyndham was required to raise the issue of judicial estoppel by May 5, 2017, which was a dispositive motion deadline in an earlier Scheduling Order. (ECF No. 471 at 17-18). The Sixth Circuit has held that "district courts have discretion to modify initial scheduling orders upon a showing of good cause." *Broach v. City of Cincinnati,* 244 F. App'x 729, 733 n.4 (6th Cir. 2007) (citing Fed. R. Civ. P. 16(b)). Here, there is good cause to allow Wyndham to file a summary judgment motion because, as the Court previously recognized, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets." (ECF No. 223 at *6 (quotation omitted)). The Court should "protect the integrity of the judicial process by preventing [Plaintiffs] from playing fast and loose with the courts." (*Id.* (quotation omitted)); *see*

*also Newman v. Univ. of Dayton,* 751 F. App'x 809, 813 (6th Cir. 2018) (holding that "judicial estoppel is an equitable doctrine invoked by the court at its discretion" to prevent litigants from taking advantage of the judicial process).[10]

There is also good cause to modify the Scheduling Order because Plaintiffs Jeremy Saine and Rachel Taylor did not file their bankruptcy petitions until 2018 and, thus, did not fail to disclose their FLSA claims until 2018, which was after the summary judgment deadline had passed.[11] (*See* ECF No. 467 at 21-22). It was therefore impossible for Wyndham to have raised this issue for those Plaintiffs prior to the deadline. Plaintiffs have also failed to identify any prejudice they will suffer (other than explaining why they failed to disclose their FLSA claims in their bankruptcy cases). Accordingly, there is good cause for the Court to grant leave for Wyndham to file a motion and address the merits of the judicial estoppel issue. *See Glover v. Life Skills Found.,* No. 4:12-cv-1280, 2013 U.S. Dist. LEXIS 23474, at *3-4 (E.D. Mo. Feb. 21, 2013) (finding good cause to modify scheduling order and allow defendants to raise judicial estoppel issues where the defendants "only recently discovered facts to support a judicial estoppel defense" and the plaintiff did not show any prejudice); *Bartolon-Perez v. Island Granite & Stone,* No. 14-cv-10064, 2015 U.S. Dist. LEXIS 185086, at *2 (S.D. Fla. Apr. 2, 2015) (allowing summary judgment motion to be filed after scheduling order's deadline where the defendants "raise[d] serious issues of judicial estoppel").

---

[10] Courts have reasoned that judicial estoppel is not subject to waiver because judicial estoppel is a discretionary, equitable doctrine needed to protect the integrity of judicial system. *See DeMarco*, 1994 U.S. App. LEXIS 3848, at *24 n.5; *Green,* 220 F. Supp. 3d at 849; *Cook*, 2013 U.S. Dist. LEXIS 75044, at *13-15. That same reasoning supports a finding of good cause to modify the Scheduling Order in this case.

[11] Likewise, Wyndham did not have any knowledge of Plaintiff Sean Jeter's bankruptcy filings at the time of the initial deadline.

Plaintiffs also argue Wyndham cannot raise the issue of judicial estoppel because the Sixth Circuit issued a "limited remand" which limits the Court from addressing anything other than damages. (ECF No. 471 at 19-20). However, the Sixth Circuit issued a general remand with specific instructions to reassess damages for in-house and front-line employees, and this Court has discretion to invoke the equitable doctrine of judicial estoppel without taking any actions inconsistent with the Sixth Circuit's opinion.

"Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999) (citations omitted)). "The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand." *Scott v. Churchill,* 377 F.3d 565, 570 (6th Cir. 2004). "[T]o impose a limited remand, an appellate court must sufficiently outline the procedure the district court is to follow. The chain of intended events should be articulated with particularity." *Campbell,* 168 F.3d at 268; *see also United States v. Moore,* 131 F.3d 595, 598 (6th Cir. 1997) ("In the absence of an explicit limitation, the remand order is presumptively a general one.").

Here, the Sixth Circuit stated: "we affirm in part, reverse in part, vacate the damages award, and remand to the district court *for further proceedings consistent with this opinion." Pierce,* 922 F.3d at 750 (emphasis added); *see also id.* at 749 (on the issue of damages, remanding "to reassess damages for the in-house and front-line employees"). In light of that language and an examination of the entire opinion, it is apparent that there is a general remand and that the reassessment of damages is specifically limited to in-house and front-line employees. *See United States v. Lopez,*

Case 3:13-cv-00641-DCP   Document 472   Filed 10/04/19   Page 18 of 21   PageID #: 18519

655 F. Supp. 2d 720, 731 (E.D. Ky. 2009) (finding a general remand where the Sixth Circuit "reversed *and remanded for further proceedings consistent with this opinion*", did not direct the district court to take specific procedural actions, and merely included specific instructions on one particular issue (emphasis in original)); *see also United States v. O'Dell,* 320 F.3d 674, 680 (6th Cir. 2003) (citing as an example of a general remand: "we therefore vacate the district court's sentence and remand the case for resentencing *consistent with this opinion*").

Since the Sixth Circuit's remand was general in nature, this Court has "authority to address all matters *as long as remaining consistent with the remand*." *Campbell,* 168 F.3d at 265 (emphasis added). Here, there is nothing in the Sixth Circuit's opinion that would preclude this Court from addressing the issue of judicial estoppel.[12] The Sixth Circuit's discussion of certification, liability, and damages issues (which go to the merits of the cases) is distinct from the equitable doctrine of judicial estoppel. More specifically, a discrete finding that Plaintiffs are equitably estopped from taking inconsistent positions in this case and their bankruptcy case would be substantively distinct from a finding that there is no liability under the FLSA. *See New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (stating that judicial estoppel is a discretionary, equitable rule "intended to prevent improper use of judicial machinery"). The Sixth Circuit's opinion does not preclude the Court from taking up the issue of judicial estoppel. The Court should do so, as it has discretion to raise this equitable issue and protect the integrity of the judicial system.

---

[12] The same cannot be said of Plaintiffs' request to create a subclass and award damages to discovery employees. That relief is actually inconsistent with the Sixth Circuit's remand instructions *and the substance of Sixth Circuit opinion*, as previously explained in detail. (*See supra* Section C; ECF No. 467 at 4-5; ECF No. 470 at 16-19).

### E. Conclusion

For all the reasons set forth above and in Wyndham's prior briefing, the Court should (1) reject Plaintiffs' damages proposal because it based on their own discredited testimony and their unprecedented "winner-takes-all" interpretation of *Mt. Clemens*; (2) adopt Wyndham's damages model, which is based on Judge Shirley's factual findings, objectively reliable data, and reason; (3) dismiss the claims of discovery employees without prejudice; and (4) grant Wyndham leave to raise the issue of judicial estoppel in a motion for summary judgment.

Respectfully submitted,

s/ Craig A. Cowart
Colby S. Morgan, Jr. (TN Bar No. 005556)
Craig A. Cowart (TN Bar No. 017316)
JACKSON LEWIS P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
Telephone: (901) 462-2600
Facsimile: (901) 462-2626
Email:     colby.morgan@jacksonlewis.com
            craig.cowart@jacksonlewis.com

William J. Anthony (Admitted Pro Hac Vice)
JACKSON LEWIS P.C.
18 Corporate Woods Blvd, 3rd Floor
Albany, NY 12211
Telephone: (518) 649-9643
Facsimile: (518) 427-5956
Email: AnthonyW@jacksonlewis.com

D. Christopher Lauderdale (Admitted Pro Hac Vice)

JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
Email: Lauder@jacksonlewis.com

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 4th day of October, 2019, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification of such filing to the following:

Martin D. Holmes (TN Bar No. 012122)
Peter F. Klett (TN Bar No. 012688)
M. Reid Estes, Jr. (TN Bar No. 009043)
Autumn L. Gentry (Bar No. 20766)
DICKINSON WRIGHT PLLC
Fifth Third Center, Suite 800
424 Church Street
Nashville, TN 37219
Telephone: (615) 244-6538
Email: mdholmes@dickinsonwright.com
pklett@dickinsonwright.com
restes@dickinsonwright.com
agentry@dickensonwright.com

*ATTORNEYS FOR PLAINTIFFS AND OPT-IN PLAINTIFFS*

s/ Craig A. Cowart
Attorney for Defendants

4838-1274-0008, v. 2