IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | CASE NO. 3:13-cv-641 |
| Plaintiffs, | ) ) | District Judge: Pamela L. Reeves |
| | ) | Magistrate Judge: Debra C. Poplin |
| vs. | ) ) | |
| WYNDHAM VACATION RESORTS, INC., and WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) | COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT OF 1938 |
| | ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF PLAINTIFFS' BRIEF
REASSESSING DAMAGES FOLLOWING APPEAL**

Pursuant to the Court's July 12, 2019 Order (Doc. 465), Plaintiffs[1] file the following Reply in Support of Plaintiffs' Brief Reassessing Damages Following Appeal.

**I.   WYNDHAM'S ARGUMENTS ARE OVERTLY MISLEADING AND MERITLESS.**

**A.   The Record Does Not Support Wyndham's Wild Assertion That The District Court Found Plaintiffs Not Credible In Their Testimony Regarding The Number of Hours Worked On Average Each Week.**

Despite overwhelming evidence to the contrary, in their opening brief, Wyndham argued that the District Court rejected Plaintiffs' average number of hours worked because it found Plaintiffs were "not credible." In its Response, Wyndham concedes that the District Court found Plaintiffs credible as to *liability* issues, but now blindly asserts that the District Court found Plaintiffs "not credible" as to *damages*, due to their "outrageously high" testimony regarding the

---
[1] For purposes of this Brief, "Plaintiffs" refer to the named Plaintiffs and Opt-in Plaintiffs.

number of hours worked each week.[2] Like in its opening brief, noticeably absent from Wyndham's Response is *any* citation to the record where the District Court made such findings. This is because, unlike the damning credibility determinations the District Court made with regard to Wyndham's witnesses, nowhere in the District Court's 157-page Memorandum Opinion did the District Court make *any finding whatsoever* that Plaintiffs' testimony was "not credible." To the contrary, the District Court found that Plaintiffs and Plaintiffs' witness were "highly credible," whereas the District Court explicitly found that *none* of Wyndham's witnesses were credible. Thus, Wyndham's assertion is simply a gross fabrication and mischaracterization of the record.

Moreover, Wyndham's new "Plaintiffs-were-credible-as-to-liability, but-not-credible-as-to-damages" argument is completely contrary to Wyndham's repeated arguments on appeal that the District Court's award was the result of "arbitrary number picking," designed to "make both sides unhappy."[3] (Plaintiffs' Resp., Doc. 471, pp. 6-8.) Wyndham cannot have it both ways: either the District Court made a determination based upon a reasoned analysis consistent with *Mt. Clemens*, or it engaged in "arbitrary number picking." Plaintiffs agree that it was the latter – arbitrary number picking unsupported by the record and inconsistent with the *Mt. Clemens* framework.

---

[2] Wyndham hypocritically describes Plaintiffs' 60-plus hour estimates "outrageously high," even though its greed was the catalyst for the long hours it required Plaintiffs to work. Wyndham made 85 to 96% of each and every dollar its Sales Representatives brought in, as Wyndham only paid Sales Representatives commissions ranging from 4 to 15%. (Tr., Vol. X, Doc. 393, PageID ##11833-11834.) (Even then, less than 1% of Wyndham's Sales Representatives generated enough sales to earn the maximum 15% commission. *Id.*) Wyndham's greed, coupled with the fact that Wyndham did not pay its Sales Representatives overtime because of its systematic wage theft, incentivized it to work its Sales Representatives for as long and as hard as Wyndham could get away with it.

[3] Plaintiffs have already identified the countless times and various ways that Wyndham identified the Magistrate Judge's award as arbitrarily pulling the 52-hour number out of "thin air." (Plaintiffs' Resp., Doc. 471, pp. 6-8.) Therefore, to avoid repetition, Plaintiffs rely on their Response, rather than repeating their arguments here.

If the Magistrate Judge truly believed Plaintiffs were not credible, the Magistrate Judge would have explicitly stated so, just as he explicitly found that Wyndham's witnesses were not credible no less than 15 times in his Memorandum Opinion.

Wyndham's new position is contrary to the record evidence and the District Court's credibility determinations. As a result, there is no justification for rejecting Plaintiffs' testimony regarding the number of hours they worked or for the Court to accept Wyndham's newly contrived and *inaccurate* damages model, which conflicts with the Supreme Court's burden-shifting framework in *Mt. Clemens*.

> **B.     Wyndham's Newly Contrived Damages Model Is Objectively *Unreliable* As It Is Based Upon Plaintiffs' Off-The-Clock Study Which Wyndham Previously Represented To The Court Was Incomplete And Inaccurate.**

After the District Court found that every single one of Wyndham's witnesses was not credible and thoroughly rejected their testimony as to both liability *and* damages, in a last ditch effort, Wyndham now proposes that the Court accept a contrived damages model based upon Plaintiffs' Off-The-Clock Study that Wyndham, itself, previously represented to the Court was incomplete and, therefore, inaccurate, *and tried to exclude from evidence*.

As set forth more fully in Plaintiffs' Response (Plaintiffs' Resp., Doc. 471, pp. 8-15), Plaintiffs prepared the Off-The-Clock Study to show that Plaintiffs were often working off the clock when they made a sale and, thus, introduce conclusive documentary evidence of Wyndham's illegal policy and practice of requiring Sales Representatives to work off the clock to avoid paying overtime. Plaintiffs compiled the Off-The-Clock Study from spreadsheet data produced by Wyndham, which purportedly contained the date and time *all* contracts were generated by Plaintiffs.

However, *on the very first day at trial*, Wyndham's counsel represented to the Court that

Plaintiffs' Off-The-Clock Study was *incomplete* as it did not identify *all* the contracts Plaintiffs closed, and, therefore, should be excluded as *inaccurate*. (Tr., Vol. II, Doc. 377, PageID ##9550-9551.) Opt-in Plaintiff Craig Thrift also testified that when he compared the Off-The-Clock Study with his Wyndham sales commission statements, he discovered that his sales commission statements showed "far more" contracts than those listed on the Off-The-Clock Study. (Tr., Vol. II, Doc. 377, PageID #10277.) Therefore, it was conclusively established at trial that Plaintiffs' Off-The-Clock Study was incomplete and captured only a *portion* of the contract closings Plaintiffs performed.

Despite this fact, Wyndham now blatantly misrepresents to the Court that Plaintiffs' Off-The-Clock Study documents "the date and time that sales were made during the class period," and is the "best evidence on the issue of how late Plaintiffs worked."[4] (Wyndham's Brief, Doc. 467, p. 8.)

Contrary to Wyndham's assertions, Plaintiffs' Off-The-Clock Study is not "devastating to the credibility of [Plaintiffs'] testimony regarding how many hours a week they worked." (Wyndham's Resp., Doc. 470, p. 9.) Rather, it is devastating to the credibility of Wyndham, as Wyndham has intentionally misrepresented to the Court the nature of Plaintiffs' Off-The-Clock Study, despite knowing *for almost two years* that the Off-The-Clock Study does not capture *all* contracts Plaintiffs generated as Wyndham now suggests. As a result, rather than being based upon "objectively reliable evidence" of how late Plaintiffs worked, Wyndham's damages model

---

[4] As set forth in Plaintiffs' Response, the Off-The-Clock Study also does not take into account the long hours Sales Representatives spent each week on tours trying to make a sale, but failing to close the deal; or the long hours Sales Representatives spent each week attending morning meetings, engaging in lengthy sales processes and training, working Nightline, and attending party weekends, dinner parties and other work related activities; working 6 days per week ("6/1s") and often 7 days per week; being on-call 24/7, which resulted in Plaintiffs spending many hours each week answering or making phone calls when they were away from Wyndham's properties; or working on their days off for "Hero Tours," continuances, or "be-backs" to accommodate the schedules of Wyndham's customers.

is completely unreliable as it is based upon the Off-The-Clock Study Wyndham's own counsel tried to exclude at trial as being incomplete and inaccurate. As a result, the Court should reject Wyndham's newly contrived damages model.

    **C.**    ***Mt. Clemens* Mandates That The District Court Enter An Award For Plaintiffs Based Upon Their Estimated Average Number Of Hours Worked Each Week.**

Wyndham disingenuously claims that "Plaintiffs failed to present the Court with any model to consider." (Wyndham's Resp., Doc. 470, p. 2.) The only "model" to consider, however, is the burden-shifting framework of *Mt. Clemens,* which Plaintiffs have relied upon since day one and which Wyndham has ignored.

As pointed out by Wyndham, the District Court awarded Plaintiffs damages based upon an average of 52 hours per week after the Court found the following:

> The Court is mindful that the time records are essentially of no use due to their falsity and inaccuracy. The Court is also mindful that the estimates of hours of all witnesses were, at best, estimates of hours worked years ago. The Court is also mindful that each witness may have been somewhat biased, high or low, in their respective testimony and estimates on hours worked.

(Memo. Opinion, Doc. 427, p. 156.) As a result, instead of accepting Plaintiffs' testimony of their weekly average and the overwhelming proof in the record, the District Court substantially reduced Plaintiffs' average number of hours worked, by arbitrarily cutting their overtime claim in half, because Plaintiffs only testified to "estimates" which "*may* have been somewhat biased." *Id.* (emphasis added).

*Mt. Clemens* and its progeny, however, compel a different result, as they hold that where the employer violates its legal duty to keep accurate hours of work, the employees' *own testimony* is the best evidence of Plaintiffs' damages. Therefore, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the solution

5

is "not to penalize the employee by denying him any recovery on the ground that he is unable to prove the *precise* extent of uncompensated work." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946) (emphasis added). Rather, an employee has the *relaxed* burden of proving that he has in fact performed work for which he was improperly compensated and providing sufficient evidence of the amount and extent of that work. *Id.* at 687.

The burden then shifts to the employer to "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* If the employer fails to do, the court may award damages to the employee, "even though the result be only *approximate*." *Id.* (emphasis added); *see also Bautista Hernandez v. Tadala's Nursery, Inc.*, 34 F. Supp. 3d 1229, 1242 (S.D. Fla. 2014) (holding that where the employer has not kept such records, "the court must look to other evidence," which "will frequently be *anecdotal and imprecise*, as employees seldom keep records regarding their own work. . . Employees, therefore, may recover even though the amount *may be uncertain* and the damages difficult to calculate") (emphasis added); *Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983) (finding farmwork employees met prima facie burden despite fact that their "[t]estimony as to the hours worked *varied widely and was often confused and contradictory*") (emphasis added); *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1352 (5th Cir. 1980) (permitting estimation of hours based upon "*rough computations* of [plaintiff's] subconscious mind") (emphasis added); *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 599 (5th Cir.1979) (finding that employee met prima facie burden with evidence that was *demonstrably inaccurate*, as the inaccuracy was due to the employer's failure to keep more accurate records).

Wyndham claims that Plaintiffs have failed to cite to any authority which would support

6

the Court just accepting Plaintiffs' testimony of their estimated average number of hours worked in light of the record evidence demonstrating that Wyndham failed to rebut Plaintiffs' proof, because such an "illogical interpretation of *Mt. Clemens* has not been adopted by courts in the Sixth Circuit." (Wyndham's Resp., Doc. 470, p. 15.) Once again, Wyndham is incorrect, as demonstrated below. Worse still, Wyndham is advocating that this Court do what *Mt. Clemens* specifically prohibits, *i.e.*, "penalize the employee . . . on the ground that he is unable to prove the *precise* extent of uncompensated work" and thereby reward Wyndham for its systemic and fraudulent record keeping violations. *Mt. Clemens*, 328 U.S. at 686–87 (1946) (emphasis added).

In *Cowan v. Treetop Enterprises*, 163 F. Supp. 2d 930, 935, 2001 WL 987231 (M.D. Tenn. 2001), plaintiffs alleged that their employer misclassified them as exempt and failed to pay them overtime. From the testimony of those plaintiffs who testified, the District Court for the Middle District of Tennessee found that the average number of hours worked by plaintiffs was 89.04 hours per week. *Id.* at 935. Pursuant to the burden-shifting framework of *Mt. Clemens*, the burden then shifted to the defendants to rebut plaintiffs' evidence.

To dispute plaintiffs' hours, defendants cited to company cost reports and testimony from several current employees. *Id.* at 936. However, the District Court found the reports inaccurate and unreliable, and found that defense witnesses' experiences were not representative of plaintiffs' actual work experiences. *Id.* at 936-37. As a result, the District Court found that defendants failed to meet their burden, and entered an award for plaintiffs based upon *their testimony* which resulted in an estimated average of 89.04 hours per week. *Id.* at 938. In properly applying *Mt. Clemens*, the District Court then extrapolated this average to the entire plaintiff class to determine the amount of overtime owed for the number of weeks of work

7

stipulated by the parties. *Id.*

After finding that employers failed to rebut plaintiffs' proof, other jurisdictions have, likewise, accepted plaintiffs' testimony in arriving at an average number of hours worked since, even though necessarily imprecise, it is the best available evidence when the employer violates its recordkeeping duties. *See also Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 31718 (5th Cir. 1981) (after finding employer failed to rebut plaintiffs' evidence, the court awarded damages based upon *plaintiffs' testimony* as to the average weekly hours they worked, and rendered them a judgment on those "admittedly *approximate* calculations") (emphasis added); *Sales v. Bailey*, No. 2:12-CV-00056-SA-SAA, 2014 WL 3897726, at *13 (N.D. Miss. Aug. 8, 2014) (after finding that defendants failed to rebut plaintiffs' evidence, the court accepted the *plaintiffs' testimony* as to their average number of hours worked); *Romero v. Anjdev Enterprises, Inc.*, No. 14 CIV. 457, 2017 WL 548216, at *5 (S.D.N.Y. Feb. 10, 2017) (accepting *plaintiffs' estimate* that they worked 13-hour days after finding defendants failed to carry their burden to negate the reasonableness of plaintiffs' estimate).

In contrast, Wyndham cites to the case of *Bauer v. Singh*, No. 3:09-CV-194, 2010 WL 5088126 (S.D. Ohio Dec. 7, 2010), claiming that "[e]ven though the court agreed that the company's time records were not accurate, it did not enter judgment for the plaintiffs based on the number of hours they claimed to have worked." (Wyndham's Resp., p. 470, p. 15.) Wyndham's characterization of *Bauer* implies that its court entered an award for employees that was less than their claimed estimated average, despite the fact the employer's time records were not accurate. However, this is just another example of Wyndham's overt attempt to mislead the Court in this matter.

Wyndham fails to mention that *Bauer* did not involve an award, a damages calculation, or

8

even a trial. In fact, the court did not even reject the number of hours plaintiffs claimed they worked, as insinuated by Wyndham. Rather, in *Bauer*, the court simply held that there were genuine issues of material fact that precluded summary judgment. Therefore, *Bauer* is not on point.

By arguing that Plaintiffs' estimated average is not accurate enough, Wyndham is essentially asking the Court to ignore *Mt. Clemens*. However,

> [d]isapproving of an estimated-average approach simply due to lack of complete accuracy would ignore the central tenant of *Mt. Clemens*—an inaccuracy in damages should not bar recovery for violations of the FLSA or penalize employees for an employer's failure to keep adequate records. *See id.* at 688, 66 S.Ct. 1187 ("The damage is therefore certain. The uncertainty lies only in the amount of damages arising from the statutory violation by the employer. In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' " (*quoting Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931))); *see also Hamm's Drive Inn*, 661 F.2d at 318 (upholding an estimated-average approach and noting that "[e]vidence used to calculate wages owed need not be perfectly accurate, since the employee should not be penalized when the inaccuracy is due to a defendant's failure to keep adequate records").

*Monroe v. FTS USA, LLC*, 860 F.3d 389, 412 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 980 (2018).

Applying *Mt. Clemens*, the Sixth Circuit in *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir.1994), "reversed a district court that refused to 'extrapolate' an approximation of damages and remanded the action for determination of damages in accordance with *Mt. Clemens* standards. The Plaintiffs need not prove their damages with precision." *Cowan*, 163 F. Supp. 2d at 937 (*citing Fegley*, 19 F.3d at 1133). Wyndham is now attempting to coax this Court to do exactly what the Court in *Fegley* did that prompted the Sixth Circuit to reverse it.

To hold that Plaintiffs' estimated average is not accurate enough would penalize

9

Plaintiffs for Wyndham's willful failure to keep accurate records, and essentially reward Wyndham for violating its statutory record-keeping obligations.  However, contrary to Wyndham's position, these obligations "are not mere technicalities, but substantive obligations that are 'fundamental underpinnings' of the FLSA and critical to ensuring the statute's effectiveness, for an employer's '[f]ailure to keep accurate records can obscure a multitude of minimum wage and overtime violations.'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 218 (S.D.N.Y. 2002) (finding that between January 1992 and April 1998, plaintiff worked a total of *91* hours per week, and worked an additional three hours per week during the winter months, for a total of *94* hours per week) (*citing Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 607 (5th Cir.1966); *Mendez v. Brady*, 618 F.Supp. 579, 591 (W.D.Mich.1985)).

Plaintiffs overwhelmingly met their burden under *Mt. Clemens*.  The burden then shifted to Wyndham to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  Wyndham failed to meet their burden at trial and cannot meet it now.

Wyndham "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the requirements of" the FLSA.  *Mt. Clemens*, 328 U.S. at 688.  Even in situations where the lack of accurate records grows out of a bona fide mistake as to whether certain activities or non-activities constitute work, "the employer, having received the benefits of such work, cannot object to the payment for the work on the *most accurate basis possible* under the circumstances." *Id.* (emphasis added).

Of course, the "most accurate basis possible" in this case is the estimated average number of hours worked from the testimony of those who were victimized by Wyndham's illegal pay

practices. Plaintiffs all testified to the *average* number of hours they worked each week during the Recovery Period, which indicates that they accounted for weeks in which they worked less hours, as well as weeks in which the worked more hours. Accordingly, the Court should reject Wyndham's illusory and self-serving damages model and enter an award for Front Line and In House Sales Representatives based upon an average of 63.54 hours worked per week, and an award for Discovery Representatives based upon an average of 61 hours worked per week consistent with the dictates of *Mt. Clemens* and the only result supported by the evidentiary record in this case.

Awarding Plaintiffs anything less than their estimated average would allow Wyndham to simply shirk its statutory duties under the FLSA and reward it with a windfall in violation of controlling legal precedent. Wyndham deliberately and consciously failed to keep accurate records to pad its bottom line at Plaintiffs' expense. Wyndham now must face the consequences of its willful actions.

### D. The Record Does Not Support Wyndham's Frivolous Claim That Discovery Representatives Should Be Dismissed.

Wyndham's assertions that Discovery Representatives should be dismissed are frivolous at best. First, Wyndham criticizes Plaintiffs for even suggesting that a subclass be created for Discovery Representatives, claiming that the Sixth Circuit did not include such instructions in its mandate to the District Court. Yet, unlike the Sixth Circuit's pronouncement that "at the least, the [district] court should have created a separate subclass for the discovery employees," nowhere in its opinion did the Sixth Circuit hold, suggest, or even imply that Discovery Representatives should be dismissed as now claimed by Wyndham.

Second, Wyndham criticizes Plaintiff for having only one Discovery Representative,

Bobby Stallings, testify at trial. As set forth in Plaintiffs' opening brief, when considering those employees who worked solely as a Discovery Sales Representatives and not as a Front Line or In House Sales Representatives, the District Court heard testimony from 1 of the 4 Discovery Plaintiffs, or 25% of those who only worked in Discovery. When also considering the 7 employees who worked in Discovery, as well as Front Line and In House positions, the District Court heard testimony from 1 of the 11 Discovery Plaintiffs, or approximately 9%. Even if the lesser percentage is used, this percentage is *higher* than the 5.8% percent of technicians who testified in *Monroe*, which was affirmed by the Sixth Circuit. Thus, Plaintiffs provided sufficient representative proof as to Discovery Representatives.

In addition, Wyndham continues to conveniently ignore the fact that other Sales Representatives also testified regarding Discovery Representatives. As set forth in Plaintiffs' opening brief and Response, three other Plaintiffs testified as to how late Discovery Representatives at the three *other* Tennessee locations were required to stay at night, which is consistent with Mr. Stallings' testimony.

Wyndham's resistance to a sub-class is indicative of the scorched-earth defense tactics it has embraced throughout the long six-year history of this case. It is uncontroverted that the record demonstrates that Discovery Sales Representatives were similarly-situated *to each other* such that representative proof is proper. However, Wyndham's obstructive and scorched-earth approach has accomplished nothing more than to unnecessarily increase attorney's fees and costs, as-well-as create unnecessary work for the Court. Wyndham should not be rewarded for its tactics. The Court should summarily reject Wyndham's request to dismiss Discovery Representatives, and instead enter an award in their favor based upon an average of 61 hours of work per week.

12

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order in accordance with *Mt. Clemens*, and find that: 1) Front Line and In House Sales Representatives are entitled to damages based upon an average of 63.54 hours of work each week; 2) Discovery Sales Representatives are entitled to damages based upon an average of 61 hours of work each week; and 3) Defendants are not permitted to file an untimely summary judgment motion asserting judicial estoppel in violation of the Sixth Circuit's limited mandate.[5]

Respectfully submitted,

DICKINSON WRIGHT PLLC

By: /s/ Martin D. Holmes
    Martin D. Holmes, # 012122
    Peter F. Klett, #012688
    M. Reid Estes, Jr., #009043
    Autumn L. Gentry #20766
    Fifth Third Center, Suite 800
    424 Church Street
    Nashville, TN 37219
    Phone: (615) 244-6538
    mdholmes@dickinsonwright.com
    pklett@dickinsonwright.com
    restes@dickinsonwright.com
    agentry@dickinsonwright.com

*Attorneys for Plaintiffs and Opt-In Plaintiffs*

---

[5] Wyndham did not brief the summary judgment issue in its Response. As a result, and in order to conform with the requirements of LR 7.1(c) which requires that reply briefs only be used to "directly reply to the points and authorities contained in the answering brief," Plaintiffs do not address this issue in their Reply. Therefore, Plaintiffs rely upon the argument in their responsive brief (Doc. 471, pp. 17-20) to oppose Wyndham's request to file an untimely summary judgment motion.

# CERTIFICATE OF SERVICE

       I hereby certify that on October 4, 2019, a true and correct copy of the foregoing has been served on the following individuals via the court's electronic service:

Craig A. Cowart
Colby S. Morgan, Jr.
Jackson Lewis P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
craig.cowart@jacksonlewis.com
colby.morgan@jacksonlewis.com

William J. Anthony
Jackson Lewis P.C.
18 Corporate Woods Boulevard
Albany, NY 12211
william.anthony@jacksonlewis.com

D. Christopher Lauderdale
Jackson Lewis P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
christopher.lauderdale@jacksonlewis.com

          /s/ Martin D. Holmes
          Martin D. Holmes

NASHVILLE 57404-1 708932v1

14

Case 3:13-cv-00641-DCP   Document 473   Filed 10/04/19   Page 14 of 14   PageID #: 18537