## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| JESSE PIERCE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:13-cv-00641-DCP |
| | ) | |
| WYNDHAM VACATION RESORTS, INC. | ) | |
| and WYNDHAM VACATION | ) | |
| OWNERSHIP, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFFS JEREMY SAINE, RACHAEL TAYLOR, AND SEAN JETER

Defendants Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership, Inc. ("Defendants" or "Wyndham") respectfully submit this memorandum in support of their Motion for Summary Judgment on the claims of Jeremy Saine, Rachael Taylor, and Sean Jeter.

### I.    INTRODUCTION

Opt-in Plaintiffs Jeremy Saine, Rachael Taylor, and Sean Jeter each filed for bankruptcy and knowingly submitted false information to the Bankruptcy Court of the Eastern District of Tennessee by failing to notify it of their FLSA claims. Consequently, their FLSA claims are barred by judicial estoppel, an equitable doctrine invoked in the Court's discretion to protect the integrity of the judicial system. This equitable doctrine can and should be applied in this procedural posture. To hold otherwise would give Plaintiffs free rein to defraud the Bankruptcy Court and their bankruptcy creditors while their FLSA claims are on appeal or in an otherwise advanced posture. Judicial estoppel is not subject to waiver, and Defendants never waived any arguments regarding

it. Further, there is no language in the Sixth Circuit's mandate that precludes this Court from applying judicial estoppel on remand.

## II. BACKGROUND

This is a collective action brought by timeshare sales representatives who worked at Wyndham's facilities in Tennessee and who seek to recover overtime pay under the Fair Labor Standards Act ("FLSA"). This Court previously entered summary judgment against five Opt-in Plaintiffs for failure to disclose their FLSA claims in bankruptcy. *See* ECF No. 223. Defendants have since learned that an additional three Opt-in Plaintiffs – Jeremy Saine, Rachael Taylor, and Sean Jeter – also filed bankruptcy petitions while this action was pending and did not disclose their FLSA claims to the Bankruptcy Court, thereby taking advantage of the judicial system and defrauding their bankruptcy creditors.

This matter is currently before the Court on remand from the Sixth Circuit. On appeal, the Sixth Circuit (1) partially decertified Plaintiffs' collective action, holding that discovery sales employees were not similarly situated to others in the collective action, (2) vacated Plaintiffs' damages award, (3) remanded to reassess damages for front-line and in-house sales employees, and (4) affirmed summary judgment against a separate Opt-in Plaintiff for failure to disclose her FLSA claim in bankruptcy. *See Pierce v. Wyndham Vacation Resorts, Inc.,* 922 F.3d 741 (6th Cir. 2019).

Following a status conference on June 24, 2019, and submission of a Joint Status Report on July 10, 2019 (ECF No. 464), the Court ordered the Parties to submit briefs addressing the following three issues: (1) how the discovery employees' claims should be resolved in light of the Sixth Circuit's opinion, (2) how to reassess damages for the front-line and in-house sales employees, and (3) whether Defendants should be permitted to raise judicial estoppel at this time. (ECF No. 465). The Parties completed briefing these issues on October 4, 2019.

On February 10, 2021, the Court granted leave to Defendants to file a Motion for Summary Judgment on the issue of judicial estoppel with respect to Opt-in Plaintiffs Jeremy Saine, Rachael Taylor, and Sean Jeter. The Court instructed Defendants to address two procedural arguments raised by Plaintiffs and the merits of judicial estoppel, specifically: "(1) whether judicial estoppel is applicable given the procedural posture of this case, (2) whether applying judicial estoppel violates the Sixth Circuit's mandate, and (3) whether judicial estoppel bars Jeremy Saine's, Rachael Taylor's, and Sean Jeter's monetary award." (ECF No. 479.)[1]  Defendants will address each issue herein.

### III.  JUDICIAL ESTOPPEL CAN BE RAISED AT THIS TIME.

In the Joint Status Report filed after remand, Wyndham indicated that it would seek leave to file a motion for summary judgment against the three Opt-in Plaintiffs who it learned subsequent to trial had failed to disclose their FLSA claims in bankruptcy proceeding pending during the course of this case.  (ECF No. 464 at 2). Plaintiffs asserted that they wish to avoid the consequences of their dishonest disclosures, not based on the merits, but based on a technical waiver argument: "It is Plaintiffs' position that leave should not be granted for Defendants to file the motion for summary judgment because Defendants failed to raise this issue in the trial court prior to the matter being tried and appealed and, therefore, have waived this issue." (ECF No. 464 at *2).  Plaintiffs' waiver argument is groundless.

---

[1]  Subsequent to the Joint Status Report and the filing of the parties' final memoranda of law in October 2019; indeed, subsequent to this Court's February 10, 2021 order authorizing Defendants to file the instant Motion for Summary Judgment, Defendants learned that two more Plaintiffs failed to disclose this case in their bankruptcy filings.  As the February 10, 2021 order was specific to the three identified plaintiffs, Defendants have not included these two additional plaintiffs in this motion.  Should the Court request it, Defendants will brief those claims as well.

Judicial estoppel is not a typical affirmative defense subject to waiver. Rather, it is "an equitable doctrine *invoked by the court at its discretion*" to prevent litigants from taking advantage of the judicial process, for example, by failing to disclose employment claims in a bankruptcy proceeding. *Newman v. Univ. of Dayton,* 751 F. App'x 809, 813 (6th Cir. 2018) (emphasis added) (quotation omitted). The Sixth Circuit has held that the doctrine of judicial estoppel is not subject to waiver, even if the doctrine was not initially raised at the trial court. *DeMarco v. Ohio Decorative Prods*., *Inc.,* No. 92-2294, 1994 U.S. App. LEXIS 3848, at *24 n.5 (6th Cir. Feb. 25, 1994). In *Demarco,* the plaintiff argued that "defendants have waived their judicial estoppel argument by not raising it in the district court," and cited *Altman v. Altman,* 653 F.2d 755, 757-58 (3d Cir. 1981), for the proposition that judicial estoppel cannot be raised for the first time on appeal. *Demarco,* 1994 U.S. App. LEXIS 3848, at *24 n.5. The Sixth Circuit rejected that argument, saying: "*Altman*, however, is contrary to the overwhelming weight of the authority. Underlying the doctrine of judicial estoppel is the desire to protect the integrity of the judiciary, not individual litigants." *Id.* (citation omitted). "As such, even had defendants not raised the argument on appeal, [the court] could sua sponte consider whether judicial estoppel is appropriate under the facts presented." *Id.*

District courts in this Circuit have likewise rejected arguments that judicial estoppel is subject to waiver. *See Green v. Liberty Ins. Corp.,* 220 F. Supp. 3d 842, 849 (E.D. Mich. 2016) ("Plaintiffs argue that Defendant has waived any judicial estoppel defense by failing to raise it in its answer. But judicial estoppel is not an affirmative defense within the meaning of the federal rules, it is an equitable doctrine invoked by the court at its discretion. Defendant has not waived judicial estoppel — nor could it." (citations omitted)); *Cook v. St. John Health*, No. 10-10016, 2013 U.S. Dist. LEXIS 75044, at *13-15 (E.D. Mich. May 29, 2013) ("[T]he Court rejects

Plaintiff's assertion that Defendants waived judicial estoppel as a defense . . . . [T]he Court observes that the doctrine exists to protect the integrity of the court. The purpose trumps any complaint of waiver advanced by Plaintiff.").

Further, waiver is "an intentional relinquishment of a known right." *SEC v. AIC, Inc.,* 2013 U.S. Dist. LEXIS 130249, at *10-11 (E.D. Tenn. Sep. 12, 2013). "[T]he party asserting waiver bears the burden of proving that the party against whom waiver is asserted has, by a course of acts and conduct, or by so neglecting and failing to act, induced a belief that it was the party's intention and purpose to waive." *Franklin Am. Mortg. Co. v. Chi. Fin. Servs.,* 145 F. Supp. 3d 725, 735 (M.D. Tenn. 2015) (citation omitted). Defendants have never intended to waive the right to argue that some claims are barred by judicial estoppel. To the contrary, Defendants affirmatively raised this argument by moving for summary judgment against five plaintiffs prior to the trial. (ECF No. 171). At that time, Defendants could not have moved on this basis as to Saine or Taylor as those plaintiffs had not yet filed for bankruptcy, and Defendants were not aware of Jeter's filing. There was no intentional waiver.

Defendants made these same arguments in their Opening Brief on remand. (ECF No. 467 at 20-24). In their Response Brief, Plaintiffs did not identify any cases holding that judicial estoppel is subject to waiver. (ECF No. 471 at 17-20). Further, they did not dispute that the three Opt-in Plaintiffs failed to disclose their FLSA claims in bankruptcy. (*Id.*). Instead, Plaintiffs asserted that the Court should disregard their failure to disclose their claims and decline to address judicial estoppel because (a) Wyndham allegedly made stipulations that preclude it from raising the issue, (b) the dispositive motion deadline had passed, and (c) the Sixth Circuit's mandate allegedly precludes the Court from invoking judicial estoppel. (*Id.* at 17). Wyndham addresses each argument in turn.

5

**A. Defendants Did Not Waive Judicial Estoppel by Stipulation.**

Plaintiffs contend that Wyndham cannot raise the issue of judicial estoppel because "it is contrary to the parties' stipulation to determine damages on the current record." (*Id.* at 17). To manufacture this argument, Plaintiffs selectively quote from the section of the Joint Status Report addressing damages. Plaintiffs, however, ignore that Defendants expressly raised the judicial estoppel issue in the Joint Status Report. Specifically, the Joint Status Report stated:

> The Court previously entered summary judgment against five opt-in plaintiffs for failure to disclose their FLSA claims in bankruptcy. ECF No. 223. Defendants contend that they have identified three additional opt-in plaintiffs who failed to disclose their FLSA claims in bankruptcy. Defendants will seek leave to file a motion for summary judgment against these opt-in plaintiffs.

(ECF No. 464 at 2). Obviously, Defendants did not intend to waive the judicial estoppel issue by submitting the Joint Status Report. The Court likewise understood that the Joint Status Report did not bar Defendants from briefing this issue, as the Court requested that the Parties submit briefing on "whether Defendants should be permitted to raise judicial estoppel." (ECF No. 465 at 2). Plaintiffs' waiver argument regarding the stipulation is untenable. Moreover, as set forth above, judicial estoppel is not subject to waiver.

**B. There is Good Cause to Address Judicial Estoppel.**

Plaintiffs also contend that Wyndham was required to raise the issue of judicial estoppel by May 5, 2017, which was a dispositive motion deadline in an earlier Scheduling Order. (ECF No. 471 at 17-18). The Sixth Circuit has held that "district courts have discretion to modify initial scheduling orders upon a showing of good cause." *Broach v. City of Cincinnati,* 244 F. App'x 729, 733 n.4 (6th Cir. 2007) (citing Fed. R. Civ. P. 16(b)). Here, there is good cause to allow Wyndham to file a summary judgment motion because, as the Court previously recognized, "the integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets." (ECF No.

223 at *6 (quotation omitted)). The Court should "protect the integrity of the judicial process by preventing [Plaintiffs] from playing fast and loose with the courts." (*Id.* (quotation omitted)); *see also Newman,* 751 F. App'x at 813 (holding that "judicial estoppel is an equitable doctrine invoked by the court at its discretion" to prevent litigants from taking advantage of the judicial process).

As noted above, the Sixth Circuit has reasoned that judicial estoppel is not subject to waiver *even when first raised after judgment has been entered* because judicial estoppel is a discretionary, equitable doctrine needed to protect the integrity of judicial system. *See DeMarco*, 1994 U.S. App. LEXIS 3848, at *24 n.5; *accord Green,* 220 F. Supp. 3d at 849; *Cook*, 2013 U.S. Dist. LEXIS 75044, at *13-15. The same reasoning supports a finding of good cause to modify the Scheduling Order in this case. The Court has a duty to protect the integrity of the judicial system and should invoke its discretion to hear the merits of Defendants' judicial estoppel arguments. The Opt-in Plaintiffs' fraudulent asset disclosures to the Bankruptcy Court should not be excused.[2]

There is also good cause to modify the Scheduling Order because Opt-in Plaintiffs Jeremy Saine and Rachel Taylor did not file their bankruptcy petitions until 2018 and, thus, did not fail to disclose their FLSA claims until 2018, SOF ¶¶ 6, 19, 34, which was after the summary judgment deadline had passed.[3] (*See* ECF No. 467 at 21-22). It was therefore impossible for Wyndham to have raised this issue for those Plaintiffs prior to the deadline. Plaintiffs have also failed to identify any prejudice they will suffer (other than explaining why they failed to disclose their FLSA claims in their bankruptcy cases). Accordingly, there is good cause for the Court to address the merits of

---

[2] Notably, even after a final judgment is entered, the Court may relieve a party from the judgment based on "newly discovered evidence," "fraud …, misrepresentation, or misconduct by an opposing party," where the judgment is "no longer equitable," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2),(3).

[3] Likewise, Wyndham did not have any knowledge of Plaintiff Sean Jeter's bankruptcy filings at the time of the initial deadline.

the judicial estoppel issue. *See Glover v. Life Skills Found.,* No. 4:12-cv-1280, 2013 U.S. Dist. LEXIS 23474, at *3-4 (E.D. Mo. Feb. 21, 2013) (finding good cause to modify scheduling order and allow defendants to raise judicial estoppel issues where the defendants "only recently discovered facts to support a judicial estoppel defense" and the plaintiff did not show any prejudice); *Bartolon-Perez v. Island Granite & Stone,* No. 14-cv-10064, 2015 U.S. Dist. LEXIS 185086, at *2 (S.D. Fla. Apr. 2, 2015) (allowing summary judgment motion to be filed after scheduling order's deadline where the defendants "raise[d] serious issues of judicial estoppel").

**C. The Sixth Circuit's Mandate Does Not Bar Application of Judicial Estoppel.**

Plaintiffs have also argued that Wyndham cannot raise the issue of judicial estoppel because the Sixth Circuit issued a "limited remand" which limits the Court from addressing anything other than damages. (ECF No. 471 at 19-20). However, the Sixth Circuit issued a general remand with specific instructions to reassess damages for in-house and front-line employees, and this Court has discretion to invoke the equitable doctrine of judicial estoppel without taking any actions inconsistent with the Sixth Circuit's opinion.

"Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate. General remands, in contrast, give district courts authority to address all matters as long as remaining consistent with the remand." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999) (citations omitted)). "The scope of a remand is determined by examining the entire order or opinion, to determine whether and how the court of appeals intended to limit a remand." *Scott v. Churchill,* 377 F.3d 565, 570 (6th Cir. 2004). "[T]o impose a limited remand, an appellate court must sufficiently outline the procedure the district court is to follow. The chain of intended events should be articulated with particularity." *Campbell,* 168 F.3d at 268; *see also United States v. Moore,* 131

8

F.3d 595, 598 (6th Cir. 1997) ("In the absence of an explicit limitation, the remand order is presumptively a general one.").

Here, the Sixth Circuit stated: "we affirm in part, reverse in part, vacate the damages award, and remand to the district court *for further proceedings consistent with this opinion." Pierce,* 922 F.3d at 750 (emphasis added); *see also id.* at 749 (on the issue of damages, remanding "to reassess damages for the in-house and front-line employees"). In light of that language and an examination of the entire opinion, it is apparent that there is a general remand and that the reassessment of damages is specifically limited to in-house and front-line employees. *See United States v. Lopez,* 655 F. Supp. 2d 720, 731 (E.D. Ky. 2009) (finding a general remand where the Sixth Circuit "reversed *and remanded for further proceedings consistent with this opinion*", did not direct the district court to take specific procedural actions, and merely included specific instructions on one particular issue (emphasis in original)); *see also United States v. O'Dell,* 320 F.3d 674, 680 (6th Cir. 2003) (citing as an example of a general remand: "we therefore vacate the district court's sentence and remand the case for resentencing *consistent with this opinion*").

Since the Sixth Circuit's remand was general in nature, this Court has "authority to address all matters *as long as remaining consistent with the remand.*" *Campbell,* 168 F.3d at 265 (emphasis added). Here, there is nothing in the Sixth Circuit's opinion that would preclude this Court from addressing the issue of judicial estoppel.[4] The Sixth Circuit's discussion of certification, liability, and damages issues (which go to the merits of the cases) is distinct from the equitable doctrine of judicial estoppel. More specifically, a discrete finding that Plaintiffs are equitably estopped from

---

[4] The same cannot be said of Plaintiffs' request to create a subclass and award damages to discovery employees. That relief is inconsistent with the Sixth Circuit's remand instructions *and the substance of Sixth Circuit opinion*, as previously explained in detail. (*See* ECF No. 472 at 12-14; ECF No. 467 at 4-5; ECF No. 470 at 16-19).

taking inconsistent positions in this case and their bankruptcy case would be substantively distinct from a finding that there is no liability under the FLSA. *See New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (stating that judicial estoppel is a discretionary, equitable rule "intended to prevent improper use of judicial machinery"). The Sixth Circuit's opinion does not preclude the Court from taking up the issue of judicial estoppel. The Court should do so, as it has discretion to raise this equitable issue and protect the integrity of the judicial system.

## IV. JUDICIAL ESTOPPEL BARS THE CLAIMS OF THE OPT-IN PLAINTIFFS WHO FAILED TO DISCLOSE THEIR FLSA CLAIMS IN THEIR BANKRUPTCY PROCEEDINGS.

### A. Legal Standard

As stated in this Court's prior Order dismissing other Opt-in Plaintiffs for failure to disclose their FLSA claims in bankruptcy, "the doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." (ECF No. 223 at *6 (quotes omitted)). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Id.* (cites omitted). This Court described the rationale for invoking judicial estoppel in the context of failing to disclose claims in bankruptcy proceedings:

> [T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* at *6-7 (quotes omitted). In determining whether a plaintiff should be judicially estopped, the Court must find: (1) the plaintiff assumed a position that was contrary to the one that he or she

asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as a part of the final disposition; and (3) the omission did not result from mistake or inadvertence. *Id*. at *7. As set forth below, all three of these elements are satisfied.

### B. The Three Opt-in Plaintiffs Assumed Positions Contrary to Those Asserted Under Oath Before the Bankruptcy Court.

The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." *11 U.S.C. § 521(1)*. As this Court stated, "the Bankruptcy Code imposes upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." (ECF No. 223 at *6 (cites omitted).

"When a debtor has failed to disclose a known potential claim in a bankruptcy proceeding, this court has held that the 'omission was equivalent to a statement that there were no such claims.'" *Davis v. Fiat Chrysler Autos. U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018) (quoting *Stephenson v. Malloy,* 700 F.3d 265, 274 (6th Cir. 2012)); *see also Lewis v. Weyerhaeuser Co.,* 141 F. App'x 420, 425 (6th Cir. 2005) ("[P]ursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel."). "Therefore, in such instances, a party will have assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings, satisfying that prong of judicial estoppel." *Davis*, 747 F. App'x at 314 (quotation omitted).

Plaintiffs Jeremy Saine, Rachael Taylor, and Sean Jeter each failed to advise the United States Bankruptcy Court for the Eastern District of Tennessee about the existence of their FLSA claims pending in this case. By this omission, they each avoided inclusion of any potential

proceeds in the collection of assets available to pay creditors. They should not be allowed to pursue those omitted claims now.

### 1. Jeremy Saine

Opt-in Plaintiff Jeremy Saine ("Saine") is a prime example. He filed a consent form and has been a party to this lawsuit since July 31, 2015 and therefore has had knowledge of his FLSA claims in this case since July 2015 or earlier. SOF ¶¶ 3-4. His FLSA claims against Wyndham were still being pursued and were pending on appeal as of December 28, 2018. *Id.* ¶ 5.

On December 28, 2018, Saine filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Tennessee. *Id.* ¶ 6. When asked to disclose any lawsuits or court actions to which he had been a party within the last year, Saine did not disclose the pending lawsuit against Wyndham. *Id.* ¶ 7. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Saine marked "No." *Id.* ¶ 8. When asked to disclose if he had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Saine marked "No." *Id.* ¶ 9. When asked to disclose if he had any other contingent or unliquidated claims of any nature, Saine marked "No." *Id.* ¶ 10. Saine declared under penalty of perjury that the information provided in his bankruptcy petition and related submissions was true and correct. *Id.* ¶ 11. The information submitted with his bankruptcy petition was false because Saine failed to disclose his pending claims for unpaid wages and other damages against Wyndham. *Id.* ¶ 12. Saine never amended his bankruptcy petition and never disclosed his pending claims against Wyndham to the Bankruptcy Court. *Id.* ¶ 13.

### 2. *Rachael Taylor*

Opt-in Plaintiff Rachael Taylor ("Taylor") filed a consent form to join this action and has been a party to this lawsuit since January 13, 2014, and therefore has had knowledge of her FLSA claims in this case since January 2014 or earlier. *Id.* ¶¶ 16-17. Taylor's FLSA claims against Wyndham were still being pursued as of January 29, 2018. In fact, on January 29, 2018, the District Court entered an Order finding that Taylor was entitled damages in the amount of 12 hours of overtime per week. *Id.* ¶ 18.

That same day, on January 29, 2018, Taylor filed for bankruptcy under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Tennessee. *Id.* ¶ 19. When asked to disclose any lawsuits or court actions to which she had been a party within the last year, Taylor did not disclose the pending lawsuit against Wyndham. *Id.* ¶ 20. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Taylor marked "No." *Id.* ¶ 21. When asked to disclose if she had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Taylor marked "No." *Id.* ¶ 22. When asked to disclose if she had any other contingent or unliquidated claims of any nature, Taylor marked "No." *Id.* ¶ 23. Taylor declared under penalty of perjury that the information provided in her bankruptcy petition and related submissions was true and correct. *Id.* ¶ 24. The information submitted with her bankruptcy petition was false because Taylor failed to disclose her pending claims for unpaid wages and other damages against Wyndham. *Id.* ¶ 25.

On March 19, 2018, Taylor submitted amended bankruptcy schedules. *Id.* ¶ 28. However, she continued to represent that she was not owed any unpaid wages, she did not have any claims or lawsuits against third parties (including employment disputes), and did not have any contingent and unliquidated claims against Wyndham. *Id.* Taylor made these representations under penalty of

perjury. *Id.* These representations were false because Taylor failed to disclose her pending claims for unpaid wages and other damages against Wyndham. *Id.* Taylor did not further amend her bankruptcy petition and schedules and never disclosed her pending claims against Wyndham to the Bankruptcy Court. *Id.* ¶ 29.

As of August 22, 2019, Taylor's FLSA claims against Wyndham were still being pursued and, in fact, the parties were then engaged in briefing, inter alia, how much Taylor and other class members should be awarded in damages on remand and whether Defendants should be granted leave to raise the judicial estoppel against plaintiffs who failed to disclose their FLSA claims in bankruptcy. *Id.* ¶ 33. On August 22, 2019, Taylor filed a second bankruptcy case under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Tennessee. *Id.* ¶ 34. When asked to disclose any lawsuits or court actions to which she had been a party within the last year, Taylor did not disclose the pending lawsuit against Wyndham. *Id.* ¶ 35. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Taylor marked "No." *Id.* ¶ 36. When asked to disclose if she had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Taylor marked "No." *Id.* ¶ 37. When asked to disclose if she had any other contingent or unliquidated claims of any nature, Taylor did not disclose her claims against Wyndham. *Id.* ¶ 38. Taylor declared under penalty of perjury that the information provided in her bankruptcy petition and related submissions was true and correct. *Id.* ¶ 39. The information submitted with her bankruptcy petition was false because Taylor failed to disclose her pending claims for unpaid wages and other damages against Wyndham. *Id.* ¶ 40. Taylor never amended her bankruptcy petition and never disclosed her pending claims against Wyndham to the Bankruptcy Court. *Id.* ¶ 41. Taylor not only

14

failed to disclose this matter in one bankruptcy proceeding, but she also failed to do so in a second one as well.

### 3. Sean Jeter

Opt-in Plaintiff Sean Jeter ("Jeter") filed a consent form to join this action and has been a party to this lawsuit since October 23, 2013, and therefore has had knowledge of his FLSA claims in this case since October 2013 or earlier. *Id.* ¶¶ 48-49. Jeter's FLSA claims against Wyndham were still pending and being pursued as of May 20, 2014. *Id.* ¶ 50.

On May 20, 2014, Jeter filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Tennessee. *Id.* ¶ 51. When asked to disclose all lawsuits to which he had been a party within the last year, Jeter marked: "None." *Id.* ¶ 52. When asked to disclose if he had any other contingent or unliquidated claims of any nature, Jeter marked "None." *Id.* ¶ 53. Jeter declared under penalty of perjury that the information provided in his bankruptcy petition and related submissions was true and correct. *Id.* ¶ 54. The information submitted with his bankruptcy petition was false because Jeter failed to disclose his pending claims for unpaid wages and other damages against Wyndham. *Id.* ¶ 55. Jeter never amended his bankruptcy petition and never disclosed his pending claims against Wyndham to the Bankruptcy Court. *Id.* ¶ 56.

The facts are clear that all three of these Plaintiffs' actions handily satisfy the first element in favor of employing judicial estoppel. Like the plaintiff's actions in *Lewis,* their pursuit of the current action "is without question 'contrary to'" their sworn bankruptcy filings. 141 F. App'x at 425. Like Lewis's claims, these three Opt-in Plaintiffs' claims should all be barred from participation in and collection from this lawsuit. This Court has found that practically identical omissions to the Bankruptcy Court satisfied the first element. (*See* ECF No. 223 at 7).

**C. Plaintiffs' Previous Positions Were Adopted by the Bankruptcy Court Either as a Preliminary Matter or as Part of a Final Disposition.**

The second factor can be satisfied in a variety of ways because the Bankruptcy Court relies on honest disclosures from the debtor in practically every action it takes. Of course, a Bankruptcy Court order discharging the debtor of his debts constitutes an adoption of the debtor's asset disclosures. *See Walker v. Moldex Metric, Inc.,* No. 2:10-CV-164, 2011 U.S. Dist. LEXIS 80959, at *9 (E.D. Tenn. July 25, 2011) ("There is equally no dispute that the bankruptcy court adopted plaintiffs' contrary position when it discharged their debt.") (collecting case law); *Stephenson,* 700 F.3d at 274 (discharge in reliance on representations concerning assets, "including the representation that this lawsuit did not exist," represented adoption of the contrary position). Here, both Saine and Jeter were issued a discharge of their debts by the Bankruptcy Court. SOF ¶¶ 14-15, 57-58. This satisfies the second element.

Confirmation of the debtor's bankruptcy plan also satisfies this element. *See Davis,* 747 F. App'x at 314; *Lewis,* 141 F. App'x at 425; *see also White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 479 (6th Cir. 2010) (holding that bankruptcy court adopted debtor's position when it "entered an order requiring [the debtor] to make payments to the trustee and directing her to attend a meeting of the creditors"). Here, in Taylor's bankruptcy proceedings, the Bankruptcy Court (1) ordered Taylor to make payments under her Chapter 13 plans, (2) ordered her to attend the meeting of the creditors, and (3) confirmed one of her Chapter 13 plans. SOF ¶¶ 27, 31, 43-44, 46. These actions satisfy the second element.

In sum, the Bankruptcy Courts relied on the false asset disclosures submitted by Saine, Taylor, and Jeter, and adopted the misinformation they submitted by discharging their debts and confirming their bankruptcy plans without knowledge of the Opt-In Plaintiffs' involvement in this matter. The second element is satisfied.

**D. These Changes in Position Cannot Be Attributed to Mere Mistake or Inadvertence.**

In determining whether the Opt-in Plaintiffs' omissions resulted from mistake or inadvertence, this Court must consider: (1) whether they lacked knowledge of the factual basis of the undisclosed claims; (2) whether they had a motive for concealment; and (3) whether the evidence indicates an absence of bad faith. *White*, 617 F.3d at 478. In determining whether there was an absence of bad faith, the Sixth Circuit has looked at whether the party ever attempted after filing the initial petition to advise the bankruptcy court of the omitted claim. *Id.* All three elements are easily met by the actions, and inaction, of the three Opt-in Plaintiffs at issue here.

First, these Plaintiffs had knowledge of the factual basis of their undisclosed FLSA claims against Wyndham. At the time they filed their respective bankruptcy petitions, each of them had already taken affirmative steps to join the class and filed consent forms to join this lawsuit against Wyndham. *See* SOF ¶¶ 3-6, 16-19, 33-34, 48-51. Saine and Taylor's failure to disclose their FLSA claims is particularly flagrant and disconcerting because: (1) when they filed their bankruptcy actions in 2018, they were clearly on notice that they were required to disclose this lawsuit in bankruptcy, as a result of this Court's Order issued on March 31, 2017; and (2) they obtained a monetary judgment in this lawsuit on February 5, 2018, (ECF No. 429), but they still failed to disclose the lawsuit while their bankruptcy cases were ongoing in 2018 and 2019.

Second, there was motive for concealment. Why would Plaintiffs omit their claims from their bankruptcy petitions? Very simply because, if the claim became a part of the bankruptcy estate, then the proceeds from it could go toward paying their creditors instead of straight into their own pockets. *White,* 617 F.3d at 479. "It is always in a Chapter 13 petitioner's interest to minimize income and assets." *Haddad v. Randall S. Miller Assocs., PC*, 587 F. App'x 959, 965 (6th Cir. 2014); *White*, 617 F.3d at 479; *Lewis*, 141 F. App'x at 426. The same is true for Chapter 7

17

petitioners. *De Leon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) ("A financial

motive to secret assets exists under Chapter 13 as well as under Chapter 7"); *see also Allen v. C &

H Distribs., LLC*, 2015 U.S. App. LEXIS 22567 (5th Cir. Dec. 23, 2015); *Ah Quin v. County of

Kauai DOT*, 733 F.3d 267, 271 (9th Cir. 2013) (motive implied from the plaintiff's "plan to conceal

its claims; get rid of its creditors on the cheap, and start over with a bundle of rights"); *Guay v.

Burack*, 677 F.3d 10, 20 (1st Cir. 2012); *Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1159 (10th

Cir. 2007) (plaintiff "had a motive to sweep his personal injury action 'under the rug' so he could

obtain a discharge free and clear of his creditors").

Whether the bankruptcy runs its course or even whether debts are discharged is of no

consequence. Rather, the court's focus must be on the debtor's motives at the time of the omission.

"The Court must assume [that the debtor] filed her bankruptcy petition with every intention of

completing a confirmed plan and receiving a discharge." *Catron v. Dr. James S. Hayes Living

Home Health Care Agency, Inc.*, 2013 U.S. Dist. LEXIS 56959, 9-14 (W.D. Tenn. Apr. 22, 2013).

Finally, Plaintiffs cannot establish that there was an absence of bad faith, and it is their

burden to do so. In *Thompson v. Bruister & Assocs.*, 2013 U.S. Dist. LEXIS 119833, at *9-14

(M.D. Tenn. Aug. 23, 2013), the plaintiffs argued that judicial estoppel should not be employed

simply because there was no proof that the omissions were not the result of mere mistake or

inadvertence. However, the court held that it was incumbent upon the plaintiffs themselves to

establish "absence of bad faith" in the nature of any affirmative actions they might have taken to

notify the bankruptcy trustee or court of an omitted claim. *Id.* at *9-10. Like the Plaintiffs here,

the *Thompson* plaintiffs could not do so, and the court barred their claims. In doing so, the

Thompson court also rejected their argument that it would have been inequitable to dismiss their

claims because, if the defendants had not violated the FLSA as they alleged, they might not have

needed to file bankruptcy. The court found that argument unpersuasive, holding that "[e]ven assuming Plaintiffs' omissions ultimately works [sic] to the benefit of Defendants, the success of our bankruptcy laws requires a debtor's full and honest disclosure, and, as noted, the *raison d'etre* of the doctrine is to protect the integrity of the judicial process." *Id.* at *9.

Courts within the Sixth Circuit have regularly dismissed claims on the basis requested by Defendants in this motion. *See, e.g.*, *Cook v. St. John Health*, 2013 U.S. Dist. LEXIS 75044 (E.D. Mich. May 20, 2013) ("Cook concealed her [FLSA] claims and took no action to reveal them to the trustee or the bankruptcy court."); *Currithers v. FedEx. Ground Package Sys, Inc.,* 2012 U.S. Dist. LEXIS 13848 (E.D. Mich. Feb. 6, 2012) (plaintiff barred from pursuing FLSA claim because he did not amend his petition to list it); *Gaskins v. Thousand Trails*, 521 Fed. Supp. 2d 693, 696-698 (S.D. Ohio 2007) (dismissing FLSA claim) ("A finding of statements of omission in a bankruptcy schedule of assets is sufficient for the trial court to apply judicial estoppel."). In fact, it appears to be only when the debtor has made substantial, repeated efforts to apprise the bankruptcy court of an inadvertent omission that the absence of bad faith is found.

In *Eubanks v. CBSK Fin. Group, Inc.,* 385 F.3d 894, 895-97 (6th Cir. 2004), for example, the Sixth Circuit reversed the district court's use of judicial estoppel to bar the plaintiffs' lender liability claims because they had: (1) notified the bankruptcy trustee of the claim during a meeting, (2) asked him repeatedly whether he intended to pursue the claim, (3) sought a status conference on the issue of that claim, (4) requested substitution of the trustee, and (5) filed an amendment to their original petition adding the claim. Unfortunately for the Opt-in Plaintiffs at issue here, there is no evidence to suggest that they undertook similar efforts, let alone any efforts at all. Rather, it appears that, with full knowledge of their pending claims in this lawsuit, they each – motivated to limit their assets –failed to disclose their FLSA claims, and that they did so in bad faith.

In sum, as set forth in *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990), the doctrine of judicial estoppel should be utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." Or, as stated in *Reynolds*, 861 F.2d 469 at 472, it should be utilized to avoid "the perversion of the judicial machinery," and to prohibit debtors from "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," and "having one's cake and eating it too."

## V. CONCLUSION

For all of the forgoing reasons, Defendants respectfully request that the Court grant summary judgment in their favor on the claims of the following three Opt-in Plaintiffs: Jeremy Saine, Rachael Taylor, and Sean Jeter.

Respectfully submitted,

 s/ Craig A. Cowart
Craig A. Cowart (TN Bar No. 017316)
Colby S. Morgan, Jr. (TN Bar No. 005556)
JACKSON LEWIS P.C.
999 Shady Grove Rd., Suite 110
Memphis, TN 38120
(901) 462-2600
Email: craig.cowart@jacksonlewis.com
            colby.morgan@jacksonlewis.com

D. Christopher Lauderdale *(Admitted Pro Hac Vice)*
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
Email: christopher.lauderdale@jacksonlewis.com

Peter M. Wendzel (*Admitted Pro Hac Vice*)
JACKSON LEWIS P.C.
390 N. Orange Avenue, Suite 1285
Orlando, FL 32801
Email: peter.wendzel@jacksonlewis.com

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 23rd day of February, 2021, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send an electronic notification of such filing to the following:

> Martin D. Holmes (TN Bar No. 012122)
> Peter F. Klett (TN Bar No. 012688)
> M. Reid Estes, Jr. (TN Bar No. 009043)
> Autumn L. Gentry (TN Bar No. 20766)
> DICKINSON WRIGHT PLLC
> 424 Church Street, Suite 800
> Nashville, TN 37219
> Email: mdholmes@dickinsonwright.com
> pklett@dickinsonwright.com
> restes@dickinsonwright.com
> agentry@dickinsonwright.com
>
> *ATTORNEYS FOR PLAINTIFFS*
> *Opt-in Plaintiffs and Collective Class*

s/ Craig A. Cowart
Attorney for Defendants

4836-8553-1357, v. 1