UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JESSE PIERCE and MICHAEL PIERCE, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:13-CV-641-CCS ) |
| WYNDHAM VACATION RESORTS, INC., And WYNDHAM VACATION OWNERSHIP, INC., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 193].

Now before the Court is Defendants' Motion for Summary Judgment on the Claims of Plaintiffs Jeremy Saine, Rachel Taylor, and Sean Jeter [Doc. 480]. Plaintiffs have responded in opposition [Doc. 485]. The parties appeared for a motion hearing on April 19, 2021. Attorneys Martin Holmes and Reid Estes appeared on behalf of Plaintiffs. Attorneys Peter Wendzel and William Gignilliat appeared on behalf of Defendants. Accordingly, for the reasons explained below, the Court **GRANTS** Defendants' Motion [**Doc. 480**].

### I.  PROCEDURAL BACKGROUND

The undersigned presided over a bench trial in this matter from October 10, 2017, to October 27, 2017. On January 29, 2018, the Court entered a Memorandum Opinion [Doc. 427], finding that Defendants willfully violated the Fair Labor Standards Act ("FLSA"). On February

5, 2018, the Court entered Final Judgment [Doc. 429], awarding Plaintiffs twelve (12) hours of overtime, liquidated damages, and attorney's fees. Both parties appealed.

On May 1, 2019, the United States Sixth Circuit Court of Appeals affirmed in part and reversed in part. [Doc. 460]. The Sixth Circuit held that the Court did not abuse its discretion in treating the in-house and front-line sales employees as similarly situated but that the discovery sales representatives should not have been part of the collective action. [*Id.*]. The Sixth Circuit vacated the damages award and remanded the case "to reassess damages for in-house and front-line employees." [*Id.* at 10].

On August 23, 2019, Defendants alerted the Court to the instant issue—that is, three Plaintiffs, Jeremy Saine, Rachel Taylor, and Sean Jeter, filed for bankruptcy and failed to disclose this lawsuit to the bankruptcy court. The Court allowed Defendants to file a dispositive motion to address the following issues: (1) whether judicial estoppel is applicable given the procedural posture of this case, (2) whether applying judicial estoppel violates the Sixth Circuit's mandate, and (3) whether judicial estoppel bars Jeremy Saine's, Rachel Taylor's, and Sean Jeter's monetary award.

The parties filed the instant filings.

## II.     FINDINGS OF FACT

The following facts are taken from Defendants' Statement of Undisputed Facts Supporting Defendants' Motion for Summary Judgment, which Plaintiffs have, for the most part, not disputed. *See* [Doc. 486] ("Plaintiffs' Response to Defendants' Statement of Undisputed Facts Supporting Defendants' Motion for Summary Judgment").

### A. Jeremy Saine

Jeremey Saine ("Saine") was a timeshare Sales Representatives for Defendants and has asserted claims for monetary damages against Defendants. [Doc. 486 at ¶¶ 1-2]. Saine filed a consent form to join this action and has been a party to this lawsuit since July 31, 2015. [*Id.* at ¶ 3]. Saine had knowledge of his FLSA claims in this case since July 2015 or earlier. [*Id.* at ¶ 4]. Saine's FLSA claims against Defendants were still being pursued and pending on appeal as of December 28, 2018. [*Id.* at ¶ 5].

On December 28, 2018, Saine filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Tennessee. [*Id.* at ¶ 6]. When asked to disclose any lawsuits or court actions to which he had been a party within the last year, Saine did not disclose the pending lawsuit against Defendants. [*Id.* at ¶ 7]. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Saine marked, "No." [*Id.* at ¶ 8]. When asked to disclose if he had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Saine marked, "No." [*Id.* at ¶ 9]. When asked to disclose if he had any other contingent or unliquidated claims of any nature, Saine marked, "No." [*Id.* at ¶ 10].

Saine declared under penalty of perjury that the information provided in his bankruptcy petition and related submissions was true and correct. [*Id.* at ¶ 11]. Saine never amended his bankruptcy petition and never disclosed his pending claims against Defendants to the bankruptcy court. [*Id.* at ¶ 13]. On April 30, 2019, the bankruptcy court discharged Saine of his debts. [*Id.* at ¶ 14]. Saine's bankruptcy case was dismissed by text order on May 30, 2019. [*Id.* at ¶ 15].

### B. Rachel Taylor

Plaintiff Rachael Taylor ("Taylor") filed a consent form to join this action and has been a party to this lawsuit since January 13, 2014. [*Id.* at ¶ 16]. Taylor has had knowledge of her FLSA claims in this case since January 2014 or earlier. [*Id.* at ¶ 17]. Taylor's FLSA claims against Wyndham were still being pursued as of January 29, 2018. [*Id.* at ¶ 18]. On January 29, 2018, the Court in this case entered an Order finding that Taylor was entitled damages in the amount of 12 hours of overtime per week for her time worked during the class period. [*Id.*].

On January 29, 2018, Taylor filed for bankruptcy under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Tennessee. [*Id.* at ¶ 19]. When asked to disclose any lawsuits or court actions to which she had been a party within the last year, Taylor did not disclose the pending lawsuit against Defendants. [*Id.* at ¶ 20]. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Taylor marked, "No." [*Id.* at ¶ 21]. When asked to disclose if she had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Taylor marked, "No." [*Id.* at ¶ 22]. When asked to disclose if she had any other contingent or unliquidated claims of any nature, Taylor marked, "No." [*Id.* at ¶ 23]. Taylor declared under penalty of perjury that the information provided in her bankruptcy petition and related submissions was true and correct. [*Id.* at ¶ 24].

On January 29, 2018, Taylor filed a Chapter 13 plan. [*Id.* at ¶ 26]. On January 30, 2018, the bankruptcy court ordered Taylor to begin making payments under her Chapter 13 plan and ordered Taylor to attend the meeting of the creditors. [*Id.* at ¶ 27]. On March 19, 2018, Taylor submitted amended bankruptcy schedules, wherein she represented that she was not owed any unpaid wages, she did not have any claims or lawsuits against third parties (including employment

disputes), and did not have any contingent and unliquidated claims. [*Id.* at ¶ 28]. Taylor did not further amend her bankruptcy petition and schedules and never disclosed her pending claims against Defendants to the bankruptcy court. [*Id.* at ¶ 29]. On May 11, 2018, Taylor filed an amended Chapter 13 plan. *Id.* at ¶ 30]. On August 29, 2018, the bankruptcy court confirmed Taylor's Chapter 13 plan. [*Id.* at ¶ 31]. On August 6, 2019, Taylor's bankruptcy case was dismissed. [*Id.* at ¶ 32].

On August 22, 2019, Taylor filed a second bankruptcy case under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Tennessee. [*Id.* at ¶ 34]. When asked to disclose any lawsuits or court actions to which she had been a party within the last year, Taylor once again did not disclose the pending lawsuit against Defendants. [*Id.* at ¶ 35]. When asked to disclose if there were "other amounts someone owes you," including any "unpaid wages," Taylor marked, "No." [*Id.* at ¶ 36]. When asked to disclose if she had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," including "employment disputes," Taylor marked, "No." [*Id.* at ¶ 37]. When asked to disclose if she had any other contingent or unliquidated claims of any nature, Taylor did not disclose her claims against Defendants. [*Id.* at ¶ 38]. Taylor declared under penalty of perjury that the information provided in her bankruptcy petition and related submissions was true and correct. [*Id.* at ¶ 39].

Taylor never amended her second bankruptcy petition and never disclosed her pending claims against Defendants to the bankruptcy court. [*Id.* at ¶ 41]. On August 22, 2019, Taylor filed a Chapter 13 plan. [*Id.* at ¶ 42]. On August 23, 2019, the bankruptcy court ordered Taylor to begin making payments under her Chapter 13 plan and ordered Taylor to attend the meeting of the creditors. [*Id.* at ¶ 43]. On December 11, 2019, Taylor's bankruptcy case was dismissed. [*Id.* at ¶ 47].

### C. Sean Jeter

Opt-in Plaintiff Sean Jeter ("Jeter") filed a consent form to join this action and has been a party to this lawsuit since October 23, 2013. [*Id.* at ¶ 48]. Jeter has had knowledge of his FLSA claims in this case since October 2013 or earlier. [*Id.* at ¶ 49]. Jeter's FLSA claims against Defendants were still pending and being pursued as of May 20, 2014. [*Id.* at ¶ 50].

On May 20, 2014, Jeter filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Eastern District of Tennessee. [*Id.* at ¶ 51]. When asked to disclose all lawsuits to which he had been a party within the last year, Jeter marked: "None." [*Id.* at ¶ 52]. When asked to disclose if he had any other contingent or unliquidated claims of any nature, Jeter marked "None." [*Id.* at ¶ 53]. Jeter declared under penalty of perjury that the information provided in his bankruptcy petition and related submissions was true and correct. [*Id.* at ¶ 54]. Jeter never amended his bankruptcy petition and never disclosed his pending claims against Defendants to the bankruptcy court. [*Id.* at ¶ 56]. On September 8, 2014, the bankruptcy court discharged Jeter of his debts. [*Id.* at ¶ 57]. Jeter's bankruptcy case was dismissed by text order on October 16, 2014. [*Id.* at ¶ 58].

## III. STANDARD OF REVIEW

In Defendants' brief, they cite Federal Rules of Civil Procedure 56 and 60 in support of their requested relief. Summary judgment under Rule 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec.*

6

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

In addition, Rule 60(b) provides that a court may relieve a party from a final judgment, order, or proceeding for several enumerated reasons, including newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud (whether previously called intrinsic or extrinsic) misrepresentation, or

7

misconduct by an opposing party; or any other reason that justifies relief. Fed. R. Civ. P. 60(b)(2), (3), (6). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Info-Hold, Inc. v. Sound Merch., Inc.,* 538 F.3d 448, 454 (6th Cir. 2008) (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund,* 249 F.3d 519, 524 (6th Cir. 2001)) (internal quotation marks omitted). "[T]he party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Id.*

IV. ANALYSIS

Accordingly, the Court has considered the parties' arguments, and for the reasons explained below, the Court **GRANTS** Defendants' Motion [**Doc. 480**].

As the Court has previously stated, *see* [Doc. 223], the doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB,* 911 F.2d 1214, 1218 (6th Cir. 1990)). "The purpose of the doctrine is to protect the integrity of the judicial process by 'prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest.'" *Crouch v. Guardian Angel Nursing, Inc.,* No. 3:07-0541, 2009 WL 2960757, at *1 (M.D. Tenn. Sept. 8, 2009) (quoting *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir.1999)). Courts have explained that the doctrine of judicial estoppel "should be applied with caution to 'avoid impinging on truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.'" *White v. Wyndham Vacation Ownership, Inc.*, No. 3:08-CV-405, 2009 WL

1074800, at *4 (E.D. Tenn. Apr. 21, 2009), *aff'd,* 617 F.3d 472 (6th Cir. 2010) (quoting *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004)) (other citations omitted).

Moreover, the "Bankruptcy Code imposes upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Crouch,* 2009 WL 2960757, at *1 (other citations omitted). The rationale for invoking judicial estoppel in the context of failing to disclose claims in bankruptcy proceedings has been described as follows:

> [T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

*Id.* (quoting *Rosenshein v. Kleban,* 918 F. Supp. 98, 104 (S.D.N.Y. 1996)).

In determining whether a plaintiff should be judicially estopped, the Court must find: (1) that the plaintiff assumed a position that was contrary to the one that he/she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as a part of the final disposition; and (3) the plaintiff's omission did not result from mistake or inadvertence. *White,* 617 F.3d at 478. It is within the court's discretion to invoke judicial estoppel. *Couch v. Certified Flooring Installation, Inc.,* 439 F. Supp. 3d 964, 971 (S.D. Ohio 2020) (citing *Pennycuff v. Fentress Cty Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005)).

The instant dispute agreed to by Plaintiffs is not so much as to whether judicial estoppel should apply under these facts. As mentioned above, Plaintiffs acknowledge that they did not report this lawsuit as an asset during the pendency of their bankruptcy cases, and they do not attempt to argue that their failure was the result of mistake or inadvertence. Instead, the instant

9

dispute appears to be centered/focused on whether judicial estoppel should apply at this stage of the litigation—that is, after the Sixth Circuit affirmed liability but vacated the damages award.

Defendants insist that judicial estoppel can be raised at this time. Defendants state that they raised this issue in the Joint Status Report filed after the remand. Defendants argue that judicial estoppel is not a typical affirmative defense subject to waiver. Defendants submit there is good cause to address judicial estoppel and that the Sixth Circuit's mandate does not bar the application of judicial estoppel.

Plaintiffs respond that judicial estoppel is improper at this stage of the proceedings, stating that Defendants' request is long past the deadline for filing dispositive motions. In addition, Plaintiffs argue that applying judicial estoppel would violate the Sixth Circuit's mandate.

In the instant matter, Saine and Taylor filed for bankruptcy while this case was pending at the Sixth Circuit. Jeter filed bankruptcy in 2014, well before the trial in this matter. During the April 19 hearing, the parties agreed that the facts presented the Court with two competing policy considerations: encouraging full and complete disclosures in other court proceedings verses the need to prevent endless litigation. Under the instant and unique circumstances of this case, the Court finds encouraging full and complete disclosures outweigh the latter consideration.

As Defendants argued at the hearing, they could not have raised Saine's and Taylor's inconsistent positions earlier because they did not exist at the time for filing dispositive motions. As mentioned above, Saine and Taylor filed their bankruptcy petitions while this case was on appeal after the Court had awarded them damages. The more complicated issue is Jeter's award because he filed for bankruptcy in 2014. Defendants agreed that they could have raised judicial estoppel with respect to Jeter prior to the trial in this matter but acknowledged that they inadvertently missed his bankruptcy petition. Plaintiffs argue that "Defendants waited almost four

years after the dispositive motion deadline in this case and after their liability to these individuals was affirmed on appeal" to raise this issue. [Doc. 485 at 9]. The Court does not take Defendants' failure to raise Jeter's inconsistent positions until now lightly. The Court simply finds that protecting the integrity of the judiciary outweighs Defendants' failure to raise this issue earlier. *See DeMarco v. Ohio Decorative Prod., Inc.*, 19 F.3d 1432 (Table), 1994 WL 59009, at *8, n.1 (6th Cir. 1994) (finding that defendants did not waive judicial estoppel by failing to raise it in the district court because the doctrine is "to protect the integrity of the judiciary, not individual litigants," stating that "even had defendants not raised the argument on appeal, we could sua sponte consider whether judicial estoppel is appropriate under the facts presented").

Further, while the Court has considered the need to prevent endless litigation, the Court agrees with Defendants that this case is not closed. The Sixth Circuit affirmed liability but reversed the Court's ruling as to the amount of damages. The specific question here is whether Saine, Taylor, and Jeter are entitled to any damages given their inconsistent positions. Accordingly, given the unique posture of this case, the Court finds Defendants are permitted to raise judicial estoppel at this juncture.

In addition, Plaintiffs argue that applying judicial estoppel at this juncture would be in violation of the Sixth Circuit's remand. Plaintiffs state that the Sixth Circuit issued a limited remand by remanding the case to the Court to solely reassess damages. The Court disagrees.

There are two types of remands: general and limited. "Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). General remands "give district courts authority to address all maters as long as remaining consistent with the remand." *Id.* "In the absence of an explicit limitation, the remand order is

11

presumptively a general one." *Id.* at 268 (alteration omitted) (quoting *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997)).

In the present matter, the Sixth Circuit's language states as follows: "For these reasons, we affirm in part, reverse in part, vacate the damages award, and remand to the district court for further proceedings consistent with this opinion." [Doc. 460]. The Court finds such languages does not create a narrow framework within which the Court must operate. By way of example, the Sixth Circuit has found similar language to be a general remand. In *Owner-Operator Indep., Drivers Assoc., Inc. v. Comerica Bank*, the Sixth Circuit Court held that the following language was a general remand, "For the foregoing reasons, we affirm in part and reverse in part the district court's judgment and remand for further proceedings consistent with this opinion." 562 F. App'x 312, 331-32 (6th Cir. 2014). The Sixth Court explained that such language does not impose a limit on the issues for review and does not establish a particular procedure for the district to follow. *Id.* The primary difference between the language in *Comerica Bank* and the language here is that the Sixth Circuit included the phrase, "vacates the damages award" in this case. The Court does not find that the addition of this phrase changes the nature of the remand. Accordingly, the Court finds Plaintiffs' arguments not well taken.

Given that the Court finds that judicial estoppel may be properly raised at this juncture, the Court turns to the facts of this case. As mentioned above, Plaintiffs do not dispute the facts that Defendants have presented. At the hearing, Plaintiffs confirmed that based on the Court's previous judicial estoppel ruling, *see* [Doc. 223], they do not contest the merits of judicial estoppel. Accordingly, based on Plaintiffs' representations at the hearing and in their Response [Doc. 468], the Court finds that (1) Saine, Taylor, and Jeter assumed a position that was contrary to the position asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court in Saine's, Taylor's,

and Jeter's cases adopted the contrary position, and (3) Saine's, Taylor's, and Jeter's omission did not result from mistake or inadvertence. Accordingly, the Court finds Defendants' argument well taken and that judicial estoppel applies to bar Saine, Taylor, and Jeter from obtaining any monetary award in this case.

## V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment on the Claims of Plaintiffs Jeremy Saine, Rachel Taylor, and Sean Jeter [**Doc. 480**] is **GRANTED**.

**IT IS SO ORDERED.**

ENTER:

   C. Clifford Shirley, Jr.
C. Clifford Shirley, Jr. (recalled)
United States Magistrate Judge