UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JESSE PIERCE and MICHAEL PIERCE,                  )
on behalf of themselves and all others            )
similarly situated,                               )
                                                  )
                    Plaintiffs,                   )
                                                  )
v.                                                )        No. 3:13-CV-641-CCS
                                                  )
WYNDHAM VACATION RESORTS, INC.,                   )
And WYNDHAM VACATION                              )
OWNERSHIP, INC.,                                  )
                                                  )
                    Defendants.                   )

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the

Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings,

including entry of judgment [Doc. 193].

The instant matter is before the Court upon remand from the Sixth Circuit Court of Appeals

[Doc. 460]. This lawsuit arises from Defendants' violations of the Fair Labor Standards Act

("FLSA") by altering sales representatives' timecards and prohibiting sales representatives from

recording all time worked to avoid paying overtime. Defendants' willful FLSA violations have

been established before the undersigned and affirmed by the Sixth Circuit. The primary questions

upon remand are the appropriate amount of damages to the Front Line and In House Sales

Representatives and the procedure upon which the Discovery Sales Representatives' claims should

proceed. With respect to damages, the parties remain far apart in their calculations. Plaintiffs

maintain that they worked on average over 23 overtime hours (*i.e.*, 63.54) per week for 52 weeks.

Defendants argue that, at the most, the sales representatives worked on average slightly over 2

overtime hours (*i.e.*, 42.8 hours) per week for 52 weeks. With respect to the Discovery Sales Representatives, Plaintiffs state that the Court should award the Discovery Sales Representatives damages based on the testimony of one witness, while Defendants argue that the Court should dismiss these claims without prejudice. The Court disagrees with both parties' proposals.

By way of background, the Court certified as a collective action three groups of sales representatives, Front Line, In House, and Discovery Sales Representatives (collectively, "Sales Representatives") who had worked at the following locations: Wyndham Vacations Resort Great Smokies Lodge ("Lodge"), Wyndham Smoky Mountains ("Crossings"), Wyndham Resort at Fairfield Glade ("Glade"), and Wyndham Nashville ("Nashville"). The undersigned presided over a bench trial on the collective action from October 10, 2017, to October 27, 2017, and ultimately found in Plaintiffs' favor. Based on the representative testimony, the Court found that Plaintiffs were entitled to twelve (12) overtime hours, liquidated damages, and attorney's fees, as a result of Defendants' intentional actions to violate the FLSA. The Court entered its Judgment on February 5, 2018. [Doc. 429]. Both parties appealed.

As mentioned above, on May 1, 2019, the United States Sixth Circuit Court of Appeals affirmed in part and reversed in part. [Doc. 460]. The Sixth Circuit held that it was not an abuse of discretion in treating the Front Line and In House Sales Representatives as similarly situated but concluded that the Discovery Sales Representatives should not have been part of the collective action. [*Id.*]. With respect to the Front Line and In House Sales Representatives, the Court explained that the job titles were different, but the roles required identical tasks, just aimed at different customers. [*Id.* at 6]. The Court concluded that there were "no meaningful differences between the in-house and front-line salespeople or for that matter between the jobs they performed at the four Tennessee locations." [*Id.* at 7]. The Court further found that while Defendants

"asserted individual defenses regarding the number of hours that testifying employees worked," the "district court distributed those defenses across the collective, resulting in the district court's decision that the salespeople did not work as many hours as they claimed." [*Id.*]. Thus, the Court found that the undersigned properly proceeded with a collective action as to the Front Line and In House Sales Representatives.

With respect to the Discovery Sales Representatives, however, the Sixth Circuit found that their claims should not have been part of the collective action. [*Id.* at 7-8]. The Sixth Circuit reasoned that the Discovery Sales Representatives not only had a different title, but "they also sold a different product." [*Id.* at 7]. Based on such differences, the Court concluded, "The end-all and be-all of a collective action is to determine the average number of hours each individual worked per week. At the least, the court should have created a separate subclass for the discovery employees." [*Id.* at 8].

On appeal, both parties disputed the undersigned's findings on damages, among other issues. The Sixth Circuit, however, did not reach this issue, explaining as follows, "Because the court erred in finding that the discovery employees were similarly situated to the other salespeople and that error infected its hourly average determination, we vacate the damages award and remand for the court to reassess damages for the in-house and front-line employees." [*Id.* at 11-12].

After the Sixth Circuit remanded the case, the Court entered an order directing the parties to file briefs regarding the appropriate award for the Front Line and In House Sales Representatives and the proper procedure with respect to the Discovery Sales Representatives' claims.[1]

---

[1] The Court also allowed Defendants to file a summary judgment brief on whether the awards of Plaintiffs Jeremy Saine, Rachel Taylor, and Sean Jeter are barred by judicial estoppel.

On April 19, 2021, the parties appeared before the undersigned to address the above topics. Attorneys Martin Holmes and Reid Estes appeared on behalf of Plaintiffs. Attorneys Peter Wendzel and William Gignilliat appeared on behalf of Defendants.[2] Accordingly, for the reasons explained below, the Court **AWARDS 16.25 overtime hours** (*i.e.,* 56.25 hours per week) to the Front Line and In House Sales Representatives, in addition to liquidated damages and reasonable attorney's fees. Further, the Court will create a separate subclass for the Discovery Sales Representatives' claims.

## I.    PROCEDURAL BACKGROUND

Plaintiffs filed this case on October 23, 2013, alleging violations of the FLSA. On August 21, 2014, the Court conditionally certified the action with respect to current and former, non-exempt, commission-paid Sales Representatives (Front Line, In House, and Discovery), who were employed in Defendants' Tennessee Resorts between October 21, 2010, and October 31, 2013 ("Recovery Period"). A total of 156 Plaintiffs filed consents to join this action.

As mentioned above, the undersigned presided over a bench trial in this matter from October 10, 2017, to October 27, 2017. At trial, Plaintiffs presented the live testimony of twenty-six (26) witnesses. In addition, they submitted the deposition testimony of five (5) Plaintiffs and four (4) defense witnesses. On January 29, 2018, the Court entered a Memorandum Opinion [Doc. 427], finding that Defendants willfully violated the FLSA and that Sales Representatives were entitled to twelve (12) hours of overtime each week.[3] Specifically, after summarizing all the evidence, the Court concluded as follows:

---

[2] Attorney Peter Wendzel withdrew from this case on June 14, 2021. [Doc. 492].

[3] The Court summarized the evidence that was presented during the trial in its Memorandum Opinion entered on January 29, 2018. [Doc. 427]. The Court does not find it necessary to summarize the evidence herein.

The Court arrives at its conclusion by considering all of the testimony of all the various witnesses, as well as the exhibits provided. Obviously, the Court finds some testimony more credible, reasonable, and persuasive than other testimony, and this has been set forth in this opinion. The Court concludes that the Sales Representatives worked five to six days per week from March to December and something less in January and February. The Court is mindful that the time records are essentially of no use due to their falsity and inaccuracy. The Court is also mindful that the estimates of hours of all witnesses were, at best, estimates of hours worked years ago. The Court is also mindful that each witness may have been somewhat biased, high or low, in their respective testimony and estimates on hours worked. Nonetheless, the Court is comfortable that based on all the testimony that Sales Representatives averaged 52 hours per week. This means that they worked an average of 12 hours of overtime per week for the three-year Recovery Period.

[Doc. 427 at 156].

On February 5, 2018, the Court entered the Final Judgment [Doc. 429], awarding Plaintiffs twelve (12) hours of overtime, liquidated damages, and attorney's fees. Specifically, the Court awarded Plaintiffs a total amount of $5,025,925.82, exclusive of attorney's fees. [*Id*.]. Both parties appealed.

As mentioned above, the Sixth Circuit held that the Court did not abuse its discretion in treating the Front Line and In House Sales Representatives as similarly situated but concluded that the Discovery Sales Representatives should not have been part of the collective action. [Doc. 460]. With respect to the Front Line and In House Sales Representatives, the Sixth Circuit reasoned as follows:

Both groups of employees arrive at work at approximately the same time each morning for a mandatory meeting. They participate in "tours" throughout the day—meetings with guests or other customers to pitch Wyndham timeshares—trying to sell the same product (deeded ownership interests). Both participate in "nightline" (pitching guests as they check into the hotel) and in "party weekends" (treating guests to a stay at the resort in hopes they will buy ownership interests). Wyndham compensates the

5

employees under the same plan and tracks their hours under the same system. Through it all, Wyndham enforced a common policy of not paying them overtime, even when they worked over 40 hours per week.

[*Id.* at 6]. Thus, the Sixth Circuit approved a collective action with respect to the Front Line and In House Sales Representatives.

The Sixth Circuit concluded otherwise, however, with respect to the Discovery Sales Representatives. Specifically, the Sixth Circuit explained as follows:

> The same cannot be said for the district court's decision to allow the discovery employees to proceed collectively with the in-house and front-line employees. The discovery salespeople not only had a different title, but they also sold a different product from the one sold by their in-house and front-line counterparts. That means the sales presentations and closings might generally have lasted for a different length of time. Only one of the discovery employee plaintiffs testified at trial, and he did not indicate that discovery employees participated in party weekends, that Wyndham required the discovery team to work six days a week, or that the discovery salespeople at the other Tennessee locations performed the same functions he did, all in contrast to the consistent testimony from the in-house and front-line employees.
>
> In addition, the discovery team started later than the in-house and front-line teams because the discovery team did not attend the mandatory morning meeting. The trial testimony suggested that the discovery employees generally arrived anywhere from a half hour to two hours later than the other sales employees. It makes little sense to treat the discovery salespeople, who sold a different product and regularly started an hour or two after the other sales team members, the same as the in-house and front-line employees. The end-all and be-all of a collective action is to determine the average number of hours each individual worked per week. At the least, the court should have created a separate subclass for the discovery employees.

[*Id.* at 7-8].

The Sixth Circuit also found Defendants' objection to the representative evidence of liability not well taken. [*Id.* at 9]. The Court explained that "[d]iscounting for the discovery

6

plaintiffs, who were not similarly situated and should not have been part of the collective, the court heard testimony from 43 of the 145 similarly situated salespeople (29.66%)." [*Id.*]. The Court concluded, "That is a far higher percentage than *Monroe* approved, in which only 17 of the 293 technicians testified (5.8%)." [*Id.*] (other citations omitted).

The Court explained that the testimony and other evidence "showed that Wyndham systematically executed a policy to avoid paying overtime." [*Id.* at 10]. For instance, the Court explained that "[a]ll the testifying plaintiffs consistently said that Wyndham required them to underreport their time or altered their recorded time." [*Id.*]. In addition, Plaintiffs "provided an average of the number of hours that they worked each week, ranging from 50 to 80 hours per week, and their basis for that number: the mandatory morning meeting, tours throughout the day, frequent late-night work and special events, and six- or seven-day work weeks." [*Id.*]. The Court noted that testimony from the administrative manager at the Nashville location, the vice president of sales and marketing, and several emails supported the conclusion that Defendants executed an across-the-board-time-shaving policy. [*Id.*]. The Court further found Defendants' arguments to counter the above conclusions were not persuasive. [*Id.*].

Finally, as mentioned above, with respect to damages, both parties appealed the undersigned's conclusion. The Sixth Circuit did not address damages given that the damages erroneously included the Discovery Sales Representatives' time. [*Id.* at 12]. The Sixth Circuit's Judgment states, "[I]t is ORDERED that the judgment of the district court is AFFIRMED IN PART and REVERSED IN PART, the damages award is VACATED, and the case is REMANDED for further proceedings consistent with the opinion of this court." [*Id.* at 18].

## II.    POSITIONS OF THE PARTIES

As mentioned above, the Court directed the parties to file briefs addressing the damages that should be awarded to the Front Line and In House Sales Representatives and the proper

procedure on how to handle the Discovery Sales Representatives' claims. The Court will summarize the parties' positions with respect to each topic.

### A. Damages to the Front Line Sales and In House Sales Representatives

Plaintiffs request that the Court find that the Front Line and In House Sales Representatives worked 63.54 hours per week. Plaintiffs explain that the average number of hours worked by all testifying Plaintiffs is 63.48 hours per week, but because the Sixth Circuit held that the Discovery Sales Representatives should be a separate subclass, they have deducted the average number of hours worked by Bobby Stallings, the only Discovery Sales Representative who testified at trial. Plaintiffs argue that the Court's award of twelve (12) hours of overtime per week was clearly erroneous and not supported by the record. Plaintiffs assert that while the Court found that they did not work as often in the slower season, the Court failed to recognize that there are three holidays in the slower months, and therefore, the entire month was not slow. Plaintiffs also assert that the Court did not take into consideration that Plaintiffs' estimate of their average hours already included the slower months and that the Court did not consider that Plaintiffs regularly worked from home.

Defendants argue that the Court should find that the Front Line and In House Sales Representatives worked 42.81 hours per week, using the off-the-clock-study combined with the findings of a normal workweek. Defendants state that Plaintiffs' average workweek was 5.5 days long and that the average start time was 8:00 a.m., and the average end time was 3:00 p.m. Defendants further propose that the Court award Front Line and In House Discovery Sales Representatives one to two hours of time after the closing of a contract. Based on the above method, Defendants argue that the Court should find that Plaintiffs worked 39.81 hours each week. Defendants state that nightline sales tours, party weekends, and offsite telephone calls added

8

minimal time, but if the Court disagrees, Defendants propose adding three more hours per week to the damages model. In support of their argument, Defendants state that the Court found Plaintiffs' overtime estimates not credible and that Plaintiffs' testimony was an exaggeration.

### B. Discovery Sales Representatives

Plaintiffs urge the Court to find that the Discovery Sales Representatives worked an average of 61 hours without additional proceedings. In support, Plaintiffs state that Bobby Stallings, the only Discovery Sales Representative who testified live at trial, stated that on average, he worked 55 hours onsite plus 6 hours at home, for a total of 61 hours.

Defendants argue that the proper protocol is to dismiss without prejudice the opt-in Plaintiffs who are not similarly situated. Defendants argue against Plaintiffs' proposal, stating that the record lacks sufficient evidence to make a finding as to the hours that the Discovery Sales Representatives worked.

## III. ANALYSIS

The Court has considered the parties' arguments along with the evidence that was presented at the trial. Accordingly, for the reasons set forth below, the Court **AWARDS** 16.25 in overtime hours to the Front Line and In House Sales Representatives. In addition, the Court will create a separate subclass of Discovery Sales Representatives.

The Court will first address damages with respect to the Front Line and In House Sales Representatives ("Plaintiffs") and then turn to the procedure for litigating the Discovery Sales Representatives' claims.[4]

---

[4] Hereinafter, the undersigned will refer to the Front Line and In House Sales Representatives collectively as "Plaintiffs," and this reference to "Plaintiffs" does not include the Discovery Sales Representatives.

## A.  Front Line and In House Sales Representatives' Damages

Plaintiffs urge the Court to adopt their proposal of 63.54 hours, or 23.54 hours of overtime. At the hearing, Plaintiffs acknowledged that their proposal is imprecise, but they attributed the imprecision to Defendants' FLSA violations.  Plaintiffs asserted that the Court was bound to accept their estimated hours because Defendants could not provide a precise number of hours worked by the Plaintiffs.  Plaintiffs argued that the Court is not permitted to substitute its own judgment in place of their unrebutted testimony.

The Court disagrees that it is bound to accept Plaintiffs' estimated hours.  As the Fifth Circuit Court of Appeals recently noted, "[A] court need not accept as true all testimony that is not directly rebutted."  *Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249, 260 (5th Cir. 2020) (citing *Brown v. Ford Motor Co.*, 479 F.2d 521, 523 (1973)) ("When the interest of the testifying witness in a particular outcome of the pending litigation is substantial, his possible bias may be sufficient in itself to create a jury question as to credibility.").  Further, contrary to Plaintiffs' arguments, nothing in *Mt. Clemens* mandates the Court to accept Plaintiffs' testimony regarding the number of hours worked.  Specifically, in *Mt. Clemens*, the Sixth Circuit dismissed plaintiffs' claims, finding as follows: "It does not suffice for the employee to base his right to recovery on a mere estimated average of overtime worked.  To uphold a judgment based on such uncertain and conjectural evidence would be to rest it upon speculation."  *Mt. Clemens Pottery Co. v. Anderson*, 149 F.2d 461, 465 (6th Cir. 1945), *rev'd,* 328 U.S. 680 (1946).  The Supreme Court disagreed and held that courts should not penalize an employee by dismissing his/her case when the employee is only able to offer an estimated average of overtime worked.   *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687–88 (1946) ("The solution, however, is not to penalize the

employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.").  The Supreme Court further explained:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

In the instant matter, the Court found that Plaintiffs established that they performed work for which they were uncompensated.  In fact, the evidence was overwhelming that managers routinely edited timecards and instructed Plaintiffs to work off the clock, all in a successful effort to keep them from accumulating overtime hours.  All Plaintiffs testified that they worked overtime hours.  Defendants were not able to rebut the overwhelming evidence of the widespread FLSA violations, although the undersigned concluded that Defendants somewhat rebutted that estimated average by showing that there were certain months out of the year that Defendants were not as busy, and therefore, the Plaintiffs were not working significant hours during the slower seasons.  Further, Defendants were able to demonstrate that some Plaintiffs worked less than others.  Thus, the Court will now turn to its damages calculation.

The Court originally arrived at 52 hours per week as the average number of hours worked.  Upon remand, the Defendants argue that the average should be approximately 43 hours per week, and the Plaintiffs argue that the average should be approximately 63 per hours per week.  In light of the wide divergence in testimony and reliance on different testimony and documents in support of those divergent positions—it would be tempting to reach a compromise-type verdict (or split-

the-difference-type verdict). Giving in to that temptation would also coincidently result in finding 53 hours, which is almost identical with the undersigned's initial finding (52 hours) and would arguably account for an approximate one hour starting time difference for the Discovery Sales Representatives (noted by the Sixth Circuit's opinion). However, rather than succumb to that temptation, the Court has chosen to re-review the testimony of the witnesses, and the undersigned's notes regarding the same, the spreadsheets, and documentary evidence provided by the parties, and the written and oral arguments of counsel.

After such passage of time, this seemed to be the most appropriate (and perhaps necessary) methodology to arrive at the best approximation of average hours worked. Admittingly, this took a more specific objective/numbers based/individual testimony, credibility-based turn. In summary, in my original opinion, after hearing all the testimony, reviewing the documents, and arguments, I was of the opinion that the evidence clearly established, regarding liability, that the Plaintiffs had worked, and were not compensated for, overtime hours. I found this based on the testimony of the Plaintiffs, the lack of credible rebuttal proof by Defendants, and the clear evidence of Defendants "doctoring" and manipulating time records. In this regard, I found Plaintiffs' testimony much more credible than the Defendants. However, I also found that the Plaintiffs' testimony regarding damages and their estimates of their average of hours worked, while credible in terms of working overtime, were still somewhat imprecise, unspecific, and as noted hereafter, somewhat excessive.

While the resort to estimates was due in large measure to the Defendants' intentional failure to keep proper time records, it also meant the Court was tasked with arriving at a fair and accurate estimate for the average number of weekly hours worked, despite conflicting testimony, even between Plaintiffs. It also meant taking into account the extent to which the Plaintiffs' testimonies

12

were somewhat impeached by cross examination, differing testimony among Plaintiffs, the Plaintiffs' lack of their own records of hours worked, the effect of the passage of time and its effect on memory and accuracy, any bias in arriving at their estimates, and in many cases substantial "guess work" as to the proffered hours and days worked at different time periods and different locations.

Some of the key factors in reaching my decision include, but were not limited to, the following:

(1) Virtually all of the Plaintiffs' testimony regarding estimates of hours worked:

(a) constituted a weekly estimate during the time period worked, resulting in Plaintiffs trying to remember and estimate weekly hours, worked years earlier, and based only on memory;

(b) were almost all couched in ranges ending in 0 or 5 (*e.g.*, 40-60, 50-60, 55, 60-65, 65-70, 70-75 etc.).

(2) Several Plaintiffs testified to working outside of, and after, their on-site hours (*e.g.*, telephone calls, emails), but most Plaintiffs did not so testify, and others testified they did not do outside work (*e.g.*, testimony of Sloan, Williams, Tesh) (Hereinafter, the Court will simply reference the name of the Plaintiff who provided such testimony)

(3) Several Plaintiffs testified regarding themselves or others being off from work for corrective action, injuries, medical treatment, surgeries, vacations, or took regular days off (*e.g.,* Thrift, Sloan, Drew, Garrett, Nelon, Pierce).

(4) Several Plaintiffs testified that on certain days, they only had 0-1 tours (*e.g.,* Bogardus, Drew, McGee, Dodson).

(5) Plaintiffs' testimony varied as to:

(a) when the last tours occurred, when line cuts occurred, and when nightlines started or ended;

(b) the frequency of nightlines, and those who participated (*e.g.,* "rare" for Bogardus, J. Abbott, and K. Abbott; "just one to two times a week" for Dodson, Drew, Cheiji; "just weekends" for Chappell, Johnson, K. Abbott, McGee, Bogardus; and "only for top performers" for K. Abbott, Johnson, McGee, Davis, Matthews, and Woods).

(6) The months of January and February were "slow seasons" for sales representatives, and they worked less hours (*e.g.,* Johnson, K. Abbott, Cross, Siler, Cooper, Dodson, J. Pierce, McGee); Some of the lower producers did not work then (*e.g.,* J. Pierce, M. Pierce, Drew); or worked less hours/days (*e.g.,* Siler), and many took times (days, hours, weeks) off and took their vacations at those times (*e.g.,* J. Pierce, Dodson, J. Abbott, Thrift, Chappell, and Nelon).

(7) Some Plaintiffs testified to estimates of working an average as high as 80 hours per week (*e.g.*, Tesh, McBride, J. Pierce). This would mean that they would have <u>averaged</u> weekly:

(a) if 5 days a work week = 16 hours per day or 8:00 a.m. to midnight;

(b) if 5.5 days a work week = 14.5 hours per day or 8:00 a.m. to 10:30 p.m.

And those who testified to 70 hours or more would have averaged working weekly

(a) if 5 days per week = 14 hours per day or 8:00 a.m. to 10:00 p.m.

(b) if 5.5 days per week = approximately 13 hours per day or 8:00 a.m. to 9:00 p.m.

And Plaintiffs contended that such work hours would be for every week of their employment. These hours seemed excessive given the complete preponderance of the testimony of those Plaintiffs and others.

The Court will now address the respective arguments of the parties. The Court can dispense with the Defendants' arguments and proposals for a number of reasons. First, I find Defendants' proposed "objective model" is based on premises unsupported by a preponderance of the evidence.

14

For example, Defendants propose that Plaintiffs generally left at 2:00 p.m. ("linecut") or 3:00 p.m. (if they got a tour after the line cut but no sale) or 5:00 p.m. (if they got a tour and a sale). Defendants did agree that the average work week, per the testimony was 5.5 days per week. Defendants also agree the average start time was 8:00 a.m., but Defendants' argument that if Plaintiffs did not make a sale, they left work at 3:00 p.m., is unsupported by the overwhelming evidence to the contrary. Defendants' proposal is based on documents allegedly showing that the vast majority of sales were generated before 3:00 p.m. Defendants also claim that the testimony of various Plaintiffs, as to the late hours they worked, were not credible by virtue of the "off the clock study" "showing" very few sale contracts generated after 5:00 p.m. to 6:00 p.m. However, Defendants at trial alleged that the same "off the clock" study was incomplete and inaccurate and did not identify all contracts closed by Plaintiffs. A later document evidencing commissions paid on sales confirmed this inaccuracy as it showed double the number of sales as alleged by Defendants' document and argument—thus, rendering both useless. Additionally, Defendants' whole premise is based on contracts closed by Plaintiffs and does not account for the time spent on tours that did not end up resulting in a sale. The parties at oral argument appeared to agree that only a fourth to a third of sale tours resulted in a sale. Therefore, the proposed "objective model" does not account for the 3/4 to 2/3 of the actual time spent by Plaintiffs in *trying* to close a sale but being unsuccessful.

Furthermore, if Defendants' arguments were accurate that Plaintiffs worked on average from 8:00 a.m. to 3:00 p.m. (*i.e.*, 7 hours a day), there would be no claim for overtime, and the proven actions of Defendants to doctor, manipulate, and falsify time records belies such an argument. The entire basis for Defendants' illegal actions was excessive hours being worked and Defendants' attempt to falsify that fact. This Court clearly rejected Defendants' liability

15

arguments in its original opinion and ruling, and the same was upheld by the Sixth Circuit. However, Defendants continue to essentially make such a claim in this remand though couched as an argument for the assessment of damages. Defendants argue the typical workday being 8:00 a.m. to 3:00 p.m. (unless a late sale was made) for 5.5 days equals 38.5 hours per week. Defendants then propose a methodology for providing an additional 1.31 hours based on assumptions of time worked after the closing of a contract. Then, Defendants propose adding 3 hours for nightlines, party weekends, telephone calls, and off-site work. The Court finds this inaccurate at each level of calculation.

First, the typical workday, per the preponderance of testimony, was from 8:00 a.m., until at least 5:00 p.m. versus 3:00 p.m. There was testimony that Plaintiffs could not leave before 5:00 p.m. There was testimony that many Plaintiffs rarely, if ever, left by 3:00 p.m. There was testimony that Plaintiffs regularly left after 5:00 p.m. The Court finds using Defendants' own model, at a minimum, the average workday was 8:00 a.m. to 5:00 p.m. (or 9 hours), which multiplied by 5.5 days equals 49.5 hours per week versus 38.5 hours per week.

Second, the 1.31 hours added based on assumptions of time worked after a sale is flawed by virtue of the commissions statements confirming Defendants' numbers should be doubled. Thus, using Defendants' own proposed calculation, this would add 2.62 hours versus 1.31 hours.

Third, the proposed additional 3 hours for nightline, party weekends, off-site work, including telephone calls, is flawed. The additional hours for off-site work is again premised on the flawed work study numbers and the amount of time testified to by Plaintiffs regarding nightline, evening work, and party weekends exceeded Defendants' proposal of adding only .5 hours per

16

week for the offsite work and .5 hours per week for the under estimation of hours worked, such would total, at least, 4 additional hours per week versus 3 hours.[5]

As to the Plaintiffs' claim of 63 hours, the Court notes where "the employer's records are inaccurate or inadequate and employees cannot offer convincing substitutes . . . we hold that an employee has carried out his burden if he proves he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemons*, 328 U.S. 687-88. Plaintiffs contend that the estimates of the hours worked by the testifying Plaintiffs when totaled and averaged constitutes the amount and extent of that work as a matter of just and reasonable inference. The Court is mindful of the burden shifting mechanisms and Defendants' failure to come forward with the precise amount of work performed. However, Defendants' and Plaintiffs' own testimonies have to some degree disputed Plaintiffs' approximation of hours and provided "evidence to negate the reasonableness of the inference to be drawn from employees claimed totals." *Id.* at 687-88.

After hearing and reviewing the testimony of the various witnesses, observing their demeanor and reviewing my notes regarding their testimony and my observation, and listening to the manner in which they described their various workdays, weeks, and months, busy and slow times, and their memories of the same, and the basis for their estimates, and after reviewing the various documents, exhibits from trial, and the post remand briefs, the Court has concluded that for the reasons previously stated, the Plaintiffs' proposal of a 63 hour work week is still somewhat excessive. However, the Court has also concluded that its original estimate of 52 hours per week was a low estimate of the average number of hours worked. The Court finds the following:

---

[5] Coincidentally, in adding the proper revised number of hours as set forth above, the average hours worked per week would total 56.12 (49.5 + 2.62 + 4.0).

1. On average, the Plaintiffs averaged working 11 hours per day over an average 5.5-day work week for 10 months of the year (60.5 hours each week).

2. On average, the Plaintiffs averaged working 7 hours per day over an average 5-day work week for two months (January-February) of the year (35 hours per week).

3. That this results in an annual average of 56.25 hours per week (11 x 5.5 = 60.5 x 10 months = 605) + (7 x 5 = 35 x 2 months + 70) = 675/12 months =56.25.

4. That there was sufficient credible evidence presented to establish this as an average amount and extent of the hours worked by Plaintiffs on average during the period as a matter of just and reasonable inference and by a preponderance of the evidence. That there was not sufficient credible evidence presented to establish a greater average amount and extent of the hours worked.

The Court's findings above are based on the sufficient credible evidence that established that, on average, Plaintiffs worked from 8:00 a.m. to 7:00 p.m. (11 hours), 5 to 6 days per week (5.5), from March through December (10 months). This takes into account the very high-volume weeks and months and associated long hours, with the weeks and months the volume and hours worked were less. This also takes into account the varied testimonies regarding the times Plaintiffs left work, line cuts, last tour times, the frequency and opportunity of nightlines and its start times and end times, whether off site work was done and the nature and extent of such, and times off or away and party weekends, and estimated hours based on memory.

This average of a 60.5-hour work week during the 10-month time period comports with the majority of the Plaintiffs' own estimates. As per [Doc. 468-15], seventeen (17) Plaintiffs testified to an average of 50-62.5 hours worked per week, while the Plaintiffs herein argue for 63 hours. It was clear to the Court that the vast majority of Plaintiffs' testimony as to the average or typical work weeks was couched in terms of the 10 months from March to December. There was little to no testimony that Plaintiffs were including the "slow season" of January through February

in their estimated averages.  However, most Plaintiffs did note the reduced hours worked in the slow season.  The balance of the testimony was primarily with regard to how busy they were and how long they worked during the busier times to justify their liability claim, and their resulting estimated averages were predicated thereon.

B.      **Discovery Sales Representatives**

During the hearing, Plaintiffs maintained that the Court should award overtime to the Discovery Sales Representatives based on the evidence already in the record—that is, the testimony of Bobby Stallings.  Plaintiffs suggested, however, that if the Court is not inclined to grant their request, then the undersigned should set an evidentiary hearing with respect to damages only.  Plaintiffs argued that liability has been clearly established in this case and that there is sufficient evidence to find the Discovery Sales Representatives are similarly situated.  Plaintiffs argued that the dismissal of the Discovery Sales Representatives' claims without prejudice, as Defendants propose, would constitute a waste of time and resources.

Defendants argued that the Sixth Circuit held that the Discovery Sales Representatives were not similarly situated.  Defendants contend that the Sixth Circuit also held that there was not sufficient evidence to find a class of Discovery Sales Representatives or to award damages.  Defendants submitted that only one Discovery Sales Representative testified, Bobby Stallings, and he did not testify as to the other Discovery Sales Representatives.  Defendants argued that other courts have dismissed such claims without prejudice.  Defendants acknowledged at the hearing that their benefit of adopting this course of action is that the Discovery Sales Representatives may not refile their lawsuit.

In the present matter, it appears that there are only ten (10) Discovery Sales Representatives out of the 156 Plaintiffs as follows: (1) Shirley Benedict, (2) Jasyntha Cornwell, (3) Janice Deibel,

(4) William Dzaman, (5) Karl Lewanski, (6) Paul Naumoff, (7) James Reid, (8) George Smith, (9) Karen Smith, and (10) Bobby Stallings. Plaintiffs propose that the Court adjudicate the Discovery Sales Representatives' damages based on the evidence already in the record, while Defendants urge the Court to dismiss these claims without prejudice. The Court declines the parties' proposals and finds that the most appropriate course of action is to create a subclass of Discovery Sales Representatives as recommended by the Sixth Circuit and to proceed to trial on damages.

The Court finds Plaintiffs' proposal is not supported by the record and Defendants' proposal is wholly inefficient. Defendants argue that the Sixth Circuit held that the Discovery Sales Representatives were not similarly situated. The Court disagrees. The Sixth Circuit explained how there was not sufficient evidence to support the finding that the Discovery Sales Representatives were similarly situated to the Front Line or In House Sales Representatives. This does not equate to a decision that the Discovery Sales Representatives are not similarly situated to one another. The Court does not find that creating a subclass is contrary to the Sixth Circuit's decision, which stated, "At the least, the court should have created a separate subclass for the discovery employees." [Doc. 460 at 8]. As a final matter, the Sixth Circuit has already approved of the undersigned's decision to certify the In House and Front Line Sales Representatives. It would make little sense if the Discovery Sales Representatives could not proceed as its own subclass.

As mentioned above, Plaintiffs state that the Court should rely on Bobby Stallings's testimony and apply his average number of hours to the remaining Discovery Sales Representatives. Plaintiffs state that this approach is appropriate because the Court heard 9% of the Discovery Sales Representatives, which is higher than the 5.8% of the technicians who testified in *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017). The Court disagrees with Plaintiffs'

20

approach because the record is insufficient to award an average amount of overtime hours, especially when Bobby Stallings testified that he had no knowledge of the operations with respect to any of the locations except his own. [Doc. 389 at 37]. Thus, the Court finds Plaintiffs' argument not well taken and contrary to the Sixth Circuit's decision.

The Court also declines to adopt Defendants' suggestion to dismiss the claims without prejudice. Defendants cite to several cases supporting their argument, and the Court agrees that in FLSA cases that are decertified, the opt-in plaintiffs' claims are typically dismissed without prejudice. *See Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 242 (S.D. Ohio 2018) ("If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.") (quoting *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015)) (other quotations omitted).

The Court, however, finds that the instant case is different because of the procedural posture and this case involves a *group* of individuals. Further, at the hearing, Defendants acknowledged that one benefit for them is that the Discovery Sales Representatives may choose not to refile. The Court finds Defendants' motive for advancing this position flies in the face of the remedial purpose of the FLSA. Defendants' attempt to litigate the claims to exhaustion in order deter the Discovery Sales Representatives from seeking any compensation (which they are undoubtedly due) is unwarranted. Accordingly, the Court hereby creates a subclass of the Discovery Sales Representatives. The Court will contact the parties to schedule a conference with regard to how and when the litigation regarding the subclass will proceed.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court **AWARDS** the Front Line and In House Sales Representatives 56.25 hours, or 16.25 hours in overtime, liquidated damages, and

reasonable attorney's fees. Within fourteen (14) days of this Memorandum and Order, the parties **SHALL** file a joint status report on the calculation of damages due to the Front Line and In House Sales Representatives consistent with the instant Memorandum and Order. Finally, the Court **ORDERS** that the Discovery Sales Representatives **SHALL** proceed as a subclass.

       **IT IS SO ORDERED.**

ENTER:

   C. Clifford Shirley, Jr.     
C. Clifford Shirley, Jr. (recalled)
United States Magistrate Judge